UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

HONORABLE JOHN A. KRONSTADT

UNITED STATES DISTRICT JUDGE PRESIDING

- - -

USA,                                )
                                    )
              PLAINTIFF,            )
                                    )
VS.                                 ) CR18-00050-JAK
                                    )
SHIH, ET AL.,                       )
              DEFENDANTS.           )
_____)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

LOS ANGELES, CALIFORNIA

THURSDAY, APRIL 4, 2019; 8:30 AM

_____

ALEXANDER T. JOKO, CSR NO. 12272
FEDERAL OFFICIAL COURT REPORTER
350 WEST FIRST STREET, ROOM 4311
LOS ANGELES, CA 90012
AJ_CSR@YAHOO.COM

**APPEARANCES OF COUNSEL**:

FOR PLAINTIFF:      MELANIE ANN HANSON SARTORIS
                    AUSA - OFFICE OF US ATTORNEY
                    UNITED STATES DISTRICT COURTHOUSE
                    312 NORTH SPRING STREET
                    12TH FLOOR
                    LOS ANGELES, CA 90012


                    JUDITH A. HEINZ
                    AUSA - OFFICE OF US ATTORNEY
                    CRIMINAL DIVISION - US COURTHOUSE
                    312 NORTH SPRING STREET
                    15TH FLOOR
                    LOS ANGELES, CA 90012-4700


                    KHALDOUN SHOBAKI
                    AUSA - OFFICE OF US ATTORNEY
                    CYBER AND INTELLECTUAL
                    PROPERTY CRIMES SECTION
                    312 NORTH SPRING STREET
                    SUITE 1500
                    LOS ANGELES, CA 90012


                    JAMES C. HUGHES
                    AUSA - OFFICE OF US ATTORNEY
                    TAX DIVISION
                    300 NORTH LOS ANGELES STREET
                    ROOM 7211
                    LOS ANGELES, CA 90012


                    WILLIAM ROLLINS
                    AUSA - OFFICE OF US ATTORNEY
                    GENERAL CRIMES SECTION
                    312 NORTH SPRING STREET
                    SUITE 1200
                    LOS ANGELES, CA 90012

1     **APPEARANCES (CONTINUED)**

2

      FOR DEFENDANT SHIH:

3
                              JAMES W. SPERTUS
4                             SPERTUS LANDES AND UMHOFER LLP
                              1990 SOUTH BUNDY DRIVE
5                             SUITE 705
                              LOS ANGELES, CA 90025
6

7                             JOHN HANUSZ
                              SPERTUS LANDES AND UMHOFER LLP
8                             1990 SOUTH BUNDY DRIVE
                              SUITE 705
9                             LOS ANGELES, CA 90025

10
                              CHRISTA L. CULVER
11                            SPERTUS LANDES AND UMHOFER LLP
                              1990 SOUTH BUNDY DRIVE
12                            SUITE 705
                              LOS ANGELES, CA 90025
13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              LOS ANGELES, CALIFORNIA; THURSDAY, APRIL 4, 2019

 2                              8:30 AM

 3                             - - - - -

 4

 5

 6              THE COURT:  ITEM NO. 3, CR18-00050, USA V.

 7    YI-CHI SHIH.

 8                   WOULD YOU STATE YOUR APPEARANCES, PLEASE,

 9    STARTING WITH THE GOVERNMENT.

10         MR. SHOBAKI:  GOOD MORNING, YOUR HONOR.  KHAL

11    SHOBAKI ON BEHALF OF THE UNITED STATES.

12         MS. HEINZ:  GOOD MORNING, YOUR HONOR.  JUDITH

13    HEINZ ON BEHALF OF THE UNITED STATES.

14         MS. SARTORIS:  GOOD MORNING, YOUR HONOR.

15    MELANIE SARTORIS ON BEHALF OF THE UNITED STATES.

16         MR. HUGHES:  GOOD MORNING, YOUR HONOR.  JAMES

17    HUGHES ON BEHALF OF THE UNITED STATES.

18         MR. ROLLINS:  GOOD MORNING, YOUR HONOR.  WILL

19    ROLLINS ON BEHALF OF THE UNITED STATES.

20         THE COURT:  GOOD MORNING, MR. SHOBAKI,

21    MS. HEINZ, MS. SARTORIS, MR. HUGHES AND MR. ROLLINS.

22         MR. SPERTUS:  GOOD MORNING, YOUR HONOR.  JAMES

23    SPERTUS, JOHN HANUSZ AND CHRISTA CULVER ON BEHALF OF

24    DR. SHIH WHO IS PRESENT BEFORE YOUR HONOR.

25         THE COURT:  GOOD MORNING.
```

1    WELL, THERE ARE QUITE A NUMBER OF MOTIONS

2    IN LIMINES THAT HAVE BEEN PRESENTED, AS WELL AS THE

3    GOVERNMENT'S MOTION TO COMPEL RECIPROCAL DISCOVERY AND

4    THEN THE PROPOSED JURY QUESTIONNAIRE.

5    I'VE DEFERRED THE ISSUE ON JURY

6    INSTRUCTIONS TO THE NEXT HEARING.

7    ARE THERE ANY NEW DEVELOPMENTS BEFORE WE

8    DELVE INTO THIS?

9    MR. SPERTUS:  NO, YOUR HONOR.

10    MR. SHOBAKI:  NO, YOUR HONOR.

11    THE COURT:  WELL, THERE ARE SOME OVERLAP IN

12    MANY OF THESE MOTIONS, AND -- BUT I'LL GET TO THAT.

13    BUT I THINK THE WAY -- I'LL START JUST NUMERICALLY.

14    THE GOVERNMENT'S MOTION IN LIMINE NUMBER

15    1, TO PRECLUDE A CHALLENGE TO THE VALIDITY OF THE

16    ENTITY LIST DESIGNATIONS.

17    THE DEFENDANT STATES HE DOESN'T INTEND TO

18    CONTEST THAT AND SAYS, THEREFORE, THIS IS MOOT.

19    I DON'T THINK IT'S MOOT.  IT'S JUST NOT

20    CONTESTED.  AND IT'S -- IN SUBSTANCE, IT'S SIMILAR TO

21    THE DEFENDANT'S MOTION IN LIMINE NUMBER 5.  SO I

22    DON'T -- BUT WHAT THIS DOES PRESENT, I THINK, IS AN

23    EXAMPLE OF AN ISSUE THAT LOOKS -- THAT TOUCHES ON

24    SEVERAL OF THE MOTIONS, INCLUDING, AT LEAST, I THINK

25    IT'S DEFENDANT'S MOTIONS IN LIMINE 3 AND 4.  AND THAT

1    IS, TO WHAT -- WHAT LEVEL OF EVIDENCE SHOULD -- IS

2    APPROPRIATE WITH RESPECT TO THE ESTABLISHMENT AND THE

3    LIST PROCESS?

4              IT'S ALSO PART OF THE DISPUTE ABOUT

5    EXPERT TESTIMONY, THOSE MOTIONS IN LIMINE.

6              MY TENTATIVE VIEW ON THIS IS THE

7    FOLLOWING:

8              I DON'T AGREE, TENTATIVELY, WITH THE PART

9    OF THE POSITION -- PART OF THE POSITION THE DEFENSE HAS

10   ADVANCED THAT THIS SHOULD BE ANALOGOUS TO A FELON IN

11   POSSESSION CHARGE WHERE THE UNDERLYING -- THE FELONY

12   THAT PROVIDES THE BASIS IS NOT -- THE EVIDENCE OF WHAT

13   THAT FELONY WAS DOESN'T HAVE TO BE PRESENTED.  I THINK

14   THE CONTEXT IS -- I THINK SOME CONTEXT IS NECESSARY

15   HERE.

16              HOWEVER, INASMUCH AS THE GOVERNMENT

17   CONTENDS THAT THE PLACEMENT ON THE LIST CANNOT BE

18   CHALLENGED IN THIS PROCEEDING, BUT THERE'S A DIFFERENT

19   PROCESS FOR DOING THAT, I THINK THAT ALSO PLACES

20   LIMITATIONS ON THE AMOUNT OF EVIDENCE THAT'S NECESSARY

21   AS TO HOW THE LIST WAS ESTABLISHED.

22              SO I THINK THAT THERE WOULD BE A NEED FOR

23   SOME CONTEXT TO PROVIDE THE JURY WITH CONTEXT FOR WHAT

24   THE CASE IS ABOUT AND THE NATURE -- SOME OF THE NATURE

25   OF THE SURROUNDING CONDUCT.

1      AS THE DEFENSE STATES IN ONE OF THE

2  MOTIONS IN LIMINE, IT'S NOT A CASE ABOUT ESPIONAGE.

3  THE GOVERNMENT DOESN'T -- IT DOESN'T SAY IT INTENDS TO

4  SEEK EVIDENCE ON ESPIONAGE.  SO I THINK THAT -- JUST A

5  MINUTE -- THAT I WOULD BE INCLINED TO ALLOW TESTIMONY

6  BY A -- TESTIMONY OR EXHIBITS THAT REFLECT THE

7  PLACEMENT OF THE RELEVANT ITEMS ON THE LIST, THE

8  PLACEMENT OF ENTITIES AND/OR LOCATIONS TO WHICH THE

9  LIST APPLIES AND SOME MORE GENERIC STATEMENTS --

10  TESTIMONY AS TO THE OVERALL PURPOSE OF THE LIST

11  PROCESS, WHICH IS TO ADVANCE THE -- TO ADVANCE THE

12  INTERESTS OF THE UNITED STATES.

13      JUST A MOMENT.

14      THAT WE HAVE RESTRICTIONS ON EXPORT OF

15  CERTAIN PRODUCTS TO CERTAIN FOREIGN COUNTRIES OR

16  ENTITIES TO SERVE OUR NATIONAL INTERESTS, THIS LEADS TO

17  A PROCESS TO DECIDE WHAT PRODUCT -- WHAT PRODUCTS TO

18  LIST AND WHAT FOREIGN COUNTRIES, I THINK IT CAN BE IN

19  THAT SORT OF WAY.

20      I RECOGNIZE THAT THERE'S GOING TO BE

21  EVIDENCE INTRODUCED HERE OR OFFERED WITH RESPECT TO

22  KNOWLEDGE AND INTENT, AND THAT THERE'S GOING TO BE

23  EVIDENCE THAT'S GOING TO BE OFFERED WITH RESPECT TO

24  SHIPMENTS TO CHINA.  THERE'S GOING TO BE EVIDENCE

25  OFFERED WITH RESPECT TO FINANCIAL TRANSACTIONS.  AND

1    I'M NOT SAYING THAT EVIDENCE BECOMES INADMISSIBLE.  I'M

2    JUST SAYING THAT, ON THE ISSUE OF THE LIST AND HOW --

3    AND ITS PURPOSE, I DON'T THINK WE NEED TO GET TOO

4    DEEPLY INTO THAT.

5                    AND I ALSO THINK THAT'S -- THERE ARE

6    DISPUTES -- YOU HAVE DISPUTES ABOUT JURY INSTRUCTIONS,

7    BUT -- JUST A MINUTE.

8                    BUT LOOKING AT THE GOVERNMENT'S

9    PROPOSED -- REVISED DISPUTED PROPOSED JURY

10   INSTRUCTIONS, DOCKET 362, IN LOOKING AT THESE

11   INSTRUCTIONS WITH RESPECT TO THIS OFFENSE, FOR EXAMPLE,

12   ON COUNT 2, THE PROPOSED INSTRUCTION STATES, "FOR THE

13   DEFENDANT TO BE FOUND GUILTY OF COUNT 2, THE GOVERNMENT

14   MUST PROVE EACH OF FOLLOWING ELEMENTS BEYOND A

15   REASONABLE DOUBT:  FIRST, THE DEFENDANT CAUSED TO BE

16   EXPORTED AN EXPORT-CONTROLLED ITEM, NAMELY," DOT, DOT,

17   DOT, "MMIC FROM THE UNITED STATES TO THE PEOPLE'S

18   REPUBLIC OF CHINA.  SECOND, A LICENSE WAS REQUIRED TO

19   EXPORT THE MMIC.  THIRD, THE DEFENDANT FAILED TO

20   OBTAIN, FROM THE DEPARTMENT OF COMMERCE, THE REQUIRED

21   LICENSE BEFORE CAUSING THE MMIC TO BE EXPORTED.  AND,

22   FOURTH, THE DEFENDANT ACTED KNOWINGLY AND WILLFULLY."

23                    THERE'S NOTHING IN THAT INSTRUCTION ABOUT

24   HOW THE LIST IS CREATED OR THERE'S A FACT THAT THE JURY

25   NEEDS TO FIND AS TO THE CREATION OF THE LIST.

1          SO, AGAIN, I'M SPEAKING ACROSS SEVERAL

2    MOTIONS HERE.  BUT THE ISSUE IS A COMMON ONE, AND I

3    THINK ONE OF THE CORE ELEMENTS OF YOUR DISPUTE.

4          SO MY VIEW IS WHAT I'VE STATED.  I'M NOT

5    PERSUADED THAT NO INFORMATION SHOULD BE PROVIDED.  AT

6    THE SAME TIME, SOME OF THE PROFFERED EXPERT TESTIMONY

7    OR PERCIPIENT TESTIMONY ABOUT HOW CERTAIN ITEMS GOT ON

8    THE LIST AND WHY, I'M A LITTLE UNCLEAR WHY THAT WOULD

9    BE NEEDED HERE.

10          THERE'S A SIMILAR -- WELL, I'M NOT GOING

11   TO GET INTO THE ISSUE ABOUT WHAT'S ON PARTICULAR

12   EXHIBITS -- THE LANGUAGE OF PARTICULAR EXHIBITS, BUT

13   LET ME START THERE.

14          WHO IS GOING TO ADDRESS THESE ISSUES FOR

15   THE GOVERNMENT, MS. HEINZ?

16        MS. HEINZ:  YOUR HONOR, I WILL.

17          YOUR HONOR, I WILL BEGIN WITH A

18   CLARIFICATION ABOUT THE JURY INSTRUCTION WITH RESPECT

19   TO COUNT 2.  COUNT 2 IS NOT AN ENTITY LIST ALLEGATION.

20   COUNT 2 IS SPECIFIC TO AN EXPORT OF THE MMIC THAT WAS

21   CONTROLLED BECAUSE OF THE -- BECAUSE IT MET THE

22   CRITERIA OF BEING ON THE CCL.  AND THE DATE RANGE OF

23   THE COUNT 2 CHARGE REFLECTS AN EXPORT BEFORE CHENGDU

24   GASTONE TECHNOLOGY COMPANY WAS PLACED ON THE ENTITY

25   LIST.

1        THE COURT:  JUST A MINUTE.

2            WELL, PROPOSED INSTRUCTION 3 AT DOCKET

3    362, DO YOU HAVE THAT?

4        MS. HEINZ:  I DON'T HAVE IT IN FRONT OF ME.

5    IF IT RELATES TO COUNT 1, I'M FAMILIAR WITH IT.

6        THE COURT:  I BELIEVE SO BECAUSE PROPOSED

7    INSTRUCTION 2 SAYS, "DEFENDANT YI-CHI SHIH IS CHARGED

8    IN COUNT 1 OF THE SECOND-SUPERSEDING INDICTMENT WITH."

9    AND THEN INSTRUCTION 3 SAYS, "IN ORDER FOR DEFENDANT

10   YI-CHI SHIH TO BE FOUND GUILTY ON COUNT 1 WHICH CHARGES

11   THE DEFENDANT WITH CONSPIRING TO EXPORT ITEMS."  AND

12   THEN IT GOES FROM THERE, AND IT LISTS THE -- THE THINGS

13   THAT HAVE TO BE SHOWN WITHOUT REGARD TO -- AGAIN, THESE

14   ARE DISPUTED INSTRUCTIONS, BUT THEY TALK ABOUT --

15       MS. HEINZ:  I'M SORRY, I DON'T HAVE THE JURY

16   INSTRUCTIONS WITH ME.  I DIDN'T BRING THEM BECAUSE --

17       THE COURT:  OR THE STATUTE -- THE STATUTE

18   ITSELF IS -- "IT SHALL BE UNLAWFUL FOR A PERSON TO

19   VIOLATE, ATTEMPT TO VIOLATE, CONSPIRE TO VIOLATE OR

20   CAUSE A VIOLATION OF ANY LICENSE, ORDER, REGULATION OR

21   PROHIBITION ISSUED UNDER THIS CHAPTER."

22       MS. HEINZ:  YES, YOUR HONOR.  I AGREE WITH THE

23   STATUTE.

24           THE GOVERNMENT FILED REVISED JURY

25   INSTRUCTIONS WITH RESPECT TO COUNT 1 IN WHICH WE

1   SPECIFICALLY SPELLED OUT THE FOUR WAYS IN WHICH -- THE

2   FOUR GOALS OF THE CONSPIRACY.  AND I BELIEVE WE

3   ADDRESSED THE ENTITY LIST THERE.

4                   BUT I'M GOING TO MOVE TO WHAT I THINK IS

5   THE THRUST OF YOUR STATEMENTS.

6                   OKAY.  THE GOVERNMENT, OBVIOUSLY, AGREES

7   WITH THE COURT THAT THE GOVERNMENT'S MOTION IN LIMINE

8   NUMBER 1 IS NOT MOOT.

9                   AND IN TERMS OF THE TENTATIVE, OF COURSE,

10  THE GOVERNMENT AGREES THAT THIS IS NOT ANALOGOUS TO A

11  FELON IN POSSESSION CASE, WHICH IS OUTLINED IN THE

12  SUPREME COURT'S CASE IN OLD CHIEF.

13                  SO, REALLY, WHAT WE'RE MOVING TO IS SORT

14  OF THE ISSUE OF, WHAT THEN -- WHAT KIND OF EVIDENCE

15  WOULD BE ADMISSIBLE, WHICH IS, OF COURSE, NOT RAISED IN

16  THE GOVERNMENT'S MOTION IN LIMINE, BUT IS RAISED BY THE

17  DEFENSE IN THEIR MOTION IN LIMINE COUNT (SIC) 5.

18                THE COURT:  YOU MEAN THEIR "MOTION IN LIMINE

19  NUMBER 5"?

20                MS. HEINZ:  I MEAN "NUMBER FIVE."  YES, YOUR

21  HONOR.  THAT'S CORRECT.

22                  AND SO WHILE THE GOVERNMENT CERTAINLY

23  AGREES THAT THERE WOULD NEED TO BE TESTIMONY AND/OR

24  EXHIBITS ABOUT THE PLACEMENT OF CHENGDU GASTONE ON THE

25  ENTITY LIST AND THE OTHER COMPANIES THAT ARE ALLEGED IN

1    THE INDICTMENT -- SO WE'LL JUST CALL THEM "FOUR

2    COMPANIES" FOR NOW.

3                    WITH RESPECT TO THE FOUR COMPANIES, THERE

4    WOULD NEED TO BE TESTIMONY ABOUT THE PLACEMENT.  THERE

5    WOULD NEED TO BE TESTIMONY ABOUT THE ENTITIES AND THEIR

6    LOCATIONS.  AND THAT WOULD INCLUDE TESTIMONY ABOUT ANY

7    ALIASES, FOR EXAMPLE, WITH RESPECT TO THE COMPANIES.

8    AND THERE WOULD CERTAINLY NEED TO BE TESTIMONY ABOUT

9    GENERIC REASONS WHY COMPANIES ARE PLACED ON THE ENTITY

10   LIST.

11                   THE GOVERNMENT -- AND THERE WOULD NEED TO

12   BE TESTIMONY OR EVIDENCE ABOUT THE CONSEQUENCES OF

13   BEING ON THE ENTITY LIST.  SPECIFICALLY, WHAT DOES THAT

14   MEAN?  THAT MEANS THAT A LICENSE IS REQUIRED, AND THAT

15   THERE IS A PRESUMPTION AGAINST GETTING -- ISSUING A

16   LICENSE.

17                   SO THE GOVERNMENT AGREES WITH THE COURT

18   THAT ALL OF THAT WOULD BE NECESSARY.

19                THE COURT:  DO THE REGULATIONS NOT LIST THE

20   ENTITIES?

21                   AREN'T THE -- WHAT IS NOT -- UNDER THE

22   REGULATIONS, ARE CERTAIN PRODUCTS IDENTIFIED AS ONES

23   THAT CANNOT BE EXPORTED WITHOUT A LICENSE?

24                MS. HEINZ:  I NEED TO SEPARATE OUT WHAT THE

25   E.A.R. SAYS ABOUT THE ENTITY LIST AND WHAT THE E.A.R.

1    SAYS ON THE CCL.

2                SO AN ENTITY LIST PLACEMENT IS FOCUSED ON

3    THE ENTITY LIST.  IT'S NOT FOCUSED ON ITEMS.

4           THE COURT:  I UNDERSTAND.

5           MS. HEINZ:  AND SO ALL ITEMS THAT ARE SUBJECT

6    TO THE E.A.R. ARE INVOLVED WHEN A COMPANY IS PUT ON THE

7    ENTITY LIST.

8                AND THE SPECIFIC REGULATIONS THEMSELVES,

9    THE SPECIFIC LISTING IDENTIFIES THE CONSEQUENCES OF THE

10   LISTING.

11                AND IN THIS PARTICULAR CASE, THE

12   CONSEQUENCE IS, THAT A LICENSE IS NEEDED TO SHIP ANY

13   ITEM THAT IS SUBJECT TO THE E.A.R. TO THAT ENTITY

14   LIST -- ENTITY.  AND THERE IS A PRESUMPTION AGAINST A

15   LICENSE.

16           THE COURT:  IF AN ENTITY IS PLACED ON THE

17   LIST, IS THAT PUBLISHED?

18           MS. HEINZ:  YES, YOUR HONOR.  IT IS PUBLISHED

19   IN THE FEDERAL REGISTER.

20           THE COURT:  SO WHY WOULD YOU NEED MORE

21   TESTIMONY THAN A COPY OF THE FEDERAL REGISTER LIST

22   SHOWING THAT AN ENTITY IS ON THE LIST?

23           MS. HEINZ:  YOUR HONOR, THAT'S -- THE

24   GOVERNMENT HAS BASICALLY ARGUED THAT IT SHOULD BE

25   ALLOWED TO INTRODUCE THE FEDERAL REGISTERS.  I BELIEVE

1    THAT'S WHAT THE DEFENSE DOESN'T WANT US TO DO.

2              THE COURT:  I'M FOCUSING ON -- WHAT

3    TESTIMONY -- WHAT EVIDENCE -- IF THE FEDERAL REGISTER

4    WHICH LISTS THE -- INCLUDES THE LIST OF -- I KNOW

5    THERE'S AN OBJECTION ABOUT THE FEDERAL REGISTER NOT --

6    IS A DIFFERENT CATEGORY, BUT LET'S JUST -- WE'LL COME

7    BACK TO THAT LATER.

8                   IF EVIDENCE WERE ADMITTED THAT HERE IS

9    THE LIST -- THAT THIS ENTITY IS ON THE LIST, AND HERE'S

10   EVIDENCE THAT THIS ENTITY IS ON THE LIST FROM THE

11   DOCUMENT LIKE THE FEDERAL REGISTER, WOULD ADDITIONAL

12   EVIDENCE BE NEEDED TO ESTABLISH THAT THAT ENTITY IS ON

13   THE LIST?

14        MS. HEINZ:  NO, YOUR HONOR.  NO ADDITIONAL

15   EVIDENCE IS NEEDED, OTHER THAN THE FEDERAL REGISTER TO

16   ESTABLISH THE PLACEMENT ON THE LIST.

17              TO ESTABLISH -- TO EXPLAIN TO THE JURY

18   JUST SIMPLY WHAT THE FEDERAL REGISTER SAYS, BECAUSE

19   IT'S RATHER LENGTHY, THERE WOULD PROBABLY BE MINIMAL

20   TESTIMONY FROM A WITNESS, PROBABLY SOMEONE FROM B.I.S.,

21   SIMPLY TO EXPLAIN, BRIEFLY IN LAYMAN'S TERMS, WHAT THE

22   ENTITY LIST IS AND WHAT THE CONSEQUENCES OF BEING ON IT

23   ARE.

24              THE COURT:  BY "CONSEQUENCES," YOU MEAN WHAT?

25              MS. HEINZ:  THE NECESSITY TO GET A LICENSE.

```
 1              THE COURT:  ALL RIGHT.

 2              MS. HEINZ:  AND THEN, YOUR HONOR, THE

 3    GOVERNMENT, OF COURSE, AGREES WITH YOUR HONOR THAT THIS

 4    RULING ON THESE MOTIONS IN LIMINE WOULD NOT AFFECT THE

 5    EVIDENCE THAT THE GOVERNMENT COULD INTRODUCE WITH

 6    RESPECT TO KNOWLEDGE AND INTENT WITH RESPECT TO THE

 7    DEFENDANT.

 8              THE COURT:  OKAY.  SO JUST TO BE CLEAR, TO

 9    WHAT EXTENT ARE YOU -- WOULD YOU BE PROFFERING OR -- TO

10    WHAT EXTENT ARE YOU SEEKING TO HAVE INTRODUCED, AS

11    TRIAL EVIDENCE, TESTIMONY OR DOCUMENTS THAT GO TO WHY

12    THERE IS AN ENTITY LIST OR WHY THESE RESTRICTIONS

13    EXIST?

14              MS. HEINZ:  YOUR HONOR, THE GOVERNMENT ISN'T

15    SEEKING TO INTRODUCE ANYTHING OTHER THAN THE FEDERAL

16    REGISTER.  BUT WITHIN THE FEDERAL REGISTER, THERE IS

17    LANGUAGE ABOUT WHY THERE IS AN ENTITY LIST.  IT'S

18    GENERALIZED LANGUAGE, BUT THAT'S THERE.

19              THE COURT:  OKAY.  ALL RIGHT.  IS THERE

20    ANYTHING ELSE YOU WANTED TO ADD AT THIS POINT?

21              MS. HEINZ:  NO, YOUR HONOR.

22              THE COURT:  WHO IS GOING TO ADDRESS THESE

23    ISSUES?

24              MR. SPERTUS:  MS. CULVER-WASSERMAN WILL

25    ADDRESS IT.  THIS IS MOTION IN LIMINE NUMBER 5.
```

```
 1            THE COURT:  THERE'S A LOT OF OVERLAP HERE.

 2            MR. SPERTUS:  WHAT I WOULD LIKE TO DO IS,

 3    ALLOW MS. WASSERMAN TO ARGUE THE ENTITY LIST PLACEMENT,

 4    BUT I WOULD LIKE TO ADDRESS THE THEMES THAT ARE THE

 5    OVERLAP THAT THE COURT ALLUDED TO EARLIER.

 6                 COULD WE SPLIT THIS AMONG TWO PEOPLE

 7    BECAUSE I JUST REALLY WANT TO EMPHASIZE THAT THE

 8    GOVERNMENT IS -- THE TROJAN HORSE OF WHAT THE

 9    GOVERNMENT JUST STATED WAS THEIR, QUOTE, "WE WILL

10    INTRODUCE GENERIC REASONS WHY ENTITIES ARE PLACED ON

11    THE LIST," WHICH BECAUSE WE AREN'T GOING TO CHALLENGE

12    PLACEMENT ON THE LIST, MS. WASSERMAN WILL ARGUE IS

13    COMPLETELY IRRELEVANT.

14                 BUT THE REASONS WHY -- JUST SO THE COURT

15    UNDERSTANDS WHAT THE REASONS WHY ARE, IT'S THE NATIONAL

16    SECURITY INTEREST PROTECTION, STOPPING CHINA FROM

17    STEALING TRADE SECRETS.  AND THAT'S THE FOCUS OF

18    MOTIONS IN LIMINE 2, 3 AND 4.

19            THE COURT:  I UNDERSTAND.

20                 AND I THINK WHAT I WAS FOCUSING ON WAS, I

21    DON'T THINK WE NEED TO GET INTO THAT LEVEL OF DETAIL.

22    BUT I THINK THE JURY NEEDS SOME CONTEXT TO UNDERSTAND

23    WHAT THIS PROCESS IS ABOUT.

24            MR. SPERTUS:  BUT --

25            THE COURT:  -- WHICH IS DIFFERENT THAN --
```

```
 1              MR. SPERTUS:  SO I SUBMIT --

 2              THE COURT:  IT'S DIFFERENT THAN A WITNESS

 3     TESTIFYING, "I'M THE PERSON WHO OVERSAW THE PLACEMENT

 4     OF THIS ENTITY ON THE LIST.  AND I CONSIDERED CERTAIN

 5     INFORMATION IN MAKING THAT JUDGMENT.  AND PART OF THE

 6     NATIONAL INTERESTS THAT I THOUGHT WERE APPROPRIATE TO

 7     ADVANCE AND THAT WERE ULTIMATELY APPROVED IN THE

 8     APPROPRIATE PROCESS WERE PROTECTING THIS OR PROTECTING

 9     THAT," AND SO ON.  I DON'T THINK WE NEED TO GET INTO

10     THAT IN GREAT DEPTH OR MUCH DEPTH AT ALL.

11              MR. SPERTUS:  AND TO CRYSTALLIZE WHAT I THINK

12     THE COURT IS SAYING, THE COURT JUST SPOKE A NARRATIVE

13     THAT DOES NOT CONTAIN THE WORDS "NATIONAL SECURITY" IN

14     IT.  AND IF -- MUCH OF WHAT THE OVERLAP AMONG THESE

15     DIFFERENT MOTIONS IS, IS A DISPUTE OVER WHETHER OR NOT

16     THE NATIONAL SECURITY INTERESTS OF THE UNITED STATES

17     ARE GOING TO COME INTO THIS TRIAL IN ANY FORM.

18                   AND THAT'S WHY THE ANALOGY TO OLD CHIEF

19     IS SO IMPORTANT.  I MEAN, FELONS CAN'T POSSESS

20     FIREARMS.  A CHILD MOLESTER WHO HAS A FELONY, FOR

21     EXAMPLE, CAN STIPULATE, "I'M A FELON" AND OBVIATE THE

22     NEED FOR THAT TESTIMONY.

23              THE COURT:  I DON'T THINK THIS IS EXACTLY LIKE

24     THAT.  I THINK THIS IS DIFFERENT.

25                   AND I STATED, I THINK IT NEEDS SOME
```

1    CONTEXT.

2                     AND I THINK THE LANGUAGE THAT I MENTIONED

3    WAS, "TO SERVE OUR NATIONAL INTERESTS."  THAT'S

4    DIFFERENT THAN SAYING SPECIFICALLY AS TO A MILITARY

5    EFFORT BY THE PEOPLE'S REPUBLIC OF CHINA OR A TRADE --

6    EFFORT TO MISAPPROPRIATE INTELLECTUAL PROPERTY.  I'M

7    NOT GOING THERE.

8                     I'M JUST SAYING, I THINK THAT MORE

9    THAN -- SOME CONTEXT OF THE CONCEPT HERE IS THAT,

10   THERE'S A NATIONAL INTEREST THAT'S BEING SERVED BY THIS

11   PROCESS.

12          MR. SPERTUS:  SO I'D LIKE MS. WASSERMAN TO

13   ADDRESS THIS.

14          THE COURT:  THANK YOU.

15          MS. WASSERMAN:  THANK YOU, YOUR HONOR.

16                     SO WE JUST WANT TO REITERATE THAT THE

17   DEFENSE AGREES THAT -- WITH THE COURT THAT THE FACT OF

18   PLACEMENT ON THE ENTITY LIST OR ON THE COMMERCE CONTROL

19   LIST IS RELEVANT.  AND THAT'S WHAT THE GOVERNMENT'S

20   AUTHORITIES HOLD.  THAT IT IS ONLY THE FACT OF THE

21   PLACEMENT ON THE LIST AND NOT THE VALIDITY OF THE

22   LIST -- EXCUSE ME, THE VALIDITY OF THAT PLACEMENT THAT

23   IS RELEVANT TO NOT ONLY AN ELEMENT IN THE CASES THAT

24   ARE AT ISSUE IN THE GOVERNMENT'S MOTION, BUT IT IS

25   ENTIRELY IRRELEVANT TO THE GUILT OR INNOCENCE OF THE

19

1      DEFENDANT.  AND THAT'S A QUOTE IN MANDEL, THE NINTH

2      CIRCUIT OPINION THAT THE GOVERNMENT CITES IN ITS

3      MOTIONS.

4                  I ALSO WANTED TO RESPOND TO THE

5      GOVERNMENT'S INSISTENCE THAT IT'S NECESSARY TO

6      INTRODUCE THE FEDERAL REGISTER HERE TO DEVELOP -- OR TO

7      DEMONSTRATE THE FACT OF ENTITY LIST PLACEMENT.  IT'S

8      UNNECESSARY TO INTRODUCE THE FEDERAL REGISTER BECAUSE

9      DR. SHIH IS WILLING TO STIPULATE TO THE FACT OF ENTITY

10     LIST PLACEMENT IN THIS CASE.

11                 AND TO THE EXTENT THAT THE FEDERAL

12     REGISTER IS THE SOLE MEANS, WHICH IS WHAT I UNDERSTOOD

13     MS. HEINZ TO BE SAYING, OF DEMONSTRATING THE EFFECT OF

14     AN ENTITY LIST PLACEMENT, THE PRESUMPTION OF A LICENSE

15     DENIAL THAT MIGHT RESULT FROM AN ENTITY LIST PLACEMENT,

16     I THINK THAT'S SOMETHING THAT WE CAN INCORPORATE INTO

17     OUR STIPULATION AS LONG AS IT TRACKS THE LANGUAGE OF

18     THE RELEVANCY AFAR AND DOES NOT INCLUDE INFLAMMATORY

19     LANGUAGE.

20                 IF THE COURT DETERMINES IT IS ABSOLUTELY

21     NECESSARY FOR SOME REASON TO ADMIT THE FEDERAL

22     REGISTER, AT A MINIMUM, IT HAS TO BE REDACTED TO REMOVE

23     INFLAMMATORY TERMS.  THE INFLAMMATORY TERMS INCLUDE NOT

24     ONLY THINGS LIKE "NATIONAL SECURITY," BUT "TERRORISM,

25     WEAPONS OF MASS DESTRUCTION," THINGS THAT ARE CLEARLY

1    IRRELEVANT IN THIS CASE.

2              AND I THINK YOUR FORMULATION THAT THIS

3    CASE INVOLVES REGULATIONS THAT HAVE TO DO WITH A,

4    QUOTE, "NATIONAL INTEREST" MIGHT BE ONE WAY OF

5    CIRCUMVENTING THE PROBLEMS CREATED BY THESE

6    INFLAMMATORY TERMS.

7              THE LAST POINT I WANTED TO RAISE WAS

8    THAT, WE RESPECTFULLY DISAGREE THAT THE GOVERNMENT'S

9    MOTION IS NOT MOOT.  WE DO THINK THAT IT IS MOOT.  AND

10   THAT'S BECAUSE THE ONLY ISSUES RAISED IN GOVERNMENT'S

11   MOTIONS 1 AND 2 ARE REQUESTS THAT THE DEFENSE NOT BE

12   PERMITTED TO INTRODUCE PARTICULAR PIECES OF DISCOVERY.

13             SO THE QUESTION AS TO WHAT THE GOVERNMENT

14   IS PERMITTED TO INTRODUCE IS REALLY PROPERLY RAISED

15   ONLY IN THE DEFENSE MOTIONS IN LIMINE AND NOT IN THE

16   GOVERNMENT'S MOTIONS.  AND THAT'S JUST A PROCEDURAL

17   POINT, YOUR HONOR.

18             THE COURT:  I DON'T KNOW THAT THERE -- WHY

19   DOES THAT -- IF THE SUBSTANCE IS THE DEFENDANT'S MOTION

20   IN LIMINE NUMBER 5 AND IT HAS TO BE DECIDED, WHY --

21   WELL, I DON'T KNOW WHY IT MEANS THAT NUMBER 1 IS -- THE

22   GOVERNMENT'S NUMBER 1 IS MOOT.

23             WHY DOES IT -- I THINK THE ISSUE WE

24   HAVE -- I HAVE TO DECIDE IS, WHAT I'VE BEEN DISCUSSING.

25   AND I DON'T THINK THAT'S GOING TO BE CHANGED BY WHETHER

```
 1      MOTION IN LIMINE NUMBER 1 IS MOOT OR NOT BECAUSE THE
 2      DEFENDANT HAS MOTION IN LIMINE NUMBER 5, AS WELL AS 3
 3      AND 4.
 4              MS. WASSERMAN:  ONE REASON WE WOULD PREFER
 5      THAT MOTIONS 1 AND 2 BE DENIED AS MOOT IS THAT THE
 6      GOVERNMENT HAS PRODUCED NO DISCOVERY WHATSOEVER ON
 7      THOSE ISSUES TO THE DEFENSE.  AND SO WHILE THE DEFENSE
 8      IS WILLING TO STIPULATE TO THE FACT OF ENTITY LIST
 9      PLACEMENT AND THE FACT OF THE COMMERCE CONTROL LIST
10      PLACEMENT, TO THE EXTENT THE GOVERNMENT OPENS THE DOOR
11      TO THOSE ISSUES, WE WILL BE FORCED TO INTRODUCE
12      EVIDENCE TO REBUT THAT.  AND SO WE DON'T WANT TO BE IN
13      A POSITION WHERE THERE'S A RULING SAYING WE CANNOT
14      INTRODUCE ANY EVIDENCE ON THOSE TOPICS.
15              THE COURT:  ANY EVIDENCE ON WHAT TOPIC?
16              MS. WASSERMAN:  ON THE VALIDITY OF ENTITY LIST
17      PLACEMENT OR THE VALIDITY OF THE COMMERCE CONTROL
18      LISTINGS.
19              THE COURT:  HOW IS THAT CONSISTENT WITH THE
20      FACT THAT YOU SAY, IN RESPONSE TO GOVERNMENT MOTION IN
21      LIMINE NUMBER 1, THAT YOU DON'T PLAN TO DO THAT?  THAT
22      YOU DON'T CONTEST, IN EFFECT -- YOU DIDN'T CONTEST THE
23      GOVERNMENT'S POSITION THAT, THERE'S A PROCESS FOR
24      CHALLENGING PLACEMENT ON THE LIST, BUT IT'S NOT IN A
25      CRIMINAL PROCEEDING?
```

1          MS. WASSERMAN:  IT'S CONSISTENT BECAUSE WE DO

2     NOT INTEND TO RAISE THAT AS A LEGAL TRIAL DEFENSE.

3               WE DO NOT AGREE WITH THE CORRECTNESS OF

4     THE ENTITY LIST PLACEMENT OR THE CCL PLACEMENT AS A

5     FACTUAL MATTER, BUT WE DON'T INTEND TO INTRODUCE THAT

6     AT TRIAL AS A DEFENSE TO THE CHARGES AGAINST DR. SHIH.

7               BUT IF THE GOVERNMENT -- IF THE

8     GOVERNMENT INTRODUCES UNDERLYING EVIDENCE INTENDED TO

9     BOLSTER THE VALIDITY OF THOSE PLACEMENTS, WE HAVE TO BE

10    ALLOWED TO CHALLENGE THE CORRECTNESS OF THOSE PIECES OF

11    EVIDENCE.

12          THE COURT:  OKAY.  THANK YOU.

13          MS. WASSERMAN:  THANK YOU, YOUR HONOR.

14          THE COURT:  THANK YOU, MS. WASSERMAN.

15               DO YOU REFER TO YOURSELF AS

16    "MS. WASSERMAN" OR HYPHENATED?

17          MS. WASSERMAN:  "MS. WASSERMAN," PLEASE.

18          THE COURT:  THANK YOU.

19               MR. SPERTUS, ANYTHING YOU WANT TO ADD?

20          MR. SPERTUS:  NO, YOUR HONOR.

21          THE COURT:  MS. HEINZ, PERHAPS THIS WOULD BE

22    HELPFUL TO ME.

23               FIRST, IS THERE ANYTHING YOU WANTED TO

24    ADD?

25          MS. HEINZ:  BRIEFLY, YOUR HONOR.

```
1            THE COURT:  GO AHEAD.

2            MS. HEINZ:  I'M GOING TO SET ASIDE THE FACT

3    THAT THE PARTIES CLEARLY HAVE A LARGE DISPUTE ABOUT

4    LANGUAGE THAT THE DEFENSE CLAIMS IS INFLAMMATORY.  AND

5    THE GOVERNMENT CLAIMS THE SAME LANGUAGE, OF COURSE, IS

6    TOTALLY REPLETE THROUGHOUT THE EVIDENCE.  AND THOSE

7    TERMS ARE NECESSARY IN THIS CASE.  SO I'M GOING TO SET

8    THAT ONE ASIDE.

9            I'M GOING TO BRIEFLY SAY, IT'S NOT TRUE

10   THAT THE GOVERNMENT HAS PRODUCED NO EVIDENCE ABOUT THE

11   ENTITY LIST.  WE HAVE PRODUCED THE FEDERAL REGISTER.

12   AND WE HAVE PRODUCED EVIDENCE FROM DEFENDANT'S E-MAILS

13   AND FROM DEFENDANT'S DIGITAL DEVICES AND FROM

14   DEFENDANT'S HOUSE THAT TALK ABOUT THE ENTITY LIST AND

15   REFLECT DEFENDANT'S OWN KNOWLEDGE ABOUT IT.

16           THE DEFENSE DISPUTES THE VALIDITY OF THE

17   PLACEMENTS ON THE ENTITY LIST, BUT SAYS THEY ARE NOT

18   GOING TO INTRODUCE EVIDENCE ABOUT THAT DISPUTE AT

19   TRIAL, IS THE BEST OF MY UNDERSTANDING.

20           THE GOVERNMENT DOES NOT PLAN TO INTRODUCE

21   ANY EVIDENCE AT TRIAL, OKAY, CONCERNING OR TO BOLSTER

22   THE VALIDITY OF THE PLACEMENT OF THESE FOUR COMPANIES

23   ON THE ENTITY LIST, PER SE.

24           WE ARE GOING TO INTRODUCE EVIDENCE THAT

25   GOES TO THE DEFENDANT'S INTENT AND KNOWLEDGE ABOUT THIS
```

1    ISSUE.

2              SO TO BE CLEAR, WE ARE NOT GOING TO

3    PRODUCE ANY EVIDENCE CONCERNING THE VALIDITY BECAUSE

4    THAT'S NOT AN ISSUE BEFORE THE -- PROPERLY BEFORE THE

5    JURY.

6              NOW, YOUR HONOR, YOU HAD A QUESTION?

7              THE COURT:  WHAT I'D LIKE YOU TO DO IS THIS:

8    I THINK THIS ISSUE DISTILLS -- WELL, IT'S NOT ENTIRELY.

9    I'M STILL NOT PERSUADED THAT THIS ISSUE ISN'T MOOT

10   BECAUSE I THINK IT IS RAISED IN A SIMILAR WAY BY THE

11   OTHER MOTIONS IN LIMINE, SO IT'S ONE I NEED TO ADDRESS.

12   AND THAT IS, WHAT EVIDENCE, IF ANY, CAN BE INTRODUCED

13   AS TO THE ENTITY LIST AND ITS PURPOSE?

14             SO WHAT WOULD BE HELPFUL TO ME WOULD BE

15   THE FOLLOWING:  I READ SOME LANGUAGE HERE.  I WOULD

16   LIKE YOU -- WHAT ABOUT THIS, WHAT IF THE GOVERNMENT

17   WERE TO PREPARE A DOCUMENT -- AN OFFER OF WHAT THE -- I

18   DON'T MEAN DESCRIBING IT AS YOU HAVE DONE TODAY.  I

19   MEAN, "THIS IS THE TESTIMONY.  HERE'S HOW WE ANTICIPATE

20   WHAT THE TESTIMONY WOULD BE."  SOMETHING MORE SPECIFIC

21   AS TO THE PURPOSE OF THE ENTITY LIST.

22             IN OTHER WORDS, THE CONTEXT FOR WHY THERE

23   IS AN ENTITY LIST BECAUSE I THINK THAT'S A LOT TO DO

24   WITH THIS DISPUTE.

25             THE DEFENDANT OBJECTS TO ESPIONAGE.  YOU

1    KNOW, I DON'T WANT TO REPEAT WHAT'S IN THE PAPERS.  YOU

2    ARE BOTH FAMILIAR WITH IT.

3              SO I THINK THAT SOME CONTEXT IS

4    APPROPRIATE.  I THINK IT'LL BE EASIER FOR ME TO

5    EVALUATE THIS ISSUE IN TERMS OF REFINING MY RULING IF I

6    SAW WHAT THE GOVERNMENT PROPOSES TO SAY.

7              NOW, IF IT'S TOO COMPLICATED -- NOT

8    "COMPLICATED."  IF YOU THINK IT WOULDN'T WORK TO SAY,

9    "HERE'S THE QUESTION WE WOULD POSE AND HERE'S THE

10   ANTICIPATED ANSWER," THEN I SUPPOSE YOU COULD PRESENT

11   IT AS, "HERE'S WHAT WE WOULD INTEND TO SAY IN OUR

12   OPENING STATEMENT AS TO WHAT THE EVIDENCE WILL SHOW."

13   BUT, AGAIN, I NEED TO HEAR WHAT IT IS YOU PLAN TO SAY

14   EITHER THROUGH OPENING STATEMENT OR A CLOSING ARGUMENT

15   OR THROUGH THE TESTIMONY OF A WITNESS SO I CAN

16   DETERMINE WHAT I THINK ABOUT THAT.

17              DOES THAT MAKE SENSE?

18         MS. HEINZ:  YES, YOUR HONOR.  IT DOES.

19              I WILL TELL YOU THAT THE GOVERNMENT WILL

20   BE RELYING ON WHAT'S IN THE FEDERAL REGISTER.  AND I AM

21   HAPPY TO CUT AND PASTE AND MAKE A SUMMARY OF WHAT

22   SPECIFIC PARTS OF THAT FEDERAL REGISTER THE GOVERNMENT

23   WOULD SEEK TO INTRODUCE.

24         THE COURT:  THAT'S FINE.

25              AND THEN WHEN THE GOVERNMENT SEEKS TO --

1    IF THE GOVERNMENT -- WELL, TWO THINGS:  ONE, MAKE SURE

2    YOU ATTACH THE ENTIRE FEDERAL REGISTER AS AN EXHIBIT TO

3    YOUR SUBMISSION.

4              SECOND, IF THE -- IF THE FEDERAL

5    REGISTER -- IF THE VERSION OF THE FEDERAL REGISTER THAT

6    THE GOVERNMENT PROPOSES TO HAVE ADMITTED AS AN EXHIBIT

7    WERE ADMITTED, THEN I WOULD ALSO NEED TO KNOW, WOULD

8    YOU BE SEEKING TO INTRODUCE ANY OTHER EVIDENCE ABOUT

9    THE LIST AND ITS -- AND THIS PROCESS?

10             MS. HEINZ:  YOUR HONOR, ONLY -- ONLY SOME

11   RELATIVELY BRIEF TESTIMONY FROM A LICENSING OFFICER

12   FROM B.I.S. TO SIMPLY TELL THE JURY, THERE IS AN ENTITY

13   LIST, WHAT THE CRITERIA FOR PLACEMENT ON IT IS, WHAT

14   THE CONSEQUENCES ARE, AND THE FACT THAT THESE FOUR

15   COMPANIES WERE PLACED ON IT.  IT WOULD NOT GO FURTHER

16   THAN THE FEDERAL REGISTER.  IT WOULD SIMPLY BE A LIVE

17   WITNESS SIMPLY SAYING THAT.

18             THE COURT:  MAKE THIS CLEAR IN WHAT YOU SUBMIT

19   TO ME BECAUSE, AGAIN, TO THE EXTENT THE FEDERAL

20   REGISTER REFERS TO "TERRORISM" AND THAT SORT OF THING,

21   THAT'S THE OBJECTION THAT'S BEING RAISED.  SO I WANT TO

22   MAKE SURE I UNDERSTAND WHAT THE GOVERNMENT DOES SEEK TO

23   PRESENT AS THE CONTEXT FOR THIS LIST SO THAT I CAN

24   EVALUATE IT.

25             YOU FOLLOW ME?

```
 1              MS. HEINZ:  I DO, YOUR HONOR.  I DO, YOUR

 2    HONOR.

 3                   ABOUT THE TERRORISM COMMENT?

 4              THE COURT:  YES.

 5              MS. HEINZ:  THERE ARE SPECIFIC BASIS -- AND

 6    I'M GOING TO MOVE A LITTLE BIT TO THE CCL HERE, YOUR

 7    HONOR.

 8                   THERE ARE SPECIFIC BASES WHY ITEMS ARE

 9    PLACED ON THE CCL, THE COMMODITY CONTROL LIST.  THOSE

10    BASES INCLUDE NATIONAL SECURITY AND ANTI-TERRORISM.

11                   THOSE TWO BASES APPLY HERE IN THIS CASE

12    TO THE FACT THAT THE MMIC'S AT ISSUE ARE ON THE CCL.

13    THOSE TESTIMONY AND DOCUMENTS ABOUT THOSE SPECIFIC

14    BASES WITH THOSE SPECIFIC WORDS IN THEM ARE PART OF THE

15    EVIDENCE IN THIS CASE.

16                   OTHER THAN --

17              THE COURT:  WHEN YOU SAY IT'S "PART OF THE

18    EVIDENCE IN THIS CASE," ARE YOU REFERRING, FOR EXAMPLE,

19    TO E-MAILS THAT YOU CONTEND THE DEFENDANT SENT?

20              MS. HEINZ:  NO.

21                   I'M TALKING ABOUT -- I'M TALKING ABOUT

22    DOCUMENTS THAT WERE GATHERED IN THIS CASE FROM

23    DEFENDANT, BUT ALSO IN TERMS OF THE TESTIMONY OF THE

24    LICENSING OFFICER WHO NEEDS TO TESTIFY ABOUT THE

25    PLACEMENT OF THESE MMIC'S ON THE CCL.
```

1          OTHER THAN THAT, WHICH IS A RELATIVELY

2   REALLY SMALL PART, THE WORDS "ANTI-TERRORISM" WILL NOT

3   BE MENTIONED IN THIS CASE.

4          THE COURT:  I NEED TO SEE WHAT IT IS YOU

5   PROPOSE TO HAVE ADMITTED IN TERMS OF THE DOCUMENT AND

6   THE ASSOCIATED TESTIMONY SO I CAN EVALUATE IT UNDER THE

7   STANDARDS TO WHICH I'VE JUST REFERRED, BECAUSE THE JURY

8   INSTRUCTIONS, AS I THINK I WAS TRYING TO STATE EARLIER,

9   DON'T CALL ON THE FACTFINDER TO DO MORE THAN, I THINK,

10  WAS THIS -- WAS THIS ITEM ON THE LIST?  WAS THIS -- DID

11  IT REQUIRE A LICENSE?  AND DID -- WAS THERE A LICENSE

12  AND WAS IT SENT WITHOUT A LICENSE?

13          MS. HEINZ:  YES, YOUR HONOR.  UNDERSTOOD.

14          THE COURT:  WHEN CAN YOU FILE IT?

15          MS. HEINZ:  CAN I HAVE A WEEK, AT LEAST?

16          THE COURT:  THAT'S FINE.

17          AND THEN WHY DON'T YOU THEN FILE A

18  RESPONSE.

19          I'M NOT LOOKING FOR EXTENSIVE BRIEFING

20  HERE.  YOU'VE ALREADY BRIEFED EVERYTHING.  I WOULD JUST

21  LIKE A SUCCINCT STATEMENT OF WHAT IT IS YOU INTEND TO

22  PRESENT AND A SUCCINCT STATEMENT IN RESPONSE OF WHY YOU

23  AGREE OR DISAGREE.

24          CAN YOU DO THAT?

25          MS. WASSERMAN:  YES, YOUR HONOR.  WE'LL DO

```
1    THAT.
2              THE COURT:  IF YOU RECEIVE THAT A WEEK FROM
3    TODAY, WHICH WOULD BE THURSDAY, WHEN CAN YOU -- HOW
4    MUCH TIME WOULD YOU NEED TO RESPOND?
5              MS. WASSERMAN:  WOULD ONE WEEK BE ACCEPTABLE,
6    YOUR HONOR?
7              THE COURT:  THAT'S FINE.
8                   IF YOU DO IT SOONER, FILE IT SOONER.
9              MS. WASSERMAN:  OKAY.
10             THE COURT:  THANK YOU.
11                  JUST A MINUTE.
12                  WELL, I THINK -- JUST TO BE EFFICIENT
13   HERE, I THINK THIS COVERS OR APPLIES SUBSTANTIALLY TO
14   DEFENDANT'S MOTION IN LIMINE NUMBER 5, DOCKET 318.
15                  JUST A MINUTE.
16                  THE GOVERNMENT'S MOTION IN LIMINE NUMBER
17   3 IS TO ADMIT CERTIFIED AND SELF-AUTHENTICATED BUSINESS
18   RECORDS AND GOVERNMENT RECORDS AT TRIAL.
19                  FEDERAL RULE OF EVIDENCE 902 PERMITS THAT
20   IN GENERAL OR ESTABLISHES ABOUT SELF-AUTHENTICATING
21   RECORDS.
22                  AND I THINK THE OPPOSITION HERE IS, IN
23   PART, WHAT RECORDS ARE YOU SEEKING TO HAVE ADMITTED AS
24   SELF-AUTHENTICATED ONES?
25                  SO I THINK WHAT THIS ONE COMES DOWN TO
```

```
1    IS, WHAT ARE THE EXHIBITS THAT THE GOVERNMENT IS

2    PROPOSING TO OFFER, AND ARE THERE OBJECTIONS TO THOSE

3    EXHIBITS?

4                AND WITH RESPECT TO THE FINCEN RECORDS,

5    IT MAY BE NECESSARY TO HAVE A WITNESS TESTIFY AS TO HOW

6    THEY WERE GENERATED.

7                MS. HEINZ?

8                MS. HEINZ:  I'M GOING TO CONFINE MY COMMENTS

9    TO THE FEDERAL REGISTER HERE BECAUSE ONE OF MY

10   COLLEAGUES CAN ADDRESS THE OTHER THINGS.

11               YES, WITH RESPECT TO -- THE GOVERNMENT

12   INTENDS TO OFFER, IN EVIDENCE, COPIES OF THE FEDERAL

13   REGISTER, WHICH PLACED THESE FOUR COMPANIES ON THE

14   ENTITY LIST.  AND THOSE ARE PUBLIC DOCUMENTS,

15   SELF-AUTHENTICATING.  AND, IN FACT, THE STATUTE SAYS

16   THAT THE COURT SHALL TAKE JUDICIAL NOTICE OF THE

17   CONTENTS.  SO THAT'S ALL I HAVE TO SAY.

18               I DO HAVE ONE CLARIFICATION ABOUT

19   SOMETHING I SAID EARLIER, YOUR HONOR.

20               THE COURT:  WHAT ABOUT THE FINCEN RECORDS?

21               MS. HEINZ:  THE FINCEN RECORDS, I'M GOING TO

22   DEFER TO ONE OF MY COLLEAGUES.

23               THE COURT:  OKAY.

24               MS. HEINZ:  I HAVE TO MAKE ONE CLARIFICATION

25   ON SOMETHING I SAID EARLIER.
```

1          IT'S IMPORTANT TO BE PRECISE IN THIS

2   CASE.  I TALKED ABOUT ITEMS THAT ARE ON THE CCL.  IN

3   THIS PARTICULAR CASE, THE CCL ACTUALLY LISTS

4   SPECIFICATIONS FOR ITEMS.

5          IN OTHER WORDS, THE CCL LISTS FREQUENCY

6   LEVELS AND POWER LEVELS HERE AND -- WHICH THEN TALK

7   ABOUT WHETHER OR NOT A SPECIFIC ITEM FALLS INTO THAT

8   CRITERIA.

9          THE COURT:  IS THERE A FACTUAL DISPUTE AS TO

10  WHETHER THE PRODUCTS AT ISSUE FALL WITHIN WHAT'S ON THE

11  LIST?

12         MR. SPERTUS:  YES, YOUR HONOR.

13         MS. HEINZ:  THAT'S THE FIRST WE HAVE HEARD

14  ABOUT THAT, YOUR HONOR.

15         AND WE HAVE NOT RECEIVED -- WE HAVE

16  RECEIVED NO DISCOVERY ABOUT ANY BASIS TO DISPUTE WHAT

17  THE GOVERNMENT'S EVIDENCE IS THERE.

18         THE COURT:  JUST TO BE CLEAR, ONE OF THE ITEMS

19  IS CALLED A "WAFER"; IS THAT CORRECT?

20         MS. HEINZ:  YES.

21         TO BE PRECISE, THE WAFER IS SORT OF A

22  ROUND CONTAINER.  IT IS IN -- THIS IS IMPORTANT, YOUR

23  HONOR, I'M SORRY.  BUT THE WAFER ITSELF IS A

24  PLATE-SIZED SORT OF ROUND CONTAINER.  IT IS SLICED INTO

25  LITTLE SQUARES.  THOSE LITTLE SQUARES ARE CALLED

1    "MMIC'S" OR "DIES."  IT IS THOSE LITTLE SQUARES THAT

2    ARE ON THE WAFER THAT ARE CONTROLLED FOR EXPORT AND

3    REQUIRE A LICENSE.

4              SO ON THE WAFER, THERE ARE -- SOME OF THE

5    MMIC'S ON THE WAFER REQUIRE A LICENSE FOR EXPORT.  SOME

6    DO NOT.

7              AND I HAVE TO CONSULT WITH MY COLLEAGUE

8    HERE JUST FOR A MINUTE, YOUR HONOR.

9              **(PAUSE IN THE PROCEEDINGS)**

10             MS. HEINZ:  YES, THAT IS CORRECT, YOUR HONOR.

11             THE COURT:  SO, MR. SPERTUS, LET ME MAKE SURE

12   I UNDERSTAND.

13             WHAT IS IT YOU DISPUTE?

14             MR. SPERTUS:  THAT A LICENSE WAS REQUIRED

15   TO -- WOULD BE REQUIRED TO SHIP THESE MMIC'S ANYWHERE.

16             THE COURT:  AND WHAT IS -- WHAT EVIDENCE WOULD

17   YOU -- HOW WOULD YOU PRESENT THAT -- WHAT WOULD YOU

18   PRESENT IN SUPPORT OF THAT ARGUMENT?

19             MR. SPERTUS:  THROUGH -- THE ONE GOVERNMENT

20   EXPERT THAT THEY DID PROVIDE A REPORT FOR WILL ADMIT

21   THAT.

22             THE COURT:  SO, AGAIN, I'M NOT ASKING YOU TO

23   DISCLOSE DEFENSE POSITIONS OR WHAT, IF ANY, DEFENSE

24   CASE YOU MIGHT PRESENT; BUT I'M TRYING TO NARROW ISSUES

25   HERE.

1          TO THE EXTENT THAT -- ARE YOU SAYING

2     THAT, ON CROSS-EXAMINATION OF A GOVERNMENT WITNESS, YOU

3     WOULD SEEK TO ESTABLISH THAT THESE WAFERS -- THESE

4     ITEMS WERE NOT ON THE LIST OR --

5          MR. SPERTUS:  YES, YOUR HONOR.

6          THE COURT:  I SEE.

7          MR. SPERTUS:  AND, YOUR HONOR, I AM REVEALING

8     DEFENSE STRATEGY; BUT --

9          THE COURT:  I'M NOT REQUIRING YOU TO DO THAT.

10    I'M JUST TRYING TO FOCUS ON ISSUES HERE.

11          THE REASON I ASK IS THIS:  TO THE EXTENT

12    THERE'S A DISPUTE AS TO WHETHER OR NOT SOMETHING --

13    LET'S JUST PUT ASIDE THE LIST.  THERE'S A LIST.  IT HAS

14    THE NAME -- IT HAS WORDS IN IT.

15          MR. SPERTUS:  YES.

16          THE COURT:  IF THERE'S A DISPUTE AS TO WHETHER

17    THOSE WORDS COVER A PARTICULAR OBJECT, THEN I NEED TO

18    KNOW HOW THAT DISPUTE WOULD BE RESOLVED.  AND IT WOULD

19    SEEM AS IF THE GOVERNMENT WOULD THEN HAVE TO ESTABLISH

20    THAT THE ITEMS THAT WERE SHIPPED WERE WITHIN THE WORDS

21    OF THE LIST.

22          MR. SPERTUS:  SO THERE'S TWO RESPONSES TO

23    HELP.  THERE'S -- WE'VE BEEN DISCUSSING THE ENTITY LIST

24    PLACEMENT.  AND I, RESPECTFULLY, HAVE SUBMITTED THAT

25    THE CRITERIA FOR PLACEMENT ON THE LIST IS IRRELEVANT

1    BECAUSE WE'RE NOT GOING TO CHALLENGE THAT.

2                    COUNSEL HAS THEN SHIFTED TO AN ENTIRELY

3    DIFFERENT DISCUSSION, WHICH IS, ON THE CCL, COMMODITY

4    CONTROL LIST, WHAT ITEMS WOULD REQUIRE A LICENSE TO BE

5    SHIPPED?  WE ARE DISPUTING THAT A LICENSE WAS REQUIRED

6    FOR THESE ITEMS.

7                THE COURT:  ALL RIGHT.  MS. HEINZ, ANYTHING ON

8    THIS?

9                MS. HEINZ:  TO ADDRESS THE COURT'S -- WHAT I

10   THINK WAS THE COURT'S CONCERN.  THE FACT THAT THERE ARE

11   CERTAIN SPECIFICATIONS ON THE COMMODITY CONTROL LIST IS

12   NOT SUBJECT TO DISPUTE.

13                   AND I DON'T BELIEVE THAT THE DEFENSE IS

14   DISPUTING THAT SPECIFIC LANGUAGE OR THE VALIDITY OF

15   THAT.

16               THE COURT:  I DON'T THINK THERE'S A DISPUTE

17   ABOUT WHAT THE WORDS ARE.

18               MR. SPERTUS:  THERE'S NO DISPUTE ABOUT WHAT

19   THE WORDS ARE.

20               THE COURT:  BUT THERE MAY BE A DISPUTE WHETHER

21   THOSE WORDS COVER A PARTICULAR OBJECT.

22               MS. HEINZ:  YOUR HONOR, I'M GOING TO ASK IF

23   AUSA SHOBAKI CAN ADDRESS THIS PARTICULAR ISSUE?

24               MR. SHOBAKI:  MR. SPERTUS SAID THAT THE

25   DEFENSE INTENDS TO MAKE A -- THAT THERE'S A FACTUAL

1   DISPUTE ABOUT WHETHER THE ITEMS AT ISSUE FALL WITHIN

2   THE REGULATIONS.  I BELIEVE THAT'S WHAT HE SAID.

3                SO BY WAY OF ANALOGY HERE, THINK ABOUT A

4   RULE THAT SAYS, YOU CAN'T EXPORT CARS THAT DRIVE FASTER

5   THAN 150 MILES AN HOUR OUTSIDE THE UNITED STATES

6   WITHOUT A LICENSE.  SO YOU HAVE A COUPLE OF THINGS

7   GOING ON HERE.  THERE'S A RULE THAT -- THE CCL THAT

8   WOULD HAVE THAT IMAGINARY RULE IN IT.  SO YOU HAVE THAT

9   IMAGINARY RULE.  I DON'T THINK THERE'S ANY DISPUTE

10  ABOUT WHAT THE CCL SAYS IN IT.

11              MR. SPERTUS:  THAT'S CORRECT, YOUR HONOR.

12              MR. SHOBAKI:  SO THE RULE ABOUT FAST CARS,

13  EVERYBODY AGREES THAT'S THE RULE.

14                NOW, THE GOVERNMENT HAS AN EXPERT WHO

15  ANALYZED THE FAST CAR AND SAID, "THIS CAR GOES FASTER

16  THAN 150 MILES AN HOUR.  THAT'S WHAT TESTING SHOWS.  WE

17  TOOK IT TO THE TRACK, AND IT DRIVES FASTER THAN 150

18  MILES AN HOUR."

19                NOW, THERE'S A DETERMINATION THAT'S MADE

20  ABOUT FAST CARS BY THE B.I.S., WHICH IS THE COMMERCE

21  DEPARTMENT.  SO A LICENSING OFFICER WOULD LOOK AT A

22  TEST REPORT THAT SAYS, "GEE, THIS CAR IS REALLY FAST,"

23  AND WOULD SAY, "OKAY.  THIS CAR GOES MORE THAN 150

24  MILES AN HOUR.  A LICENSE WOULD BE REQUIRED."  THAT'S A

25  SEPARATE DETERMINATION.

1          THERE'S AN EXPERT WHO TESTS THE CAR WHO

2     KNOWS ABOUT FAST CARS.  THERE'S AN EXPERT WHO KNOWS

3     ABOUT LICENSE DETERMINATIONS.  THEY SAY, "OH, YES, THIS

4     CAR IS REALLY FAST.  IT DOESN'T FALL WITHIN ANY

5     EXCEPTIONS FOR SHIPPING FERRARIS TO CHINA," FOR

6     EXAMPLE.

7          SO THAT'S WHAT I UNDERSTAND MR. SPERTUS

8     TO HAVE SAID.  IF HE SAID THERE'S A FACTUAL DISPUTE AS

9     TO WHETHER THE ITEMS AT ISSUE FALL WITHIN THE

10    REGULATIONS, THAT COULD FALL INTO TWO ISSUES.

11         SO WHEN HE SAYS "FACTUAL," THAT SUGGESTS

12    THAT THE TESTING SAYS THE CAR DIDN'T REALLY GO FASTER

13    THAN 150 VERSUS A LEGAL DISPUTE ABOUT WHETHER THE

14    INTERPRETATION OF THE REGULATIONS AS THEY APPLY TO THE

15    FERRARI IS CORRECT.  SO THAT'S WHAT'S UNCLEAR FROM WHAT

16    THE DEFENSE JUST STATED.

17         AND I BELIEVE WHEN MS. HEINZ EXPRESSED

18    THE SENTIMENT THAT THERE WAS NO DISCOVERY ON THIS ISSUE

19    BECAUSE, FOR EXAMPLE, IF THE DEFENSE'S POSITION IS THAT

20    THE CAR DOES NOT INDEED GO FASTER THAN 150 MILES AN

21    HOUR, THEY'RE GOING TO NEED SOMEHOW TO PUT SOME

22    EVIDENCE ON THAT SHOWS THE TESTING WAS WRONG.  THAT'S

23    WHY WE'RE CONFUSED ABOUT -- AND, HOPEFULLY, THAT

24    CLARIFIES A LITTLE BIT, YOUR HONOR.

25         THERE'S THE RULE ABOUT EXPORTING THINGS,

1    AND THERE'S TESTING OF THE EXPORTED THING, AND THEN

2    THERE'S A DETERMINATION ABOUT WHETHER A LICENSE WOULD

3    BE REQUIRED FOR THE EXPORTED THING.  AND THOSE ARE ALL

4    DIFFERENT MATTERS AT PLAY.

5         THE COURT:  OKAY.  MR. SPERTUS, LET ME HEAR

6    FROM YOU.

7         MR. SPERTUS:  I DON'T DISAGREE WITH WHAT

8    COUNSEL SAID.  SO WE'RE NOT GOING TO CHALLENGE, IF THIS

9    IMAGINARY RULE IS ON THE BOOKS, THAT THE IMAGINARY RULE

10   IS ON THE BOOKS.

11        THE FACTUAL DISPUTES WILL BE CENTERED ON

12   WHATEVER COUNSEL JUST SAID.  IT SOUNDS ACCEPTABLE.

13        THE COURT:  YOU'VE IDENTIFIED, AS EXPERTS,

14   MR. SANDISON AND MR. NORDQUIST?

15        MR. SHOBAKI:  MR. NORDQUIST IS THE PERSON WHO

16   TESTED SOME OF THE MMIC'S THAT WERE ON ONE OF THE

17   WAFERS THAT WAS RECOVERED.  SO HE'S THE GUY WHO SAYS

18   THE CAR GOES FASTER THAN 150 MILES AN HOUR.

19        THE COURT:  SO MR. NORDQUIST, IF PERMITTED TO

20   TESTIFY, WOULD TESTIFY THAT, HE EXAMINED THE OBJECTS

21   THAT WERE SHIPPED OR A SAMPLE OF THE OBJECTS THAT WERE

22   SHIPPED.  AND HE DID CERTAIN THINGS TO DETERMINE HOW

23   THEY WERE CONSTRUCTED.  AND THEY INCLUDED THE

24   FOLLOWING.  AND, THEREFORE, HE HAS THE FOLLOWING

25   OPINION?

1          MR. SHOBAKI:  YES, YOUR HONOR.

2               AND HE WROTE A REPORT ABOUT HIS TESTING

3     AND HIS CONCLUSIONS.

4          THE COURT:  I UNDERSTAND.

5               AND YOU -- THE DEFENSE MAY CHALLENGE

6     THAT -- THOSE OPINIONS AND THEIR BASIS?

7          MR. SPERTUS:  YES, YOUR HONOR.

8               AND MUCH BROADER.  THE GOVERNMENT HAS

9     GIVEN LISTS OF TOPICS WITH THE EXCEPTION OF

10    MR. NORDQUIST'S TEST REPORT.  WE DON'T KNOW WHAT THE

11    GOVERNMENT INTENDS THESE EXPERTS TO SAY, OTHER THAN

12    THEIR LIST OF SUBJECTS, WHICH IS IMPORTANT FOR ANOTHER

13    MOTION, I GUESS.

14              BUT WITH REGARD TO MR. NORDQUIST TESTING

15    OF HOW FAST THE CAR GOES, YEAH, THERE ARE FACTUAL

16    DISPUTES.

17         THE COURT:  ALL RIGHT.  JUST A MINUTE.

18              WELL, AS I STATED, I DON'T AGREE THAT THE

19    GOVERNMENT'S MOTION IN LIMINE NUMBER 1 ABOUT PRECLUDING

20    CHALLENGES TO THE VALIDITY OF THE ENTITY LIST

21    DESIGNATION IS MOOT, OR THAT THE GOVERNMENT'S MOTION IN

22    LIMINE NUMBER 2 PRECLUDING CHALLENGE TO PLACEMENTS ON

23    THE COMMERCE CONTROL LIST IS MOOT.

24              NEITHER IS CONTESTED.  I THINK THAT THE

25    SUBSTANCE IS GOING -- COMES BACK IN THE OTHER MANNERS

1    IN WHICH WE'VE DESCRIBED.  AND I THINK I NEED TO

2    RECEIVE THE GOVERNMENT'S PROPOSED -- OFFER OF -- OFFER

3    OF THE EVIDENCE AND/OR ARGUMENT IT WOULD PRESENT,

4    RECEIVE THE DEFENSE RESPONSE, AND THEN CRAFT WHAT I --

5    WHAT, IF ANY, LIMITATIONS I WOULD IMPOSE.

6                    SIMILARLY, THE DEFENDANT'S MOTION IN

7    LIMINE NUMBER 5 ABOUT PRECLUDING EVIDENCE ABOUT

8    PLACEMENT ON THE ENTITY LIST, I THINK IS COVERED BY

9    THESE SAME -- THESE SAME CONCERNS.

10                   I THINK IT'S -- IT'S WHAT I'VE STATED.  I

11   THINK THE ISSUE IS, HOW MUCH EVIDENCE SHOULD BE -- HOW

12   MUCH, IF ANY, EVIDENCE SHOULD BE OFFERED AS TO THE

13   CONTEXT IN WHICH THESE LISTS ARE ESTABLISHED?  SO I

14   WILL EVALUATE THE DEFENDANT'S MOTION IN LIMINE NUMBER 5

15   IN THE CONTEXT OF THE BRIEF -- THE SUBMISSIONS THAT

16   I'VE CALLED FOR.

17                   WITH RESPECT TO THE GOVERNMENT'S MOTION

18   IN LIMINE NUMBER 3, TO ADMIT CERTIFIED AND

19   SELF-AUTHENTICATING RECORDS, TO THE EXTENT THAT THAT --

20   I'VE HEARD THAT THAT INVOLVES THE FEDERAL REGISTER.

21                   ARE THERE ANY OTHER SELF-AUTHENTICATING

22   RECORDS IN THIS CATEGORY THAT THE GOVERNMENT WILL SEEK

23   TO HAVE ADMITTED, FOR EXAMPLE, THE FINCEN RECORDS?

24            MR. ROLLINS:  YES, YOUR HONOR.

25                   I'M NOT SURE THAT THERE ACTUALLY IS A

1    DISPUTE ON THAT MOTION AT THIS POINT ANYMORE.

2                    CANDIDLY, WE WERE A LITTLE SURPRISED THAT

3    THE DEFENSE OPPOSED THAT MOTION.

4                    AND AS WE CLARIFIED IN OUR REPLY, THE

5    ONLY POINT OF OUR MOTION NOW FOR ALL OF THOSE RECORDS

6    IS TO SIMPLY AVOID HAVING TO CALL CUSTODIANS OF RECORDS

7    FROM ACROSS THE COUNTRY TO TESTIFY.

8                    AND IF THEY HAVE MORE SPECIFIC OBJECTIONS

9    ABOUT PARTICULAR RECORDS, THEY'RE CERTAINLY FREE TO

10   RAISE THOSE.

11                MR. HANUSZ:  THIS MOTION IS VERY MUCH

12   DISPUTED.  THE GOVERNMENT IS SEEKING FOR A PRETRIAL

13   ADMISSIBILITY RULING ON, APPROXIMATELY, 1.4 MILLION

14   PAGES OF RECORDS, WHICH INCLUDES E-MAILS, WHICH

15   INCLUDES TEXT RECORDS, TO ECS RECORDS, WHICH INCLUDE

16   SHIPPING RECORDS.  IT ALSO INCLUDES THE FEDERAL

17   REGISTER.

18                    WE HAVE TALKED ABOUT THE FEDERAL REGISTER

19   QUITE A BIT, BUT THE GOVERNMENT IS SEEKING TO

20   INTRODUCE -- FOR THE COURT TO ADMIT, AS BUSINESS

21   RECORDS, POTENTIALLY, 1.3 MILLION PAGES OF RECORDS

22   FROM -- WITHOUT IDENTIFYING THE SPECIFIC E-MAILS.

23                    BUT THE GOVERNMENT, YOUR HONOR, IS

24   CONFLATING AUTHENTICITY WITH ADMISSIBILITY.  THEY'RE

25   NOT BUSINESS RECORDS UNDER NINTH CIRCUIT LAW, UNDER

1    FOURTH CIRCUIT LAW, CASES OUT OF THIS DISTRICT.

2          THE COURT:  HERE'S WHAT I NEED, I NEED -- WHAT

3    I NEED IS, WHAT I THINK I SAID EARLIER.  I NEED TO SEE

4    WHAT THE EXHIBITS ARE, SEE WHAT THE OBJECTION IS AND

5    THEN BE ABLE TO MAKE A DETERMINATION.  BUT YOU'RE

6    NOT -- IS IT CORRECT YOU DON'T CONTEST AUTHENTICITY,

7    BUT YOU CONTEST ADMISSIBILITY?

8          MS. HANUSZ:  AS A GENERAL MATTER, THAT'S

9    CORRECT, YOUR HONOR.

10          AND WE'RE -- IT'S HARD TO DO THIS IN A

11    VACUUM, AS THE COURT HAS POINTED OUT.  SO I THINK WE

12    NEED TO SEE THOSE.  THE GOVERNMENT CAN MAKE ANY

13    ARGUMENTS IT WANTS TO FOR ADMISSIBILITY.  WE CAN

14    RESPOND TO THOSE.  BUT THE COURT JUST CAN'T -- I THINK

15    IT IS ASKING A LOT OF THE COURT TO ADMIT ALL THESE

16    RECORDS BEFORE TRIAL.

17          MR. ROLLINS:  I THINK THERE'S A

18    MISUNDERSTANDING.  IF DEFENSE COUNSEL IS WILLING TO

19    REPRESENT IN COURT THAT THEY WILL NOT CHALLENGE THE

20    CUSTODIAN OF RECORD DECLARATIONS, AND THEY HAVE NO

21    AUTHENTICITY OBJECTIONS, AND WE'RE NOT GOING TO BE

22    FORCED TO HAUL PEOPLE FROM GOOGLE OR UPS OR FED EX OVER

23    HERE TO SIMPLY AUTHENTICATE RECORDS, AND THEY WANT TO

24    PRESERVE ADDITIONAL HEARSAY OR MORE SPECIFIC

25    DOCUMENT-BASED OBJECTIONS, WE HAVE NO PROBLEM WITH

```
 1    THAT.

 2                    IT'S REALLY JUST INTENDED TO STREAMLINE

 3    THE TRIAL AT THIS PRELIMINARY STAGE.

 4             THE COURT:  WHAT I HEARD WAS THAT MORE

 5    LIKELY -- IT'S FAR MORE LIKELY THAN NOT THAT THERE ARE

 6    NOT OBJECTIONS TO AUTHENTICITY, BUT THAT THE DEFENDANTS

 7    DON'T KNOW PRECISELY WHAT DOCUMENTS MIGHT BE AT ISSUE

 8    TO SAY IT'S A HUNDRED PERCENT CERTAIN.

 9             MR. HANUSZ:  I THINK THAT'S GENERALLY TRUE,

10    YOUR HONOR.  THE REAL ISSUE IS ADMISSIBILITY.

11             THE COURT:  I UNDERSTAND.

12                    MR. ROLLINS, LET'S MOVE BEYOND

13    AUTHENTICITY AND LET'S MOVE TO ADMISSIBILITY.

14                    IF THERE ARE DISPUTES ABOUT

15    ADMISSIBILITY, I WOULD PREFER TO RESOLVE THEM PRIOR TO

16    TRIAL RATHER THAN DURING TRIAL, PARTICULARLY IF THERE

17    ARE MANY, MANY EXHIBITS AND, PARTICULARLY, IF THE

18    DISPUTE IS THE SAME AS TO MORE THAN ONE EXHIBIT.

19             MR. ROLLINS:  WE TOTALLY AGREE WITH THE COURT

20    ON THAT.  THAT IS OUR PREFERENCE AS WELL.

21                    I'M VERY COMFORTABLE REPRESENTING TO THE

22    COURT THAT WE WILL NOT BE INTRODUCING TWO MILLION PAGES

23    OF DOCUMENTS AT TRIAL.

24                    IT'S REALLY JUST ABOUT THIS PRELIMINARY

25    STEP OF ASKING THE COURT TO RULE THAT WE'VE SATISFIED
```

```
1    THAT BARE MINIMUM THRESHOLD FOR CUSTODIAL DECLARATIONS

2    SO THAT WE DON'T HAVE TO -- UNFORTUNATELY, IT'S VERY

3    COSTLY AND TIME CONSUMING FOR THESE CUSTODIANS TO FLY

4    FROM ALL OVER THE U.S. TO L.A. FOR THE TRIAL.

5         THE COURT:  WHEN WILL YOU BE PREPARED TO

6    PRESENT AN EXHIBIT BOOK WHICH INCLUDES THE EXHIBITS

7    THAT FIT INTO THIS CATEGORY THAT YOU MAY SEEK TO

8    INTRODUCE AT TRIAL?

9         MR. ROLLINS:  SO, YOUR HONOR, THE DEFENSE HAS

10   THAT.  THE DEFENSE HAS HAD THAT SINCE THE COURT ORDERED

11   US TO PROVIDE A PRELIMINARY EXHIBIT LIST IN JANUARY.

12         AND, SORRY, WHEN I SAY, "THEY HAVE THAT,"

13   I MEAN THE LIST.  THEY HAVE A LIST WITH BATES NUMBERS

14   TO ENABLE THEM TO IDENTIFY THESE DOCUMENTS.

15         AND, IN FACT, THIS MOTION SPECIFICALLY

16   REFERENCES ALL THE BATES NUMBERS.

17         THE COURT:  HAVE THE BATES NUMBERS BEEN GIVEN

18   EXHIBIT NUMBERS?

19         MR. ROLLINS:  I DON'T BELIEVE WE'VE FINALIZED

20   THE ACTUAL EXHIBIT NUMBER, BUT THE DOCUMENTS THEMSELVES

21   ALL HAVE BEEN IDENTIFIED BY BATES.

22         THE COURT:  HOW MANY PAGES?

23         MR. ROLLINS:  THE EXHIBIT LIST IS 190 PAGES.

24         THE COURT:  BUT HOW MANY PAGES OF -- IF THERE

25   ARE APPROXIMATELY 200 EXHIBITS, DO YOU HAVE ANY
```

1    ESTIMATE OF HOW MANY PAGES THAT REPRESENTS IN TOTAL?

2          MR. ROLLINS:  CANDIDLY, I DON'T THINK I CAN

3    GIVE YOU AN EXACT OR EVEN A FAIR APPROXIMATION OF THE

4    TOTAL NUMBER OF PAGES THAT WOULD BE INTRODUCED AT

5    TRIAL.

6          I ALSO WANT TO CLARIFY FOR THE RECORD,

7    IT'S A PRELIMINARY LIST, WHICH I THINK WAS CONSISTENT

8    WITH THE COURT'S ORDER.

9          BUT I CAN TELL YOU THAT, THE EXHIBIT LIST

10   ITSELF IS ABOUT 90 -- ABOUT 200 PAGES -- 9200, SORRY.

11         THE COURT:  WHEN WILL YOU BE ABLE TO PROVIDE A

12   BOOK OR A SERIES OF BOOKS WHICH CONTAINS THE EXHIBITS

13   THAT THE GOVERNMENT MAY -- THAT IT MAY OFFER TO SEEK TO

14   ADMIT AT TRIAL?

15         MR. ROLLINS:  CANDIDLY, YOUR HONOR, NOT UNTIL

16   THE FIRST DAY OF TRIAL.

17         THE COURT:  THEN HOW WOULD I RULE ON

18   ADMISSIBILITY?

19         MR. ROLLINS:  WE'RE NOT ASKING THE COURT TO DO

20   THAT YET FOR SPECIFIC EXHIBITS.

21         WE'RE SIMPLY ASKING, AT THIS STAGE,

22   MERELY FOR THE CUSTODIAN -- A PRELIMINARY RULING ABOUT

23   THE CUSTODIANS.

24         THE COURT:  OKAY.  BUT I DON'T THINK THERE'S

25   MUCH OF A DISPUTE ABOUT THE CUSTODIANS.

1          I THINK THE DISPUTE IS ABOUT THE

2    ADMISSIBILITY.  I THINK -- I THOUGHT WE JUST AGREED ON

3    SOMETHING.  THAT I DIDN'T WANT TO HAVE HUNDREDS OF

4    EXHIBITS, POTENTIALLY, TO WHICH OBJECTIONS WERE MADE

5    DURING THE TRIAL WHILE A JURY IS HERE.  I WOULD RATHER

6    DO THAT IN ADVANCE.

7          MR. ROLLINS:  AND WE DO AGREE WITH THAT, YOUR

8    HONOR.

9          THE COURT:  THEN HOW WILL I BE ABLE TO DO THAT

10   IN ADVANCE OF TRIAL IF THE EXHIBIT BOOKS AREN'T

11   PROVIDED UNTIL THE TRIAL STARTS?

12         MR. ROLLINS:  I THINK THAT THE CATEGORY OF

13   EXHIBITS THAT WE'RE SEEKING TO INTRODUCE CAN BE

14   RESOLVED AHEAD OF TIME, THE GENERAL CATEGORY.

15              THERE MAY -- AS THE COURT IS AWARE, THERE

16   MAY BE SPECIFIC OBJECTIONS THAT DO COME UP DURING LIVE

17   TESTIMONY.  THE GOVERNMENT WOULD CERTAINLY SEEK TO

18   MITIGATE THOSE AS MUCH AS POSSIBLE.

19              BUT I THINK IT'S JUST VERY DIFFICULT FOR

20   US TO SAY, WE CAN RULE OUT EVERY OBJECTION THAT THE

21   DEFENSE IS GOING TO MAKE IN ADVANCE OF TRIAL.

22              AND, YOUR HONOR, WE DON'T -- AT THIS

23   POINT, WE DON'T KNOW WHAT THEIR SPECIFIC OBJECTIONS

24   ARE.

25         THE COURT:  I KNOW, BUT THEY'RE SAYING THEY

```
1    DON'T KNOW WHAT THE SPECIFIC EXHIBITS ARE.

2              MR. ROLLINS:  AND I DISAGREE --

3              THE COURT:  LET ME -- LOOK, I THINK WE NEED

4    SOME COLLABORATION HERE.  I DON'T HAVE DAYS AND DAYS

5    AND DAYS WHERE I'M GOING TO BE ABLE TO SIT WITH YOU AS

6    YOU GO OVER EXHIBITS.

7                   I THINK YOU NEED TO FIND A MECHANISM

8    PURSUANT TO WHICH YOU CAN COLLABORATIVELY EXAMINE THE

9    POTENTIAL EXHIBITS OR EXEMPLARS, ENOUGH OF THE

10   EXHIBITS, SO THE DEFENDANT CAN EXAMINE THEM AND SEE

11   WHERE YOU HAVE AN OBJECTION AS TO ADMISSIBILITY AND

12   WHERE YOU DON'T.  AND THOSE CAN BE CATEGORIZED, AND I

13   CAN RULE ON IT.

14             MR. HANUSZ:  YOUR HONOR, HERE'S THE ISSUE --

15   AND WE'VE BEEN ASKING FOR THAT FOR MONTHS.  AND WHAT WE

16   GOT FROM THE GOVERNMENT IN TERMS OF AN INITIAL EXHIBIT

17   LIST WAS JUST A LIST OF DOCUMENTS WITH NO BATES RANGES.

18   WE THEN ASKED FOR BATES RANGES.  THEY PROVIDED GENERAL

19   ONES.  MANY ARE WRONG.  THERE IS ALWAYS -- THEY -- THE

20   GOVERNMENT ALWAYS INDICATES, WELL, THIS IS JUST

21   PRELIMINARY.  IT'S SUBJECT TO CHANGE.  WE DON'T HAVE

22   EXHIBIT NUMBERS FROM THE GOVERNMENT.

23                  AND, YOUR HONOR, I WANT TO ILLUSTRATE ONE

24   OF THE PROBLEMS --

25             THE COURT:  I DON'T -- LOOK, THIS IS NOT --
```

```
1     THIS IS -- COME ON.  THIS IS BASICS.
2               I NEED -- I NEED YOU TO MAKE A
3     COLLABORATIVE EFFORT TO IDENTIFY EITHER THE EXHIBITS
4     YOU PRESENTLY CONTEMPLATE SO YOU CAN LOOK AT THEM AND
5     DETERMINE IF YOU OBJECT.  AND IF YOU THINK YOU -- IF
6     THAT'S SOMETHING YOU CAN'T ACCOMPLISH EXPEDITIOUSLY,
7     BUT IT WOULD BE MORE EFFICIENT TO GET THEM EXEMPLARS,
8     THEN DO THAT.  BECAUSE UNTIL I HAVE THAT, UNTIL I KNOW
9     WHAT EXHIBITS AND/OR EXAMPLES OF EXHIBITS THE
10    GOVERNMENT IS SEEKING TO ADMIT AND WHAT, IF ANY,
11    OBJECTIONS THE DEFENSE HAS, I CAN'T RULE ON IT.
12              MR. ROLLINS:  YOUR HONOR, RESPECTFULLY, THE
13    GOVERNMENT BELIEVES THAT IT HAS DONE THAT.  AND THE
14    GOVERNMENT BELIEVES THAT, WHEN IT HAS GIVEN THE DEFENSE
15    A 200-PAGE EXHIBIT LIST THREE MONTHS IN ADVANCE OF
16    TRIAL -- EXCUSE ME, A HUNDRED-PAGE EXHIBIT LIST
17    IDENTIFYING, BY BATES RANGE, WHAT DOCUMENTS ARE GOING
18    TO BE AT ISSUE, MOST -- THAT IS AN EXTREME LEAD UP FOR
19    TRIAL.  THREE MONTHS AHEAD OF TIME FOR THEM TO HAVE
20    THAT IS MORE THAN SUFFICIENT, YOUR HONOR.
21              AND IT'S ACTUALLY QUITE BURDENSOME TO ASK
22    THE GOVERNMENT, RESPECTFULLY, I THINK TO PREPARE AN
23    EXHIBIT BINDER WHEN THEY HAVE GOT ELECTRONIC -- THESE
24    ARE VERY SOPHISTICATED ATTORNEYS ON THE OTHER SIDE.
25    THEY HAVE GOT THE DISCOVERY.  THEY HAVE THE BATES
```

1    NUMBERS.  THEY KNOW WHAT OUR EXHIBIT LIST IS.

2              THE COURT:  OKAY.  BUT I DON'T HAVE THEM.

3                   IF I UNDERSTAND --

4              MR. HANUSZ:  YOUR HONOR, WE APPRECIATE THE

5    COURT -- WE APPRECIATE WHAT THE COURT IS SAYING ABOUT

6    WORKING COLLABORATIVELY.  AND THE COURT -- THAT HAS

7    BEEN, I THINK, THE COURT'S MANTRA THROUGHOUT THIS CASE.

8    AND SO THE DEFENSE IS NOT DISMISSIVE OF THAT, YOUR

9    HONOR.

10             WHAT IT IS, IT'S KIND OF GARBAGE IN,

11   GARBAGE OUT FOR THE GOVERNMENT.

12             I'LL GIVE YOU AN EXAMPLE.  THE SHIPPING

13   RECORDS THEY HAVE IDENTIFIED, THEY ARE LIKE, HERE ARE

14   THE BATES RANGES.  WELL, MANY OF THE PAGES ARE

15   REDACTED.  THERE ARE PAGES THAT CONTAIN E-MAILS FROM

16   GOVERNMENT AGENTS TO THE COMPANIES.  LIKE NONE OF THESE

17   THINGS ARE ADMISSIBLE IN ANY UNIVERSE.  BUT THE

18   GOVERNMENT JUST DUMPS ITEMS ON THE DEFENSE AND THEN

19   EXPECTS THE DEFENSE TO RESPOND.

20             SO WHAT I THINK WE NEED TO HAVE FROM THE

21   GOVERNMENT IS, WHAT ARE YOUR EXHIBITS?  HOW IS THIS

22   ADMISSIBLE?

23             I MEAN, THERE ARE LOTS OF ARGUMENTS THAT

24   THEY CAN MAKE FOR ADMISSIBILITY.  HERE, THEY JUST MAKE

25   A BUSINESS RECORDS ARGUMENT, WHICH IS FACTUALLY -- WE

1    DO DISPUTE THAT, YOUR HONOR.  IT IS FACTUALLY JUST NOT

2    CORRECT.

3             THE COURT:  I UNDERSTAND.

4                 I'VE HANDLED A LOT OF TRIALS OVER THE

5    YEARS.  AND THIS IS THE FIRST TIME THIS KIND OF A

6    PROBLEM HAS ARISEN THAT I CAN REMEMBER, THAT YOU CAN'T

7    EVEN AGREE ON A METHOD TO EVALUATE THE EXHIBITS.

8                 THE FACT THAT THE GOVERNMENT -- THE IDEA

9    THAT THE GOVERNMENT SHOULD HAVE TO SAY, EXHIBIT BY

10   EXHIBIT, THIS IS WHY IT'S ADMISSIBLE, I THINK THAT'S

11   NOT A VERY EFFICIENT WAY TO GO IN OUR SYSTEM BECAUSE,

12   EVEN IF YOU HAVE A BASIS TO OBJECT, YOU MAY NOT OBJECT.

13                SO WHAT I THINK THE PARTIES NEED TO DO

14   IS, DETERMINE WHAT'S IN DISPUTE SO I CAN RESOLVE IT.

15            MR. HANUSZ:  I DON'T THINK WE CAN DO THAT

16   UNTIL THE GOVERNMENT IDENTIFIES WITH SPECIFICITY,

17   RATHER THAN JUST REAMS AND REAMS OF E-MAILS, WHAT ARE

18   THE --

19            THE COURT:  THE GOVERNMENT HAS SAID IT

20   PROVIDED A LIST OF EXHIBITS.  AND I THINK THE ESTIMATE

21   I HEARD WAS THAT THE RANGE OF -- THAT ALL OF THOSE

22   EXHIBITS COLLECTIVELY COMPRISE ABOUT 10,000 PAGES.

23                IS THAT WHAT YOU SAID?

24            MR. ROLLINS:  I DON'T THINK I CAN GIVE THE

25   COURT AN ESTIMATE ON THE EXACT NUMBER, SORRY.

1          MR. HANUSZ:  I THINK THAT'S IN THE BALLPARK,

2     YOUR HONOR.

3          THE COURT:  WHATEVER THE NUMBER OF PAGES IS,

4     DO YOU AGREE THAT THEY'RE DIVIDED ACCORDING TO -- THAT

5     THERE ARE BATES NUMBERS THAT CORRESPOND TO EXHIBIT

6     NUMBERS?

7          MR. HANUSZ:  NO.  THEY HAVE GIVEN US NO

8     EXHIBIT NUMBERS.  DESPITE OUR REPEATED REQUESTS FOR

9     EXHIBIT NUMBERS, THEY HAVE NOT GIVEN IT TO US.

10          MR. ROLLINS:  YOUR HONOR, WE'RE MORE THAN

11     WILLING TO TRY AND NARROW SOME CATEGORIES FOR THE COURT

12     CAUSE I APPRECIATE THE COURT'S FRUSTRATION ON THIS.

13     AND WE, FRANKLY, FEEL IT TOO.  AND I THINK WE CAN TRY

14     AND NARROW SOME OF THE SPECIFIC CATEGORIES WITH THE

15     DEFENSE.

16          THE COURT:  THAT WOULD BE HELPFUL.  NO ONE'S

17     INTEREST IS GOING TO BE SERVED BY HAVING OUR JURY PANEL

18     COME AND THEN SAY, "SEE YOU TOMORROW.  WE'RE GOING TO

19     SPEND THE DAY LOOKING AT EXHIBITS."  THAT'S WHY WE ARE

20     DOING THIS NOW.

21          MR. HANUSZ:  I UNDERSTAND, YOUR HONOR.  AND

22     THE DEFENSE AGREES.

23               AND THIS IS A THEME THAT RUNS THROUGHOUT

24     THE MOTIONS HERE, THAT THE GOVERNMENT IS SEEKING TO

25     ADMIT EVIDENCE, BUT THE DEFENSE DOESN'T KNOW WHAT THE

1   EVIDENCE IS.

2            THE COURT:  PERHAPS ANOTHER EFFORT TO -- DO

3   YOUR BEST HERE.

4                AND, AGAIN, IT'S VERY COMMON FOR ME TO

5   GET A LOT OF OBJECTIONS TO EXHIBITS.  AND THEN WHAT I

6   WANT THE PARTIES TO DO, AND I'VE DONE IT MANY TIMES, IS

7   TO PUT THEM INTO CATEGORIES.  SO WE OBJECT TO EXHIBITS

8   1, 13, 27, 64 FOR THE SAME REASON.  THESE ARE ALL

9   SIMILAR DOCUMENTS.  WE OBJECT ON THE SAME GROUNDS.  SO

10  I CAN LOOK AT THOSE AND NOT -- LOOK AT THOSE

11  COLLECTIVELY AND NOT SORT OF JUST IN SEQUENCE AND THEN

12  TRY TO GO BACK AND LOOK AT THEM AND SEE HOW I EVALUATED

13  IT BEFORE.  THAT'S THE WAY IT WOULD BE MOST EFFICIENT

14  FOR ME.

15           MR. HANUSZ:  RIGHT.

16                AND I AGREE THAT THE COURT SHOULD HAVE

17  THE EXHIBITS.  THE COURT SHOULD HAVE THE EXHIBITS IN

18  FRONT OF IT AND CANNOT MAKE A RULING IN A VACUUM.

19           THE COURT:  THAT'S WHAT I NEED.  SO I NEED TO

20  GET THAT.  SO I NEED YOU TO WORK AS BEST YOU CAN.

21                TO BE CLEAR, I'M NOT -- I'M NOT ENTERING

22  AN ORDER THAT SAYS, IF THE GOVERNMENT DOESN'T IDENTIFY

23  ALL EXHIBITS BY THIS DATE, THEN ANY EXHIBIT THAT'S NOT

24  IDENTIFIED BY THIS DATE WILL NOT BE ADMISSIBLE AT

25  TRIAL.  I'M NOT SAYING THAT, BUT I WOULD LIKE TO GET

```
1     THIS MOVING.

2              MR. ROLLINS:  I'M SURE THE COURT IS READY TO

3     MOVE ON FROM THIS TOPIC.

4              THE COURT:  WHAT DO YOU THINK YOU CAN DO --

5     WHAT DO YOU THINK YOU CAN DO, AND WHEN DO YOU THINK YOU

6     CAN DO IT?

7              MR. ROLLINS:  WE'VE GOT TRIAL A MONTH AWAY,

8     YOUR HONOR.  AS WE MENTIONED IN OUR MOTION FOR

9     RECIPROCAL DISCOVERY, THERE'S A 20-DAY DEFENSE

10    ESTIMATE.  WE'VE GOTTEN ZERO DISCOVERY FROM THE

11    DEFENSE.  I THINK IT'S --

12             THE COURT:  I'LL GET TO THAT, BUT WHAT ABOUT

13    THIS ONE?

14                  GO AHEAD.

15             MR. ROLLINS:  I WAS JUST GOING TO SAY THAT, WE

16    HAVE ACTUALLY PROVIDED THE DEFENSE WITH CATEGORIES.

17    AND, IN FACT, WE CAN PROVIDE THE COURT WITH A COPY OF

18    THE PRELIMINARY LIST SO THAT THE COURT CAN SEE HOW WE

19    HAVE ACTUALLY IDENTIFIED THESE DOCUMENTS BY CATEGORY.

20             THE COURT:  ARE THE CATEGORIES THAT YOU HAVE

21    IDENTIFIED, DO THEY CORRESPOND TO SPECIFIC PAGES OF

22    BATES NUMBERS?

23             MR. ROLLINS:  YES, YOUR HONOR.

24             THE COURT:  AND IS IT CLEAR FROM THOSE BATES

25    NUMBERS WHAT IS AN EXHIBIT?
```

1          MR. ROLLINS:  YES, YOUR HONOR.  IT IS.

2          THE COURT:  MEANING, SO IF YOU HAD A BATES

3     RANGE OF A HUNDRED PAGES, AND IT'S IN A CATEGORY,

4     THAT'S EXHIBIT 1?

5          MR. ROLLINS:  YES.  I THINK IT'S FAIR TO SAY

6     THAT WE VIEW IT THAT WAY, YES.

7          THE COURT:  SO YOU NEED TO COMMUNICATE THAT IN

8     SOME MANNER SO THE DEFENDANT CAN UNDERSTAND WHAT YOU

9     CONTEND ARE THE EXHIBITS SO IT CAN EVALUATE THEM.

10         MR. HANUSZ:  THE EXHIBIT LIST PROVIDED BY THE

11    GOVERNMENT, WHICH HASN'T BEEN UPDATED IN SIX WEEKS, HAS

12    NO CATEGORIES.  IT IS A LIST OF DOCUMENTS.  IT IS A

13    LIST OF BATES NUMBERS.  IT IS -- MANY OF THEM, YOUR

14    HONOR, ARE E-MAILS STRINGS.  SO IT'S JUST -- WE DON'T

15    KNOW WHAT STATEMENTS THE GOVERNMENT IS SEEKING TO

16    INTRODUCE OR IF THEY'RE TRYING TO INTRODUCE THE

17    ENTIRETY OF THE EXHIBITS.

18              THE GOVERNMENT HAS MADE THE ARGUMENT THAT

19    THESE ARE BUSINESS RECORDS.

20         THE COURT:  NO, I UNDERSTAND.

21         MR. HANUSZ:  I'M SORRY, YOUR HONOR.

22         THE COURT:  WHAT I'D LIKE YOU TO DO IS, TALK

23    ABOUT THIS.  AND THEN LET ME KNOW -- TODAY IS THURSDAY.

24    LET ME KNOW BY MONDAY WHAT PROGRESS -- CAN YOU LET ME

25    KNOW BY MONDAY WHERE THIS --

54

1          MR. ROLLINS:  YES, YOUR HONOR.

2          THE COURT:  LOOK AT IT AGAIN WITH -- I

3    THINK -- I DON'T KNOW THAT THERE'S MORE TO SAY.

4               BUT I CAN'T RULE ON -- I CAN'T RULE ON

5    OBJECTIONS TO EXHIBITS OR CATEGORIES OF EXHIBITS UNTIL

6    I HAVE THE EXHIBITS AND THE OBJECTIONS.

7          MR. ROLLINS:  WE'LL DO THAT, YOUR HONOR.

8          THE COURT:  THANK YOU.

9               WITH RESPECT TO THE GOVERNMENT'S MOTION

10   IN LIMINE NUMBER 5 ABOUT PRECLUDING THE DEFENDANT FROM

11   INTRODUCING HEARSAY -- HIS OWN HEARSAY STATEMENTS, I

12   THINK THIS IS -- THIS IS ONE THAT I HAVE -- AGAIN, I

13   HAVE TO EVALUATE IN CONTEXT.  I HAVE TO SEE WHAT IT IS

14   THAT THE GOVERNMENT IS SEEKING TO INTRODUCE AND WHAT,

15   IF ANYTHING, THE DEFENDANT SEEKS TO INTRODUCE.

16               AND I THINK IT IS -- I RECOGNIZE THE

17   LEGAL STANDARDS THAT APPLY.  BUT I THINK THIS IS, IN

18   LARGE PART, A RULE 106 ISSUE.

19               I'M NOT SAYING THAT -- UNTIL I KNOW --

20   UNTIL I CAN LOOK AT WHAT IT IS -- WHAT THE STATEMENT IS

21   THAT THE GOVERNMENT SEEKS TO ADMIT AND WHAT ADDITIONAL

22   SURROUNDING WORDS THE DEFENSE SEEKS TO ADMIT, I CAN'T

23   MAKE A DETERMINATION.  I DON'T THINK THERE'S A PER SE

24   RULE HERE.

25          MR. HANUSZ:  WE AGREE, YOUR HONOR.

1          THE COURT:  SO I NEED THAT.

2              I DON'T KNOW HOW MANY SUCH EXHIBITS THERE

3     ARE.

4              DO YOU HAVE ANY -- ARE THERE -- DO YOU

5     HAVE A SENSE OF HOW MANY SUCH EXHIBITS THERE ARE?

6          MR. HUGHES:  PRIMARILY, YOUR HONOR, I BELIEVE

7     THE ONLY STATEMENTS FROM DEFENDANT WHERE THE GOVERNMENT

8     WOULD BE SEEKING TO INTRODUCE ONLY A PARTIAL EXCERPT OF

9     THE STATEMENTS WOULD PRIMARILY BE RECORDED STATEMENTS

10    TAKEN FROM THE DEFENDANT AT THE TIME OF HIS ARREST.

11         THE COURT:  OF HIS INTERVIEW?

12         MR. HUGHES:  YES, YOUR HONOR.

13             OTHER STATEMENTS OF THE DEFENDANT WOULD

14    PRIMARILY BE INTRODUCED EITHER THROUGH THE TESTIMONY OF

15    OTHER WITNESSES OR THROUGH DOCUMENTS SUCH AS E-MAILS.

16    BUT I THINK THE ONLY ACTUAL STATEMENTS WHERE THERE IS A

17    POTENTIAL APPLICATION OF THE RULE OF COMPLETENESS WOULD

18    BE HIS RECORDED STATEMENTS GIVEN AT THE TIME OF HIS

19    ARREST.

20         THE COURT:  AND HAVE THOSE BEEN TRANSCRIBED?

21         MR. HUGHES:  YES, YOUR HONOR.

22         THE COURT:  HAVE YOU DISCLOSED TO THE DEFENSE

23    WHICH STATEMENTS YOU PLAN TO SEEK TO INTRODUCE?

24         MR. HUGHES:  WE HAVE NOT DISCLOSED SPECIFIC

25    EXCERPTS FROM THAT STATEMENT TO THE DEFENSE THAT WE

1    WILL SEEK TO INTRODUCE AT TRIAL.

2                    WE CAN ENDEAVOR TO DO THAT, YOUR HONOR.

3              THE COURT:  IT'S THE SAME ISSUE.  IT'S A

4    LITTLE EASIER -- AGAIN, IN THE COURSE OF A TRIAL, IT'S

5    NOT UNCOMMON IN A CIVIL TRIAL FOR ONE SIDE TO WANT TO

6    READ FROM A DEPOSITION TRANSCRIPT.  AND THE OTHER SIDE

7    SAYS, "WAIT A MINUTE.  WE DON'T OBJECT TO THAT, BUT WE

8    WANT YOU TO ADD THESE LINES."  AND SO I CAN LOOK AT

9    THAT AND DO IT.

10                   I MEAN -- SO IF THERE'S A HANDFUL OF

11   THESE OR A VERY SMALL NUMBER, IT'S NOT GOING TO BE A

12   BIG DELAY IN THE TRIAL.  BUT TO THE EXTENT YOU CAN SORT

13   THIS OUT SOONER AND I CAN RULE SOONER, IT'LL EXPEDITE

14   THE TRIAL.

15             MR. HUGHES:  YES, YOUR HONOR.

16             THE COURT:  WITH RESPECT TO THE GOVERNMENT'S

17   MOTION IN LIMINE NUMBER 6 FOR A PRETRIAL DETERMINATION

18   ON THE ADMISSIBILITY OF CERTAIN DOCUMENTS, THIS GOES

19   TO -- THE CORE ISSUE HERE IS CERTAIN BANK RECORDS --

20   CERTAIN DOCUMENTS THAT THE GOVERNMENT CONTENDS ARE

21   COPIES OF BANK RECORDS, THAT THEY WERE DISCOVERED IN

22   THE COURSE OF EXAMINING THE COMPUTER IN THE DEFENDANT'S

23   RESIDENCE OR THAT WAS TAKEN FROM THE -- EXAMINED -- THE

24   DEFENDANT'S COMPUTER THAT WAS EXAMINED.

25                   IS THAT CORRECT?

1          MR. HUGHES:  YOUR HONOR, THERE ARE TWO SETS OF

2     BANK RECORDS THAT ARE AT ISSUE IN THE GOVERNMENT'S

3     MOTION.  ONE IS, AS YOU SAID, DOCUMENTS THAT WERE

4     RETRIEVED FROM MULTIPLE DIGITAL DEVICES SEIZED FROM THE

5     DEFENDANT'S RESIDENCE.

6               THE SECOND GROUP OF BANK STATEMENTS,

7     WHICH RELATE TO THE -- I'LL BREAK THIS DOWN BY THE

8     SPECIFIC BANKS.  THE BANK RECORDS SEIZED FROM THE

9     DEFENDANT'S RESIDENCE RELATE TO AN ACCOUNT HELD WITH

10    STANDARD CHARTERED BANK IN HONG KONG.

11              THE SECOND SET OF BANK RECORDS RELATE TO

12    AN ACCOUNT HELD IN THE NAME OF "MYSTICAL OPTIMISM," A

13    CORPORATION BASED OUT OF, I BELIEVE, THE BRITISH VIRGIN

14    ISLANDS THAT WAS HELD WITH HSBC HONG KONG.

15         THE COURT:  WHAT'S THE SOURCE OF THOSE

16    RECORDS?

17         MR. HUGHES:  THE SOURCE OF THOSE RECORDS, WE

18    WOULD BE INTRODUCING THEM THROUGH THE TESTIMONY OF

19    WITNESS JUDY CHEN.  MS. CHEN, AT THE REQUEST OF THE

20    GOVERNMENT, ACTUALLY REQUESTED THOSE RECORDS FROM HSBC

21    HONG KONG DIRECTLY.  SHE WAS THE SIGNATORY AND ACCOUNT

22    HOLDER ON THAT ACCOUNT.  SHE RECEIVED THOSE DOCUMENTS

23    FROM HSBC AND TURNED THEM OVER TO THE GOVERNMENT.

24         THE COURT:  THESE ARE THE RECORDS FROM APRIL

25    2011 TO JANUARY 2013?

1          MR. HUGHES:  NO, YOUR HONOR.

2               THESE RECORDS WOULD BE COVERING THE

3     PERIOD -- YES, YOUR HONOR.  APRIL 2011 TO JANUARY 2013,

4     EXCUSE ME.

5          THE COURT:  OKAY.  JUST A MINUTE.

6               ALL RIGHT.  I'VE REVIEWED THE BRIEFING ON

7     THIS.

8               WITH RESPECT TO THE DOCUMENTS FROM THE

9     HONG KONG BANK -- WELL, THE DOCUMENTS THAT THE

10    GOVERNMENT ATTRIBUTES TO THE HONG KONG BANK THAT WERE

11    OBTAINED FROM DR. SHIH'S COMPUTER, AND THE ARGUMENT

12    THAT THE WAY THEY ARE -- THE WAY THE FILE WAS CREATED

13    IN THE COMPUTER WHERE THEY'RE STORED AND ITS ELEMENTS

14    CONSTITUTES AN ADOPTIVE ADMISSION, I DON'T FIND THAT

15    VERY PERSUASIVE.  AMONG OTHER THINGS, THERE'S NO

16    EVIDENCE AS TO WHO ACTUALLY CREATED THAT FILE ROUTE AND

17    THOSE TITLES AND SUBTITLES.

18               AN INFERENCE COULD BE DRAWN, BUT I

19    DON'T -- GIVEN WHERE THE COMPUTER WAS, BUT I DON'T FIND

20    THAT VERY COMPELLING.

21               WITH RESPECT TO THE -- HOWEVER, WITH

22    RESPECT TO THOSE RECORDS, AS WELL AS THE RECORDS FROM

23    THE MYSTICAL OPTIMISM, IF I HAVE THAT RIGHT, I THINK

24    THAT THEY'RE BOTH ADMISSIBLE UNDER THE RESIDUAL

25    EXCEPTION OF FEDERAL RULE OF EVIDENCE 807.  THEY ARE

1    DOCUMENTS THAT SHOW BANK NAME AND THE BANK ENTRIES AND

2    NUMBERS.  THEY'RE DOCUMENTS THAT GO FROM MONTH TO

3    MONTH.  THERE'S A MEANS OF COMPARING NUMBERS FROM MONTH

4    TO MONTH ON THE DOCUMENTS.

5              IT'S NOT TO SAY THAT ONE COULDN'T

6    COUNTERFEIT A BANK DOCUMENT.  ONE COULD COUNTERFEIT A

7    BANK DOCUMENT, HYPOTHETICALLY; BUT IN LIGHT OF WHAT'S

8    BEEN PRESENTED IN TERMS OF THE SOURCE OF EACH SET, I

9    THINK THAT IT HAS SUFFICIENT INHERENT RELIABILITY TO

10   MEET THE EXCEPTION FOR 807.

11             DOES IT HAVE EQUIVALENT CIRCUMSTANTIAL

12   GUARANTEES OF TRUSTWORTHINESS?  IS IT OFFERED AS

13   EVIDENCE OF A MATERIAL FACT?  IS IT MORE PROBATIVE ON

14   THE POINT FOR WHICH IT'S OFFERED THAN ANY OTHER

15   EVIDENCE?  DOES ADMITTING IT BEST SERVE THE PURPOSES OF

16   THESE RULES IN THE INTEREST OF JUSTICE?

17             AND THE PRIMARY OBJECTION IS, THE THIRD

18   CRITERIA ABOUT WHETHER IT'S MORE PROBATIVE THAN OTHER

19   EVIDENCE.

20             AND THERE'S ALSO AN ISSUE THE GOVERNMENT

21   HAS PRESENTED ABOUT, THE SCOPE OF ITS SUBPOENA POWER

22   WITH RESPECT TO THE OVERSEAS RECORDS.  AND I'M MINDFUL

23   OF THAT.

24             I JUST THINK THAT BANK RECORDS OF -- THE

25   COPIES OF THESE DOCUMENTS FIT WITHIN THAT EXCEPTION.

```
1              DO YOU WANT TO ADDRESS THIS?

2              MR. HANUSZ:  BRIEFLY, YOUR HONOR.

3              MR. SPERTUS:  YOUR HONOR, I'M GOING TO TAKE A

4    30-SECOND RECESS WHILE MR. HANUSZ --

5              THE COURT:  THAT'S FINE.  THANK YOU.

6              MR. HANUSZ:  THANK YOU, YOUR HONOR.

7                   I APPRECIATE THE COURT'S STATEMENTS.  AND

8    I THINK THE ISSUE REALLY IS, IS WHAT STEPS COULD HAVE

9    BEEN TAKEN TO OBTAIN THESE RECORDS?

10                  SO THE HSBC RECORDS WERE PROVIDED TO THE

11   GOVERNMENT BY A GOVERNMENT WITNESS.  THERE'S BEEN NO

12   SHOWING BY THE GOVERNMENT -- AND, APPARENTLY, THEY'RE

13   PARTIAL RECORDS.

14                  THERE'S BEEN NO SHOWING BY THE GOVERNMENT

15   THAT THEY HAVE DONE ANYTHING TO TRY TO GET THESE

16   RECORDS.

17                  THESE RECORDS ARE BOTH -- THE COMPANIES

18   ARE BRITISH COMPANIES.  SO IT LOOKS LIKE THEY SENT --

19   THE GOVERNMENT SENT A SUBPOENA TO STANDARD CHARTERED IN

20   NEW YORK.  AND THE FOLKS IN NEW YORK SAID, "WE DON'T

21   HAVE THEM."

22                  BUT THERE'S BEEN NO EFFORT MADE -- I

23   MEAN, THE GOVERNMENT HAS MADE MLAT'S TO CANADA IN THIS

24   CASE.  IT HAS MADE MLAT'S TO FRANCE.  AND I THINK IT'S

25   THE -- THE RESIDUAL EXCEPTION IS RARELY USED.  RIGHT?
```

```
 1              AND THERE'S ALSO THE NINTH CIRCUIT CASE,

 2    I THINK IT'S PEARLMUTTER, P-E-A-R-L-M-U-T-T-E-R, WHICH

 3    TALKS ABOUT KIND OF A DILIGENCE ON THE GOVERNMENT'S

 4    PART.

 5              SO WE DON'T THINK IT SATISFIES THE

 6    RESIDUAL HEARSAY EXCEPTION.  WE DON'T THINK THERE'S

 7    BEEN ANY EFFORTS MADE -- ANY REAL EFFORTS MADE TO TRY

 8    TO GET THE RECORDS.

 9              THE GOVERNMENT HAS THE RECORDS AND JUST

10    WANTS TO GET THEM IN.

11              SO I WON'T SAY ANYTHING MORE THAN IS IN

12    THE BRIEFING, BUT --

13          THE COURT:  NO, I UNDERSTAND.

14              WHAT ABOUT THE GOVERNMENT EFFORT ISSUE?

15          MR. HUGHES:  IF I MAY BRIEFLY CORRECT ONE

16    STATEMENT BY DEFENSE COUNSEL?

17              HE HAS STATED THAT THESE ARE BRITISH

18    CORPORATIONS.  THAT IS NOT TRUE.  BOTH HSBC HONG KONG

19    AND STANDARD CHARTERED HONG KONG LIMITED ARE

20    INDEPENDENTLY INCORPORATED IN HONG KONG.  THEY ARE

21    WHOLLY-OWNED SUBSIDIARIES OF BRITISH BANKING

22    CORPORATIONS.  BUT THEY ARE INDEPENDENTLY LEGAL

23    ENTITIES, JUST AS A MATTER OF CLARIFICATION.

24              AS TO THE EFFORTS TO OBTAIN THESE

25    DOCUMENTS THROUGH ITS REGULAR SUBPOENA POWER, AS THE
```

1    GOVERNMENT HAS MADE CLEAR, IT DID SUBPOENA THE ONLY

2    ENTITY IN THE UNITED STATES FOR WHICH WE COULD ATTEMPT

3    TO OBTAIN THE STANDARD CHARTERED RECORDS, WHICH WAS

4    STANDARD CHARTERED OF NEW YORK, WHICH IS A BRANCH OF

5    THE BRITISH STANDARD CHARTERED GROUP.

6               AS TO POTENTIAL ALTERNATIVE MEANS, AS

7    WE'VE ALSO DISCUSSED IN OUR PAPERS, WE'VE HAD MULTIPLE

8    CONVERSATIONS WITH OUR OFFICE OF INTERNATIONAL AFFAIRS

9    WHO HAVE TOLD US THAT, IN CIRCUMSTANCES SUCH AS THESE

10   IN WHICH THE OPERATIVE CRIMINAL CONDUCT INVOLVES IEEPA

11   VIOLATIONS, ESPECIALLY INVOLVING CASES IN WHICH THE

12   GOVERNMENT HAS CHARGED SEVERAL CHINESE NATIONALS WITH

13   COOPERATING IN THIS CONDUCT, THAT IT WOULD BE A FUTILE

14   ENDEAVOR TO ATTEMPT TO OBTAIN INFORMATION FROM HONG

15   KONG REGARDING ASSISTANCE IN THESE CASES.

16              AND, ADDITIONALLY, YOUR HONOR, THE

17   GOVERNMENT DOES NOT BELIEVE IT IS REASONABLE TO REQUEST

18   ASSISTANCE AND DISCLOSE INFORMATION REGARDING OUR

19   INVESTIGATIONS TO THE HONG KONG AUTHORITIES KNOWING

20   THAT THAT INFORMATION WILL BE SHARED WITH AUTHORITIES

21   IN THE PEOPLE'S REPUBLIC OF CHINA.

22              THE COURT:  WELL, AS TO THE LATTER POINT, IF

23   THESE DOCUMENTS ARE ADMITTED OR IF THEY'RE ACCEPTED,

24   CAN THAT BE COMMUNICATED TO THE PEOPLE'S REPUBLIC OF

25   CHINA?

```
1              MR. HUGHES:  YES, YOUR HONOR.

2                   WHAT I -- WHEN WE ARE BUILDING OUR

3         INVESTIGATION TO --

4              THE COURT:  BUT YOU'RE NO LONGER BUILDING THE

5         INVESTIGATION.

6                   ARE YOU SAYING YOU CAN'T SUBPOENA THESE

7         RECORDS NOW?

8              MR. HUGHES:  NO, YOUR HONOR.  WE CANNOT

9         SUBPOENA EITHER OF THESE ENTITIES.  NEITHER ONE IS

10        PRESENT IN THE UNITED STATES.

11                  WE DID SUBPOENA OR ATTEMPT TO SUBPOENA

12        THE STANDARD CHARTERED RECORDS THROUGH STANDARD

13        CHARTERED.  THEY WERE TOLD UNEQUIVOCALLY, "WE DON'T

14        HAVE THEM, AND WE DON'T KEEP THEM."

15             THE COURT:  OKAY.  THANK YOU.

16                  I'M MINDFUL OF THAT ARGUMENT.  I'VE

17        REVIEWED THE BRIEF.  I'M MINDFUL OF THE DEFENDANT'S

18        ARGUMENT ABOUT REGULATORY ACTIONS TAKEN AGAINST RELATED

19        ENTITIES TO THESE.  THEREFORE, IF THE GOVERNMENT CAN

20        TAKE THOSE REGULATORY ACTIONS HERE, WHY CAN'T IT GET

21        DOCUMENTS?

22                  I'M MINDFUL OF THAT, BUT I DON'T THINK

23        THAT THAT'S DETERMINATIVE.

24             MR. HANUSZ:  I THINK THE POINT IS, YOUR HONOR,

25        WE'RE DEALING WITH THE SAME PARENT COMPANIES.  AND THE
```

1    GOVERNMENT HAS MADE NO EFFORTS.

2                    AND, CERTAINLY, THIS IS ARGUMENT.  THE

3    GOVERNMENT HAS NOT PUT FORTH ANY EVIDENCE REGARDING ITS

4    EFFORTS WITH RESPECT TO THESE -- TO THE BRITISH BANKS,

5    WHICH WHOLLY-OWN THESE HONG KONG SUBSIDIARIES.  NO ONE

6    IS SUGGESTING THAT A SUBPOENA BE ISSUED IN HONG KONG.

7                    THE QUESTION IS, WHAT EFFORTS HAVE BEEN

8    MADE TO TRY TO GET THE RECORDS FROM THE PARENT

9    COMPANIES?  AND I THINK IT'S PRETTY CLEAR THERE'S BEEN

10   NONE.

11              THE COURT:  ALL RIGHT.  THANK YOU.

12                    WITH RESPECT TO GOVERNMENT MOTION IN

13   LIMINE NUMBER 4, TO PRECLUDE UNDISCLOSED OFFENSES,

14   THAT'S UNOPPOSED.

15                    CORRECT?

16              MR. HANUSZ:  CORRECT, YOUR HONOR.

17              THE COURT:  SO THAT MOTION IS GRANTED.

18                    WITH RESPECT TO DEFENDANT'S MOTION IN

19   LIMINE NUMBER 1, DOCKET 312, TO SEVER THE TAX COUNTS,

20   I'VE REVIEWED THAT.  I PREVIOUSLY WROTE AN ORDER ON

21   THAT.  IN THE PRIOR ORDER, I DID PERMIT THIS ISSUE TO

22   BE RENEWED.  IT'S BEEN RENEWED.  BUT MY VIEW IS THAT,

23   FOR THE SAME REASONS THAT I PREVIOUSLY WROTE, I'M GOING

24   TO DENY THIS REQUEST.

25                    I THINK THAT THE DEFENSE HAS DONE A GOOD

```
1    JOB IN PRESENTING IT.  I UNDERSTAND IT.  BUT I THINK
2    THAT, BALANCING ALL THE RELEVANT FACTORS HERE, A
3    SEVERANCE ISN'T WARRANTED.
4              WITH RESPECT TO DEFENDANT'S MOTION IN
5    LIMINE NUMBER 2, TO EXCLUDE THE TESTIMONY OF GOVERNMENT
6    EXPERT WITNESSES, WE'VE TOUCHED ON SOME OF THIS.  AND I
7    THINK -- WELL, JUST A MINUTE.
8              I HAVE THE MOTION IN LIMINE ITSELF, WHICH
9    IDENTIFIES THE SEVEN WITNESSES, MONROY, BERGER,
10   STORINO, TROPEA, SANDISON, NORDQUIST AND AN UNNAMED
11   DEPARTMENT OF STATE PERSON.  AND, ALSO, THE STANDARDS
12   UNDER FEDERAL RULE OF CRIMINAL PROCEDURE 16(A)(1)(G).
13             THERE ARE ISSUES CONCERNING -- THERE WERE
14   ISSUES RAISED CONCERNING THE ADEQUACY OF THE
15   DISCLOSURES.  AND THE RESPONSE, THE GOVERNMENT HAS
16   PROVIDED ADDITIONAL SUBMISSIONS OF THE FURTHER
17   DISCLOSURES THAT HAVE BEEN MADE ON DECEMBER 6, 2018,
18   DECEMBER 21, 2018, FEBRUARY 14, 2019 AND MARCH 14,
19   2019.
20             AND SOME OF THIS OVERLAPS -- SOME OF THIS
21   OVERLAPS WITH THE DISCUSSION WE HAD EARLIER ABOUT THE
22   LIST.  AND THE LIST IS BEING GENERATED.
23             FOR EXAMPLE, THE TESTIMONY BY -- THE
24   PROFFERED TESTIMONY OF THE PROFFERED EXPERT,
25   MR. MONROY OF B.I.S. WHO EVALUATED THE MMIC'S AND MADE
```

1    LICENSING DETERMINATIONS, I'M NOT SURE THAT THAT'S

2    NEEDED FOR THE REASONS WE'VE ALREADY GONE OVER.

3    BECAUSE IF IT'S NOT DISPUTED THAT SOMETHING IS ON THE

4    LIST, HOW IT GOT THERE, I'M NOT SURE THAT THAT MATTERS,

5    AS OPPOSED TO THE OTHER ISSUE WE DISCUSSED ALREADY,

6    WHICH IS, IS THERE A FACTUAL DISPUTE AS TO WHETHER A

7    PARTICULAR OBJECT FITS WITHIN WHAT IS DEFINED BY THE

8    LIST?

9              SO I THINK THAT -- I THINK THAT THIS --

10   THE ADMISSIBILITY HERE, THE PREJUDICE THAT'S ARGUED,

11   AND SO ON, REALLY DISTILLS TO A PRETTY FOCUSED THING.

12   AND THAT IS, WHAT REMAINS FOR MR. MONROY TO ADDRESS?

13   AND I'LL -- I THINK I CAN EVALUATE THAT, BUT I DON'T

14   THINK IT'S -- IT'S THIS ISSUE ABOUT WHY SOMETHING IS

15   LISTED.

16             WITH RESPECT TO THE FBI WITNESSES, THE

17   OBJECTIONS CONCERNING WHETHER THEY CAN DEFINE TERMS AS

18   EXPERTS, I THINK THEY CAN.  BUT MY QUESTION IS, IS

19   THERE -- AND THE GOVERNMENT HAS IDENTIFIED HUGHES AND

20   OTHER TERMS AS EXAMPLES.

21             DO YOU HAVE A LIST OF THE TERMS THAT YOU

22   PRESENTLY ANTICIPATE SUCH EXPERTS WOULD DEFINE?

23             MR. SHOBAKI:  YOUR HONOR, WITH RESPECT TO THE

24   FBI WITNESSES, THE GOVERNMENT'S POSITION IS THAT

25   THEY'RE NOT EXPERTS.  WE PROVIDED NOTICE JUST TO BE

1    ABUNDANTLY CAUTIOUS.

2              WITH RESPECT TO TERMS THAT THEY MIGHT

3    PROVIDE DEFINITIONS OF, THERE ARE CERTAINLY SOME TERMS

4    THAT APPEAR IN A VARIETY OF THE DOCUMENTS.  AGAIN,

5    WHETHER IT'S AN EXPERT TESTIMONY OR NOT, THE HUGHES

6    EXAMPLE IS IN THE PAPERS.  BUT, FOR EXAMPLE, IN A

7    VARIETY OF THE E-MAILS THAT WE'VE FOUND IN DEFENDANT'S

8    E-MAIL, THERE ARE PROJECTS THAT HAVE CODE NAMES.

9    THEY'RE REFERRED TO BY, YOU KNOW, FOR EXAMPLE, "Z-5."

10   THAT IS A PROJECT THAT RELATES TO THE MMIC'S AT ISSUE

11   HERE, OR SOME OF THEM.  AND THROUGH REVIEWING THE

12   DOCUMENTS, AGENCY -- THEY'VE SEEN HUNDREDS OF

13   COMMUNICATIONS ABOUT Z-5.  SO TO THE EXTENT THEY SAY,

14   "WELL, THEY WERE TALKING ABOUT THE Z-5 PROJECT, AND

15   THIS HAS DOCUMENTS THAT RELATE TO THESE MMIC'S,"

16   THEY'RE SAYING THAT WOULD BE -- YOU KNOW, OUR POSITION

17   IS, THAT'S NOT ACTUALLY EXPERT TESTIMONY.  THAT'S JUST

18   TESTIMONY BASED ON FAMILIARITY WITH THE DOCUMENTS AND

19   THE INVESTIGATION.

20             TO THE EXTENT THEY'RE GOING TO BE SAYING,

21   "WELL, THIS COMPANY IS A DEFENSE CONTRACTOR" OR SUCH

22   AND SUCH, THAT'S, LARGELY, I THINK, UNCONTROVERSIAL.

23   THE IDENTITY OF A COMPANY IN THE UNITED STATES, FOR

24   EXAMPLE.

25             THE COURT:  MY VIEW IS THIS -- AGAIN, IT'S A

1    LITTLE DIFFICULT WITHOUT THE SPECIFICS.

2              BUT TO THE EXTENT THAT THE GOVERNMENT

3    WITNESS WOULD BE OFFERED TO TESTIFY THAT THIS WORD --

4    THIS WORD HERE, THIS FIVE-LETTER WORD HERE MEANS X,

5    WELL, I THINK TO THE EXTENT THAT THAT -- FOR EXAMPLE,

6    IT'S NOT UNCOMMON, IN A TRANSACTION INVOLVING

7    CONTROLLED SUBSTANCES, FOR THE LAW ENFORCEMENT PERSON

8    TO TESTIFY AS TO WHAT THE WORDS MEANT IN A TELEPHONE

9    CONVERSATION AND WHY BASED ON THAT PERSON'S EXPERIENCE.

10   SO IF THERE'S GOING TO BE TESTIMONY LIKE THAT, I THINK

11   THE DEFENDANT NEEDS TO KNOW WHAT THAT IS SO THE

12   DEFENDANT CAN EVALUATE WHETHER THAT -- WHETHER THAT

13   WITNESS' UNDERSTANDING AND DEFINITION OF THAT TERM IS

14   APPROPRIATE, AND IF THEY NEED TO -- HOW THEY WOULD NEED

15   TO, POTENTIALLY, REBUT IT.

16             TO THE EXTENT YOU'RE JUST SAYING THAT A

17   REVIEW OF EXHIBITS -- A SERIES OF EXHIBITS REFLECTS

18   WHAT A TERM MEANS, I MEAN, I DON'T KNOW THAT THE

19   WITNESS HAS TO SAY THAT NECESSARILY, AS OPPOSED TO, IF

20   THOSE DOCUMENTS ARE ADMITTED INTO EVIDENCE, THEN THAT

21   ARGUMENT COULD BE MADE.

22             MR. SHOBAKI:  RESPECTFULLY, YOUR HONOR, FOR

23   THE LATTER POINT, I WOULD DISAGREE.  THERE IS, BASED ON

24   A REVIEW OF THOUSANDS AND THOUSANDS OF PAGES OF

25   E-MAILS, IF THERE'S A WORD THAT IS USED REGULARLY TO

1   DISCUSS, FOR EXAMPLE, A CERTAIN PROJECT, THEN THE

2   AGENTS, AS THE COURT OR ANY ATTORNEY, COULD REACH THE

3   UNDERSTANDING THAT, WELL, WHEN THEY'RE TALKING ABOUT

4   THIS SUBJECT, THEY USE THIS WORD.  THAT'S A KNOWLEDGE

5   DERIVED FROM THE EVIDENCE IN THE CASE, KNOWLEDGE

6   DERIVED FROM THE INVESTIGATION THAT IS HELPFUL TO THE

7   FINDER OF FACT.

8              NOW, STEPPING BACK TO THE OTHER POINT

9   WITH RESPECT TO SORT OF THE GANG OR DRUG EXAMPLE, THE

10  GOVERNMENT DOESN'T ANTICIPATE THAT THE FBI AGENTS ARE

11  GOING TO BE OFFERING TESTIMONY ABOUT THEIR SORT OF

12  GENERAL KNOWLEDGE AND EXPERIENCE IN EXPORT CONTROL

13  CASES THAT, WHEN DEFENDANTS USE THE TERM X, THIS IS

14  WHAT THEY'RE TALKING ABOUT, OR THAT GLASS WINDOWS MEANS

15  METH OR ANYTHING LIKE THAT.

16             SO IT'S NOT -- AND I WOULD AGREE THAT

17  THAT IS A TYPICAL SORT OF DRUG CASE EXPERT TESTIMONY

18  THAT WOULD BE DERIVED FROM EXPERIENCE WITH

19  INVESTIGATIONS.

20             WHAT WE'RE TALKING ABOUT HERE IS

21  SPECIFICALLY FROM THE ANALYSIS OF EXHIBITS AND WORK ON

22  THE CASE, TESTIFYING ABOUT THEIR KNOWLEDGE THAT WAS

23  DERIVED FROM THAT.

24             THE COURT:  DO YOU HAVE AN ESTIMATE OF HOW

25  MANY SUCH TERMS THERE ARE?

1        MR. SHOBAKI:  NOT REALLY, BUT I DON'T THINK

2    THERE ARE A LOT, YOUR HONOR.

3        THE COURT:  LESS THAN 10?

4        MR. SHOBAKI:  I WOULD SAY MAYBE MORE THAN

5    THAT.

6            MORE THAN 10, MAYBE LESS THAN 50, IS THE

7    BALLPARK I WOULD PUT IT IN.

8        THE COURT:  IS THERE A REASON THAT CAN'T BE

9    COMMUNICATED TO THE DEFENSE?

10       MR. SHOBAKI:  WE HAVEN'T DISTILLED THEM INTO A

11   LIST BECAUSE THERE'S NO REASON TO DO THAT, OTHER THAN

12   THE FACT THAT YOU WOULD BE TALKING ABOUT EXHIBIT X AND

13   BE SAYING, OKAY, WHEN YOU'RE TALKING ABOUT EXHIBIT X,

14   AGENT WHOEVER, DID YOU COME TO UNDERSTAND WHAT THIS

15   TERM MEANT?

16       THE COURT:  WELL, WHO IS GOING --

17       MR. SPERTUS:  I AM, YOUR HONOR.

18       THE COURT:  LET ME HEAR FROM YOU BRIEFLY

19   BECAUSE I HAVE A --

20       MR. SPERTUS:  YOUR HONOR, THE DEFENSE HAS

21   TRIED TO MEET AND CONFER WITH THE GOVERNMENT ON THESE

22   ISSUES.

23           THE DISCLOSURES THAT THE GOVERNMENT MADE

24   ARE BEFORE YOUR HONOR.  THEY ARE GENERALIZED SUBJECTS.

25   I WANT TO ORGANIZE THE THREE MOTIONS INTO SEPARATE

1    ISSUES BECAUSE MOTION IN LIMINE NUMBER 2 IS JUST A

2    REQUEST FOR EXCLUSION BECAUSE WE'VE NOT RECEIVED --

3            THE COURT:  I'VE READ ALL THE REPORTS.

4            MR. SPERTUS:  BUT 2 AND 3 ARE SUBJECT MATTER

5    SPECIFIC.

6            SO WITHOUT A DISCLOSURE, ON APRIL 4TH

7    IT'S TOO LATE FOR THE GOVERNMENT TO NOW MAKE

8    DISCLOSURES THAT WE CAN REACT TO IN A MEANINGFUL WAY.

9    SO I JUST THINK -- IF THE COURT, FOR EXAMPLE, IS

10   TOLERATING THE GOVERNMENT PRODUCING AN EXHIBIT LIST

11   WITH SPECIFIC NUMBERS THE FIRST DAY OF TRIAL AND

12   FURTHER DISCLOSURES AFTER APRIL 4TH, THE DEFENSE IS

13   VERY PREJUDICED.

14           I JUST WANT TO REMIND YOUR HONOR THAT, IN

15   DECEMBER WHEN WE HAD A HEARING ON CONTINUING THE TRIAL

16   DATE, I FRAMED THIS ISSUE FOR YOUR HONOR THAT THE

17   DEFENSE DOES NOT WANT TO BE ON THE EVE OF A NEW TRIAL

18   DATE.  AND WE WANTED THE EXHIBIT LIST.  AND I THOUGHT

19   WE HAD ALL AGREED THAT THE DEFENSE WOULD GET IT, MEET

20   AND CONFER IN AN ORDERLY WAY.  NONE OF THAT HAS

21   HAPPENED.  IT'S NOW APRIL 4TH.  AND THE COURT IS ASKING

22   THE GOVERNMENT QUESTIONS THAT THE DEFENSE IS NOW

23   LEARNING FOR THE FIRST TIME.

24           THE RULE 16 -- THE REQUIREMENT OF RULE 16

25   IS THAT WE GET A SUMMARY OF TESTIMONY, QUALIFICATIONS

1    AND THE ACTUAL OPINIONS.  THAT'S WHAT RULE 16 SAYS ON

2    ITS FACE.

3              AND SO WITH THE COURT'S VIEW OF THE

4    DISCLOSURES WHICH YOU'VE READ AND YOUR QUESTIONS TO THE

5    GOVERNMENT, CLEARLY NOBODY IN THIS COURTROOM, EXCEPT

6    THE GOVERNMENT, KNOWS WHAT THE ACTUAL OPINIONS WILL BE.

7    AND THAT'S WHY EXCLUSION IS AN APPROPRIATE REMEDY, AS

8    OPPOSED TO GIVING THE GOVERNMENT A DEADLINE TO NOW

9    STATE WHAT THE OPINIONS OF ITS EXPERT WILL BE.

10             THE COURT:  THANK YOU.  JUST A MINUTE.

11             WELL, LOOKING AT NOT JUST -- LOOKING AT

12   THE TOTALITY OF THE DISCLOSURES THAT HAVE BEEN MADE,

13   WHICH I'VE REVIEWED, WHICH ARE ATTACHED TO DOCKET 314,

14   I THINK THAT AS TO EACH OF THESE INDIVIDUALS, THERE'S

15   BEEN -- THE C.V.'S ARE ADEQUATE, THE CREDENTIALS -- THE

16   CLAIM CREDENTIALS ARE ADEQUATELY DISCLOSED.

17             THEN GOING THROUGH THE INDIVIDUAL

18   WITNESSES, WE'VE TALKED ALREADY ABOUT SANDISON IN TERMS

19   OF THE USE OF -- THIS IS, I BELIEVE, WHAT YOU WERE JUST

20   REFERRING TO, MR. SHOBAKI.  THE USE OF LAY TERMS TO

21   EXPLAIN SEMICONDUCTOR PROCESSING.

22             IS THAT WHAT YOU'RE REFERRING TO AGAIN?

23             MR. SHOBAKI:  I'M SORRY, YOUR HONOR, WITH

24   RESPECT TO WHICH WITNESS?

25             THE COURT:  SANDISON.

1          MR. SHOBAKI:  SANDISON -- WE HAVEN'T DISCUSSED

2     SANDISON BEFORE.

3          THE COURT:  WELL, THE USE OF LAY TERMS TO

4     EXPLAIN CERTAIN ELEMENTS OF THE SEMICONDUCTOR FOUNDRY,

5     THE INTEGRATED CIRCUITS, THE EFFORTS BY THE PEOPLE'S

6     REPUBLIC OF CHINA TO ACCOMPLISH THIS, TO THE EXTENT

7     WE'RE TALKING ABOUT SEMICONDUCTOR TERMS -- DEFINING

8     SEMICONDUCTOR TERMS AND THESE SORTS OF THINGS, I DON'T

9     FIND -- I DON'T THINK THAT WOULD BE UNDULY PREJUDICIAL.

10          BUT WHAT'S THE RELEVANCE OF THE PEOPLE'S

11     REPUBLIC OF CHINA EFFORTS?

12          MR. SHOBAKI:  YOUR HONOR, SO A COUPLE OF

13     THINGS.  SO WE HAVE THREE MOTIONS IN LIMINE HERE.  THIS

14     SORT OF FALLS INTO THE QUESTIONS ABOUT THE CHINESE

15     GOVERNMENT PRACTICES, AND SO SORT OF IN THE REALM OF 3

16     AND 4.  FROM A NOTICE -- I'M SORRY, I'M SORT OF LINED

17     UP TO ADDRESS THE NOTICE ISSUES.

18          FROM A NOTICE STANDPOINT, THE GOVERNMENT

19     BELIEVES IT HAS PROVIDED ADEQUATE NOTICE OF THE AREAS

20     AND LIKE WHAT HE'S GOING TO TALK ABOUT.

21          BUT ARE YOU ASKING ABOUT THE SUBSTANCE OF

22     THE ARGUMENT?

23          THE COURT:  WELL, WHAT I'M ASKING IS THIS:  I

24     THINK -- TWO THINGS:  ONE IS, I THINK THAT THE C.V.'S

25     ARE ADEQUATE.

1          TWO, THERE ARE SOME GENERIC DESCRIPTIONS

2    OF SUBJECT AREAS.  BUT OPINIONS ARE NOT ALWAYS THERE,

3    ARE THEY?

4          MR. SHOBAKI:  YOUR HONOR, AND THAT'S ACTUALLY

5    WITH THESE -- WITH THESE -- THIS EXPERT TESTIMONY,

6    SPECIFICALLY WITH RESPECT TO SANDISON, NORDQUIST AND

7    MATTIS, THERE'S A CERTAIN DEGREE WHERE THIS ISN'T

8    REALLY OPINION TESTIMONY, YOUR HONOR.

9          WE'RE DEALING WITH A COMPLEX SUBJECT

10   MATTER AREA HERE.  AND THIS IS MORE SPECIALIZED

11   KNOWLEDGE THAT WOULD HELP THE TRIER OF FACT UNDERSTAND

12   THE ISSUES IN THE CASE, VIS-A-VIS, WHAT A FOUNDRY IS.

13   AND NOT JUST THE JURY, BUT ALSO THE COURT.  WHAT A

14   FOUNDRY IS, WHAT THE FABRICATION OF THESE MMIC'S

15   ENTAILS.

16         THE CONDUCT ALLEGED IN COUNT 1 RELATES

17   TO, AMONG OTHER THINGS, SETTING UP THIS FOUNDRY IN

18   CHINA.  AND SO TESTIMONY ABOUT WHAT A FOUNDRY IS, WHAT

19   IT TAKES TO PUT THAT TOGETHER, WHAT'S INVOLVED FROM

20   SOMEBODY LIKE DR. SANDISON WHO IS VERY EXPERIENCED IN

21   THAT AREA IS INTENDED TO ASSIST WITH UNDERSTANDING AND

22   PUTTING INTO CONTEXT THE COMMUNICATIONS AND DOCUMENTS

23   THAT WILL COME IN -- WELL, THE GOVERNMENT ANTICIPATES

24   WILL COME IN REGARDING DR. SHIH AND HIS CO-CONSPIRATORS

25   PLANS TO DO EXACTLY THAT.

1           SO IT'S NOT ULTIMATELY TESTIMONY OF AN

2    OPINION ABOUT WHETHER, FOR EXAMPLE, THIS ACTION BY

3    DR. SHIH MEANT THAT HE WAS TRYING TO SET UP A GAN FAB

4    LINE, BUT MORE OF AN EXPLANATION OF WHAT SORT OF THE

5    OVERALL TECHNOLOGY WORLD AND WHAT THESE THINGS ARE AND

6    WHAT KIND OF DEVICES YOU NEED AND THINGS LIKE THAT.

7           SO IT'S REALLY EXPLANATORY.  SO IT'S

8    DIFFICULT TO DISTILL INTO AN OPINION, PER SE, BECAUSE

9    IN MANY CASES, IT'S NOT AN OPINION.

10          SIMILARLY, WITH DR. NORDQUIST WHO IS

11   GOING TO TALK ABOUT THE TESTING OF THE GAN MMIC'S, TO

12   THE EXTENT HE HAS TO EXPLAIN WHAT A MICROWAVE IS AND

13   WHAT AN AMPLIFIER IS, THAT'S NOT A MATTER OF OPINION.

14   THAT'S JUST A MATTER OF SCIENCE.  AND SO --

15          THE COURT:  TO THE EXTENT MR. NORDQUIST IS

16   TALKING ABOUT TESTING OF MMIC'S IN WAFER LOTS; CORRECT?

17          MR. SHOBAKI:  YES, YOUR HONOR.

18          THE COURT:  HAS THERE BEEN ANY DISCLOSURE

19   ABOUT WHAT TESTING HE ACTUALLY DID?

20          MR. SHOBAKI:  YES, YOUR HONOR.

21          WE DISCLOSED AN EXPERT REPORT WHICH THE

22   DEFENSE CONVENIENTLY LEFT OFF OF THEIR MOTION AND

23   DIDN'T ADDRESS IN THEIR MOTION, OR, INDEED, IN THEIR

24   REPLY, REALLY.  HE DID TEST.  THAT'S WHAT WE TALKED

25   ABOUT IN TERMS OF THE ANALOGY OF TESTING, THE SPORTS

1   CAR FOR SPEED.  HE, IN HIS LAB, TESTED SOME OF THE VERY

2   SAME MMIC'S THAT WERE EXPORTED TO CHINA IN THIS CASE.

3            THE COURT:  WHERE IS THAT REPORT?

4                 IS THIS THE 16-PAGE REPORT, EXHIBIT B

5   TO --

6            MR. SHOBAKI:  YES, YOUR HONOR.

7            THE COURT:  THAT WAS PRODUCED ON DECEMBER 21,

8   2018?

9            MR. SHOBAKI:  YES.

10           THE COURT:  OKAY.  WELL --

11           MR. SHOBAKI:  YOUR HONOR, TO THE EXTENT THERE

12   ARE OPINIONS EXPRESSED ABOUT THE PERFORMANCE OF THESE

13   MMIC'S, THAT DOCUMENT SETS FORTH, IN DETAIL, HOW

14   THOSE -- THEY WERE TESTED AND WHAT THE OPINIONS ARE

15   ABOUT THEIR PERFORMANCE.

16           THE COURT:  JUST A MINUTE.

17                 IS THERE ANYTHING YOU WANTED TO ADD?

18           MR. SPERTUS:  THE NORDQUIST REPORT IS NOT --

19   WE AREN'T OBJECTING TO THE SCOPE OF TESTIMONY WITHIN

20   THE NORDQUIST REPORT.

21           THE COURT:  YOU ARE?

22           MR. SPERTUS:  WE ARE NOT.

23           THE COURT:  OKAY.

24           MR. SPERTUS:  WE ARE NOT.  THE TEST REPORT IS

25   FINE.

1          THAT'S THE ONLY REPORT FROM ANY EXPERT

2     PRODUCED IN THIS CASE.  AND WE'RE OBJECTING TO THE

3     DISCLOSURES THAT WERE MADE WHICH SAY THESE EXPERTS WILL

4     TESTIFY ABOUT OTHER THINGS.

5          THE COURT:  JUST A MINUTE.

6          WITH RESPECT TO MR. SANDISON, I THINK

7     THAT IT'S NOT -- IT'S STILL NOT CLEAR TO ME WHY THE

8     PEOPLE'S REPUBLIC OF CHINA EFFORTS, IF HE'S GOING TO

9     TESTIFY, THAT ARE RELEVANT.

10         MR. SHOBAKI:  YOUR HONOR, THERE ARE NUMEROUS

11    ENTITIES THAT ARE NAMED IN THE INDICTMENT THAT ARE

12    CHINESE ENTITIES.  AND THERE IS -- AND THIS ACTUALLY IS

13    IT'S NOT A HUNDRED PERCENT -- THERE'S SOME OVERLAP

14    BETWEEN HIM AND MR. MATTIS IN TERMS OF THIS CATEGORY.

15    SO I DON'T WANT TO OVERSPEAK.

16         TO THE EXTENT THAT EITHER SANDISON OR

17    MATTIS WOULD BE SPEAKING TO THIS IS TO THE -- FOR

18    EXAMPLE, QTC, WHICH IS ONE OF THE ENTITIES NAMED, THAT

19    IT IS, ESSENTIALLY, THE PURCHASING ARM OF THE PEOPLE'S

20    REPUBLIC OF CHINA, PLA, THE ARMY.  THAT IS SOMETHING

21    THAT'S DERIVED FROM OPEN SOURCE INFORMATION THAT AN

22    EXPERT IN THE AREA CAN TELL YOU ABOUT THAT NO ONE WILL

23    KNOW ABOUT THESE ENTITIES.

24         THE COURT:  TO WHAT IS THAT RELEVANT?

25         MR. SHOBAKI:  IT EXPLAINS THE MOTIVE FOR

1    CONCEALING WHERE THESE MMIC'S ARE GOING, THE MOTIVE FOR

2    THE SUBTERFUGE AND KNOWLEDGE BY DR. SHIH ABOUT THE

3    ULTIMATE PROVENANCE ABOUT WHERE THIS STUFF WAS INTENDED

4    TO GO AND WHO WAS INVOLVED IN THE CONSPIRACY.

5            IT LOOKS LIKE A WHOLE BUNCH OF COMPANIES.

6    BUT ONCE YOU PEEL IT BACK A LITTLE BIT AND UNDERSTAND,

7    FROM THE STANDPOINT OF CHINA, WHO INVESTS IN THOSE

8    COMPANIES, WHO CONTROLS THOSE COMPANIES, YOU HAVE A

9    VERY STRONG MOTIVE TO HIDE WHY YOU WOULD BE EXPORTING

10   HIGH-POWER RADAR CHIPS FROM THE UNITED STATES TO CHINA.

11   SO IT GOES DIRECTLY TO MOTIVE, YOUR HONOR, AND

12   KNOWLEDGE BY THE DEFENDANT AND HIS CO-CONSPIRATORS.

13           THE COURT:  OKAY.  JUST A MINUTE.

14           BEFORE WE GET TO THAT, WITH RESPECT TO

15   DEVELOPING A PLANT TO MANUFACTURE THINGS, TO WHAT IS

16   THAT RELEVANT?

17       MR. SHOBAKI:  YOUR HONOR, THAT IS ONE OF THE

18   GOALS THAT THE CONSPIRATORS WERE WORKING TOWARDS, WAS

19   TO BUILD THIS FABRICATION FACILITY FOR GAN, INCLUDING

20   MMIC'S.

21       THE COURT:  AND HOW DID THAT -- HOW DO YOU

22   CONTEND DOING SO VIOLATED ONE OF THE STATUTES AS

23   CHARGED IN THE INDICTMENT?

24       MR. SHOBAKI:  SOME OF THE ACTS TAKEN IN

25   FURTHERANCE OF THAT CONSPIRACY INCLUDE THE EXPORT OF

1    CONTROLLED GOODS FROM THE UNITED STATES TO CHINA.

2                FOR EXAMPLE, COUNT 2 IS ONE SUCH INSTANCE

3    THAT IS CHARGED SEPARATELY FROM THE CONSPIRACY.  BUT

4    FOR THE PURPOSES OF THE CONSPIRACY COUNT, THERE'S A

5    WIDE ARRAY OF CONDUCT, INCLUDING OTHER EXPORTS THAT ARE

6    DISCUSSED.

7                THE COURT:  SOMETHING IS LISTED OR AN ENTITY

8    IS LISTED; RIGHT?  AND THEN YOU CAN'T SEND TO THAT

9    ENTITY OR YOU CAN'T SHIP THAT ITEM UNLESS YOU HAVE A

10   LICENSE?

11               MR. SHOBAKI:  YES, YOUR HONOR.

12               THE COURT:  SO WHY DOES IT MATTER BEYOND --

13   WHY WOULD EVIDENCE BE NEEDED, OTHER THAN THIS ENTITY

14   AND/OR ITEM WAS ON A LIST, THERE WAS NO LICENSE, YET IT

15   WAS SHIPPED?

16               MR. SHOBAKI:  YOUR HONOR, THAT IS COUNT 2.

17               COUNT 1 IS A CONSPIRACY CHARGE THAT

18   RELATES TO THE BROADER COURSE OF CONDUCT THAT INVOLVES

19   VIOLATIONS OF IEEPA.  SO IT'S A CONSPIRACY TO VIOLATE

20   IEEPA THAT INVOLVES A LONG-RUNNING SCHEME OF WHICH THE

21   EXPORT THAT YOU JUST MENTIONED IN COUNT 2 IS PART OF.

22               AND, YEAH, JUST TO BE CLEAR, YOUR HONOR,

23   WITH RESPECT TO THE EXPORTS HERE, AGAIN, WE HAVE THE

24   TWO ISSUES.  WE HAVE THE ENTITY LIST ISSUE, WHICH ONLY

25   OCCURS AFTER THE ENTITIES AT ISSUE HERE WERE ADDED TO

```
1    THE ENTITY LIST.  AND PRIOR TO THAT, THE EXPORT OF

2    GENERALLY-CONTROLLED TECHNOLOGY TO CHINA.

3              THE COURT:  ALL RIGHT.  JUST A MINUTE.

4                   GETTING BACK TO THE EXPERT ISSUE, I THINK

5    TO THE EXTENT THE EXPERTS OR A WITNESS IS BEING ASKED

6    TO EXPLAIN A WORD BECAUSE IT APPEARS IN A LOT OF

7    DOCUMENTS THAT, HYPOTHETICALLY, HAVE BEEN ADMITTED AS

8    EXHIBITS, I DON'T KNOW THAT THAT'S THE SAME KIND OF

9    EXPERT TESTIMONY THAT TRANSLATING OR DEFINING TERMS

10   WOULD BE.

11                   BUT AT THE SAME TIME, IT'S A LITTLE

12   DIFFICULT -- IS THERE A REASON YOU CAN'T COME UP WITH A

13   LIST OF THOSE THINGS, EVEN IF IT'S NOT COMPREHENSIVE?

14              MR. SHOBAKI:  YOUR HONOR, WITH RESPECT TO

15   WHICH EXPERT ARE WE TALKING ABOUT?

16              THE COURT:  WELL, SANDISON.  ANY OF THE

17   EXPERTS WHOM YOU SAY, BASED ON A REVIEW OF A

18   SUBSTANTIAL NUMBER OF DOCUMENTS, KNOWS WHAT THIS WORD

19   MEANS IN THAT CONTEXT OF THOSE DOCUMENTS.

20              MR. SHOBAKI:  THAT'S NOT WHAT SANDISON IS

21   GOING TO BE TALKING ABOUT.  THAT'S THE FBI AGENTS WHO

22   CAN TALK ABOUT IT FROM THEIR REVIEW OF THE DOCUMENTS.

23              THE COURT:  IS THERE A REASON WITH RESPECT TO

24   THEN -- IS IT BERGER?

25              MR. SHOBAKI:  THERE ARE THREE FBI AGENTS WHO
```

1    HAVE BEEN IDENTIFIED AS WITNESSES.  THERE'S STORINO,

2    BERGER AND WESTBY.

3                 WESTBY RELATES TO THE TECH RECORDS.

4                 STORINO AND BERGER WERE IDENTIFIED IN

5    CONNECTION WITH SORT OF THE GENERAL TESTIMONY.  THEY'LL

6    BE INVOLVED -- ONE OR BOTH OF THEM WOULD BE INVOLVED IN

7    INTRODUCTION OF E-MAIL DOCUMENTS THAT FORM A GREAT PART

8    OF THIS CASE, YOUR HONOR.  AND DURING THAT DISCUSSION,

9    THEY MIGHT - AGAIN, THE EXAMPLE I GAVE - MIGHT TALK

10   ABOUT A TERM THAT THEY HAD SEEN IN VARIOUS PLACES USED

11   TO TALK ABOUT ONE PROJECT OR THE OTHER.

12               THE COURT:  WHICHEVER OF THOSE WITNESSES WHOM

13   YOU MIGHT SEEK TO HAVE TESTIFY AT TRIAL AS TO WHAT A

14   WORD MEANS, BASED ON A REVIEW OF A LOT OF DOCUMENTS

15   WHICH USED THE WORD, IS THERE A REASON YOU CAN'T COME

16   UP WITH A LIST OF WHAT THOSE WORDS ARE?

17               MR. SHOBAKI:  WE COULD COME UP WITH WHAT I

18   WOULD CALL "THE GREATEST HITS."

19               THE COURT:  WELL, THAT WOULD BE HELPFUL

20   BECAUSE I THINK THEN YOU CAN PRODUCE THAT TO THE

21   DEFENDANTS, AND THEY CAN BE AWARE OF IT.

22                   I AGREE WITH MR. SHOBAKI TO THIS EXTENT,

23   MR. SPERTUS:  THIS IS A DIFFERENT TYPE OF TESTIMONY

24   THAN THE TYPE OF CONDUCTING A SCIENTIFIC ANALYSIS OF A

25   PRODUCT OR AN OBJECT, AND HERE'S THE METHODOLOGY THAT I

1    USED, AND HERE'S THE RESULTS FROM THE METHODOLOGY AND,

2    THEREFORE, THESE ARE MY OPINIONS.  THIS IS A DIFFERENT

3    CATEGORY.

4                   SO I DON'T -- TO THE EXTENT THAT THEY'RE

5    OFFERING THAT IN THAT FASHION AND PROVIDE THE NAME --

6    THE WORDS, IT'S NOT SAYING I WOULD NECESSARILY -- IT

7    DOESN'T MEAN THAT I WILL NECESSARILY ADMIT THAT

8    TESTIMONY, BUT I DON'T KNOW THAT IT'S THE SAME SORT OF

9    OPINION PREJUDICE HERE BECAUSE THE DOCUMENTS ARE

10   AVAILABLE.  YOU CAN READ THE WORDS DIFFERENTLY THAN

11   THEY DO.

12                   WITH RESPECT TO -- AS I'VE STATED, AS TO

13   MR. MONROY --

14          MR. SHOBAKI:  YOU HAD MENTIONED SOMETHING

15   ABOUT THAT DURING A PREVIOUS PORTION.  MAY I ADDRESS

16   MONROY?

17                   PART OF WHAT THE UNITED STATES NEEDS TO

18   SHOW IN THIS CASE IS THAT A LICENSE WAS REQUIRED FOR

19   THESE GOODS.  THAT WOULD BE THE -- SO MONROY IS THE GUY

20   WHO EVALUATES THE TEST OF THE SPORTS CAR.  SO HIS

21   LICENSE DETERMINATIONS WITH RESPECT TO THE MMIC'S AT

22   ISSUE HERE, WHICH HE HAS DONE AND SHOWED DOCUMENTS,

23   PROVIDED TO THE DEFENSE AND, INDEED, IDENTIFIED

24   SPECIFICALLY FOR THE DEFENSE BACK IN OCTOBER, ARE

25   SOMETHING THAT WE WOULD -- THE GOVERNMENT DOES INTEND

1   TO HAVE SOME TESTIMONY ABOUT.  THAT HE RECEIVED TESTING

2   RESULTS.  HE REVIEWED THOSE TESTING RESULTS AND MADE AN

3   EVALUATION THAT NO EXCEPTIONS TO LICENSE REQUIREMENTS

4   APPLIED.  AND THAT IS THE BASIS FOR THE WRITTEN

5   DOCUMENTS THAT EXPRESS HIS DETERMINATION THAT A LICENSE

6   WOULD BE REQUIRED FOR EXPORT AND RE-EXPORT TO CHINA.

7               ADDITIONALLY, HE CAN ALSO TESTIFY THAT

8   THERE'S -- NO SUCH LICENSE EXISTS.

9               SO HE'S A NECESSARY WITNESS FOR THE

10  GOVERNMENT, YOUR HONOR.  THE IDEA THAT HE WOULDN'T

11  SOMEHOW TESTIFY, I JUST WANTED TO RAISE THAT BECAUSE HE

12  DEFINITELY NEEDS TO BE SOMEONE WHO TESTIFIES IN THIS

13  CASE.

14          THE COURT:  OKAY.

15          MR. SHOBAKI:  AGAIN, NOT NECESSARILY AN

16  EXPERT, YOUR HONOR.  OUR POSITION IS THAT HE'S NOT.

17  THIS IS SOMEBODY DOING THEIR JOB FOR THE GOVERNMENT

18  WHO -- IT IS A SPECIALIZED JOB.  HOWEVER, WHETHER THAT

19  IS ACTUALLY EXPERT TESTIMONY OR NOT IS ANOTHER

20  QUESTION.  IT'S SOMEBODY WHO IS IN SORT OF A

21  SOPHISTICATED POSITION IN THE GOVERNMENT SAYING THAT

22  THEY MADE AN EVALUATION DOING THEIR JOB AND WHAT THE

23  CONCLUSIONS THEY REACHED WERE.

24          THE COURT:  MR. SPERTUS?

25          MR. SPERTUS:  RESPECTFULLY, THE DEFINITION OF

1    "EXPERT" IS THE REQUIRED SPECIALIZED TRAINING AND

2    EXPERIENCE IN ORDER TO STATE AN OPINION.  A DEA CHEMIST

3    SAYING A SUBSTANCE IS COCAINE IS AN EXPERT.

4                SO I DISAGREE WITH MR. SHOBAKI'S

5    STATEMENT, THE SCIENCE IS FACTUAL AND DOESN'T REQUIRE

6    RULE 16 DISCLOSURES.

7                TO ORGANIZE THE SEVEN OR EIGHT PEOPLE

8    NOW, AS I UNDERSTAND IT, THE CASE AGENTS, THE

9    GOVERNMENT WILL PROVIDE A LIST OF TERMS, OR AS

10   MR. SHOBAKI REFERRED TO, "A GREATEST HITS LIST."  AND

11   THE COURT VIEWS THAT AS A DIFFERENT CATEGORY.  FINE.

12   THAT WOULD BE INTERPRETING TERMS.

13               I THINK SINCE THERE IS NO REPORT BY

14   SANDISON, AND THEN THERE WERE TWO OTHER EXPERTS, STILL

15   NO REPORT OF WHAT THEIR TESTIMONY WILL BE, BUT PETER

16   MATTIS AND JAMAAL WESTBY WERE FIRST DISCLOSED MARCH

17   13TH, AFTER THE MOTION WAS FILED, I THINK THOSE THREE

18   EXPERTS MUST BE EXCLUDED WHOLESALE.

19               AND THEN WITH REGARD TO CARLOS MONROY, IF

20   HIS TESTIMONY IS LIMITED SPECIFICALLY TO WHAT

21   MR. SHOBAKI JUST REPRESENTED, WHICH IS, THERE WAS NO

22   LICENSE FOR ANY SHIPMENTS THAT WENT TO CGTC, OKAY,

23   THAT'S VERY LIMITED.  AND IT'S THE FIRST NOTICE WE'RE

24   RECEIVING, BUT WE CAN REACT TO IT.

25               I JUST THINK THAT RULE 16'S DISCLOSURE

1    REQUIREMENTS ARE MUCH DIFFERENT THAN, FOR EXAMPLE,

2    SANDISON, THE GOVERNMENT'S DISCLOSURES.  HE WILL

3    TESTIFY IN CONNECTION WITH THE DISCOVERY PRODUCED OR

4    HERE'S 3,000 PAGES OF DISCOVERY THAT WILL BE RELATED TO

5    HIS OPINION TESTIMONY.  AND THAT'S -- WE'RE JUST UNABLE

6    TO DISCERN WHAT HE WILL SAY.

7              SO IF I HAD TO STATE THE HIGHEST GOALS

8    FOR EXCLUSION BECAUSE WE LITERALLY HAVE NO KNOWLEDGE OF

9    WHAT THE TESTIMONY WILL BE, IT'S SANDISON, PETER

10   MATTIS, AND JAMAAL WESTBY.

11             WITH REGARD TO THE TESTING DONE BY

12   NORDQUIST, WE DON'T DISPUTE THAT WE HAVE THE REPORT FOR

13   NORDQUIST'S SCIENTIFIC TESTING OF HOW FAST THE CAR WILL

14   GO.

15             WE ASK THAT THE COURT'S ORDER LIMIT

16   MONROY, BERGER AND STORINO TO THE SPECIFIC POINTS THAT

17   MR. SHOBAKI SAID, WHICH IS SIMPLY INTERPRETING TERMS,

18   BERGER AND STORINO.  AND THAT THE GOVERNMENT WILL TRY

19   ITS BEST TO LIST FOR US.  AND CARLOS MONROY, THAT THERE

20   WAS NO LICENSE.  AND THAT WOULD BE FINE.

21             MR. SHOBAKI:  ON MONROY, THERE HAVE BEEN

22   MULTIPLE DISCLOSURES ABOUT THE SUBSTANCE OF HIS

23   TESTIMONY, WHICH THE COURT -- I KNOW THE COURT HAS

24   REVIEWED THE DOCUMENTS AND IS AWARE IT IS CERTAINLY

25   MUCH GREATER THAN WHAT MR. SPERTUS JUST REPRESENTED.

1    AND IF THIS IS THE FIRST TIME THEY'VE HEARD ABOUT IT,

2    HE HADN'T ACTUALLY READ OUR LETTERS, YOUR HONOR.

3              THE COURT:  JUST A MINUTE.

4                   WELL, I'LL REFLECT FURTHER ON THIS; BUT

5    MY -- WHAT WOULD BE HELPFUL, MR. SHOBAKI, CAN YOU --

6    COULD YOU TAKE WHAT YOU HAVE SAID TODAY AND JUST -- A

7    SUMMARY WHICH GIVES WHAT -- A SUMMARY OF THE

8    TESTIMONY -- I KNOW YOU HAVE WRITTEN THESE -- I'VE READ

9    THE BRIEFS.  BUT BASED ON WHAT YOU HAVE SAID TODAY, CAN

10   YOU DISTILL IT TO WHAT IT IS YOU PRESENTLY ANTICIPATE

11   WOULD BE THE TESTIMONY OFFERED BY EACH OF THESE

12   PERSONS?

13             MR. SHOBAKI:  YOUR HONOR, WE CAN PUT SOMETHING

14   LIKE THAT TOGETHER.

15                  AND THERE'S MAYBE ONE OR TWO OTHER QUICK

16   POINTS ON THIS, YOUR HONOR.

17                  I ACTUALLY BELIEVE THAT WHAT WE'LL PUT

18   TOGETHER AND WHAT I'VE SPOKEN ABOUT TODAY IS TOTALLY

19   CONTAINED WITHIN THE DISCLOSURES MADE TO DATE.

20                  AND THE SECOND POINT IS, THIS REMEDY THAT

21   MR. SPERTUS KEEPS KIND OF GOING ON ABOUT OF EXCLUSION

22   IS NOT THE FAVORED REMEDY.  AND IT IS AN EXTREME

23   REMEDY, ESPECIALLY IN THE CASE OF SOME OF THESE

24   WITNESSES WHERE YOU WOULD ESSENTIALLY BE KNEECAPPING

25   THE GOVERNMENT FOR ABSOLUTELY NO GOOD REASON,

1   PARTICULARLY IN LIGHT OF THE GOALS OF RULE 16

2   DISCOVERY, WHICH ARE TO OFFER THE DEFENSE AN

3   OPPORTUNITY TO FAIRLY CROSS-EXAMINE, WHICH THEY

4   CERTAINLY HAVE ENOUGH NOTICE THAT THEY MIGHT NEED AN

5   ELECTRICAL ENGINEER.  THEY MIGHT NEED SOMEBODY WHO

6   KNOWS SOMETHING ABOUT EXPORT CONTROL.  THE NOTION THAT

7   THAT NOTICE HAS NOT BEEN PROVIDED TO THEM IS, QUITE

8   HONESTLY, LUDICROUS.

9           THE COURT:  WHEN CAN YOU GIVE ME THE SUMMARY?

10  WHEN CAN YOU FILE THAT?

11          MR. SHOBAKI:  END OF NEXT WEEK OR A WEEK FROM

12  MONDAY.

13          THE COURT:  HOW ABOUT BY TUESDAY?

14          MR. SHOBAKI:  OF NEXT WEEK?

15          THE COURT:  I'M ASKING YOU TO TAKE WHAT'S

16  ALREADY BEEN WRITTEN AND FROM WHAT YOU HAVE SAID TODAY

17  TO GIVE ME A SHORT STATEMENT, THE AREA THAT YOU

18  PRESENTLY ANTICIPATE WOULD BE PRESENTED BY EACH OF

19  THESE WITNESSES.

20          MR. SHOBAKI:  HONESTLY, YOUR HONOR, THAT'LL BE

21  DIFFICULT GIVEN THAT WE ARE ACTIVELY INVOLVED IN TRIAL

22  PREP AND WITNESS PREP, WHICH IS THE REASON THAT I

23  SUGGESTED A BIT MORE TIME.

24          THE COURT:  HOW ABOUT NEXT WEDNESDAY THEN?

25  THE SOONER THE BETTER.

```
1              AND I WANT YOUR RESPONSE TO THAT THREE

2     DAYS LATER -- THREE BUSINESS DAYS LATER.

3              MR. SPERTUS:  YES, YOUR HONOR.

4              THE COURT:  THANK YOU.

5              MR. SPERTUS:  YOUR HONOR, I WANT TO FLAG SO

6     THAT THE GOVERNMENT DOESN'T CLAIM TO MISUNDERSTAND THE

7     COURT'S REQUEST.  I UNDERSTAND THE COURT TO BE

8     REQUESTING WHAT WILL THE OPINIONS BE.  THE GOVERNMENT

9     HAS IDENTIFIED BROAD SUBJECTS, BUT THAT IS NOT WHAT

10    RULE 16 REQUIRES.

11             THE COURT:  I WOULD LIKE THE GOVERNMENT TO --

12    IT'S NOT NECESSARILY OPINIONS BECAUSE THE GOVERNMENT IS

13    NOT AGREEING THAT THEY'RE OPINIONS.

14             I WANT TO KNOW WHAT EVIDENCE THE

15    GOVERNMENT WILL BE SEEKING TO ELICIT FROM EACH OF THESE

16    WITNESSES.

17             MR. SPERTUS:  RIGHT.

18             THE COURT:  AND THEN I THINK YOU CAN ARGUE

19    ABOUT WHETHER THAT WAS OR WASN'T PREVIOUSLY DISCLOSED

20    AND WHETHER YOU'RE PREJUDICED.

21             MR. SPERTUS:  RIGHT.

22             BUT THE SUBJECT MATTER DISCLOSURE --

23    THERE'S OVERWHELMING CASE LAW THAT SUBJECT MATTER

24    DISCLOSURES IS NOT SUFFICIENT.

25             THE COURT:  LOOK, THIS HAS BEEN BRIEFED
```

1   EXTENSIVELY.  I'VE READ THE BRIEFS.  I'VE READ ALL THE

2   SUBMISSIONS.

3                AND WHAT I'M SAYING IS, IT'S NOT ENTIRELY

4   CLEAR TO ME HOW TO CONNECT ALL THE DOTS FROM WHAT HAS

5   BEEN PRESENTED.  SO I WOULD LIKE JUST TO GET IT

6   DISTILLED TO WHAT IT IS THE GOVERNMENT PRESENTLY IS

7   PROPOSING AS TO THE WITNESSES THAT ARE DISPUTED.

8                MR. SHOBAKI:  YOUR HONOR, I KNOW THAT THE

9   COURT HAS -- AND, I'M SORRY, I DON'T HAVE YOUR

10  SCHEDULING ORDER HERE IN FRONT OF ME.  BUT I KNOW THAT

11  THE COURT HAS ALSO ON ITS SCHEDULING ORDER A

12  REQUIREMENT FOR IN CAMERA SUBMISSION ABOUT THE VARIOUS

13  TRIAL WITNESSES AND WHAT THEY'RE GOING TO TESTIFY TO.

14  AND I BELIEVE THE DEADLINE MIGHT BE NEXT THURSDAY FOR

15  THAT.

16               THE COURT:  YES.

17               MR. SHOBAKI:  I'M NOT A HUNDRED PERCENT SURE.

18  BUT IT MIGHT MAKE SENSE TO -- I THINK FROM THE --

19  EVALUATING THIS, IN THE COURT'S PERSPECTIVE AT LEAST,

20  FOR IT TO HAVE THAT SUBMISSION FROM US AT THE SAME

21  TIME.

22               THE COURT:  THAT'S FINE.

23                JUST ALSO TO GIVE CONTEXT HERE,

24  WITNESS -- WE HAVEN'T TALKED ABOUT TROPEA, BUT I'M

25  NOT -- THAT ONE DOESN'T CONCERN ME.  YOU CAN INCLUDE

1    THAT ON THE LIST.  BUT THE GOVERNMENT STATES THAT IT

2    WOULD BE WITH RESPECT TO CALCULATIONS BASED ON

3    SPREADSHEETS THAT ARE IN POWER POINTS.  AND THOSE

4    ARE -- THOSE ARE PRETTY FOCUSED MATTERS.

5              LET ME LOOK AT THAT, AND I'LL MAKE A

6    FINAL DETERMINATION.

7              WITH RESPECT TO THE DEFENDANT'S MOTION IN

8    LIMINE NUMBER 6 ABOUT NO INFLAMMATORY TERMS, ESPIONAGE,

9    TERRORISM, I'VE ALREADY COVERED THAT PREVIOUSLY.  I'LL

10   BE LOOKING AT THAT IN CONNECTION WITH THE GOVERNMENT'S

11   SUBMISSION.

12             WITH RESPECT TO DEFENDANT'S MOTION IN

13   LIMINE NUMBER 7, TO EXCLUDE PRIOR ACTS, THE GOVERNMENT

14   DOESN'T PRESENTLY HAVE A PLAN TO PROFFER SUCH EVIDENCE.

15   SO I HAVE TO EVALUATE THAT IF THE GOVERNMENT DID.

16             WITH RESPECT TO THE DEFENDANT'S MOTION IN

17   LIMINE NUMBER 8 CONCERNING ATTORNEY VOIR DIRE, I'LL

18   DECIDE THAT AT THE TIME OF TRIAL.

19             ORDINARILY, I CONDUCT THE VOIR DIRE.  I

20   WILL AFTER -- WELL, WE HAVE QUESTIONNAIRES HERE.  AFTER

21   THE -- AFTER THE VOIR DIRE OF THOSE WHO ARE IN THE BOX

22   IS COMPLETED, I WILL THEN GO TO THE SIDE TO ASK COUNSEL

23   ABOUT CAUSE ISSUES AND WHETHER THEY THINK ADDITIONAL

24   QUESTIONS SHOULD BE POSED TO ANY ONE OR MORE OF THE

25   PROSPECTIVE JURORS.  I USUALLY THEN -- IF I AGREE -- IF

1    I AGREE WITH THE CAUSE CHALLENGE, I WILL THANK AND

2    EXCUSE THE JUROR AND REPLACE THAT JUROR WITH ANOTHER

3    JUROR.

4              IF I THINK THAT THE QUESTION -- THE

5    ADDITIONAL QUESTIONS THAT COUNSEL HAS IN MIND ARE

6    APPROPRIATE, I MAY ASK THEM -- OR I WILL ASK THEM.  AND

7    THEN WE'LL GO BACK TO THE SIDE AND CONTINUE THAT

8    PROCESS.

9              IF, IN THE COURSE OF THAT PROCESS, I

10   BECOME OF THE -- PERSUADED THAT IT WOULD BE MORE

11   EFFICIENT TO HAVE COUNSEL CONDUCT VOIR DIRE OF ONE OR

12   MORE JURORS, THEN I'LL PERMIT THAT TO HAPPEN.  BUT I'LL

13   DO THAT IN CONTEXT.

14             WITH RESPECT TO THE DEFENDANT'S MOTION IN

15   LIMINE NUMBER 9 ABOUT COMPELLING THE PRODUCTION OF

16   GRAND JURY TRANSCRIPTS, WELL, I THINK IT'S -- IF, BY

17   NEXT THURSDAY -- WELL, THERE'S A BACK AND FORTH HERE

18   ABOUT WHETHER THE GOVERNMENT PLANS TO CALL ANY

19   SUBSTANTIVE GRAND JURY WITNESSES.

20             MY UNDERSTANDING OF THE GOVERNMENT'S

21   POSITION IN RESPONSE TO DEFENDANT'S MOTION IN LIMINE

22   NUMBER 9 IS THAT, AT PRESENT, IT DOES NOT.

23             IS THAT CORRECT?

24        MR. ROLLINS:  THAT'S CORRECT, YOUR HONOR.

25        THE COURT:  WELL, IF THAT CHANGES, AS SOON

```
1    AS -- BY NEXT WEEK WHEN YOU IDENTIFY TO ME THE

2    WITNESSES YOU PLAN TO CALL, IF ANY OF THEM IS A PERSON

3    WHO DID TESTIFY BEFORE THE GRAND JURY, THEN I WOULD

4    DIRECT THAT THAT PERSON'S GRAND JURY TESTIMONY BE

5    FORTHWITH PRODUCED TO THE DEFENDANTS.

6              MR. SPERTUS:  YOUR HONOR --

7              THE COURT:  BUT I'M NOT PERSUADED THAT ALL

8    GRAND JURY TESTIMONY SHOULD BE PRODUCED.

9              MR. SPERTUS:  CAN I ADDRESS THAT?

10             THE COURT:  BRIEFLY.

11             MR. SPERTUS:  THE GOVERNMENT -- WE ACTUALLY

12   ATTACHED, AS EXHIBIT A IN OUR REPLY, ANOTHER CASE

13   BEFORE YOUR HONOR.  THE GOVERNMENT ADVANCED ARGUMENTS

14   FOR THE RELEASE THAT APPLY STRONGER HERE.

15                  IN PARTICULAR, BY DEFINITION, THE

16   UNIVERSE OF TESTIMONY IS MATERIAL TO THIS CASE.  LET'S

17   ASSUME THE GOVERNMENT PROPERLY USED THE GRAND JURY.

18   HOW CAN IT BE THAT THEY CAN NOW, ON THE EVE OF TRIAL,

19   WITHHOLD THE TRANSCRIPTS THAT UNDERLIE THE INDICTMENT?

20                  AND, IN PARTICULAR, IT'S THE

21   BRADY/GIGLIO -- IT'S NOT JUST JENCKS.  IT'S THE FACT

22   THAT -- I CREATED THE ANALOGY.  OFFICER "A" TESTIFIES

23   THAT THE LIGHT WAS GREEN.  HOW CAN THAT NOT BE MATERIAL

24   TO THE DEFENSE IF, AT TRIAL, ANOTHER PERSON SAYS THE

25   LIGHT WAS RED?
```

```
1              THE COURT:  THAT'S A DIFFERENT ISSUE THOUGH.

2     THAT'S AN ISSUE OF BRADY.  AND THAT'S AN ISSUE OF

3     WHETHER THE GOVERNMENT IS IMPROPERLY WITHHOLDING THE

4     GRAND JURY TESTIMONY.

5              MR. SPERTUS:  RIGHT.

6              AND WE SUBMIT, IN LIGHT OF THE BALANCING,

7     THE PARTICULARIZED NEED ARTICULATED BY THE DEFENSE IS,

8     WE'RE ON THE EVE OF TRIAL.  AND AS THE GOVERNMENT IN

9     CASES BEFORE YOUR HONOR HAS ARGUED FOR THE RELEASE OF

10    TRANSCRIPTS, IT'S JUST THE GENERAL POOL OF DISCOVERY

11    MATERIAL TO THE DEFENSE.  THEY PRESENTED AN INDICTMENT

12    THAT LED TO DR. SHIH'S CHARGE.

13             THE COURT:  I UNDERSTAND.

14             WHAT'S THE DOWNSIDE OF PRESENTING MORE

15    THAN -- WHAT'S THE -- WHY WOULD IT BE INAPPROPRIATE TO

16    PRODUCE THIS TESTIMONY, IF IT'S NOT MADE PUBLIC?

17             MR. ROLLINS:  GRAND JURY SECRECY IS THE

18    FOUNDATION OF OUR CRIMINAL JUSTICE SYSTEM, YOUR HONOR.

19             AND AS WE'VE LAID OUT IN OUR PAPERS,

20    THERE'S JUST NO AUTHORITY THAT SUPPORTS THE POSITION

21    THAT MR. SPERTUS JUST ADVANCED.

22             AND WHEN HE'S TALKING ABOUT THOSE OTHER

23    CASES, MY GUESS -- I HAVEN'T LOOKED AT THOSE.  MY GUESS

24    IS, ALL OF THOSE INVOLVED TESTIFYING TRIAL WITNESSES.

25    SO HE'S TRYING TO CONFUSE THE COURT BY SUGGESTING THAT,
```

1    IN THIS CASE, WE DIDN'T TAKE ACTIONS THAT WE WOULD

2    OTHERWISE TAKE IN DIFFERENT CASES.  AND I DON'T KNOW

3    THAT BECAUSE I HAVEN'T LOOKED AT HIS -- AT WHAT HE'S

4    CITING.

5                BUT IF WE WERE TO HAVE TO CALL A

6    TESTIFYING WITNESS IN THIS CASE, WE WOULD THEN PRODUCE

7    THE GRAND JURY TRANSCRIPTS.

8                BUT THE NEED FOR SECRECY DOESN'T

9    EVAPORATE AFTER AN INDICTMENT IS RETURNED.

10               THE PURPOSE OF HAVING A SECRET GRAND JURY

11   IS SO THAT WITNESSES ARE ENCOURAGED TO TESTIFY CANDIDLY

12   AND HONESTLY, AND THEY DON'T HAVE TO FEAR REPRISAL.

13               AND THE ONE OTHER POINT, YOUR HONOR, THAT

14   I WOULD JUST MAKE IS THAT, IN THIS CASE, THERE'S JUST

15   NOT -- AGAIN, NO SUBSTANTIVE TESTIMONY AT ALL GOING TO

16   BE OFFERED AT TRIAL.

17            THE COURT:  THERE WERE PREVIOUSLY

18   CO-DEFENDANTS IN THIS CASE; CORRECT?

19            MR. ROLLINS:  THAT'S RIGHT, YOUR HONOR.

20            THE COURT:  SO IN EVALUATING -- I DON'T KNOW

21   CAUSE I HAVEN'T REVIEWED IT.  BUT IF, HYPOTHETICALLY,

22   THERE WERE TESTIMONY IN THE GRAND JURY THAT INVOLVED A

23   CO-DEFENDANT, AND IF THAT TESTIMONY -- HAS ALL THE

24   TESTIMONY BEEN REVIEWED FOR PURPOSES OF BRADY AND OTHER

25   REQUIRED BASES FOR PRODUCTION?

1          MR. ROLLINS:  YES, YOUR HONOR.  THE GOVERNMENT

2     DOES THAT AS A MATTER OF COURSE IN EVERY CASE.

3               JUST ONE OTHER LAST POINT, YOUR HONOR.

4     THE FORM OF TESTIMONY IN THE GRAND JURY DOES NOT EVEN

5     HAVE TO MIRROR WHAT THE GOVERNMENT ACTUALLY PRESENTS AT

6     TRIAL.  SO YOU CAN HAVE A TOTALLY SEPARATE WITNESS

7     GIVING A SUMMARY, AND THEN THE EVIDENCE AT TRIAL BE

8     COMPLETELY DIFFERENT, INTRODUCED THROUGH COMPLETELY

9     DIFFERENT WITNESSES.  SO I JUST DON'T THINK THAT ANY OF

10    THE AUTHORITY THEY'VE CITED APPLIES HERE.

11          THE COURT:  WELL, AT THIS POINT, I'M NOT

12    PERSUADED THAT THE MOTION IN LIMINE SHOULD BE GRANTED

13    AS A BLANKET MATTER.  AND THAT, INSTEAD, IT'S WHAT I

14    STATED.  IF IT'S DETERMINED THAT ANY PERSON WHO

15    TESTIFIED BEFORE THE GRAND JURY WILL BE CALLED AS A

16    TRIAL WITNESS, IMMEDIATELY UPON THAT DETERMINATION

17    BEING MADE, THE TESTIMONY OF THAT GRAND JURY WITNESS --

18    THE GRAND JURY TESTIMONY OF THAT PERSON SHOULD BE

19    PROVIDED TO THE DEFENSE UNDER AN APPROPRIATE PROTECTIVE

20    ORDER.

21          MR. SPERTUS:  YOUR HONOR, JUST TO RESPOND TO

22    WHAT MR. ROLLINS JUST STATED BECAUSE THIS WILL BE AN

23    APPELLATE ISSUE.

24               IF A WITNESS HAS TESTIFIED ONE WAY IN

25    FRONT OF A GRAND JURY AND AN INDICTMENT WAS RETURNED,

1    AND SEPARATE WITNESSES TESTIFY DIFFERENTLY AT TRIAL,

2    THE GOVERNMENT DOES HAVE A BRADY OBLIGATION TO TURN

3    OVER THOSE TRANSCRIPTS.  THEY'VE JUST STATED ON THE

4    RECORD THEY DO NOT.  WE ARE DISPUTING WHAT BRADY

5    REQUIRES.  AND I JUST WANT TO MEMORIALIZE THAT, WHAT

6    MR. ROLLINS JUST SAID IS LEGALLY INCORRECT.

7            MR. ROLLINS:  JUST TOTALLY DISAGREE WITH THAT,

8    YOUR HONOR, BUT --

9            THE COURT:  AT THIS POINT, I'LL HAVE YOU AGREE

10   TO DISAGREE.

11                NOW, ON RECIPROCAL DISCOVERY --

12   GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY, I

13   UNDERSTAND THE DEFENSE POSITION THAT THE DEFENSE

14   CONTENDS THAT, BECAUSE THE GOVERNMENT HASN'T FULFILLED

15   ITS OBLIGATIONS ON DISCOVERY, THAT THE DEFENDANT IS NOT

16   OBLIGATED TO PROVIDE RECIPROCAL DISCOVERY, IN PART

17   BECAUSE THE DEFENSE SAYS IT DOESN'T KNOW ALL OF THE

18   POSITIONS THAT MAY BE TAKEN BY THE GOVERNMENT

19   WITNESSES.

20            BUT I THINK, AGAIN -- LET ME HEAR FROM

21   YOU.  WHO IS GOING TO ADDRESS THIS?

22            MR. SPERTUS?

23            MR. SPERTUS:  YOUR HONOR, WE ARE AWARE OF THE

24   DEFENSE DISCOVERY OBLIGATIONS.

25            OUR CONFUSION ABOUT WHAT THE GOVERNMENT'S

1    CASE WILL LOOK LIKE IS VERY GENUINE.  AND THE -- WE

2    WILL COMPILE AND PRODUCE, BEFORE TRIAL, ANY DISCOVERY

3    THAT THE DEFENSE WILL INTRODUCE AT TRIAL EITHER THROUGH

4    CROSS-EXAMINATION OR THROUGH OUR CASE IN CHIEF.

5                    FOR EXAMPLE, IF THE THREE FLAGSHIP

6    EXPERTS THAT I'VE IDENTIFIED, SANDISON, MATTIS AND

7    WESTBY, ARE ALLOWED TO TESTIFY ABOUT THE CHINA EFFORTS

8    TO STEAL U.S. TECHNOLOGY, WE'LL PROBABLY HAVE EXPERTS

9    THAT WE WILL IDENTIFY TO REFUTE THEIR TESTIMONY.

10                   IF THEY'RE EXCLUDED, WE WILL NOT HAVE

11   THOSE EXPERTS.

12                   THE DEFENSE IS REACTIVE TO THE

13   GOVERNMENT'S CASE.  WE DO NOT PLAN, RIGHT NOW TO DATE,

14   TO CALL A TECHNOLOGY EXPERT.  BUT IF THE GOVERNMENT'S

15   ACTUAL OPINIONS, ONCE WE LEARN WHAT THEY ARE THROUGH

16   ITS SCIENTISTS, DIFFER FROM CORRECT, WE WILL CALL OUR

17   OWN.

18                   AND WE ARE MINDFUL OF OUR OBLIGATIONS AND

19   WILL COMPLY.

20             THE COURT:  WHAT ABOUT ANY DISCOVERY

21   OBLIGATIONS THAT YOU HAVE THAT ARE -- DO YOU CONTEND

22   THERE ARE NO DISCOVERY OBLIGATIONS THAT YOU HAVE, OTHER

23   THAN THE POSSIBILITY AS TO THE DEFENSE RESPONSE TO

24   EXPERTS?

25             MR. SPERTUS:  NO.  WE ARE PRESENTLY COMPILING

1   DISCOVERY THAT WE WILL PRODUCE IN ADVANCE OF TRIAL NO

2   MATTER WHAT.

3           THE COURT:  IS THERE A REASON THAT CAN'T BE

4   PRODUCED IN THE NEXT 10 DAYS?

5           MR. SPERTUS:  JUST THE DIFFICULTY OF COMPILING

6   IT.

7               I WANT TO EMPHASIZE TO THE COURT, WE

8   REALLY HAD - AND IN THE DECEMBER HEARING, I TRIED TO

9   EMPHASIZE - A STRUGGLE IDENTIFYING WHAT THE

10  GOVERNMENT'S EXHIBITS ARE.  BUT WE CAN GIVE, IN 10 DAYS

11  FROM TODAY, OUR BEST ESTIMATE OF THE TOTALITY OF THINGS

12  THAT WE THINK ARE INDISPUTABLY DEFENSE DISCOVERY

13  OBLIGATIONS.

14          THE COURT:  THANK YOU.

15              DO YOU HAVE ANY REVISED TIME ESTIMATE

16  FROM THE 20-DAY?

17          MR. SPERTUS:  YES.  I BELIEVE IT WILL GO DOWN.

18  I THINK IT DEPENDS A LARGE PART ON THE COURT'S RULINGS

19  ON THE SANDISON, MATTIS AND WESTBY CHINA TESTIMONY.

20              IN READING TEA LEAVES, I THINK THE COURT

21  RECOGNIZES THE IRRELEVANCE OF THAT TESTIMONY.  THAT

22  WILL SHORTEN, BY 10 DAYS, OUR PRESENTATION, PROBABLY.

23          THE COURT:  OKAY.  I'LL GET TO WORK ON THAT.

24              THANK YOU FOR YOUR HELP.

25          MR. HANUSZ:  IF I COULD ADDRESS A COUPLE OF

1    MATTERS?

2         THE COURT:  BRIEFLY.

3         MR. HANUSZ:  BRIEFLY, YOUR HONOR.

4              AS TO NUMBER 7, THE 404 MOTION, THE

5    GOVERNMENT HAS REPRESENTED THAT IT HAS NO 404(B)

6    EVIDENCE.  HOWEVER, THE GOVERNMENT HAS REPRESENTED THAT

7    IT INTENDS TO INTRODUCE MANY FACTS AND ALLEGATIONS THAT

8    ARE NOT IN THE INDICTMENT.

9              WE HAVE NO VISIBILITY AS TO WHAT THOSE

10   ALLEGATIONS ARE.

11             THE GOVERNMENT CONTENDS THAT THEY ARE

12   INEXTRICABLY INTERTWINED WITH THE ALLEGATIONS OF THE

13   INDICTMENT.  BUT THIS IS PART AND PARCEL OF THE ISSUES

14   THAT WE HAVE HERE.  THAT WE HAVE NO VISIBILITY.

15             SO TO THE EXTENT THAT THE GOVERNMENT

16   SEEKS TO INTRODUCE EVIDENCE AND ALLEGATIONS THAT ARE

17   NOT IN THE INDICTMENT, AND JUST CALLING THEM

18   "INEXTRICABLY INTERTWINED," I THINK THE COURT SHOULD

19   EXCLUDE THEM FOR LACK OF NOTICE.  404 EXISTS FOR A

20   REASON.  YOU CAN'T JUST GET AROUND IT BY SAYING TWO

21   MAGIC WORDS.

22        THE COURT:  I UNDERSTAND.

23             I'M NOT -- I THINK THAT THE 404(B) ISSUE

24   WAS PRESENTED LARGELY FOR PURPOSES OF SPECIFIC ACTS --

25   PRIOR ACTS WHOSE INTRODUCTION WILL BE SOUGHT.  AND I

1   UNDERSTOOD THE GOVERNMENT TO BE DESCRIBING EVIDENCE OF

2   E-MAILS AND OTHER COMMUNICATIONS THAT IT CONTENDS ARE

3   ADMISSIBLE IN THIS ACTION THAT MIGHT REFLECT THAT.

4           MR. SPERTUS:  RIGHT.

5           THE COURT:  BUT NOT REFLECTING IT SIMPLY UNDER

6   404(B).

7           MR. HANUSZ:  THE GOVERNMENT'S POSITION IS, IT

8   WILL PRESENT EVIDENCE OF MANY ACTS AND ALLEGATIONS THAT

9   ARE NOT REFERENCED IN THE INDICTMENT, BUT WILL DO SO

10  UNDER THE RUBRIC THAT IT'S INEXTRICABLY INTERTWINED.

11  AND, THEREFORE, IT DOESN'T HAVE TO GIVE NOTICE.

12           I THINK WHAT WE'RE GOING TO BE FACED

13  WITH, YOUR HONOR, IS A MINI-TRIAL ON EVERY ACT -- I

14  DON'T MEAN TO OVERSTATE IT, YOUR HONOR.  BUT IF AN ACT

15  IS REFERENCED THAT'S NOT IN THE INDICTMENT, THERE'S A

16  404(B) OBJECTION, THERE'S A LENGTHY -- THAT'S JUST

17  WHERE WE ARE.  WE HAVE NO NOTICE, AND THAT'S WHAT WE'RE

18  ASKING FOR, YOUR HONOR.

19          THE COURT:  IS THAT -- IS THERE ANYTHING

20  ELSE --

21          MR. HANUSZ:  THE CIPA MOTION IS STILL

22  OUTSTANDING AS WELL.

23          THE COURT:  IT IS.  I'LL GET ON THAT.

24           WHAT'S THE RESPONSE ON 404(B), BRIEFLY?

25          MR. HUGHES:  BRIEFLY, YOUR HONOR.

```
1        AS THE GOVERNMENT MADE CLEAR IN ITS

2   PAPERS, WE, AT THIS TIME -- AT THIS TIME, THE

3   GOVERNMENT DOES NOT INTEND TO INTRODUCE EVIDENCE OF ANY

4   EXTRANEOUS OTHER ACTS.

5            THE EVIDENCE THE GOVERNMENT WOULD SEEK TO

6   INTRODUCE WOULD BE DIRECT EVIDENCE OF THE CONSPIRACY,

7   ACTS THAT WERE UNDERTAKEN IN FURTHERANCE OF THE

8   CONSPIRACY OR ACTS THAT PROVIDE CONTEXT TO THE

9   UNDERLYING CRIMINAL CHARGES HERE.

10            THE STEREOTYPICAL EVIDENCE THAT IS

11   CONSIDERED INEXTRICABLY INTERTWINED, THERE'S NO RULE

12   404 NOTICE REQUIREMENT FOR THAT SIMPLY BECAUSE IT IS

13   NOT RULE 404 EVIDENCE.  IT IS CONSIDERED INTERTWINED

14   WITH THE OPERATIVE CRIMINAL CONDUCT.

15        THE COURT:  IF THE GOVERNMENT, GIVEN THE

16   CONVERSATIONS -- THE COLLOQUIES WE'VE HAD EARLIER,

17   INCLUDING WITH MR. ROLLINS, IS GOING TO BE IN THE

18   PROCESS OF DEVELOPING AN EFFORT TO GENERATE AN

19   EXHIBIT -- I MEAN, A SERIES -- DOCUMENTS THAT WOULD

20   REFLECT, IN SOME MANNER, THE EXHIBITS WHOSE ADMISSION

21   THE GOVERNMENT WILL SEEK AT TRIAL, WILL THAT COVER

22   THESE SAME ISSUES TO WHICH YOU'RE REFERRING?

23        MR. HUGHES:  I WOULD THINK THAT THE -- THE

24   GOVERNMENT'S EXHIBIT LIST, WHICH IT HAS DISCLOSED, IN

25   LARGE MEASURE ADDRESSES THE E-MAILS THAT WE WILL BE
```

1    SEEKING TO INTRODUCE, THE EVIDENCE THAT WE WOULD BE

2    SEEKING TO INTRODUCE.  AND SO WILL IT COVER ALL

3    EVIDENCE THAT IS NOT SPECIFICALLY ARTICULATED IN THE

4    INDICTMENT?  NO.  BUT IT HAS PROVIDED A LARGE VOLUME OF

5    THAT EVIDENCE TO THE DEFENSE.

6            THE COURT:  WELL, THEN I THINK THAT WOULD BE

7    ANOTHER ISSUE WHEN THESE -- WHEN I GET TO -- WELL, THE

8    POINT I'M MAKING IS THIS:

9            WE DISCUSSED THIS AT LENGTH EARLIER.  I

10   NEED TO SEE WHAT THE EXHIBITS ARE THAT THE GOVERNMENT

11   SEEKS TO OFFER OR SAMPLING OF THEM, EXEMPLARS.

12           I NEED TO HEAR FROM THE DEFENDANT AS TO

13   WHY THERE'S -- IS THERE AN OBJECTION TO THOSE?  AND, IF

14   SO, ON WHAT BASIS?

15           TO THE EXTENT THAT THERE'S AN EXHIBIT AND

16   THERE'S AN OBJECTION ON RELEVANCE, 402, 403, WHATEVER

17   IT IS, I THINK IT'S GOING TO OVERLAP WITH THIS 402(B)

18   ISSUE BECAUSE YOU'LL CONTEND THAT THIS SHOULDN'T COME

19   IN.

20           THAT'S NOT TO SAY THAT THE GOVERNMENT

21   MIGHT NOT SEEK TO OFFER EVIDENCE OTHER THAN THROUGH

22   EXHIBITS.  BUT I THINK THAT WOULD BE A GOOD WAY TO GET

23   THIS ISSUE FRAMED.

24           MR. HANUSZ:  I THINK THERE ARE TWO ISSUES WITH

25   THAT, YOUR HONOR.  IT'S JUST THE NOTICE ISSUE.

1          THE OTHER ISSUE IS, THE GOVERNMENT IS

2     STILL NOT MAKING ANY REPRESENTATIONS ABOUT THE EXHIBIT

3     LIST AND WHAT IT WILL INCLUDE AND WHAT IT WON'T

4     INCLUDE.  SO WITH THAT CAVEAT, WE'LL DO OUR BEST, YOUR

5     HONOR.

6               THE COURT:  THAT'S ALL I CAN ASK YOU TO DO.

7               THE NEXT HEARING IS SET FOR APRIL 18.

8          MS. HEINZ:  YES, YOUR HONOR.

9               CAN I BE HEARD ON ONE OTHER MATTER?

10              THE COURT:  BRIEFLY.  WE'VE BEEN GOING ON FOR

11    MORE THAN TWO-AND-A-HALF HOURS.

12         MS. HEINZ:  AS YOUR HONOR KNOWS, WE STILL

13    DON'T HAVE A RULING ON THE PENDING CIPA SECTION 4

14    MOTION.

15              IN ADDITION, YOUR HONOR, THE DEFENSE HAS

16    JUST TOLD US THAT THEY WILL BE COMPILING AND PRODUCING

17    DISCOVERY, MAYBE, IN 10 DAYS.  THE GOVERNMENT SIMPLY

18    CANNOT BE READY TO GO TO TRIAL ON THE CURRENT TRIAL

19    DATE UNDER THIS SCENARIO.

20              WITHOUT A RULING ON THE CIPA SECTION 4

21    MOTION, WE CAN'T GO FORWARD.  WE REALLY CAN'T.

22              AND DEPENDING ON YOUR COURT'S RULING,

23    IT'S GOING TO TAKE TIME TO MANAGE IT AND TO CONSIDER

24    THE GOVERNMENT'S OPTIONS.

25              IN ADDITION, A MONTH BEFORE TRIAL ON A

1   TRIAL OF THIS LENGTH AND THIS MAGNITUDE, WE CAN'T BE

2   EXPECTED TO ABSORB AND TO UNDERSTAND THIS LATE

3   RECIPROCAL DISCOVERY FROM THE DEFENSE.  SO WE WILL NEED

4   A TRIAL CONTINUANCE.

5          THE COURT:  I'LL EVALUATE THAT WITH YOU AT THE

6   NEXT HEARING, BOTH ISSUES.

7              ANYTHING YOU WANT TO ADD BRIEFLY ON THIS?

8          MR. SPERTUS:  OBVIOUSLY, WE OPPOSE A

9   CONTINUANCE.

10             AND I JUST DO WANT TO FLAG FOR THE COURT

11  HOW WE ARE TRYING TO STAY OUT OF THE MUD WITH THESE

12  COMMENTS THE GOVERNMENT MAKES.  BUT IN THE LAST FEW

13  WEEKS, THEY HAVE PRODUCED 150,000 PAGES OF MATERIAL TO

14  THE DEFENSE.  SO I CAN JUST ASSURE THE COURT, WE'RE

15  TRYING NOT TO COMPLAIN ABOUT EVERY ISSUE.  BUT OUR

16  PRODUCTION WILL BE SO SIMPLE.  IT'S LITERALLY

17  NON-CONTROVERSIAL SIMPLE STUFF.

18         THE COURT:  OKAY.  DO YOUR BEST.  THANK YOU

19  FOR YOUR HELP TODAY.

20             SEE YOU ON THE 18TH.

21             **(END OF PROCEEDINGS)**

22

23

24

25

## CERTIFICATE OF OFFICIAL REPORTER

COUNTY OF LOS ANGELES          )
                               )
STATE OF CALIFORNIA            )

                I, ALEXANDER T. JOKO, FEDERAL OFFICIAL COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE, THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER, AND THAT THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

DATE:  APRIL 11, 2019


                /S/ ALEXANDER T. JOKO
                _____
                ALEXANDER T. JOKO, CSR NO. 12272
                FEDERAL OFFICIAL COURT REPORTER

< DATES >
APRIL 11, 2019
105:28
APRIL 18 103:7
APRIL 2011
57:24, 58:3
APRIL 4, 2019
1:31, 4:1
APRIL 4TH 71:6,
71:12, 71:21
DECEMBER 21,
2018 76:7
DECEMBER 6,
2018, DECEMBER
21, 2018,
FEBRUARY 14,
2019 65:17
JANUARY 2013
57:25, 58:3
MARCH 14, 2019
65:18
"FOUR 12:1
/S/ 105:33


< 1 >
1 5:15, 10:5,
10:8, 10:10,
10:25, 11:8,
20:11, 20:21,
20:22, 21:1,
21:5, 21:21,
38:19, 51:8,
53:4, 64:19,
74:16, 79:17
1.3 40:21
1.4 40:13
10 70:3, 70:6,
98:4, 98:10,
98:22, 103:17
10,000 49:22
106 54:18
1200 2:40
12272 1:39,
105:35
12TH 2:7
13 51:8
13TH 84:17
150 35:5,
35:16, 35:17,

35:23, 36:13,
36:20, 37:18
150,000 104:13
1500 2:24
15TH 2:15
16 71:24, 72:1,
84:6, 84:25,
87:1, 88:10
16(A)(1)(G
65:12
16-PAGE 76:4
18TH 104:20
190 43:23
1990 3:8, 3:15,
3:22


< 2 >
2 8:12, 8:13,
9:19, 9:20,
9:23, 10:7,
16:18, 20:11,
21:5, 38:22,
65:5, 71:1,
71:4, 79:2,
79:21
2. 9:19, 79:16
20-DAY 52:9,
98:16
200 43:25,
44:10
200-PAGE 47:15
27 51:8
28 105:14


< 3 >
3 4:9, 5:25,
10:2, 10:9,
16:18, 21:2,
29:17, 39:18,
71:4, 73:15
3,000 85:4
30-SECOND 60:4
300 2:31
312 2:6, 2:14,
2:23, 2:39,
64:19
314 72:13
318. 29:14

350 1:41
362 8:10, 10:3


< 4 >
4 16:18, 64:13,
103:13, 103:20
4. 5:25, 21:3,
73:16
402 102:16
402(B 102:17
403 102:16
404 99:4,
99:19, 101:12,
101:13
404(B 99:5,
99:23, 100:6,
100:16, 100:24
4311 1:41


< 5 >
5 15:25, 20:20,
21:2, 29:14,
39:7, 39:14,
54:10
5" 11:19
5. 5:21, 11:17
50 70:6


< 6 >
6 56:17, 90:8
64 51:8


< 7 >
7 90:13, 99:4
705 3:9, 3:16,
3:23
7211 2:32
753 105:14


< 8 >
8 90:17
807 59:10
807. 58:25
8:30 1:31, 4:4

< 9 >
9 91:15, 91:22
90 44:10
90012 1:42,
2:8, 2:25,
2:33, 2:41
90012-4700 2:16
90025 3:10,
3:17, 3:24
902 29:19
9200 44:10


< A >
A. 1:3, 2:11
ABLE 41:5,
44:11, 45:9,
46:5
ABOVE-ENTITLED
105:20
ABSOLUTELY
19:20, 86:25
ABSORB 104:2
ABUNDANTLY 67:1
ACCEPTABLE
29:5, 37:12
ACCEPTED 62:23
ACCOMPLISH
47:6, 73:6
ACCORDING 50:4
ACCOUNT 57:9,
57:12, 57:21,
57:22
ACROSS 9:1,
40:7
ACT 100:13,
100:14
ACTED 8:22
ACTION 75:2,
100:3
ACTIONS 63:18,
63:20, 94:1
ACTIVELY 87:21
ACTS 78:24,
90:13, 99:24,
99:25, 100:8,
101:4, 101:7,
101:8
ACTUAL 43:20,

55:16, 72:1,
72:6, 97:15
ACTUALLY 31:3,
39:25, 47:21,
52:16, 52:19,
57:20, 58:16,
67:17, 74:4,
75:19, 77:12,
83:19, 86:2,
86:17, 92:11,
95:5
ADD 15:20,
22:19, 22:24,
56:8, 76:17,
104:7
ADDED 79:25
ADDITION
103:15, 103:25
ADDITIONAL
14:11, 14:14,
41:24, 54:21,
65:16, 90:23,
91:5
ADDITIONALLY
62:16, 83:7
ADDRESS 9:14,
15:22, 15:25,
16:4, 18:13,
24:11, 30:10,
34:9, 34:23,
60:1, 66:12,
73:17, 75:23,
82:15, 92:9,
96:21, 98:25
ADDRESSED 11:3
ADDRESSES
101:25
ADEQUACY 65:14
ADEQUATE 72:15,
73:19, 73:25
ADEQUATELY
72:16
ADMISSIBILITY
40:13, 40:24,
41:7, 41:13,
42:10, 42:13,
42:15, 44:18,
45:2, 46:11,
48:24, 56:18,
66:10

ADMISSIBLE
11:15, 48:17,
48:22, 49:10,
51:24, 58:24,
100:3
ADMISSION
58:14, 101:20
ADMIT 19:21,
29:17, 32:20,
39:18, 40:20,
41:15, 44:14,
47:10, 50:25,
54:21, 54:22,
82:7
ADMITTED 14:8,
26:6, 26:7,
28:5, 29:23,
39:23, 62:23,
68:20, 80:7
ADMITTING 59:15
ADOPTIVE 58:14
ADVANCE 7:11,
17:7, 45:6,
45:10, 45:21,
47:15, 98:1
ADVANCED 6:10,
92:13, 93:21
AFAR 19:18
AFFAIRS 62:8
AFFECT 15:4
AGENCY 67:12
AGENT 70:14
AGENTS 48:16,
69:2, 69:10,
80:21, 80:25,
84:8
AGREE 6:8,
10:22, 22:3,
28:23, 38:18,
42:19, 45:7,
49:7, 50:4,
51:16, 54:25,
69:16, 81:22,
90:25, 91:1,
96:9
AGREED 45:2,
71:19
AGREEING 88:13
AGREES 11:6,
11:10, 11:23,

12:17, 15:3,
18:17, 35:13,
50:22
AHEAD 23:1,
45:14, 47:19,
52:14
AJ_CSR@YAHOO.CO
M 1:43
AL 1:13
ALEXANDER 1:39,
105:8, 105:33,
105:35
ALIASES 12:7
ALLEGATION 9:19
ALLEGATIONS
99:7, 99:10,
99:12, 99:16,
100:8
ALLEGED 11:25,
74:16
ALLOW 7:5, 16:3
ALLOWED 13:25,
22:10, 97:7
ALLUDED 16:5
ALREADY 28:20,
66:2, 66:5,
72:18, 87:16,
90:9
ALTERNATIVE
62:6
AMONG 16:6,
17:14, 58:15,
74:17
AMOUNT 6:20
AMPLIFIER 75:13
ANALOGOUS 6:10,
11:10
ANALOGY 17:18,
35:3, 75:25,
92:22
ANALYSIS 69:21,
81:24
ANALYZED 35:15
AND/OR 7:8,
11:23, 39:3,
47:9, 79:14
ANGELES 1:29,
1:42, 2:8,
2:16, 2:25,
2:31, 2:33,

2:41, 3:10,
3:17, 3:24,
4:1, 105:3
ANN 2:3
ANSWER 25:10
ANTI-TERRORISM
27:10, 28:2
ANTICIPATE
24:19, 66:22,
69:10, 86:10,
87:18
ANTICIPATED
25:10
ANTICIPATES
74:23
APPARENTLY
60:12
APPEAR 67:4
APPEARANCES
2:1, 3:1, 4:11
APPEARS 80:6
APPELLATE 95:23
APPLICATION
55:17
APPLIED 83:4
APPLIES 7:9,
29:13, 95:10
APPLY 27:11,
36:14, 54:17,
92:14
APPRECIATE
48:4, 48:5,
50:12, 60:7
APPROPRIATE
6:2, 17:6,
17:8, 25:4,
68:14, 72:7,
91:6, 95:19
APPROVED 17:7
APPROXIMATELY
40:13, 43:25
APPROXIMATION
44:3
AREA 74:10,
74:21, 77:22,
87:17
AREAS 73:19,
74:2
ARGUE 16:3,
16:12, 88:18

ARGUED 13:24,
66:10, 93:9
ARGUMENT 25:14,
32:18, 39:3,
48:25, 53:18,
58:11, 63:16,
63:18, 64:2,
68:21, 73:22
ARGUMENTS
41:13, 48:23,
92:13
ARISEN 49:6
ARM 77:19
ARMY 77:20
AROUND 99:20
ARRAY 79:5
ARREST 55:10,
55:19
ARTICULATED
93:7, 102:3
ASIDE 23:2,
23:8, 33:13
ASSIST 74:21
ASSISTANCE
62:15, 62:18
ASSOCIATED 28:6
ASSUME 92:17
ASSURE 104:14
ATTACH 26:2
ATTACHED 72:13,
92:12
ATTEMPT 10:19,
62:2, 62:14,
63:11
ATTORNEY 2:4,
2:12, 2:20,
2:29, 2:37,
69:2, 90:17
ATTORNEYS 47:24
ATTRIBUTES
58:10
AUSA 2:4, 2:12,
2:20, 2:29,
2:37, 34:23
AUTHENTICATE
41:23
AUTHENTICITY
40:24, 41:6,
41:21, 42:6,
42:13

AUTHORITIES
18:20, 62:19,
62:20
AUTHORITY
93:20, 95:10
AVAILABLE 82:10
AVOID 40:6
AWARE 45:15,
81:21, 85:24,
96:23
AWAY 52:7

< B >
BACK 14:7,
38:25, 51:12,
69:8, 78:6,
80:4, 82:24,
91:7, 91:17
BALANCING 65:2,
93:6
BALLPARK 50:1,
70:7
BANK 56:19,
56:21, 57:2,
57:6, 57:8,
57:10, 57:11,
58:9, 58:10,
59:1, 59:6,
59:7, 59:24
BANKING 61:21
BANKS 57:8,
64:4
BARE 43:1
BASED 57:13,
67:18, 68:9,
68:23, 80:17,
81:14, 86:9,
90:2
BASES 27:8,
27:10, 27:11,
27:14, 94:25
BASICALLY 13:24
BASICS 47:1
BASIS 6:12,
27:5, 31:16,
38:6, 49:12,
83:4, 102:14
BATES 43:13,
43:16, 43:17,

43:21, 46:17,
46:18, 47:17,
47:25, 48:14,
50:5, 52:22,
52:24, 53:2,
53:13
BE. 24:20
BECOME 91:10
BECOMES 8:1
BEGIN 9:17
BEHALF 4:14,
4:16, 4:18,
4:20, 4:22,
4:26
BELIEVE 10:6,
11:2, 13:25,
34:13, 35:2,
36:17, 43:19,
55:6, 57:13,
62:17, 72:19,
86:17, 89:14,
98:17
BELIEVES 47:13,
47:14, 73:19
BERGER 65:9,
80:24, 81:2,
81:4, 85:16,
85:18
BEST 23:19,
51:3, 51:20,
59:15, 85:19,
98:11, 103:4,
104:18
BETTER 87:25
BEYOND 8:14,
42:12, 79:12
BIG 56:12
BINDER 47:23
BIT 27:6,
36:24, 40:19,
78:6, 87:23
BLANKET 95:13
BOLSTER 22:9,
23:21
BOOK 43:6,
44:12
BOOKS 37:9,
37:10, 44:12,
45:10
BOX 90:21

BRADY 93:2,
94:24, 96:2,
96:4
BRADY/GIGLIO
92:21
BRANCH 62:4
BREAK 57:7
BRIEF 26:11,
39:15, 63:17
BRIEFED 28:20,
88:25
BRIEFING 28:19,
58:6, 61:12
BRIEFLY 14:21,
22:25, 23:9,
60:2, 61:15,
70:18, 92:10,
99:2, 99:3,
100:24, 100:25,
103:10, 104:7
BRIEFS 86:9,
89:1
BRING 10:16
BRITISH 57:13,
60:18, 61:17,
61:21, 62:5,
64:4
BROAD 88:9
BROADER 38:8,
79:18
BUILD 78:19
BUILDING 63:2,
63:4
BUNCH 78:5
BUNDY 3:8,
3:15, 3:22
BURDENSOME
47:21
BUSINESS 29:17,
40:20, 40:25,
48:25, 53:19,
88:2

< C >
C. 2:28
C.V. 72:15
C.V.'S 73:24
CA 1:42, 2:8,
2:16, 2:25,

2:33, 2:41,
3:10, 3:17,
3:24
CALCULATIONS
90:2
CALIFORNIA 1:2,
1:29, 4:1,
105:5, 105:12
CALL 12:1,
28:9, 40:6,
81:18, 91:18,
92:2, 94:5,
97:14, 97:16
CALLED 31:19,
31:25, 39:16,
95:15
CALLING 99:17
CAMERA 89:12
CANADA 60:23
CANDIDLY 40:2,
44:2, 44:15,
94:11
CAR 35:15,
35:22, 35:23,
36:1, 36:4,
36:12, 36:20,
37:18, 38:15,
76:1, 82:20,
85:13
CARLOS 84:19,
85:19
CARS 35:4,
35:12, 35:20,
36:2
CASES 18:23,
41:1, 62:11,
62:15, 69:13,
75:9, 93:9,
93:23, 94:2
CATEGORIES
50:11, 50:14,
51:7, 52:16,
52:20, 53:12,
54:5
CATEGORIZED
46:12
CATEGORY 14:6,
39:22, 43:7,
45:12, 45:14,
52:19, 53:3,

77:14, 82:3,
84:11
CAUSE 10:20,
50:12, 90:23,
91:1, 94:21
CAUSED 8:15
CAUSING 8:21
CAUTIOUS 67:1
CAVEAT 103:4
CCL 9:22, 13:1,
22:4, 27:6,
27:9, 27:12,
27:25, 31:2,
31:3, 31:5,
34:3, 35:7,
35:10
CENTERED 37:11
CENTRAL 1:2,
105:12
CERTAIN 7:15,
9:7, 12:22,
17:4, 34:11,
37:22, 42:8,
56:18, 56:19,
56:20, 69:1,
73:4, 74:7
CERTAINLY
11:22, 12:8,
40:9, 45:17,
64:2, 67:3,
85:24, 87:4
CERTIFICATE
105:1
CERTIFIED
29:17, 39:18
CERTIFY 105:14
CGTC 84:22
CHALLENGE 5:15,
16:11, 22:10,
34:1, 37:8,
38:5, 38:22,
41:19, 91:1
CHALLENGED 6:18
CHALLENGES
38:20
CHALLENGING
21:24
CHANGE 46:21
CHANGED 20:25
CHANGES 91:25

CHAPTER. 10:21
CHARGE 6:11,
9:23, 79:17,
93:12
CHARGED 10:7,
62:12, 78:23,
79:3
CHARGES 10:10,
22:6, 101:9
CHARTERED
57:10, 60:19,
61:19, 62:3,
62:4, 62:5,
63:12, 63:13
CHEMIST 84:2
CHEN 57:19
CHENGDU 9:23,
11:24
CHIEF 11:12,
17:18, 97:4
CHILD 17:20
CHINA 7:24,
8:18, 16:16,
18:5, 36:5,
62:21, 62:25,
73:6, 73:11,
74:18, 76:2,
77:8, 77:20,
78:7, 78:10,
79:1, 80:2,
83:6, 97:7,
98:19
CHINESE 62:12,
73:14, 77:12
CHIPS 78:10
CHRISTA 3:20,
4:26
CIPA 100:21,
103:13, 103:20
CIRCUIT 19:2,
40:25, 41:1,
61:1
CIRCUITS 73:5
CIRCUMSTANCES
62:9
CIRCUMSTANTIAL
59:11
CIRCUMVENTING
20:5
CITED 95:10

CITES 19:2
CITING 94:4
CIVIL 56:5
CLAIM 72:16,
88:6
CLAIMS 23:4,
23:5
CLARIFICATION
9:18, 30:18,
30:24, 61:23
CLARIFIED 40:4
CLARIFIES 36:24
CLARIFY 44:6
CLEAR 15:8,
24:2, 26:18,
31:18, 51:21,
52:24, 62:1,
64:9, 77:7,
79:22, 89:4,
101:1
CLEARLY 19:25,
23:3, 72:5
CLOSING 25:14
CO-CONSPIRATORS
74:24, 78:12
CO-DEFENDANT
94:23
CO-DEFENDANTS
94:18
COCAINE 84:3
CODE 67:8,
105:16
COLLABORATION
46:4
COLLABORATIVE
47:3
COLLABORATIVELY
46:8, 48:6
COLLEAGUE 32:7
COLLEAGUES
30:10, 30:22
COLLECTIVELY
49:22, 51:11
COLLOQUIES
101:16
COMES 29:25,
38:25
COMFORTABLE
42:21
COMMENT 27:3

COMMENTS 30:8, 104:12
COMMERCE 8:20, 18:18, 21:9, 21:17, 35:20, 38:23
COMMODITY 27:9, 34:3, 34:11
COMMON 9:2, 51:4
COMMUNICATE 53:7
COMMUNICATED 62:24, 70:9
COMMUNICATIONS 67:13, 74:22, 100:2
COMPANIES 11:25, 12:2, 12:3, 12:7, 12:9, 23:22, 26:15, 30:13, 48:16, 60:17, 60:18, 63:25, 64:9, 78:5, 78:8
COMPANY 9:24, 13:6, 67:21, 67:23
COMPARING 59:3
COMPEL 5:3
COMPELLING 58:20, 91:15
COMPILE 97:2
COMPILING 97:25, 98:5, 103:16
COMPLAIN 104:15
COMPLETED 90:22
COMPLETELY 16:13, 95:8
COMPLETENESS 55:17
COMPLEX 74:9
COMPLICATED 25:7
COMPLICATED. 25:8
COMPLY 97:19
COMPREHENSIVE

80:13
COMPRISE 49:22
COMPUTER 56:22, 56:24, 58:11, 58:13, 58:19
CONCEALING 78:1
CONCEPT 18:9
CONCERN 34:10, 89:25
CONCERNING 23:21, 24:3, 65:13, 65:14, 66:17, 90:17
CONCERNS 39:9
CONCLUSIONS 38:3, 83:23
CONDUCT 6:25, 62:10, 62:13, 74:16, 79:5, 79:18, 90:19, 91:11, 101:14
CONDUCTING 81:24
CONFER 70:21, 71:20
CONFERENCE 105:24
CONFINE 30:8
CONFLATING 40:24
CONFORMANCE 105:22
CONFUSE 93:25
CONFUSED 36:23
CONFUSION 96:25
CONNECT 89:4
CONNECTION 81:5, 85:3, 90:10
CONSEQUENCE 13:12
CONSEQUENCES 12:12, 13:9, 14:22, 14:24, 26:14
CONSIDER 103:23
CONSIDERED 17:4, 101:11, 101:13
CONSISTENT

21:19, 22:1, 44:7
CONSPIRACY 11:2, 78:4, 78:25, 79:3, 79:4, 79:17, 79:19, 101:6, 101:8
CONSPIRATORS 78:18
CONSPIRE 10:19
CONSPIRING 10:11
CONSTITUTES 58:14
CONSTRUCTED 37:23
CONSULT 32:7
CONSUMING 43:3
CONTAIN 17:13, 48:15
CONTAINED 86:19
CONTAINER 31:22, 31:24
CONTAINS 44:12
CONTEMPLATE 47:4
CONTEND 27:19, 53:9, 78:22, 97:21, 102:18
CONTENDS 6:17, 56:20, 96:14, 99:11, 100:2
CONTENTS 30:17
CONTEST 5:18, 21:22, 41:6, 41:7
CONTESTED 5:20, 38:24
CONTEXT 6:14, 6:23, 16:22, 18:1, 18:9, 24:22, 25:3, 26:23, 39:13, 39:15, 54:13, 74:22, 80:19, 89:23, 91:13, 101:8
CONTINUANCE 104:4, 104:9

CONTINUE 91:7
CONTINUED 3:1
CONTINUING 71:15
CONTRACTOR 67:21
CONTROL 18:18, 21:9, 21:17, 27:9, 34:4, 34:11, 38:23, 69:12, 87:6
CONTROLLED 9:21, 32:2, 68:7, 79:1
CONTROLS 78:8
CONVENIENTLY 75:22
CONVERSATION 68:9
CONVERSATIONS 62:8, 101:16
COOPERATING 62:13
COPIES 30:12, 56:21, 59:25
COPY 13:21, 52:17
CORE 9:3, 56:19
CORPORATION 57:13
CORPORATIONS 61:18, 61:22
CORRECT 11:21, 31:19, 32:10, 35:11, 36:15, 41:6, 41:9, 49:2, 56:25, 61:15, 64:15, 64:16, 75:16, 91:23, 91:24, 94:18, 97:16, 105:16
CORRECTNESS 22:3, 22:10
CORRESPOND 50:5, 52:21
COSTLY 43:3
COUNSEL 2:1, 34:2, 37:8, 37:12, 41:18,

61:16, 90:22,
91:5, 91:11
COUNT 8:12,
8:13, 9:19,
9:20, 9:23,
10:5, 10:8,
10:10, 10:25,
11:17, 74:16,
79:2, 79:4,
79:16, 79:17,
79:21
COUNTERFEIT
59:6
COUNTRIES 7:15,
7:18
COUNTRY 40:7
COUNTS 64:19
COUNTY 105:3
COUPLE 35:6,
73:12, 98:25
COURSE 11:9,
11:15, 15:3,
23:5, 56:4,
56:22, 79:18,
91:9, 95:2
COURTHOUSE 2:5,
2:13
COURTROOM 72:5
COVER 33:17,
34:21, 101:21,
102:2
COVERED 39:8,
90:9
COVERING 58:2
COVERS 29:13
CR18-00050 4:9
CR18-00050-JAK
1:11
CRAFT 39:4
CREATED 8:24,
20:5, 58:12,
58:16, 92:22
CREATION 8:25
CREDENTIALS
72:15, 72:16
CRIMES 2:22,
2:38
CRIMINAL 2:13,
21:25, 62:10,
65:12, 93:18,

101:9, 101:14
CRITERIA 9:22,
26:13, 31:8,
33:25, 59:18
CROSS-EXAMINATI
ON 33:2, 97:4
CROSS-EXAMINE
87:3
CRYSTALLIZE
17:11
CSR 1:39,
105:35
CULVER 3:20,
4:26
CULVER-WASSERMA
N 15:24
CURRENT 103:18
CUSTODIAL 43:1
CUSTODIAN
41:20, 44:22
CUSTODIANS
40:6, 43:3,
44:23, 44:25
CUT 25:21
CYBER 2:21

< D >
DATE 9:22,
51:23, 51:24,
71:16, 71:18,
86:19, 97:13,
103:19, 105:28
DAY 44:16,
50:19, 71:11
DAYS 46:4,
46:5, 88:2,
98:4, 98:10,
98:22, 103:17
DEA 84:2
DEADLINE 72:8,
89:14
DEALING 63:25,
74:9
DECEMBER 71:15,
98:8
DECIDE 7:17,
20:24, 90:18
DECIDED 20:20
DECLARATIONS

41:20, 43:1
DEEPLY 8:4
DEFENDANTS
1:14, 42:6,
69:13, 81:21,
92:5
DEFER 30:22
DEFERRED 5:5
DEFINE 66:17,
66:22
DEFINED 66:7
DEFINING 73:7,
80:9
DEFINITELY
83:12
DEFINITION
68:13, 83:25,
92:15
DEFINITIONS
67:3
DEGREE 74:7
DELAY 56:12
DELVE 5:8
DEMONSTRATE
19:7
DEMONSTRATING
19:13
DENIAL 19:15
DENIED 21:5
DENY 64:24
DEPARTMENT
8:20, 35:21,
65:11
DEPENDING
103:22
DEPENDS 98:18
DEPOSITION 56:6
DEPTH 17:10
DERIVED 69:5,
69:6, 69:18,
69:23, 77:21
DESCRIBED 39:1
DESCRIBING
24:18, 100:1
DESCRIPTIONS
74:1
DESIGNATION
38:21
DESIGNATIONS
5:16

DESPITE 50:8
DESTRUCTION
19:25
DETAIL 16:21,
76:13
DETERMINATION
35:19, 35:25,
37:2, 41:5,
54:23, 56:17,
83:5, 90:6,
95:16
DETERMINATIONS
36:3, 66:1,
82:21
DETERMINATIVE
63:23
DETERMINE
25:16, 37:22,
47:5, 49:14
DETERMINED
95:14
DETERMINES
19:20
DEVELOP 19:6
DEVELOPING
78:15, 101:18
DEVELOPMENTS
5:7
DEVICES 23:13,
57:4, 75:6
DIES. 32:1
DIFFER 97:16
DIFFERENT 6:18,
14:6, 16:25,
17:2, 17:15,
17:24, 18:4,
34:3, 37:4,
81:23, 82:2,
84:11, 85:1,
93:1, 94:2,
95:8, 95:9
DIFFERENTLY
82:10, 96:1
DIFFICULT
45:19, 68:1,
75:8, 80:12,
87:21
DIFFICULTY 98:5
DIGITAL 23:13,
57:4

DILIGENCE 61:3
DIRE 90:17,
90:19, 90:21,
91:11
DIRECT 92:4,
101:6
DIRECTLY 57:21,
78:11
DISAGREE 20:8,
28:23, 37:7,
46:2, 68:23,
84:4, 96:7,
96:10
DISCERN 85:6
DISCLOSE 32:23,
62:18
DISCLOSED
55:22, 55:24,
72:16, 75:21,
84:16, 88:19,
101:24
DISCLOSURE
71:6, 75:18,
84:25, 88:22
DISCLOSURES
65:15, 65:17,
70:23, 71:8,
71:12, 72:4,
72:12, 77:3,
84:6, 85:2,
85:22, 86:19,
88:24
DISCOVERED
56:21
DISCOVERY 5:3,
20:12, 21:6,
31:16, 36:18,
47:25, 52:9,
52:10, 85:3,
85:4, 87:2,
93:10, 96:11,
96:12, 96:15,
96:16, 96:24,
97:2, 97:20,
97:22, 98:1,
98:12, 103:17,
104:3
DISCUSS 69:1
DISCUSSED 62:7,
66:5, 73:1,

79:6, 102:9
DISCUSSING
20:24, 33:23
DISCUSSION
34:3, 65:21,
81:8
DISMISSIVE 48:8
DISPUTE 6:4,
9:3, 17:15,
23:3, 23:18,
24:24, 31:9,
31:16, 32:13,
33:12, 33:16,
33:18, 34:12,
34:16, 34:18,
34:20, 35:1,
35:9, 36:8,
36:13, 40:1,
42:18, 44:25,
45:1, 49:1,
49:14, 66:6,
85:12
DISPUTED 8:9,
10:14, 40:12,
66:3, 89:7
DISPUTES 8:6,
23:16, 37:11,
38:16, 42:14
DISPUTING 34:5,
34:14, 96:4
DISTILL 75:8,
86:10
DISTILLED
70:10, 89:6
DISTILLS 24:8,
66:11
DISTRICT 1:1,
1:2, 1:4, 2:5,
41:1, 105:10,
105:12
DIVIDED 50:4
DIVISION 1:2,
2:13, 2:30
DOCKET 8:10,
10:2, 29:14,
64:19, 72:13
DOCUMENT 14:11,
24:17, 28:5,
59:6, 59:7,
76:13

DOCUMENT-BASED
41:25
DOING 6:19,
50:20, 78:22,
83:17, 83:22
DONE 24:18,
47:13, 51:6,
60:15, 64:25,
82:22, 85:11
DOOR 21:10
DOT 8:16, 8:17
DOTS 89:4
DOUBT 8:15
DOWN 29:25,
57:7, 98:17
DOWNSIDE 93:14
DRAWN 58:18
DRIVE 3:8,
3:15, 3:22,
35:4
DRIVES 35:17
DRUG 69:9,
69:17
DUMPS 48:18
DURING 42:16,
45:5, 45:16,
81:8, 82:15

< E >
E-MAIL 67:8,
81:7
E-MAILS 23:12,
27:19, 40:14,
40:22, 48:15,
49:17, 53:14,
55:15, 67:7,
68:25, 100:2,
101:25
EARLIER 16:5,
28:8, 30:19,
30:25, 41:3,
65:21, 101:16,
102:9
EASIER 25:4,
56:4
ECS 40:15
EFFECT 19:13,
21:22
EFFICIENT

29:12, 47:7,
49:11, 51:13,
91:11
EFFORT 18:5,
18:6, 47:3,
51:2, 60:22,
61:14, 101:18
EFFORTS 61:7,
61:24, 64:1,
64:4, 64:7,
73:5, 73:11,
77:8, 97:7
EIGHT 84:7
EITHER 25:14,
47:3, 55:14,
63:9, 77:16,
97:3
ELECTRICAL 87:5
ELECTRONIC
47:23
ELEMENT 18:23
ELEMENTS 8:14,
9:3, 58:13,
73:4
ELICIT 88:15
EMPHASIZE 16:7,
98:7, 98:9
ENABLE 43:14
ENCOURAGED
94:11
END 87:11,
104:21
ENDEAVOR 56:2,
62:14
ENFORCEMENT
68:7
ENGINEER 87:5
ENOUGH 46:9,
87:4
ENTAILS 74:15
ENTERING 51:21
ENTIRE 26:2
ENTIRELY 18:25,
24:8, 34:2,
89:3
ENTIRETY 53:17
ENTITIES 7:8,
7:16, 12:5,
12:20, 16:10,
61:23, 63:9,

63:19, 77:11,
77:12, 77:18,
77:23, 79:25
ENTRIES 59:1
EQUIVALENT
59:11
ESPECIALLY
62:11, 86:23
ESPIONAGE 7:2,
7:4, 24:25,
90:8
ESSENTIALLY
77:19, 86:24
ESTABLISH
14:12, 14:16,
14:17, 33:3,
33:19
ESTABLISHED
6:21, 39:13
ESTABLISHES
29:20
ESTABLISHMENT
6:2
ESTIMATE 44:1,
49:20, 49:25,
52:10, 69:24,
98:11, 98:15
ET 1:13
EVALUATE 25:5,
26:24, 28:6,
39:14, 49:7,
53:9, 54:13,
66:13, 68:12,
90:15, 104:5
EVALUATED
51:12, 65:25
EVALUATES 82:20
EVALUATING
89:19, 94:20
EVALUATION
83:3, 83:22
EVAPORATE 94:9
EVE 71:17,
92:18, 93:8
EVERYBODY 35:13
EVERYTHING
28:20
EX 41:22
EXACT 44:3,
49:25

EXACTLY 17:23,
74:25
EXAMINE 46:8,
46:10
EXAMINED 37:20,
56:23, 56:24
EXAMINING 56:22
EXAMPLE 5:23,
8:11, 12:7,
17:21, 27:18,
36:6, 36:19,
39:23, 48:12,
65:23, 67:6,
67:9, 67:24,
68:5, 69:1,
69:9, 71:9,
75:2, 77:18,
79:2, 81:9,
85:1, 97:5
EXAMPLES 47:9,
66:20
EXCEPT 72:5
EXCEPTION 38:9,
58:25, 59:10,
59:25, 60:25,
61:6
EXCEPTIONS
36:5, 83:3
EXCERPT 55:8
EXCERPTS 55:25
EXCLUDE 65:5,
90:13, 99:19
EXCLUDED 84:18,
97:10
EXCLUSION 71:2,
72:7, 85:8,
86:21
EXCUSE 18:22,
47:16, 58:4,
91:2
EXEMPLARS 46:9,
47:7, 102:11
EXHIBIT 26:2,
26:6, 42:18,
43:6, 43:11,
43:18, 43:20,
43:23, 44:9,
45:10, 46:16,
46:22, 47:15,
47:16, 47:23,

48:1, 49:9,
49:10, 50:5,
50:8, 50:9,
51:23, 52:25,
53:4, 53:10,
70:12, 70:13,
71:10, 71:18,
76:4, 92:12,
101:19, 101:24,
102:15, 103:2
EXHIBITS 7:6,
9:12, 11:24,
30:1, 30:3,
41:4, 42:17,
43:6, 43:25,
44:12, 44:20,
45:4, 45:13,
46:1, 46:6,
46:9, 46:10,
47:3, 47:9,
48:21, 49:7,
49:20, 49:22,
51:5, 51:7,
51:17, 51:23,
53:9, 53:17,
54:5, 54:6,
55:2, 55:5,
68:17, 69:21,
80:8, 98:10,
101:20, 102:10,
102:22
EXHIBITS. 50:19
EXIST 15:13
EXISTS 83:8,
99:19
EXPECTED 104:2
EXPECTS 48:19
EXPEDITE 56:13
EXPEDITIOUSLY
47:6
EXPERIENCE
68:9, 69:12,
69:18, 84:2
EXPERIENCED
74:20
EXPERT 6:5,
9:6, 32:20,
35:14, 36:1,
36:2, 65:6,
65:24, 67:5,

67:17, 69:17,
72:9, 74:5,
75:21, 77:1,
77:22, 80:4,
80:9, 80:15,
83:16, 83:19,
84:1, 84:3,
97:14
EXPERTS 37:13,
38:11, 66:18,
66:22, 66:25,
77:3, 80:5,
80:17, 84:14,
84:18, 97:6,
97:8, 97:11,
97:24
EXPLAIN 14:17,
14:21, 72:21,
73:4, 75:12,
80:6
EXPLAINS 77:25
EXPLANATION
75:4
EXPLANATORY
75:7
EXPORT 7:14,
8:19, 9:20,
9:23, 10:11,
32:2, 32:5,
35:4, 69:12,
78:25, 79:21,
80:1, 83:6,
87:6
EXPORT-CONTROLL
ED 8:16
EXPORTED 8:16,
8:21, 12:23,
37:1, 37:3,
76:2
EXPORTING
36:25, 78:9
EXPORTS 79:5,
79:23
EXPRESS 83:5
EXPRESSED
36:17, 76:12
EXTENSIVE 28:19
EXTENSIVELY
89:1
EXTENT 15:9,

15:10, 19:11, 21:10, 26:19, 33:1, 33:11, 39:19, 56:12, 67:13, 67:20, 68:2, 68:5, 68:16, 73:6, 75:12, 75:15, 76:11, 77:16, 80:5, 81:22, 82:4, 99:15, 102:15
EXTRANEOUS 101:4
EXTREME 47:18, 86:22

< F >
FAB 75:3
FABRICATION 74:14, 78:19
FACE 72:2
FACED 100:12
FACILITY 78:19
FACT 8:24, 18:17, 18:20, 19:7, 19:9, 21:8, 21:9, 21:20, 23:2, 26:14, 27:12, 30:15, 34:10, 43:15, 49:8, 52:17, 59:13, 69:7, 70:12, 74:11, 92:21
FACTFINDER 28:9
FACTORS 65:2
FACTS 99:7
FACTUAL 22:5, 31:9, 34:25, 36:8, 36:11, 37:11, 38:15, 66:6, 84:5
FACTUALLY 48:25, 49:1
FAILED 8:19
FAIR 44:3, 53:5
FAIRLY 87:3
FALL 31:10,

35:1, 36:4, 36:9, 36:10
FALLS 31:7, 73:14
FAMILIAR 10:5, 25:2
FAMILIARITY 67:18
FAR 42:5
FASHION 82:5
FAST 35:12, 35:15, 35:20, 35:22, 36:2, 36:4, 38:15, 85:13
FASTER 35:4, 35:15, 35:17, 36:12, 36:20, 37:18
FAVORED 86:22
FBI 66:16, 66:24, 69:10, 80:21, 80:25
FEAR 94:12
FED 41:22
FEDERAL 1:40, 13:19, 13:21, 13:25, 14:3, 14:5, 14:11, 14:15, 14:18, 15:15, 15:16, 19:6, 19:8, 19:11, 19:21, 23:11, 25:20, 25:22, 26:2, 26:4, 26:5, 26:16, 26:19, 29:19, 30:9, 30:12, 39:20, 40:16, 40:18, 58:25, 65:12, 105:8, 105:36
FEEL 50:13
FELON 6:10, 11:11, 17:21
FELONS 17:19
FELONY 6:11, 6:13, 17:20
FERRARI 36:15
FERRARIS 36:5

FEW 104:12
FILE 28:14, 28:17, 29:8, 58:12, 58:16, 87:10
FILED 10:24, 84:17
FINAL 90:6
FINALIZED 43:19
FINANCIAL 7:25
FINCEN 30:4, 30:20, 30:21, 39:23
FIND 8:25, 46:7, 58:14, 58:19, 73:9
FINDER 69:7
FINE 25:24, 28:16, 29:7, 60:5, 76:25, 84:11, 85:20, 89:22
FIREARMS 17:20
FIRST 1:41, 8:15, 22:23, 31:13, 44:16, 49:5, 71:11, 71:23, 84:16, 84:23, 86:1
FIT 43:7, 59:25
FITS 66:7
FIVE-LETTER 68:4
FIVE. 11:20
FLAG 88:5, 104:10
FLAGSHIP 97:5
FLOOR 2:7, 2:15
FLY 43:3
FOCUS 16:17, 33:10
FOCUSED 13:2, 13:3, 66:11, 90:4
FOCUSING 14:2, 16:20
FOLKS 60:20
FOLLOW 26:25
FOLLOWING 6:7, 8:14, 24:15,

37:24
FORCED 21:11, 41:22
FOREGOING 105:16
FOREIGN 7:15, 7:18
FORM 17:17, 81:7, 95:4
FORMAT 105:22
FORMULATION 20:2
FORTH 64:3, 76:13, 91:17
FORTHWITH 92:5
FORWARD 103:21
FOUND 8:13, 10:10, 67:7
FOUNDATION 93:18
FOUNDRY 73:4, 74:12, 74:14, 74:17, 74:18
FOUR 11:1, 11:2, 12:3, 23:22, 26:14, 30:13
FOURTH 8:22, 41:1
FRAMED 71:16, 102:23
FRANCE 60:24
FRANKLY 50:13
FREE 40:9
FREQUENCY 31:5
FRONT 10:4, 51:18, 89:10, 95:25
FRUSTRATION 50:12
FULFILLED 96:14
FURTHERANCE 78:25, 101:7
FUTILE 62:13

< G >
GAN 75:3, 75:11, 78:19
GANG 69:9

GARBAGE 48:10, 48:11
GASTONE 9:24, 11:24
GATHERED 27:22
GAVE 81:9
GEE 35:22
GENERAL 2:38, 29:20, 41:8, 45:14, 46:18, 69:12, 81:5, 93:10
GENERALIZED 15:18, 70:24
GENERALLY 42:9
GENERALLY-CONTROLLED 80:2
GENERATE 101:18
GENERATED 30:6, 65:22
GENERIC 7:9, 12:9, 16:10, 74:1
GENUINE 97:1
GETTING 12:15, 80:4
GIVE 44:3, 48:12, 49:24, 87:9, 87:17, 89:23, 98:10, 100:11
GIVEN 38:9, 43:17, 47:14, 50:7, 50:9, 55:18, 58:19, 87:21, 101:15
GIVES 86:7
GIVING 72:8, 95:7
GLASS 69:14
GOALS 11:2, 78:18, 85:7, 87:1
GOODS 79:1, 82:19
GOOGLE 41:22
GOTTEN 52:10
GRAND 91:16, 91:19, 92:3, 92:4, 92:8,

92:17, 93:4, 93:17, 94:7, 94:10, 94:22, 95:4, 95:15, 95:17, 95:18, 95:25
GRANTED 64:17, 95:12
GREAT 17:10, 81:7
GREATER 85:25
GREATEST 81:18, 84:10
GREEN 92:23
GROUNDS 51:9
GROUP 57:6, 62:5
GUARANTEES 59:12
GUESS 38:13, 93:23
GUILT 18:25
GUILTY 8:13, 10:10
GUY 37:17, 82:19


< H >
HANDFUL 56:10
HANDLED 49:4
HANSON 2:3
HANUSZ 3:13, 4:26, 40:11, 41:8, 42:9, 46:14, 48:4, 49:15, 50:1, 50:7, 50:21, 51:15, 53:10, 53:21, 54:25, 60:2, 60:4, 60:6, 63:24, 64:16, 98:25, 99:3, 100:7, 100:21, 102:24
HAPPEN 91:12
HAPPENED 71:21
HAPPY 25:21
HARD 41:10
HAUL 41:22

HEAR 25:13, 37:5, 70:18, 96:20, 102:12
HEARD 31:13, 39:20, 42:4, 49:21, 86:1, 103:9
HEARING 5:6, 71:15, 98:8, 103:7, 104:6
HEARSAY 41:24, 54:11, 61:6
HELD 57:9, 57:12, 57:14, 105:20
HELP 33:23, 74:11, 98:24, 104:19
HELPFUL 22:22, 24:14, 50:16, 69:6, 81:19, 86:5
HEREBY 105:12
HIDE 78:9
HIGH-POWER 78:10
HIGHEST 85:7
HITS 84:10
HITS. 81:18
HOLD 18:20
HOLDER 57:22
HONESTLY 87:8, 87:20, 94:12
HONG 57:10, 57:14, 57:21, 58:9, 58:10, 61:18, 61:19, 61:20, 62:14, 62:19, 64:5, 64:6
HONORABLE 1:3
HOPEFULLY 36:23
HORSE 16:8
HOUR 35:5, 35:16, 35:24, 36:21, 37:18
HOUR. 35:18
HOURS 103:11
HOUSE 23:14
HSBC 57:14,

57:20, 57:23, 60:10, 61:18
HUGHES 2:28, 4:19, 4:20, 4:24, 55:6, 55:12, 55:21, 55:24, 56:15, 57:1, 57:17, 58:1, 61:15, 63:1, 63:8, 66:19, 67:5, 100:25, 101:23
HUNDRED 42:8, 53:3, 77:13, 89:17
HUNDRED-PAGE 47:16
HUNDREDS 45:3, 67:12
HYPHENATED 22:16
HYPOTHETICALLY 59:7, 80:7, 94:21


< I >
IDEA 49:8, 83:10
IDENTIFIED 12:22, 37:13, 43:21, 48:13, 51:24, 52:19, 52:21, 66:19, 81:1, 81:4, 82:23, 88:9, 97:6
IDENTIFIES 13:9, 49:16, 65:9
IDENTIFY 43:14, 47:3, 51:22, 92:1, 97:9
IDENTIFYING 40:22, 47:17, 98:9
IDENTITY 67:23
IEEPA 62:10, 79:19, 79:20
ILLUSTRATE

46:23
IMAGINARY 35:8,
35:9, 37:9
IMMEDIATELY
95:16
IMPORTANT
17:19, 31:1,
31:22, 38:12
IMPOSE 39:5
IMPROPERLY 93:3
IN. 61:10,
102:19
INADMISSIBLE
8:1
INAPPROPRIATE
93:15
INASMUCH 6:16
INCLINED 7:5
INCLUDE 12:6,
19:18, 19:23,
27:10, 40:15,
78:25, 89:25,
103:3, 103:4
INCLUDED 37:23
INCLUDES 14:4,
40:14, 40:15,
40:16, 43:6
INCLUDING 5:24,
78:19, 79:5,
101:17
INCORPORATE
19:16
INCORPORATED
61:20
INCORRECT 96:6
INDEPENDENTLY
61:20, 61:22
INDICATES 46:20
INDICTMENT
10:8, 12:1,
77:11, 78:23,
92:19, 93:11,
94:9, 95:25,
99:8, 99:13,
99:17, 100:9,
100:15, 102:4
INDISPUTABLY
98:12
INDIVIDUAL
72:17

INDIVIDUALS
72:14
INEXTRICABLY
99:12, 99:18,
100:10, 101:11
INFERENCE 58:18
INFLAMMATORY
19:18, 19:23,
20:6, 23:4,
90:8
INFORMATION
9:5, 17:5,
62:14, 62:18,
62:20, 77:21
INHERENT 59:9
INITIAL 46:16
INNOCENCE 18:25
INSISTENCE 19:5
INSTANCE 79:2
INSTEAD 95:13
INSTRUCTION
8:12, 8:23,
9:18, 10:2,
10:7, 10:9
INSTRUCTIONS
5:6, 8:6, 8:10,
8:11, 10:14,
10:16, 10:25,
28:8
INTEGRATED 73:5
INTELLECTUAL
2:21, 18:6
INTEND 5:17,
22:2, 22:5,
25:11, 28:21,
82:25, 101:3
INTENDED 22:8,
42:2, 74:21,
78:3
INTENDS 7:3,
30:12, 34:25,
38:11, 99:7
INTENT 7:22,
15:6, 23:25
INTEREST 16:16,
18:10, 20:4,
50:17, 59:16
INTERESTS 7:12,
7:16, 17:6,
17:16

INTERESTS. 18:3
INTERNATIONAL
62:8
INTERPRETATION
36:14
INTERPRETING
84:12, 85:17
INTERTWINED
99:12, 99:18,
100:10, 101:11,
101:13
INTERVIEW 55:11
INTRODUCE
13:25, 15:5,
15:15, 16:10,
19:6, 19:8,
20:12, 20:14,
21:11, 21:14,
22:5, 23:18,
23:20, 23:24,
25:23, 26:8,
40:20, 43:8,
45:13, 53:16,
54:14, 54:15,
55:8, 55:23,
56:1, 97:3,
99:7, 99:16,
101:3, 101:6,
102:1, 102:2
INTRODUCED
7:21, 15:10,
24:12, 44:4,
55:14, 95:8
INTRODUCES 22:8
INTRODUCING
42:22, 54:11,
57:18
INTRODUCTION
81:7, 99:25
INVESTIGATION
63:3, 63:5,
67:19, 69:6
INVESTIGATIONS
62:19, 69:19
INVESTS 78:7
INVOLVED 13:6,
74:19, 78:4,
81:6, 87:21,
93:24, 94:22
INVOLVES 20:3,

39:20, 62:10,
79:18, 79:20
INVOLVING
62:11, 68:6
IRRELEVANCE
98:21
IRRELEVANT
16:13, 18:25,
20:1, 33:25
ISLANDS 57:14
ISSUED 10:21,
64:6
ISSUES 9:14,
15:23, 20:10,
21:7, 21:11,
32:24, 33:10,
36:10, 65:13,
65:14, 70:22,
71:1, 73:17,
74:12, 79:24,
90:23, 99:13,
101:22, 102:24,
104:6
ISSUING 12:15
IT'LL 25:4,
56:13
ITEM 4:9, 8:16,
13:13, 28:10,
31:7, 79:9,
79:14
ITEMS 7:7, 9:7,
13:3, 13:5,
27:8, 31:2,
31:4, 31:18,
33:4, 33:20,
34:4, 34:6,
35:1, 36:9,
48:18
ITEMS. 10:11
ITSELF 10:18,
31:23, 44:10,
65:8


< J >
JAMAAL 84:16,
85:10
JAMES 2:28,
3:6, 4:19, 4:25
JANUARY 43:11

JENCKS 92:21
JOB 65:1,
83:17, 83:18,
83:22
JOHN 1:3, 3:13,
4:26
JOKO 1:39,
105:8, 105:33,
105:35
JUDGE 1:4
JUDGMENT 17:5
JUDICIAL 30:16,
105:24
JUDITH 2:11,
4:15
JUDY 57:19
JUROR 91:2,
91:3
JURORS 90:25,
91:12
JURY 5:4, 5:5,
6:23, 8:6, 8:9,
8:24, 9:18,
10:15, 10:24,
14:17, 16:22,
24:5, 26:12,
28:7, 45:5,
50:17, 74:13,
91:16, 91:19,
92:3, 92:4,
92:8, 92:17,
93:4, 93:17,
94:7, 94:10,
94:22, 95:4,
95:15, 95:17,
95:18, 95:25
JUSTICE 59:16,
93:18


< K >
KEEP 63:14
KEEPS 86:21
KHAL 4:13
KHALDOUN 2:19
KIND 11:14,
48:10, 49:5,
61:3, 75:6,
80:8, 86:21
KNEECAPPING

86:24
KNOWING 62:19
KNOWINGLY 8:22
KNOWLEDGE 7:22,
15:6, 23:15,
23:25, 69:4,
69:5, 69:12,
69:22, 74:11,
78:2, 78:12,
85:8
KNOWS 36:2,
72:6, 80:18,
87:6, 103:12
KONG 57:10,
57:14, 57:21,
58:9, 58:10,
61:18, 61:19,
61:20, 62:15,
62:19, 64:5,
64:6
KRONSTADT 1:3


< L >
L. 3:20
LAB 76:1
LACK 99:19
LAID 93:19
LANDES 3:7,
3:14, 3:21
LANGUAGE 9:12,
15:17, 15:18,
18:2, 19:17,
19:19, 23:4,
23:5, 24:15,
34:14
LARGE 23:3,
54:18, 98:18,
101:25, 102:4
LARGELY 67:22,
99:24
LAST 20:7,
95:3, 104:12
LATE 71:7,
104:2
LATER 14:7,
88:2
LATTER 62:22,
68:23
LAW 40:25,

41:1, 68:7,
88:23
LAY 72:20, 73:3
LAYMAN 14:21
LEAD 47:18
LEADS 7:16
LEARN 97:15
LEARNING 71:23
LEAST 5:24,
28:15, 89:19
LEAVES 98:20
LED 93:12
LEFT 75:22
LEGAL 22:2,
36:13, 54:17,
61:22
LEGALLY 96:6
LENGTH 102:9,
104:1
LENGTHY 14:19,
100:16
LESS 70:3, 70:6
LETTERS 86:2
LEVEL 6:1,
16:21
LEVELS 31:6
LICENSE 8:18,
8:21, 10:20,
12:14, 12:16,
12:23, 13:12,
13:15, 14:25,
19:14, 28:11,
28:12, 32:3,
32:5, 32:14,
34:4, 34:5,
35:6, 35:24,
36:3, 37:2,
79:10, 79:14,
82:18, 82:21,
83:3, 83:5,
83:8, 84:22,
85:20
LICENSING
26:11, 27:24,
35:21, 66:1
LIGHT 59:7,
87:1, 92:23,
92:25, 93:6
LIKELY 42:5
LIMINE 5:14,

5:21, 5:25,
6:5, 7:2, 11:7,
11:16, 11:17,
11:18, 15:4,
15:25, 16:18,
20:15, 20:20,
21:1, 21:2,
21:21, 24:11,
29:14, 29:16,
38:19, 38:22,
39:7, 39:14,
39:18, 54:10,
56:17, 64:13,
64:19, 65:5,
65:8, 71:1,
73:13, 90:8,
90:13, 90:17,
91:15, 91:21,
95:12
LIMINES 5:2
LIMIT 85:15
LIMITATIONS
6:20, 39:5
LIMITED 61:19,
84:20, 84:23
LINE 75:4
LINED 73:16
LINES. 56:8
LIST. 84:10
LISTED 66:15,
79:7, 79:8
LISTING 13:9,
13:10
LISTINGS 21:18
LISTS 10:12,
14:4, 31:3,
31:5, 38:9,
39:13
LITERALLY 85:8,
104:16
LITTLE 9:8,
27:6, 31:25,
32:1, 36:24,
40:2, 56:4,
68:1, 78:6,
80:11
LIVE 26:16,
45:16
LLP 3:7, 3:14,
3:21

LOCATIONS 7:8,
12:6
LONG 19:17
LONG-RUNNING
79:20
LONGER 63:4
LOOK 35:21,
46:3, 46:25,
47:4, 51:10,
51:12, 54:2,
54:20, 56:8,
88:25, 90:5,
97:1
LOOKED 93:23,
94:3
LOOKING 8:8,
8:10, 28:19,
50:19, 72:11,
90:10
LOOKS 5:23,
60:18, 78:5
LOS 1:29, 1:42,
2:8, 2:16,
2:25, 2:31,
2:33, 2:41,
3:10, 3:17,
3:24, 4:1,
105:3
LOT 16:1,
24:23, 41:15,
49:4, 51:5,
70:2, 80:6,
81:14
LOTS 48:23,
75:16
LUDICROUS 87:8


< M >
MAGIC 99:21
MAGNITUDE 104:1
MANAGE 103:23
MANDEL 19:1
MANNER 53:8,
101:20
MANNERS 38:25
MANTRA 48:7
MANUFACTURE
78:15
MARCH 84:16

MASS 19:25
MATERIAL 59:13,
92:16, 92:23,
93:11, 104:13
MATTER 22:5,
41:8, 61:23,
71:4, 74:10,
75:13, 75:14,
79:12, 88:22,
88:23, 95:2,
95:13, 98:2,
103:9, 105:20
MATTERS 37:4,
66:4, 90:4,
99:1
MATTIS 74:7,
77:14, 77:17,
84:16, 85:10,
97:6, 98:19
MEAN 11:18,
11:20, 12:14,
14:24, 17:19,
24:18, 24:19,
43:13, 48:23,
56:10, 60:23,
68:18, 82:7,
100:14, 101:19
MEANING 53:2
MEANINGFUL 71:8
MEANS 12:14,
19:12, 20:21,
59:3, 62:6,
68:4, 68:18,
69:14, 80:19,
81:14
MEANT 68:8,
70:15, 75:3
MEASURE 101:25
MECHANISM 46:7
MEET 59:10,
70:21, 71:19
MELANIE 2:3,
4:18
MEMORIALIZE
96:5
MENTIONED 18:2,
28:3, 52:8,
79:21, 82:14
MERELY 44:22
MET 9:21

METH 69:15
METHOD 49:7
METHODOLOGY
81:25, 82:1
MICROWAVE 75:12
MILES 35:5,
35:16, 35:18,
35:24, 36:20,
37:18
MILITARY 18:4
MILLION 40:13,
40:21, 42:22
MIND 91:5
MINDFUL 59:22,
63:16, 63:17,
63:22, 97:18
MINI-TRIAL
100:13
MINIMAL 14:19
MINIMUM 19:22,
43:1
MINUTE 7:5,
8:7, 10:1,
29:11, 29:15,
32:8, 38:17,
56:7, 58:5,
65:7, 72:10,
76:16, 77:5,
78:13, 80:3,
86:3
MIRROR 95:5
MISAPPROPRIATE
18:6
MISUNDERSTAND
88:6
MISUNDERSTANDIN
G 41:18
MITIGATE 45:18
MLAT 60:23,
60:24
MMIC 8:17,
8:19, 8:21,
9:20, 27:12,
27:25, 32:1,
32:5, 32:15,
37:16, 65:25,
67:10, 67:15,
74:14, 75:11,
75:16, 76:2,
76:13, 78:1,

78:20, 82:21
MOLESTER 17:20
MOMENT 7:13
MONDAY 53:24,
53:25, 87:12
MONROY 65:9,
65:25, 66:12,
82:13, 82:16,
82:19, 84:19,
85:16, 85:19,
85:21
MONTH 52:7,
59:2, 59:3,
59:4, 103:25
MONTHS 46:15,
47:15, 47:19
MOOT 5:18,
5:19, 11:8,
20:9, 20:22,
21:1, 21:5,
24:9, 38:21,
38:23
MORNING 4:13,
4:15, 4:17,
4:19, 4:21,
4:23, 4:25,
4:28
MOTIONS 5:1,
5:12, 5:24,
5:25, 6:5, 7:2,
9:2, 15:4,
16:18, 17:15,
19:3, 20:11,
20:15, 20:16,
21:5, 24:11,
50:24, 70:25,
73:13
MOTIVE 77:25,
78:1, 78:9,
78:11
MOVE 11:4,
27:6, 42:12,
42:13, 52:3
MOVING 11:13,
52:1
MUD 104:11
MULTIPLE 57:4,
62:7, 85:22
MYSTICAL 57:12,
58:23

< N >
NAME 33:14,
57:12, 59:1,
82:5
NAMED 77:11,
77:18
NAMELY 8:16
NAMES 67:8
NARRATIVE 17:12
NARROW 32:24,
50:11, 50:14
NATIONAL 7:16,
16:15, 17:6,
17:13, 17:16,
18:3, 18:10,
19:24, 20:4,
27:10
NATIONALS 62:12
NATURE 6:24
NECESSARILY
68:19, 82:6,
82:7, 83:15,
88:12
NECESSARY 6:14,
6:20, 12:18,
19:5, 19:21,
23:7, 30:5,
83:9
NECESSITY 14:25
NEEDED 9:9,
13:12, 14:12,
14:15, 66:2,
79:13
NEEDS 8:25,
16:22, 17:25,
27:24, 68:11,
82:17, 83:12
NEITHER 38:24,
63:9
NEW 5:7, 60:20,
62:4, 71:17
NEXT 5:6,
87:11, 87:14,
87:24, 89:14,
91:17, 92:1,
98:4, 103:7,
104:6
NINTH 19:1,

40:25, 61:1
NO. 1:39, 4:9,
27:20, 50:7,
97:25, 102:4,
105:35
NOBODY 72:5
NON-CONTROVERSI
AL 104:17
NONE 48:16,
64:10, 71:20
NORDQUIST
37:14, 37:15,
37:19, 38:10,
38:14, 65:10,
74:6, 75:10,
75:15, 76:18,
76:20, 85:12,
85:13
NORTH 2:6,
2:14, 2:23,
2:31, 2:39
NOTHING 8:23
NOTICE 30:16,
66:25, 73:16,
73:17, 73:18,
73:19, 84:23,
87:4, 87:7,
99:19, 100:11,
100:17, 101:12,
102:25
NOTION 87:6
NUMBER 5:1,
5:14, 5:21,
11:8, 11:19,
11:20, 15:25,
20:20, 20:21,
20:22, 21:1,
21:2, 21:21,
29:14, 29:16,
38:19, 38:22,
39:7, 39:14,
39:18, 43:20,
44:4, 49:25,
50:3, 54:10,
56:11, 56:17,
64:13, 64:19,
65:5, 71:1,
80:18, 90:8,
90:13, 90:17,
91:15, 91:22,

99:4
NUMBERS 43:13,
43:16, 43:17,
43:18, 46:22,
48:1, 50:5,
50:6, 50:8,
50:9, 52:22,
52:25, 53:13,
59:2, 59:3,
71:11
NUMERICALLY
5:13
NUMEROUS 77:10


< O >
OBJECT 33:17,
34:21, 47:5,
49:12, 51:7,
51:9, 56:7,
66:7, 81:25
OBJECTING
76:19, 77:2
OBJECTION 14:5,
26:21, 41:4,
45:20, 46:11,
59:17, 100:16,
102:13, 102:16
OBJECTIONS
30:2, 40:8,
41:21, 41:25,
42:6, 45:4,
45:16, 45:23,
47:11, 51:5,
54:5, 54:6,
66:17
OBJECTS 24:25,
37:20, 37:21
OBLIGATED 96:16
OBLIGATION 96:2
OBLIGATIONS
96:15, 96:24,
97:18, 97:21,
97:22, 98:13
OBTAIN 8:20,
60:9, 61:24,
62:3, 62:14
OBTAINED 58:11
OBVIATE 17:21
OBVIOUSLY 11:6,

104:8
OCCURS 79:25
OCTOBER 82:24
OFFENSE 8:11
OFFENSES 64:13
OFFER 24:17,
30:2, 30:12,
39:2, 44:13,
87:2, 102:11,
102:21
OFFERED 7:21,
7:23, 7:25,
39:12, 59:12,
59:14, 68:3,
86:11, 94:16
OFFERING 69:11,
82:5
OFFICE 2:4,
2:12, 2:20,
2:29, 2:37,
62:8
OFFICER 26:11,
27:24, 35:21,
92:22
OFFICIAL 1:40,
105:1, 105:8,
105:36
OKAY 11:6,
15:8, 15:19,
22:12, 23:21,
29:9, 30:23,
35:23, 37:5,
44:24, 48:2,
58:5, 63:15,
70:13, 76:10,
76:23, 78:13,
83:14, 84:22,
98:23, 104:18
OLD 11:12,
17:18
ONCE 78:6,
97:15
ONES 12:22,
29:24, 46:19
OPEN 77:21
OPENING 25:12,
25:14
OPENS 21:10
OPERATIVE
62:10, 101:14

OPINION 19:2, 37:25, 74:8, 75:2, 75:8, 75:9, 75:13, 82:9, 84:2, 85:5
OPINIONS 38:6, 72:1, 72:6, 72:9, 74:2, 76:12, 76:14, 82:2, 88:8, 88:12, 88:13, 97:15
OPPORTUNITY 87:3
OPPOSE 104:8
OPPOSED 40:3, 66:5, 68:19, 72:8
OPPOSITION 29:22
OPTIMISM 57:12, 58:23
OPTIONS 103:24
ORDER 10:9, 10:20, 44:8, 51:22, 64:20, 64:21, 84:2, 85:15, 89:10, 89:11, 95:20
ORDERED 43:10
ORDERLY 71:20
ORDINARILY 90:19
ORGANIZE 70:25, 84:7
OTHERWISE 94:2
OUTLINED 11:11
OUTSIDE 35:5
OUTSTANDING 100:22
OVERALL 7:10, 75:5
OVERLAP 5:11, 16:1, 16:5, 17:14, 77:13, 102:17
OVERLAPS 65:20, 65:21
OVERSAW 17:3

OVERSEAS 59:22
OVERSPEAK 77:15
OVERSTATE 100:14
OVERWHELMING 88:23
OWN 23:15, 54:11, 97:17


< P >
P-E-A-R-L-M-U-T -T-E-R 61:2
PAGE 105:22
PAGES 40:14, 40:21, 42:22, 43:22, 43:23, 43:24, 44:1, 44:4, 44:10, 48:14, 48:15, 49:22, 50:3, 52:21, 53:3, 68:24, 85:4, 104:13
PANEL 50:17
PAPERS 25:1, 62:7, 67:6, 93:19, 101:2
PARCEL 99:13
PARENT 63:25, 64:8
PART 6:4, 6:8, 6:9, 17:5, 27:14, 27:17, 28:2, 29:23, 54:18, 61:4, 79:21, 81:7, 82:17, 96:16, 98:18, 99:13
PARTIAL 55:8, 60:13
PARTICULAR 9:11, 9:12, 13:11, 20:12, 31:3, 33:17, 34:21, 34:23, 40:9, 66:7, 92:15, 92:20
PARTICULARIZED 93:7

PARTICULARLY 42:16, 42:17, 87:1
PARTIES 23:3, 49:13, 51:6
PARTS 25:22
PASTE 25:21
PAUSE 32:9
PEARLMUTTER 61:2
PEEL 78:6
PENDING 103:13
PEOPLE 8:17, 16:6, 18:5, 41:22, 62:21, 62:24, 73:5, 73:10, 77:8, 77:19, 84:7
PER 23:23, 54:23, 75:8
PERCENT 42:8, 77:13, 89:17
PERCIPIENT 9:7
PERFORMANCE 76:12, 76:15
PERHAPS 22:21, 51:2
PERIOD 58:3
PERMIT 64:21, 91:12
PERMITS 29:19
PERMITTED 20:12, 20:14, 37:19
PERSON 10:18, 17:3, 37:15, 65:11, 68:7, 68:9, 92:2, 92:4, 92:24, 95:14, 95:18
PERSONS 86:12
PERSPECTIVE 89:19
PERSUADED 9:5, 24:9, 91:10, 92:7, 95:12
PERSUASIVE 58:15
PETER 84:15, 85:9

PIECES 20:12, 22:10
PLA 77:20
PLACED 9:24, 12:9, 13:16, 16:10, 26:15, 27:9, 30:13
PLACEMENT 6:17, 7:7, 7:8, 11:24, 12:4, 13:2, 14:16, 16:3, 16:12, 17:3, 18:18, 18:21, 18:22, 19:7, 19:10, 19:14, 19:15, 21:9, 21:10, 21:17, 21:24, 22:4, 23:22, 26:13, 27:25, 33:24, 33:25, 39:8
PLACEMENTS 22:9, 23:17, 38:22
PLACES 6:19, 81:10
PLAINTIFF 1:9, 2:3
PLAN 21:21, 23:20, 25:13, 55:23, 90:14, 92:2, 97:13
PLANS 74:25, 91:18
PLANT 78:15
PLATE-SIZED 31:24
PLAY 37:4
PLEASE 4:11, 22:17
POINT 15:20, 20:7, 20:17, 40:1, 40:5, 45:23, 59:14, 62:22, 63:24, 68:23, 69:8, 86:20, 94:13, 95:3, 95:11, 96:9, 102:8

POINTED 41:11
POINTS 85:16,
86:16, 90:3
POOL 93:10
PORTION 82:15
POSE 25:9
POSED 90:24
POSITION 6:9,
21:13, 21:23,
36:19, 66:24,
67:16, 83:16,
83:21, 91:21,
93:20, 96:13,
100:7
POSITIONS
32:23, 96:18
POSSESS 17:19
POSSESSION
6:11, 11:11
POSSIBILITY
97:23
POSSIBLE 45:18
POTENTIAL 46:9,
55:17, 62:6
POTENTIALLY
40:21, 45:4,
68:15
POWER 31:6,
59:21, 61:25,
90:3
PRACTICES 73:15
PRECISE 31:1,
31:21
PRECISELY 42:7
PRECLUDE 5:15,
64:13
PRECLUDING
38:19, 38:22,
39:7, 54:10
PREFER 21:4,
42:15
PREFERENCE
42:20
PREJUDICE
66:10, 82:9
PREJUDICED
71:13, 88:20
PREJUDICIAL
73:9
PRELIMINARY

42:3, 42:24,
43:11, 44:7,
44:22, 46:21,
52:18
PREP 87:22
PREPARE 24:17,
47:22
PREPARED 43:5
PRESENT 4:27,
5:22, 25:10,
26:23, 28:22,
32:17, 32:18,
32:24, 39:3,
43:6, 63:10,
91:22, 100:8
PRESENTATION
98:22
PRESENTED 5:2,
6:13, 59:8,
59:21, 87:18,
89:5, 93:11,
99:24
PRESENTING
65:1, 93:14
PRESENTLY 47:4,
66:22, 86:10,
87:18, 89:6,
90:14, 97:25
PRESENTS 95:5
PRESERVE 41:24
PRESIDING 1:4
PRESUMPTION
12:15, 13:14,
19:14
PRETRIAL 40:12,
56:17
PRETTY 64:9,
66:11, 90:4
PREVIOUS 82:15
PREVIOUSLY
64:20, 64:23,
88:19, 90:9,
94:17
PRIMARILY 55:6,
55:9, 55:14
PRIMARY 59:17
PRIOR 42:15,
64:21, 80:1,
90:13, 99:25
PROBABLY 14:19,

14:20, 97:8,
98:22
PROBATIVE
59:13, 59:18
PROBLEM 41:25,
49:6
PROBLEMS 20:5,
46:24
PROCEDURAL
20:16
PROCEDURE 65:12
PROCEEDING
6:18, 21:25
PROCEEDINGS
1:27, 32:9,
104:21, 105:18
PROCESS 6:3,
6:19, 7:11,
7:17, 16:23,
17:8, 18:11,
21:23, 26:9,
91:8, 91:9,
101:18
PROCESSING
72:21
PRODUCE 24:3,
81:20, 93:16,
94:6, 97:2,
98:1
PRODUCED 21:6,
23:10, 23:11,
23:12, 76:7,
77:2, 85:3,
92:5, 92:8,
98:4, 104:13
PRODUCING
71:10, 103:16
PRODUCT 7:17,
81:25
PRODUCTION
91:15, 94:25,
104:16
PRODUCTS 7:15,
7:17, 12:22,
31:10
PROFFER 90:14
PROFFERED 9:6,
65:24
PROFFERING 15:9
PROGRESS 53:24

PROHIBITION
10:21
PROJECT 67:10,
67:14, 69:1,
81:11
PROJECTS 67:8
PROPERLY 20:14,
24:4, 92:17
PROPERTY 2:22,
18:6
PROPOSE 28:5
PROPOSED 5:4,
8:9, 8:12,
10:2, 10:6,
39:2
PROPOSES 25:6,
26:6
PROPOSING 30:2,
89:7
PROSPECTIVE
90:25
PROTECTING 17:8
PROTECTION
16:16
PROTECTIVE
95:19
PROVE 8:14
PROVENANCE 78:3
PROVIDE 6:23,
32:20, 43:11,
44:11, 52:17,
67:3, 82:5,
84:9, 96:16,
101:8
PROVIDED 9:5,
45:11, 46:18,
49:20, 52:16,
53:10, 60:10,
65:16, 66:25,
73:19, 82:23,
87:7, 95:19,
102:4
PROVIDES 6:12
PUBLIC 30:14,
93:16
PUBLISHED
13:17, 13:18
PURCHASING
77:19
PURPOSE 7:10,

8:3, 24:13,
24:21, 94:10
PURPOSES 59:15,
79:4, 94:24,
99:24
PURSUANT 46:8,
105:14
PUT 13:6,
33:13, 36:21,
51:7, 64:3,
70:7, 74:19,
86:13, 86:17
PUTTING 74:22

< Q >
QTC 77:18
QUALIFICATIONS
71:25
QUESTION 20:13,
24:6, 25:9,
64:7, 66:18,
83:20, 91:4
QUESTIONNAIRE
5:4
QUESTIONNAIRES
90:20
QUESTIONS
71:22, 72:4,
73:14, 90:24,
91:5
QUICK 86:15
QUITE 5:1,
40:19, 47:21,
87:7
QUOTE 16:9,
19:1, 20:4

< R >
RADAR 78:10
RAISE 20:7,
22:2, 40:10,
83:11
RAISED 11:15,
11:16, 20:10,
20:14, 24:10,
26:21, 65:14
RANGE 9:22,
47:17, 49:21,

53:3
RANGES 46:17,
46:18, 48:14
RARELY 60:25
RATHER 14:19,
42:16, 45:5,
49:17
RE-EXPORT 83:6
REACH 69:2
REACHED 83:23
REACT 71:8,
84:24
REACTIVE 97:12
READ 24:15,
56:6, 71:3,
72:4, 82:10,
86:2, 86:8,
89:1
READING 98:20
READY 52:2,
103:18
REAL 42:10,
61:7
REALLY 11:13,
16:7, 20:14,
28:2, 35:22,
36:4, 36:12,
42:2, 42:24,
60:8, 66:11,
70:1, 74:8,
75:7, 75:24,
98:8, 103:21
REALM 73:15
REAMS 49:17
REASON 19:21,
21:4, 33:11,
51:8, 70:8,
70:11, 80:12,
80:23, 81:15,
86:25, 87:22,
98:3, 99:20
REASONABLE
8:15, 62:17
REASONS 12:9,
16:10, 16:14,
16:15, 64:23,
66:2
REBUT 21:12,
68:15
RECEIVE 29:2,

39:2, 39:4
RECEIVED 31:15,
31:16, 57:22,
71:2, 83:1
RECEIVING 84:24
RECESS 60:4
RECIPROCAL 5:3,
52:9, 96:11,
96:12, 96:16,
104:3
RECOGNIZE 7:20,
54:16
RECOGNIZES
98:21
RECORD 41:20,
44:6, 96:4
RECORDED 55:9,
55:18
RECOVERED 37:17
RED 92:25
REDACTED 19:22,
48:15
REFER 22:15
REFERENCED
100:9, 100:15
REFERENCES
43:16
REFERRED 28:7,
67:9, 84:10
REFERRING
27:18, 72:20,
72:22, 101:22
REFERS 26:20
REFINING 25:5
REFLECT 7:6,
23:15, 86:4,
100:3, 101:20
REFLECTING
100:5
REFLECTS 9:23,
68:17
REFUTE 97:9
REGARD 10:13,
38:14, 84:19,
85:11
REGARDING
62:15, 62:18,
64:3, 74:24
REGISTER 13:19,
13:21, 14:3,

14:5, 14:11,
14:15, 14:18,
15:16, 19:6,
19:8, 19:12,
19:22, 23:11,
25:20, 25:22,
26:2, 26:5,
26:16, 26:20,
30:9, 30:13,
39:20, 40:17,
40:18
REGISTERS 13:25
REGULAR 61:25
REGULARLY 68:25
REGULATION
10:20
REGULATIONS
12:19, 12:22,
13:8, 20:3,
35:2, 36:10,
36:14, 105:24
REGULATORY
63:18, 63:20
REITERATE 18:16
RELATE 57:7,
57:9, 57:11,
67:15
RELATED 63:18,
85:4
RELATES 10:5,
67:10, 74:16,
79:18, 81:3
RELATIVELY
26:11, 28:1
RELEASE 92:14,
93:9
RELEVANCE
73:10, 102:16
RELEVANCY 19:18
RELEVANT 7:7,
18:19, 18:23,
65:2, 77:9,
77:24, 78:16
RELIABILITY
59:9
RELYING 25:20
REMAINS 66:12
REMEDY 72:7,
86:20, 86:22,
86:23

REMEMBER 49:6
REMIND 71:14
REMOVE 19:22
RENEWED 64:22
REPEAT 25:1
REPEATED 50:8
REPLACE 91:2
REPLETE 23:6
REPLY 40:4,
75:24, 92:12
REPORT 32:20,
35:22, 38:2,
38:10, 75:21,
76:3, 76:4,
76:18, 76:20,
76:24, 77:1,
84:13, 84:15,
85:12
REPORTED 105:18
REPORTER 1:40,
105:1, 105:10,
105:36
REPORTER'S 1:27
REPORTS 71:3
REPRESENT 41:19
REPRESENTATIONS
103:2
REPRESENTED
84:21, 85:25,
99:5, 99:6
REPRESENTING
42:21
REPRESENTS 44:1
REPRISAL 94:12
REPUBLIC 8:18,
18:5, 62:21,
62:24, 73:6,
73:11, 77:8,
77:20
REQUEST 57:19,
62:17, 64:24,
71:2, 88:7
REQUESTED 57:20
REQUESTING 88:8
REQUESTS 20:11,
50:8
REQUIRE 28:11,
32:3, 32:5,
34:4, 84:5
REQUIRED 8:18,

8:20, 12:14,
32:14, 32:15,
34:5, 37:3,
82:18, 83:6,
84:1, 94:25
REQUIRED. 35:24
REQUIREMENT
71:24, 89:12,
101:12
REQUIREMENTS
83:3, 85:1
REQUIRES 88:10,
96:5
REQUIRING 33:9
RESIDENCE
56:23, 57:5,
57:9
RESIDUAL 58:24,
60:25, 61:6
RESOLVE 42:15,
49:14
RESOLVED 33:18,
45:14
RESPECTFULLY
20:8, 33:24,
47:12, 47:22,
68:22, 83:25
RESPOND 19:4,
29:4, 41:14,
48:19, 95:21
RESPONSE 21:20,
28:18, 28:22,
39:4, 65:15,
88:1, 91:21,
97:23, 100:24
RESPONSES 33:22
RESTRICTIONS
7:14, 15:12
RESULT 19:15
RESULTS 82:1,
83:2
RETRIEVED 57:4
RETURNED 94:9,
95:25
REVEALING 33:7
REVIEW 68:17,
68:24, 80:17,
80:22, 81:14
REVIEWED 58:6,
63:17, 64:20,

72:13, 83:2,
85:24, 94:21,
94:24
REVIEWING 67:11
REVISED 8:9,
10:24, 98:15
ROLLINS 2:36,
4:21, 4:22,
4:24, 39:24,
41:17, 42:12,
42:19, 43:9,
43:19, 43:23,
44:2, 44:15,
44:19, 45:7,
45:12, 46:2,
47:12, 49:24,
50:10, 52:2,
52:7, 52:15,
52:23, 53:1,
53:5, 54:1,
54:7, 91:24,
93:17, 94:19,
95:1, 95:22,
96:6, 96:7,
101:17
ROOM 1:41, 2:32
ROUND 31:22,
31:24
ROUTE 58:16
RUBRIC 100:10
RULE 29:19,
35:4, 35:7,
35:8, 35:9,
35:12, 35:13,
36:25, 37:9,
42:25, 44:17,
45:20, 46:13,
47:11, 54:4,
54:18, 54:24,
55:17, 56:13,
58:25, 65:12,
71:24, 72:1,
84:6, 84:25,
87:1, 88:10,
101:11, 101:13
RULES 59:16
RULING 15:4,
21:13, 25:5,
40:13, 44:22,
51:18, 103:13,

103:20, 103:22
RULINGS 98:18
RUNS 50:23


< S >
SAMPLE 37:21
SAMPLING 102:11
SANDISON 37:14,
65:10, 72:18,
72:25, 73:1,
73:2, 74:6,
74:20, 77:6,
77:16, 80:16,
80:20, 84:14,
85:2, 85:9,
97:6, 98:19
SARTORIS 2:3,
4:17, 4:18,
4:24
SATISFIED 42:25
SATISFIES 61:5
SAW 25:6
SAYING 8:1,
8:2, 17:12,
18:4, 18:8,
19:13, 21:13,
26:17, 33:1,
45:25, 48:5,
51:25, 54:19,
63:6, 67:16,
67:20, 68:16,
70:13, 82:6,
83:21, 84:3,
89:3, 99:20
SAYS 5:18,
10:7, 10:9,
12:25, 13:1,
14:18, 23:17,
30:15, 35:4,
35:10, 35:22,
36:11, 36:12,
37:17, 51:22,
56:7, 72:1,
92:24, 96:17
SCENARIO 103:19
SCHEDULING
89:10, 89:11
SCHEME 79:20
SCIENCE 75:14,

84:5
SCIENTIFIC
81:24, 85:13
SCIENTISTS
97:16
SCOPE 59:21,
76:19
SE 54:23, 75:8
SE. 23:23
SECOND 8:18,
26:4, 57:6,
57:11, 86:20
SECOND-SUPERSED
ING 10:8
SECRECY 93:17,
94:8
SECRET 94:10
SECRETS 16:17
SECTION 2:22,
2:38, 103:13,
103:20, 105:14
SECURITY 16:16,
17:13, 17:16,
19:24, 27:10
SEEK 7:4,
25:23, 26:22,
33:3, 39:22,
43:7, 44:13,
45:17, 55:23,
56:1, 81:13,
101:5, 101:21,
102:21
SEEKING 15:10,
15:15, 26:8,
29:23, 40:12,
40:19, 45:13,
47:10, 50:24,
53:15, 54:14,
55:8, 88:15,
102:1, 102:2
SEEKS 25:25,
54:15, 54:21,
54:22, 99:16,
102:11
SEEM 33:19
SEEN 67:12,
81:10
SEIZED 57:4,
57:8
SELF-AUTHENTICA

TED 29:17,
29:24
SELF-AUTHENTICA
TING 29:20,
30:15, 39:19,
39:21
SEMICONDUCTOR
72:21, 73:4,
73:7, 73:8
SEND 79:8
SENSE 25:17,
55:5, 89:18
SENT 27:19,
28:12, 60:18,
60:19
SENTIMENT 36:18
SEPARATE 12:24,
35:25, 70:25,
95:6, 96:1
SEPARATELY 79:3
SEQUENCE 51:11
SERIES 44:12,
68:17, 101:19
SERVE 7:16,
18:3, 59:15
SERVED 18:10,
50:17
SET 23:2, 23:7,
57:11, 59:8,
75:3, 103:7
SETS 57:1,
76:13
SETTING 74:17
SEVEN 65:9,
84:7
SEVER 64:19
SEVERAL 5:24,
9:1, 62:12
SEVERANCE 65:3
SHALL 10:18,
30:16
SHARED 62:20
SHIFTED 34:2
SHIH 1:13, 3:4,
4:10, 4:27,
10:7, 10:10,
19:9, 22:6,
58:11, 74:24,
75:3, 78:2,
93:12

SHIP 13:12,
32:15, 79:9
SHIPMENTS 7:24,
84:22
SHIPPED 33:20,
34:5, 37:21,
37:22, 79:15
SHIPPING 36:5,
40:16, 48:12
SHORT 87:17
SHORTEN 98:22
SHOULDN'T
102:18
SHOW 59:1,
82:18
SHOW. 25:12
SHOWED 82:22
SHOWING 13:22,
60:12, 60:14
SHOWN 10:13
SHOWS 35:16,
36:22
SIC 11:17
SIDE 47:24,
56:5, 56:6,
90:22, 91:7
SIGNATORY 57:21
SIMILAR 5:20,
9:10, 24:10,
51:9
SIMILARLY 39:6,
75:10
SIMPLE 104:16,
104:17
SIMPLY 14:18,
14:21, 26:12,
26:16, 26:17,
40:6, 41:23,
44:21, 85:17,
100:5, 101:12,
103:17
SIT 46:5
SIX 53:11
SLICED 31:24
SMALL 28:2,
56:11
SOLE 19:12
SOMEBODY 74:20,
83:17, 83:20,
87:5

SOMEHOW 36:21,
83:11
SOMEONE 14:20,
83:12
SOON 91:25
SOONER 29:8,
56:13, 87:25
SOPHISTICATED
47:24, 83:21
SORRY 10:15,
31:23, 43:12,
44:10, 49:25,
53:21, 72:23,
73:16, 89:9
SORT 7:19,
11:13, 26:20,
31:21, 31:24,
51:11, 56:12,
69:9, 69:11,
69:17, 73:14,
73:15, 73:16,
75:4, 81:5,
82:8, 83:20
SORTS 73:8
SOUGHT 99:25
SOUNDS 37:12
SOURCE 57:15,
57:17, 59:8,
77:21
SOUTH 3:8,
3:15, 3:22
SPEAKING 9:1,
77:17
SPECIALIZED
74:10, 83:18,
84:1
SPECIFIC 9:20,
13:8, 13:9,
24:20, 25:22,
27:5, 27:8,
27:13, 27:14,
31:7, 34:14,
40:8, 40:22,
41:24, 44:20,
45:16, 45:23,
46:1, 50:14,
52:21, 55:24,
57:8, 71:5,
71:11, 85:16,
99:24

SPECIFICALLY
11:1, 12:13,
18:4, 43:15,
69:21, 74:6,
82:24, 84:20,
102:3
SPECIFICATIONS
31:4, 34:11
SPECIFICITY
49:16
SPECIFICS 68:1
SPEED 76:1
SPELLED 11:1
SPEND 50:19
SPLIT 16:6
SPOKE 17:12
SPOKEN 86:18
SPORTS 75:25,
82:20
SPREADSHEETS
90:3
SPRING 2:6,
2:14, 2:23,
2:39
SQUARES 31:25,
32:1
STAGE 42:3,
44:21
STANDARD 57:10,
60:19, 61:19,
62:3, 62:4,
62:5, 63:12
STANDARDS 28:7,
54:17, 65:11
STANDPOINT
73:18, 78:7
START 5:13,
9:13
STARTING 4:12
STARTS 45:11
STATE 4:11,
28:8, 65:11,
72:9, 84:2,
85:7, 105:5
STATED 9:4,
16:9, 17:25,
36:16, 38:18,
39:10, 61:17,
82:12, 95:14,
95:22, 96:3

STATEMENT
25:12, 25:14,
28:21, 28:22,
54:20, 55:25,
61:16, 84:5,
87:17
STATEMENTS 7:9,
11:5, 53:15,
54:11, 55:7,
55:9, 55:13,
55:16, 55:18,
55:23, 57:6,
60:7
STATES 1:1,
1:4, 2:5, 4:14,
4:16, 4:18,
4:20, 4:22,
5:17, 7:1,
7:12, 8:12,
8:17, 17:16,
35:5, 62:2,
63:10, 67:23,
78:10, 79:1,
82:17, 90:1,
105:10, 105:16,
105:26
STATUTE 10:17,
10:23, 30:15
STATUTES 78:22
STAY 104:11
STEAL 97:8
STEALING 16:17
STENOGRAPHICALL
Y 105:18
STEP 42:25
STEPPING 69:8
STEPS 60:8
STEREOTYPICAL
101:10
STIPULATE
17:21, 19:9,
21:8
STIPULATION
19:17
STOPPING 16:16
STORED 58:13
STORINO 65:10,
81:1, 81:4,
85:16, 85:18
STRATEGY 33:8

STREAMLINE 42:2
STREET 1:41,
2:6, 2:14,
2:23, 2:31,
2:39
STRINGS 53:14
STRONG 78:9
STRONGER 92:14
STRUGGLE 98:9
STUFF 78:3,
104:17
SUBJECT 13:5,
13:13, 34:12,
46:21, 69:4,
71:4, 74:2,
74:9, 88:22,
88:23
SUBJECTS 38:12,
70:24, 88:9
SUBMISSION
26:3, 89:12,
89:20, 90:11
SUBMISSIONS
39:15, 65:16,
89:2
SUBMIT 17:1,
26:18, 93:6
SUBMITTED 33:24
SUBPOENA 59:21,
60:19, 61:25,
62:1, 63:6,
63:9, 63:11,
64:6
SUBSIDIARIES
61:21, 64:5
SUBSTANCE 5:20,
20:19, 38:25,
73:21, 84:3,
85:22
SUBSTANCES 68:7
SUBSTANTIAL
80:18
SUBSTANTIALLY
29:13
SUBSTANTIVE
91:19, 94:15
SUBTERFUGE 78:2
SUBTITLES 58:17
SUCCINCT 28:21,
28:22

SUFFICIENT
47:20, 59:9,
88:24
SUGGESTED 87:23
SUGGESTING
64:6, 93:25
SUGGESTS 36:11
SUITE 2:24,
2:40, 3:9,
3:16, 3:23
SUMMARY 25:21,
71:25, 86:7,
87:9, 95:7
SUPPORT 32:18
SUPPORTS 93:20
SUPPOSE 25:10
SUPREME 11:12
SURPRISED 40:2
SURROUNDING
6:25, 54:22
SYSTEM 49:11,
93:18


< T >
T. 1:39, 105:8,
105:33, 105:35
TALKED 31:2,
40:18, 72:18,
75:24, 89:24
TALKS 61:3
TAX 2:30, 64:19
TEA 98:20
TECH 81:3
TECHNOLOGY
9:24, 75:5,
80:2, 97:8,
97:14
TELEPHONE 68:8
TENTATIVE 6:6,
11:9
TENTATIVELY 6:8
TERM 68:13,
68:18, 69:13,
70:15, 81:10
TERMS 11:9,
14:21, 19:23,
20:6, 23:7,
25:5, 27:23,
28:5, 46:16,

59:8, 66:17,
66:20, 66:21,
67:2, 67:3,
69:25, 72:18,
72:20, 73:3,
73:7, 73:8,
75:25, 77:14,
80:9, 84:9,
84:12, 85:17,
90:8
TERRORISM
19:24, 26:20,
27:3, 90:9
TEST 35:22,
38:10, 75:24,
76:24, 82:20
TESTED 37:16,
76:1, 76:14
TESTIFIED
95:15, 95:24
TESTIFIES
83:12, 92:22
TESTIFY 27:24,
30:5, 37:20,
40:7, 68:3,
68:8, 77:4,
77:9, 81:13,
83:7, 83:11,
85:3, 89:13,
92:3, 94:11,
96:1, 97:7
TESTIFYING
17:3, 69:22,
93:24, 94:6
TESTING 35:16,
36:12, 36:22,
37:1, 38:2,
38:14, 75:11,
75:16, 75:19,
75:25, 83:1,
83:2, 85:11,
85:13
TESTS 36:1
TEXT 40:15
THAT'LL 87:20
THEM. 60:21,
63:14
THEME 50:23
THEMES 16:4
THEMSELVES

13:8, 43:20
THEY'LL 81:5
THEY'VE 67:12,
86:1, 95:10,
96:3
THIRD 8:19,
59:17
THOUGH 93:1
THOUSANDS 68:24
THREE 47:15,
47:19, 70:25,
73:13, 80:25,
84:17, 88:1,
88:2, 97:5
THRESHOLD 43:1
THROUGHOUT
23:6, 48:7,
50:23
THRUST 11:5
THURSDAY 1:31,
4:1, 29:3,
53:23, 89:14,
91:17
TITLE 105:14
TITLES 58:17
TODAY 24:18,
29:3, 53:23,
86:6, 86:9,
86:18, 87:16,
98:11, 104:19
TOGETHER 74:19,
86:14, 86:18
TOLERATING
71:10
TOMORROW 50:18
TOOK 35:17
TOPIC 21:15,
52:3
TOPICS 21:14,
38:9
TOTAL 44:1,
44:4
TOTALITY 72:12,
98:11
TOTALLY 23:6,
42:19, 86:18,
95:6, 96:7
TOUCHED 65:6
TOUCHES 5:23
TOWARDS 78:18

TRACK 35:17
TRACKS 19:17
TRADE 16:17,
18:5
TRAINING 84:1
TRANSACTION
68:6
TRANSACTIONS
7:25
TRANSCRIBED
55:20
TRANSCRIPT
1:27, 56:6,
105:18, 105:22
TRANSCRIPTS
91:16, 92:19,
93:10, 94:7,
96:3
TRANSLATING
80:9
TRIALS 49:4
TRIED 70:21,
98:8
TRIER 74:11
TROJAN 16:8
TROPEA 65:10,
89:24
TRUE 23:9,
42:9, 61:18,
105:16
TRUSTWORTHINESS
59:12
TRY 50:11,
50:13, 51:12,
60:15, 61:7,
64:8, 85:18
TRYING 28:8,
32:24, 33:10,
53:16, 75:3,
93:25, 104:11,
104:15
TUESDAY 87:13
TURN 96:2
TURNED 57:23
TWO 16:6, 26:1,
27:11, 33:22,
36:10, 42:22,
57:1, 73:24,
74:1, 79:24,
84:14, 86:15,

99:20, 102:24
TWO-AND-A-HALF
103:11
TYPE 81:23,
81:24
TYPICAL 69:17


< U >
ULTIMATE 78:3
ULTIMATELY
17:7, 75:1
UMHOFER 3:7,
3:14, 3:21
UNABLE 85:5
UNCLEAR 9:8,
36:15
UNCOMMON 56:5,
68:6
UNCONTROVERSIAL
67:22
UNDERLIE 92:19
UNDERLYING
6:11, 22:8,
101:9
UNDERSTAND
13:4, 16:19,
16:22, 26:22,
32:12, 36:7,
38:4, 42:11,
48:3, 49:3,
50:21, 53:8,
53:20, 61:13,
65:1, 70:14,
74:11, 78:6,
84:8, 88:7,
93:13, 96:13,
99:22, 104:2
UNDERSTANDING
23:19, 68:13,
69:3, 74:21,
91:20
UNDERSTANDS
16:15
UNDERSTOOD
19:12, 28:13,
100:1
UNDERTAKEN
101:7
UNDISCLOSED

64:13
UNDULY 73:9
UNEQUIVOCALLY
63:13
UNFORTUNATELY
43:2
UNITED 1:1,
1:4, 2:5, 4:14,
4:16, 4:18,
4:20, 4:22,
7:12, 8:17,
17:16, 35:5,
62:2, 63:10,
67:23, 78:10,
79:1, 82:17,
105:10, 105:14,
105:24
UNIVERSE 48:17,
92:16
UNLAWFUL 10:18
UNLESS 79:9
UNNAMED 65:10
UNNECESSARY
19:8
UNOPPOSED 64:14
UNTIL 44:15,
45:11, 47:8,
49:16, 54:5,
54:19, 54:20
UPDATED 53:11
UPS 41:22
USA 1:7, 4:9


< V >
V. 4:9
VACUUM 41:11,
51:18
VALIDITY 5:15,
18:21, 18:22,
21:16, 21:17,
22:9, 23:16,
23:22, 24:3,
34:14, 38:20
VARIETY 67:4,
67:7
VARIOUS 81:10,
89:12
VERSION 26:5
VERSUS 36:13

VIEW 6:6, 9:4,
53:6, 64:22,
67:25, 72:3
VIEWS 84:11
VIOLATE 10:19,
79:19
VIOLATED 78:22
VIOLATION 10:20
VIOLATIONS
62:11, 79:19
VIRGIN 57:13
VIS-A-VIS 74:12
VISIBILITY
99:9, 99:14
VOIR 90:17,
90:19, 90:21,
91:11
VOLUME 102:4
VS 1:11


< W >
W. 3:6
WAFER 31:19,
31:21, 31:23,
32:2, 32:4,
32:5, 75:16
WAFERS 33:3,
37:17
WAIT 56:7
WANTED 15:20,
19:4, 20:7,
22:23, 71:18,
76:17, 83:11
WANTS 41:13,
61:10
WARRANTED 65:3
WASSERMAN 16:3,
16:12, 18:12,
18:15, 21:4,
21:16, 22:1,
22:13, 22:14,
22:16, 22:17,
28:25, 29:5,
29:9
WAYS 11:1
WEAPONS 19:25
WEDNESDAY 87:24
WEEK 28:15,
29:2, 29:5,

87:11, 87:14,
92:1
WEEKS 53:11,
104:13
WEST 1:41
WESTBY 81:2,
81:3, 84:16,
85:10, 97:7,
98:19
WESTERN 1:2
WHATEVER 37:12,
50:3, 102:16
WHATSOEVER 21:6
WHETHER 17:15,
20:25, 31:7,
31:10, 33:12,
33:16, 34:20,
35:1, 36:9,
36:13, 37:2,
59:18, 66:6,
66:17, 67:5,
68:12, 75:2,
83:18, 88:19,
88:20, 90:23,
91:18, 93:3
WHICHEVER 81:12
WHOEVER 70:14
WHOLE 78:5
WHOLESALE 84:18
WHOLLY-OWN 64:5
WHOLLY-OWNED
61:21
WHOM 80:17,
81:12
WIDE 79:5
WILLFULLY. 8:22
WILLIAM 2:36
WILLING 19:9,
21:8, 41:18,
50:11
WINDOWS 69:14
WITH. 10:8
WITHHOLD 92:19
WITHHOLDING
93:3
WITHIN 15:16,
31:10, 33:20,
35:1, 36:4,
36:9, 59:25,
66:7, 76:19,

86:19
WITHOUT 10:13,
12:23, 28:12,
35:6, 40:22,
68:1, 71:6,
103:20
WITNESS 14:20,
17:2, 25:15,
26:17, 30:5,
33:2, 57:19,
60:11, 68:3,
68:13, 68:19,
72:24, 80:5,
83:9, 87:22,
89:24, 94:6,
95:6, 95:16,
95:17, 95:24
WITNESSES
55:15, 65:6,
65:9, 66:16,
66:24, 72:18,
81:1, 81:12,
86:24, 87:19,
88:16, 89:7,
89:13, 91:19,
92:2, 93:24,
94:11, 95:9,
96:1, 96:19
WORD 68:3,
68:4, 68:25,
69:4, 80:6,
80:18, 81:14,
81:15
WORDS 17:13,
24:22, 27:14,
28:2, 31:5,
33:14, 33:17,
33:20, 34:17,
34:19, 34:21,
54:22, 68:8,
81:16, 82:6,
82:10, 99:21
WORK 25:8,
51:20, 69:21,
98:23
WORKING 48:6,
78:18
WORLD 75:5
WRITTEN 83:4,
86:8, 87:16

```
WROTE 38:2,
64:20, 64:23


< Y >
YEARS 49:5
YI-CHI 4:10,
10:7, 10:10
YORK 60:20,
62:4
YOURSELF 22:15


< Z >
Z-5 67:13,
67:14
Z-5. 67:9
ZERO 52:10
```