UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

HONORABLE JOHN A. KRONSTADT

UNITED STATES DISTRICT JUDGE PRESIDING

- - -

```
USA,                             )
                                 )
              PLAINTIFF,         )
                                 )
VS.                              ) CR18-00050-JAK
                                 )
SHIH, ET AL.,                    )
              DEFENDANTS.        )
_____)
```

REPORTER'S TRANSCRIPT OF TRIAL PROCEEDINGS

**DAY 5, VOLUME 1 OF 2**

LOS ANGELES, CALIFORNIA

WEDNESDAY, MAY 22, 2019; 8:30 AM

_____

ALEXANDER T. JOKO, CSR NO. 12272
FEDERAL OFFICIAL COURT REPORTER
350 WEST FIRST STREET, ROOM 4311
LOS ANGELES, CA 90012
AJ_CSR@YAHOO.COM

1    **APPEARANCES OF COUNSEL:**

2    FOR PLAINTIFF:          MELANIE ANN HANSON SARTORIS
                             AUSA - OFFICE OF US ATTORNEY
3                            UNITED STATES DISTRICT COURTHOUSE
                             312 NORTH SPRING STREET
4                            12TH FLOOR
                             LOS ANGELES, CA 90012
5

6                            JUDITH A. HEINZ
                             AUSA - OFFICE OF US ATTORNEY
7                            CRIMINAL DIVISION - US COURTHOUSE
                             312 NORTH SPRING STREET
8                            15TH FLOOR
                             LOS ANGELES, CA 90012-4700
9

10                           KHALDOUN SHOBAKI
                             AUSA - OFFICE OF US ATTORNEY
11                           CYBER AND INTELLECTUAL
                             PROPERTY CRIMES SECTION
12                           312 NORTH SPRING STREET
                             SUITE 1500
13                           LOS ANGELES, CA 90012

14

15                           JAMES C. HUGHES
                             AUSA - OFFICE OF US ATTORNEY
                             TAX DIVISION
16                           300 NORTH LOS ANGELES STREET
                             ROOM 7211
17                           LOS ANGELES, CA 90012

18

19                           WILLIAM ROLLINS
                             AUSA - OFFICE OF US ATTORNEY
                             GENERAL CRIMES SECTION
20                           312 NORTH SPRING STREET
                             SUITE 1200
21                           LOS ANGELES, CA 90012

22

23

24

25

1    **APPEARANCES (CONTINUED)**

2

       FOR DEFENDANT SHIH:
3
                            JAMES W. SPERTUS
4                           SPERTUS LANDES AND UMHOFER LLP
                            1990 SOUTH BUNDY DRIVE
5                           SUITE 705
                            LOS ANGELES, CA 90025
6

7                           JOHN HANUSZ
                            SPERTUS LANDES AND UMHOFER LLP
8                           1990 SOUTH BUNDY DRIVE
                            SUITE 705
9                           LOS ANGELES, CA 90025

10
                            CHRISTA L. CULVER
11                          SPERTUS LANDES AND UMHOFER LLP
                            1990 SOUTH BUNDY DRIVE
12                          SUITE 705
                            LOS ANGELES, CA 90025
13

14

15

16

17

18

19

20

21

22

23

24

25

1                    **I N D E X**

2

3                                              <u>PAGE</u>

4     <u>MAUREEN MILLER</u>

5     DIRECT EXAMINATION BY MS. SARTORIS................ 6

6     CROSS-EXAMINATION BY MR. SPERTUS................. 35

7

8     <u>EXHIBIT</u>      <u>DESCRIPTION</u>                 <u>MARKED RECEIVED</u>

9     754           PERSONAL FINANCIAL PROFILE              6
                    STANDARD CHARTERED BANK
10
      690           MMCOMM DOCUMENT                        28
11
      691           HONEYWELL ACQUISITION                  28
12                  DOCUMENT

13    4230          PHOTO                                  42

14    4270 AND      CREE BOXES                   47
      3996
15
      3996-A        BUBBLE WRAP                  64
16
      3996-B        PLASTIC SHELL                65
17
      3638, 3639    WAFERS                       66
18    AND 3640

19

20

21

22

23

24

25

1          LOS ANGELES, CALIFORNIA; WEDNESDAY, MAY 22, 2019

2

3                          8:30 AM

4                        - - - - -

5

6                  **(THE FOLLOWING PROCEEDINGS WERE HELD IN**

7             **OPEN COURT OUTSIDE THE PRESENCE OF THE JURY:)**

8             THE COURT:  CR18-00050, USA VERSUS YI-CHI

9     SHIH.

10                 WOULD YOU STATE YOUR APPEARANCES, PLEASE.

11             MS. HEINZ:  GOOD MORNING, YOUR HONOR.  JUDITH

12    HEINZ ON BEHALF OF THE UNITED STATES.

13                 WITH US AT COUNSEL TABLE IS SPECIAL AGENT

14    ALEX STORINO OF THE FBI.

15             MR. ROLLINS:  GOOD MORNING, YOUR HONOR.  WILL

16    ROLLINS ON BEHALF OF THE UNITED STATES.

17             MR. SHOBAKI:  GOOD MORNING, YOUR HONOR.  KHAL

18    SHOBAKI ON BEHALF OF THE UNITED STATES.

19             MR. HUGHES:  GOOD MORNING, YOUR HONOR.  JAMES

20    HUGHES ON BEHALF OF THE UNITED STATES.

21             MS. SARTORIS:  GOOD MORNING, YOUR HONOR.

22    MELANIE SARTORIS ON BEHALF OF THE UNITED STATES.

23             MR. SPERTUS:  GOOD MORNING, YOUR HONOR.  JAMES

24    SPERTUS, JOHN HANUSZ, CHRISTA WASSERMAN ON BEHALF OF

25    DR. SHIH WHO IS PRESENT BEFORE THE COURT.

```
1          THE COURT:  GOOD MORNING TO ALL OF YOU.

2               TWO THINGS -- I KNOW YOU HAVE AN EXHIBIT

3     MATTER.

4               WE'VE RECEIVED -- WELL, ONE OF THE JURORS

5     IS UNAVAILABLE JUNE 17 TO 21 IN CASE WE ARE STILL IN

6     SESSION.  WHEN WE GET CLOSER TO THAT AND SEE WHETHER WE

7     WILL BE IN SESSION, THEN WE CAN CONFER.

8               ANOTHER JUROR HAS A CONFLICT ON JUNE 28.

9               MORE SIGNIFICANT IS THAT ONE JUROR IS

10    REQUESTING JUNE 4 TO ATTEND HER DAUGHTER'S GRADUATION.

11    I DON'T HAVE ANY DETAILS IN TERMS OF WHEN THE

12    GRADUATION IS, WHEN SHE WOULD HAVE TO LEAVE.

13              AND THEN ON JUNE 5, IN THE MORNING, 9:00

14    TO 12:00, I HAVE ANOTHER -- THERE'S ANOTHER EVENT HERE

15    IN THE COURTROOM.  SO I JUST WANTED TO ALERT YOU TO

16    THAT IN TERMS OF TIMING OF WITNESSES.

17              I DON'T KNOW ABOUT JUNE 4 YET BECAUSE I'M

18    NOT SURE WHEN THE JUROR NEEDS TO LEAVE TO MAKE THE

19    GRADUATION.

20              SECOND, WITH RESPECT TO THE TESTIMONY OF

21    MR. MATTIS, TWO QUESTIONS FOR THE GOVERNMENT:

22              FIRST, IS THERE ANY REASON THAT YOU CAN

23    NOT PROVIDE A LIST OF THE WEBSITES AND/OR DOCUMENTS ON

24    WHICH THE WITNESS RELIED IN REACHING HIS OPINIONS TO

25    THE DEFENSE?
```

```
 1              AND, SECOND, YESTERDAY, DURING HIS

 2   CROSS-EXAMINATION, DURING THE OUTSIDE THE PRESENCE OF

 3   THE JURY, HE WAS ASKED ABOUT SOME NOTES HE HAD AND

 4   WHETHER HE COULD PRODUCE THEM.  HE DIDN'T OBJECT TO

 5   DOING THAT.

 6              CAN THOSE BE PRODUCED?

 7              MR. SHOBAKI:  YES, YOUR HONOR.  I'LL MAKE THE

 8   REQUEST FROM HIM.

 9              I BELIEVE THAT THOSE TWO THINGS ARE

10   PROBABLY THE SAME ANSWER IN TERMS OF, HE TOOK NOTES

11   ABOUT HIS RESEARCH.  AND THOSE ARE THE NOTES THAT WOULD

12   PROBABLY REFLECT WHERE HE HAD GONE BEYOND THE TESTIMONY

13   THAT HE GAVE YESTERDAY ABOUT PLACES WHERE HE HAD

14   RESEARCHED --

15              THE COURT:  THAT'S FINE.

16              MR. SHOBAKI:  I'LL MAKE THAT REQUEST FROM HIM.

17              THE COURT:  CAN YOU GET THAT TO THE DEFENSE

18   WITHIN A WEEK?

19              MR. SHOBAKI:  YES, YOUR HONOR.

20              THE COURT:  THANK YOU.

21              ANYTHING YOU WANTED TO SAY ON THIS?

22              MR. HANUSZ:  NO, YOUR HONOR.  NOT ON THAT

23   ISSUE.

24              THE COURT:  YES, MS. SARTORIS?

25              MS. SARTORIS:  SO ARE WE -- DID YOU ASK ABOUT
```

```
1    THE EXHIBIT QUESTION --

2              THE COURT:  YES, THE EXHIBIT ISSUE YOU WANTED

3    TO DISCUSS.

4              MS. SARTORIS:  YES, YOUR HONOR.

5                   SO DEFENSE COUNSEL AND I HAVE CONFERRED,

6    AND I THINK WE'RE IN AGREEMENT.  THE GOVERNMENT WOULD

7    ASK THE COURT TO PERMIT THE ORIGINAL COPIES OF THE

8    EXHIBITS THAT WERE SEIZED TO GO BACK TO THE JURY AS

9    OPPOSED TO THE BINDER COPIES, EXCEPT IN SITUATIONS

10   WHERE THERE'S A REDACTION OR SOMETHING.  WE WOULD NEED

11   TO DO A PHOTO COPY INSTEAD OF THE ORIGINAL.

12             MR. SPERTUS:  NO OBJECTION TO THAT.

13             THE COURT:  THAT'S FINE.

14                  AS WE GET CLOSER TO THE TIME WHEN

15   EXHIBITS WILL BE PRESENTED, YOU NEED TO PULL THEM

16   TOGETHER, SO -- BECAUSE THERE MAY BE QUITE A FEW, AND

17   IT TAKES TIME.

18             MS. SARTORIS:  WE ACTUALLY BROUGHT THEM IN A

19   BOX TODAY, BUT THEY STILL NEED TO BE RECONCILED WITH

20   WHAT ACTUALLY GETS ADMITTED PURSUANT TO THE COURT'S

21   RULINGS.

22             THE COURT:  THAT'S FINE.

23                  ANYTHING ELSE WE NEED TO DO BEFORE WE

24   PROCEED?

25             MR. SPERTUS:  NO, YOUR HONOR.
```

```
1                    THE COURT:  IS MS. MILLER HERE?

2                    MS. SARTORIS:  YES.

3                    THE COURT:  GOOD MORNING, MS. MILLER.

4                    THE WITNESS:  GOOD MORNING, YOUR HONOR.

5                        (THE FOLLOWING PROCEEDINGS WERE HELD IN

6                    OPEN COURT IN THE PRESENCE OF THE JURY:)

7                    THE CLERK:  ALL RISE.

8                    THE COURT:  GOOD MORNING, LADIES AND

9      GENTLEMEN.

10                    ALL 15 JURORS ARE PRESENT.

11                    THANK YOU FOR BEING ON TIME.

12                    JUROR 15, MS. R., YOU HAVE A -- I HEARD

13     YOU HAVE A FAMILY EVENT ON JUNE 4.

14                    WHAT TIME WOULD YOU HAVE TO LEAVE HERE TO

15     BE ON TIME FOR THE EVENT?

16                    THE WITNESS:  IT'S IN THE MORNING, 10:00.

17                    THE COURT:  AND WHAT TIME DOES IT END?

18                    THE WITNESS:  PROBABLY LIKE 12:30.

19                    THE COURT:  OKAY.  WE'LL -- WE'LL DO OUR BEST

20     TO WORK AROUND THAT.  THANK YOU.  I THINK WE SHOULD BE

21     ABLE TO ACCOMMODATE THAT.

22                    MS. MILLER, WOULD YOU PLEASE RESTATE YOUR

23     NAME?

24                    THE WITNESS:  MAUREEN MILLER.

25                    THE COURT:  AND DO YOU UNDERSTAND THAT YOU
```

```
1    REMAIN UNDER OATH?

2              THE WITNESS:  YES, I DO.

3              THE COURT:  THANK YOU.

4                   MS. SARTORIS, PLEASE PROCEED.

5              MS. SARTORIS:  THANK YOU, YOUR HONOR.

6                 DIRECT EXAMINATION (CONTINUED)

7    BY MS. SARTORIS:

8    Q    GOOD MORNING, SPECIAL AGENT MILLER.

9    A    GOOD MORNING.

10   Q    WHEN WE BROKE YESTERDAY, WE WERE SPEAKING ABOUT

11   ITEMS THAT WERE SEIZED FROM DEFENDANT'S RESIDENCE IN

12   THE LOFT AREA OF THE BEDROOM -- OF DEFENDANT'S BEDROOM.

13             DO YOU REMEMBER THAT?

14   A    YES, I DO.

15             MS. SARTORIS:  YOUR HONOR, AT THIS TIME, THE

16   GOVERNMENT WOULD SEEK TO INTRODUCE INTO EVIDENCE

17   EXHIBIT 754.

18             THE COURT:  ANY OBJECTION?

19             MR. SPERTUS:  NO, YOUR HONOR.

20             THE COURT:  754 IS ADMITTED.

21             (EXHIBIT 754 RECEIVED IN EVIDENCE)

22   BY MS. SARTORIS:

23   Q    SPECIAL AGENT MILLER, IF I COULD ASK YOU TO LOOK AT

24   VOLUME 9, EXHIBIT 754.

25             WHAT IS THIS?
```

```
 1    A    THIS IS A PERSONAL FINANCIAL PROFILE FOR THE

 2    DEFENDANT YI-CHI SHIH FOR STANDARD CHARTERED BANK.

 3    Q    COULD YOU TURN TO PAGE 6 OF THIS EXHIBIT, WHICH IS

 4    ALSO 872143.

 5               IS THIS DOCUMENT SIGNED?

 6    A    YES, IT IS.

 7    Q    AND IF I ASK YOU TO LOOK AT PAGE 10, IS IT SIGNED

 8    THERE AS WELL?

 9    A    YES, IT IS.

10    Q    WHAT IS THE DATE ON THESE DOCUMENTS?

11    A    THE DATE IS APRIL 27TH OF 2011.

12    Q    AND WHAT'S THE LOCATION AS REFLECTED IN THE

13    DOCUMENTS OF STANDARD CHARTERED BANK?

14               IF I COULD DIRECT YOUR ATTENTION TO PAGE 2,

15    WHICH IS 872139, THE FIRST LINE.

16    A    THIS IS STANDARD CHARTERED BANK IN HONG KONG.

17    Q    I'LL ASK YOU TO TURN TO EXHIBIT 716.

18               WHAT IS THIS?

19    A    THIS IS A STANDARD CHARTERED APPLICATION FORM FOR

20    INVESTMENT ACCOUNT FOR SERVICES.

21    Q    AND WHERE -- WHAT LOCATION OF STANDARD CHARTERED IS

22    THIS BANK FROM?

23    A    THIS IS ALSO FROM HONG KONG.

24    Q    AND WHO IS -- THIS INVESTMENT ACCOUNT SERVICES

25    DOCUMENT, WHO IS IT FOR?
```

1    A    THE NAME IN ENGLISH IS FOR SHIH YI-CHI.

2    Q    AND WHEN IS IT DATED?

3    A    APRIL 27TH OF 2011.

4    Q    IF YOU COULD LOOK BRIEFLY AT EXHIBIT 717.

5         WHAT IS THIS DOCUMENT?

6    A    THIS IS A DEPARTMENT OF TREASURY DOCUMENT RECORD OF

7    AUTHORIZATION TO ELECTRONICALLY FILE FBAR'S.

8    Q    COULD I DIRECT YOU TO VOLUME 8, EXHIBIT 655,

9    PLEASE.

10        DO YOU HAVE THAT IN FRONT OF YOU?

11   A    YES, I DO.

12   Q    WHAT IS THIS?

13   A    THIS IS A BUREAU OF INDUSTRY AND SECURITY EXPORT

14   ENFORCEMENT DOCUMENT.  IT LISTS MAJOR CASES IN THE

15   DOCUMENT.

16   Q    AND THE BUREAU OF INDUSTRY AND SECURITY, AS IT SAYS

17   ON THE FIRST LINE OF THIS -- PAGE 1 OF THIS DOCUMENT,

18   IS WITH THE DEPARTMENT OF COMMERCE; IS THAT CORRECT?

19   A    YES, IT IS.

20   Q    DOES THIS DOCUMENT -- IF YOU LOOK THROUGH EXHIBIT

21   655, PAGES 1 THROUGH 10, DOES THIS DOCUMENT DESCRIBE

22   SEVERAL CASES FROM THE BIS, INCLUDING CASES INVOLVING

23   CHINA?

24   A    YES, IT DOES.

25   Q    AND INCLUDING COMPUTER CHIPS AND SATELLITE AND

1   RADAR TECHNOLOGY?

2   A    YES, IT DOES.

3   Q    IF YOU COULD TURN TO PAGE 11.

4            WHAT IS THIS DOCUMENT?

5            IT'S 855227 ON THE BOTTOM.  IT'S THE LAST PAGE

6   OF EXHIBIT 655.

7   A    THESE ARE INSTRUCTIONS FROM THE BUREAU OF INDUSTRY

8   AND SECURITY ON HOW TO START THE PROCESS OF EXPORTING

9   AN ITEM OUT OF THE UNITED STATES.

10  Q    SO YOU SEE -- WE'LL GO THROUGH IT BRIEFLY.

11           STEP ONE, WHAT'S THE FIRST THING YOU'RE

12  SUPPOSED TO DO?  THE FIRST SENTENCE OF STEP ONE?

13  A    THE FIRST SENTENCE SAYS, "FIGURE OUT WHETHER YOU

14  NEED AN EXPORT LICENSE."

15  Q    AND LOOKING AT THE LAST SENTENCE IN STEP ONE, WHAT

16  DOES THAT SAY TO DO?

17  A    THE LAST SENTENCE SAYS, "YOU CAN CONTACT THE BIS

18  OFFICES IN WASHINGTON DC AT (202) 482-4811" OR THEIR

19  NEWPORT BEACH LOCATION AT "(949) 660-0144."

20  Q    DOES IT SAY RIGHT ABOVE THAT THAT YOU CAN CONTACT

21  THE BUREAU OF INDUSTRY AND SECURITY, DEPARTMENT OF

22  COMMERCE, AND THEY WILL WALK YOU THROUGH THE PROCESS?

23  A    YES, IT DOES.

24  Q    IF YOU LOOK AT STEP TWO, FIRST SENTENCE, WHAT'S THE

25  NEXT STEP?

A    THE FIRST SENTENCE SAYS, "TO APPLY FOR THE EXPORT LICENSE WITH HELP FROM A BIS SPECIALIST."

Q    AND STEP THREE, IF YOU COULD JUST COVER THE FIRST SENTENCE IN STEP THREE.

A    "CONTACT THE TRADE INFORMATION CENTER OF THE U.S. GOVERNMENT WHENEVER YOU HAVE A QUESTION."

Q    AND STEP FOUR, DOES THAT ALSO SUGGEST THAT YOU CAN USE SERVICES AS WELL IF YOU NEEDED TO OR WANTED TO?

A    YES, IT DOES.

Q    LOOKING AT PAGE 656 -- NOT "PAGE," EXHIBIT 656.

     655 AND 656, WERE THESE DOCUMENTS THAT WERE SEIZED IN DEFENDANT'S BEDROOM IN THE LOFT AREA?

A    YES, THEY WERE.

Q    656, PAGE 1, SAYS "855228" AT THE BOTTOM.

     WHAT IS THIS DOCUMENT?

A    THIS DOCUMENT STARTS OFF WITH A SUMMARY OF STEPS TO TAKE TO PROCESS AN EXPORT.  AND THEN IT BEGINS WITH AN INTRODUCTION TO THE COMMERCE DEPARTMENT EXPORT CONTROLS.

Q    COULD YOU BRING YOUR ATTENTION TO THE LAST BULLET POINT IN THE SUMMARY OF STEPS.

     WHAT DOES THAT SAY?

A    IT SAYS, "EXPORT YOUR ITEM USING THE CORRECT ECCN AND THE APPROPRIATE SYMBOL, EG, NLR LICENSE EXCEPTION OR LICENSE NUMBER AND EXPIRATION DATE ON YOUR EXPORT

```
 1   DOCUMENTATION, EG, SHIPPER'S EXPORT DECLARATION."

 2   Q    WE'RE NOT GOING TO GO THROUGH ALL OF THESE

 3   DOCUMENTS, BUT YOU ARE ABLE TO HAVE THEM TO LOOK AT.

 4              IF I ASK YOU, THOUGH, TO TURN TO PAGE 2 OF

 5   THIS EXHIBIT, "855229" AT THE BOTTOM.

 6              WHAT DOES THIS -- WHAT ARE PAGES 2 THROUGH 6?

 7   A    THESE ARE A CONTINUATION OF CASES FROM THE BUREAU

 8   OF INDUSTRY AND SECURITY.

 9   Q    SO THESE WERE ADDITIONAL CASES THAT INCLUDE

10   VIOLATIONS OF EXPORT -- SUMMARIZED VIOLATIONS OF EXPORT

11   LAWS?

12   A    YES, THAT'S CORRECT.

13   Q    INCLUDING EXPORTS TO CHINA?

14   A    YES.

15   Q    INCLUDING ON PAGE 5, WHICH IS 855232, MICROWAVE

16   AMPLIFIERS TO CHINA?

17   A    YES.

18   Q    IF YOU LOOK AT PAGE 7 OF THIS EXHIBIT, 656, WHAT IS

19   THIS?

20              AND IT SAYS "855234" AT THE BOTTOM.

21   A    THIS IS, AGAIN, AN INTRODUCTION TO COMMERCE

22   DEPARTMENT EXPORT CONTROLS.  IT GIVES YOU A BRIEF

23   OVERVIEW.

24   Q    IF YOU LOOK AT THE BOTTOM, DOES IT DEFINE WHAT AN

25   EXPORT IS?
```

1    A    YES.

2    Q    WHAT DOES IT SAY?

3    A    IT SAYS, "ANY ITEM THAT IS SENT FROM THE

4    UNITED STATES TO A FOREIGN DESTINATION IS AN EXPORT."

5    Q    IF YOU LOOK AT THE NEXT PAGE, 855235, PAGE 8, ON

6    THE SCREEN, THE FIRST PARAGRAPH IN THE MIDDLE, DIRECT

7    YOUR ATTENTION TO THE SENTENCE THAT SAYS, "REGARDLESS."

8    A    OKAY.

9    Q    COULD YOU READ THAT SENTENCE AND THE ONE FOLLOWING

10    IT?

11    A    "A SET OF SCHEMATICS CAN BE SENT" --

12    Q    STARTING WITH THE SENTENCE "REGARDLESS" IN THE

13    MIDDLE OF --

14    A    OKAY.  "REGARDLESS OF THE METHOD USED FOR THE

15    TRANSFER, THE TRANSACTION IS CONSIDERED AN EXPORT FOR

16    EXPORT CONTROL PURPOSES.  AN ITEM IS ALSO CONSIDERED AN

17    EXPORT EVEN IF IT IS LEAVING THE UNITED STATES

18    TEMPORARILY, IF IT IS LEAVING THE UNITED STATES, BUT IS

19    NOT FOR SALE OR IF IT IS GOING TO A WHOLLY-OWNED U.S.

20    SUBSIDIARY IN A FOREIGN COUNTRY."

21    Q    AND THEN RIGHT BELOW THAT, DO YOU SEE WHERE IT

22    SAYS, "HOW TO DETERMINE IF YOU NEED A COMMERCE EXPORT

23    LICENSE"?

24    A    YES.

25    Q    COULD YOU READ THE FIRST TWO SENTENCES OF THAT

1    PARAGRAPH?

2    A    "A RELATIVELY SMALL PERCENTAGE OF TOTAL U.S.

3    EXPORTS AND REEXPORTS REQUIRE A LICENSE FROM THE BIS.

4    LICENSE REQUIREMENTS ARE DEPENDENT UPON AN ITEM'S

5    TECHNICAL CHARACTERISTICS, THE DESTINATION, THE

6    END-USER AND THE END-USE."

7    Q    IF YOU LOOK AT THE NEXT PAGE, 855236, PAGE 9, DO

8    YOU SEE WHERE IT SAYS "CLASSIFYING YOUR ITEM"?

9    A    YES.

10    Q    COULD YOU READ THAT PARAGRAPH?

11    A    "THE PROPER CLASSIFICATION OF YOUR ITEM IS

12    ESSENTIAL TO DETERMINING ANY LICENSING REQUIREMENTS

13    UNDER THE EXPORT ADMINISTRATION REGULATIONS OR E.A.R.

14    YOU MAY CLASSIFY THE ITEM ON YOUR OWN.  CHECK WITH THE

15    MANUFACTURER OR SUBMIT A CLASSIFICATION REQUEST TO HAVE

16    BIS DETERMINE THE ECCN FOR YOU."

17    Q    IN LOOKING AT THE REST OF THE DOCUMENT, IS THE REST

18    OF THIS EXHIBIT MORE INFORMATION ABOUT EXPORT LAWS AND

19    HOW TO OBTAIN AN EXPORT LICENSE AND THE REQUIREMENTS?

20    A    YES.

21    Q    COULD I ASK YOU TO TURN TO PAGE 13, WHICH IS

22    855240?

23    A    OKAY.

24    Q    UNDER THE WAYS TO EXPORT SECTION, "NLR, NO LICENSE

25    REQUIRED," DO YOU SEE THAT?

14

 1    A    YES, I DO.

 2    Q    SO DOES IT SAY, IF YOUR DOCUMENT DOES NOT -- IF

 3    YOUR EXPORT DOES NOT REQUIRE A LICENSE, YOU'RE TO MARK

 4    IT "NLR"?

 5    A    YES.

 6    Q    AND BELOW THAT, IT SAYS, "LICENSE EXCEPTIONS."

 7         DOES IT STATE IN THAT PARAGRAPH THAT, IF YOU

 8    HAVE AN EXCEPTION THAT APPLIES TO YOUR EXPORT, YOU ARE

 9    TO DESIGNATE, PUT THE DESIGNATION OF THE PARTICULAR

10    EXCEPTION ON YOUR EXPORT DOCUMENTS?

11    A    YES, IT DOES.

12    Q    IF I COULD ASK YOU TO LOOK AT PAGE 14.

13         WHAT IS THIS?

14         IT'S THE NEXT PAGE.

15    A    SORRY.

16         THIS IS ANOTHER DOCUMENT FROM THE U.S.

17    DEPARTMENT OF COMMERCE BUREAU OF INDUSTRY AND SECURITY

18    REGARDING EXPORT CONTROL.

19    Q    AND IT LISTS SOME OF THE EXPORT CONTROL REGIMES?

20    A    CORRECT.

21    Q    AND THE TOP ONE IS THE WASSENAAR AGREEMENT?

22    A    YES.

23    Q    IF I ASK YOU TO THEN LOOK AT THE LAST PAGE OF THIS

24    EXHIBIT, PAGE 15, DO YOU SEE THAT IT SAYS "855242" AT

25    THE BOTTOM?

```
 1   A    YES.

 2   Q    AND WHAT IS LISTED HERE?

 3   A    IT IS A SUMMARY OF STEPS TO TAKE TO PROCESS AN

 4   EXPORT.

 5   Q    AND AT THE LAST BULLET POINT, WHAT DOES THAT SAY?

 6   A    IT SAYS, "EXPORT YOUR ITEM USING THE CORRECT ECCN

 7   AND THE APPROPRIATE SYMBOL, EG, NLR LICENSE EXEMPTION

 8   OR LICENSE NUMBER AND EXPIRATION DATE ON YOUR EXPORT

 9   DOCUMENTATION, EG, SHIPPER'S EXPORT DECLARATION."

10   Q    IF WE TURN TO EXHIBIT 657, 658, ARE THESE DOCUMENTS

11   COMPRISED OF PORTIONS OF THE EXPORT ADMINISTRATIVE

12   REGULATIONS?

13   A    YES.

14   Q    AND 659, COULD YOU TURN TO THAT EXHIBIT, PLEASE.

15        WHAT IS THAT?

16   A    THIS IS THE WASSENAAR ARRANGEMENT ON EXPORT

17   CONTROLS.

18   Q    JUMP AHEAD TO EXHIBIT 661 AND '62.

19        ARE THESE ADDITIONAL PORTIONS OF THE EXPORT

20   ADMINISTRATION REGULATIONS?

21   A    YES, THEY ARE.

22   Q    GO BACK TO EXHIBIT 660.

23        WHAT IS THIS DOCUMENT?

24   A    THIS IS A COPY OF A PRESENTATION ON U.S. TRADE

25   CONTROLS WITH IMPORTANT CONSIDERATIONS FOR CANADIAN
```

```
 1    COMPANIES.

 2    Q    AND IT APPEARS TO BE WRITTEN OR AT LEAST THERE'S A

 3    NAME "JACK LEVY" ON HERE?

 4    A    YES.

 5    Q    IS THIS AN OVERVIEW OF THE U.S. LEGAL LANDSCAPE

 6    ACCORDING TO JACK LEVY?

 7    A    YES.

 8              MR. SPERTUS:  OBJECTION.  FOUNDATION FOR THE

 9    INTERPRETATION OF DOCUMENTS SEIZED.

10              THE COURT:  WHAT'S THE FOUNDATIONAL BASIS FOR

11    THIS WITNESS' KNOWLEDGE?

12              MS. SARTORIS:  JUST WHAT'S REFLECTED IN THE

13    DOCUMENT.

14              MR. SPERTUS:  THE DOCUMENT SPEAKS FOR ITSELF.

15              THE COURT:  I AGREE.

16                  SUSTAIN THE OBJECTION.

17    BY MS. SARTORIS:

18    Q    COULD YOU TURN TO PAGE 2 OF THAT DOCUMENT.

19              WE'LL JUST PUBLISH IT FOR THE JURY.

20              AND THEN NEXT PAGE, 855311.

21              AND THEN THE FOLLOWING PAGE.

22              THE NEXT PAGE.

23              AND THE FOLLOWING PAGE.

24              AND THE NEXT PAGE.

25              AND THE NEXT PAGE.
```

17

```
1              THE NEXT PAGE.

2              AND THEN THE LAST PAGE.

3              COULD I ASK, SPECIAL AGENT MILLER, FOR YOU TO

4       TURN TO VOLUME 9, EXHIBIT 665.

5              DO YOU HAVE THAT IN FRONT OF YOU?

6       A    YES, I DO.

7       Q    IF YOU -- WHAT IS THIS?

8       A    THIS WAS A BUSINESS PORTFOLIO FOR PULLMAN LANE

9       PRODUCTIONS.

10      Q    COULD I ASK YOU TO TURN TO PAGE 4 OF THAT EXHIBIT.

11      IT SAYS "855863" AT THE BOTTOM.  AND IN THE -- SORT OF

12      IN THE MIDDLE, DO YOU SEE THE WORDS "APRIL SHIH AND

13      YI-CHI SHIH"?

14      A    YES, I DO.

15      Q    AND DOES THIS DOCUMENT SAY THAT THEY'RE THE SOLE

16      MEMBERS OF THE COMPANY?

17      A    YES, IT DOES.

18      Q    AND IF YOU TURN TO PAGE 11, WHICH IS 855870 AT THE

19      BOTTOM, WHAT IS THIS DOCUMENT?

20      A    THIS IS A STATEMENT OF INFORMATION FOR THE

21      SECRETARY OF STATE.

22      Q    FOR WHO?

23      A    FOR PULLMAN LANE PRODUCTIONS.

24      Q    AND DOES IT SAY IN HERE THAT THE MANAGER OR

25      MANAGERS ARE APRIL SHIH AND YI-CHI SHIH?
```

1    A    YES.

2    Q    WHAT'S THE DESCRIPTION OF THE TYPE OF BUSINESS?

3    A    IT SAYS, "PRODUCTION AND CONSULTATION SERVICES TO

4    THE ENTERTAINMENT AND COMMUNICATION INDUSTRIES."

5    Q    AND IT'S SIGNED BY WHO?

6    A    IT IS SIGNED BY YI-CHI SHIH.

7    Q    COULD YOU TURN TO WHAT IS THE 17TH PAGE OF THAT

8    EXHIBIT.  IT SAYS "855876" AT THE BOTTOM.

9    A    OKAY.

10   Q    WHAT -- COULD YOU DESCRIBE WHO THE MEMBERS ARE AND

11   WHAT THEIR PERCENTAGE OF INTEREST IN THE LLC ARE?

12   A    THE TWO MEMBERS LISTED UNDER THE MEMBER NAME COLUMN

13   ARE APRIL SHIH AND YI-CHI SHIH.

14          THE DESCRIPTION OF MEMBER CONTRIBUTION IS CASH

15   FOR BOTH PERSONS.

16          THE FAIR MARKET VALUE IS LISTED AT A THOUSAND

17   DOLLARS.

18          AND THE PERCENTAGE INTEREST IN THE LIMITED

19   LIABILITY COMPANY FOR APRIL SHIH IS LISTED AT 10

20   PERCENT.  AND FOR YI-CHI SHIH, IT IS LISTED AT 90

21   PERCENT.

22   Q    PLEASE TURN TO EXHIBIT 664.

23          IF YOU TURN TO THE FIRST PAGE OF THIS EXHIBIT,

24   IT SAYS "855848" AT THE BOTTOM.

25          WHAT DOES THIS APPEAR TO BE?

```
1    A    THIS APPEARS TO BE A WIRE TRANSFER REQUEST FROM

2    PULLMAN LANE PRODUCTIONS TO JYS TECHNOLOGIES.

3    Q    AND THE REMAINING DOCUMENTS IN HERE, ARE THEY ALSO

4    CONSISTENT WITH WIRE TRANSFER REQUESTS?

5    A    YES.

6    Q    AND THE LAST TWO PAGES OF THIS EXHIBIT, ARE THEY

7    ACTUAL WIRE TRANSFER REQUESTS FROM CHINA TRUST BANK?

8    A    YES, THEY ARE.

9    Q    AND IF YOU LOOK AT 3, WHICH I BELIEVE IS ON THE

10   SCREEN, 855850, DOES IT SAY WHO THE ORIGINATOR IS?

11   A    THE ORIGINATOR NAME IS PULLMAN LANE PRODUCTIONS.

12   Q    AND WHO IS THE BENEFICIARY?

13   A    JYS TECHNOLOGIES.

14   Q    AND WHAT'S THE AMOUNT?

15   A    THE AMOUNT IS FOR 500,000 U.S. DOLLARS.

16   Q    WHO IS IT SIGNED BY?

17   A    YI-CHI SHIH.

18   Q    WHO IS THE RECEIVING BANK?

19   A    THE RECEIVING BANK IS TDOMCATTOR OR TD CANADA

20   TRUST.

21   Q    THAT'S IN MONTREAL, CANADA?

22   A    CORRECT.

23   Q    IF YOU GO TO THE LAST PAGE, IS THAT A SIMILAR WIRE

24   TRANSFER REQUEST, BUT FOR A DIFFERENT AMOUNT?

25   A    YES.
```

```
1    Q    AND WHAT'S THE AMOUNT HERE?

2    A    THIS AMOUNT IS 260,000 U.S. DOLLARS.

3    Q    WHAT'S THE DATE?

4    A    THE DATE IS MAY 10TH OF 2012.

5    Q    COULD YOU LOOK AT EXHIBIT 758, PLEASE.

6              DOES THIS APPEAR TO BE AN INSTRUCTION BY FAX

7    FROM PULLMAN LANE TO CHINA TRUST TO TRANSFER MONEY

8    BETWEEN PULLMAN LANE BANK ACCOUNTS?

9    A    YES.

10   Q    WHO SIGNED IT?

11   A    YI-CHI SHIH.

12   Q    PLEASE TURN TO EXHIBIT 697.

13              DO YOU RECOGNIZE THIS?

14   A    YES.

15   Q    FOCUSING ON THE -- SO THERE'S A TWO-PAGE EXHIBIT.

16   AND IT APPEARS THAT IT'S AN E-MAIL.  AND IT SORT OF --

17   YOU SEE THE SAME E-MAIL FROM YI-CHI SHIH ON BOTH PAGES,

18   ALTHOUGH THEY'RE AT DIFFERENT TIMES.

19              IS THAT CORRECT?

20   A    YES.

21   Q    SO LOOKING AT THE PORTION FROM YI-CHI SHIH, AND YOU

22   CAN LOOK AT PAGE 1.

23              FROM YI-CHI SHIH TO JEFF RADKE.  AND IT LISTS

24   A NUMBER OF OTHER INDIVIDUALS.

25              WHAT DOES IT SAY?
```

```
 1    A    THE SUBJECT IS "REGULAR DESIGNATION NOTICE."  AND

 2    THE BODY OF THE E-MAIL, IT SAYS, "THIS IS TO INFORM YOU

 3    OF MY DECISION TO RESIGN MY CURRENT POSITION OF SENIOR

 4    TECHNOLOGY MANAGER AT HONEYWELL DUE TO PERSONAL

 5    REASONS."

 6    Q    WHAT ELSE DOES IT SAY?

 7    A    IT SAYS, "MY LAST DAY OF WORK SHALL BE FRIDAY, JULY

 8    1ST, 2011.  PLEASE MAKE PROPER ARRANGEMENT TO TRANSFER

 9    MY DUTIES.  IT HAS BEEN MY PRIVILEGE TO WORK WITH ALL

10    OF YOU.  THANKS."  AND THEN IT HAS THE WORDS "YI-CHI

11    SHIH."

12    Q    WHO DID HE SEND THAT TO?

13    A    HE SENT IT TO A NUMBER OF HONEYWELL CO-WORKERS.

14    LISTED, "JEFF RADKE, BROOKE MCILVAIN, LONG Q BUI,

15    YAOZHONG, KIET MAI, DARREN GOSHI AND CAM HONG T."

16    Q    IF I COULD TURN YOUR ATTENTION TO EXHIBIT 743 AND

17    744.

18         DO YOU HAVE THOSE IN FRONT OF YOU?

19    A    YES.

20    Q    WHAT IS EXHIBIT 743?

21    A    743 IS A FOUNDRY PACKING SLIP FROM CREE.

22    Q    AND WHERE IS CREE LOCATED?

23    A    CREE IS LOCATED IN DURHAM, NORTH CAROLINA.

24    Q    SO "COMMERCIAL FOUNDRY PARKING SLIP," THAT'S WHAT

25    IT SAYS AT THE TOP.
```

```
 1              WHO DOES IT SAY THE SELLER IS?

 2     A    THE SELLER SAYS "CREE RESEARCH."

 3     Q    AND WHO IS THE CONSIGNEE?

 4     A    KIET MAI.

 5     Q    WHAT COMPANY IS KIET MAI AFFILIATED WITH?

 6     A    MICROEX ENGINEERING.

 7     Q    AND WHAT'S THE INVOICE DATE AND NUMBER?

 8     A    THE INVOICE DATE IS DECEMBER 26, 2013.  AND THE

 9     ORDER NUMBER IS "CREE," C-R-E-E, "DASH, 1301."

10     Q    AND UNDER "THE SPECIFICATIONS OF COMMODITIES," DO

11     YOU SEE THAT THERE?

12     A    YES.

13     Q    WHAT DOES IT SAY?

14     A    SO IT SAYS, "93B2GM1 4 GAN," WHICH IS ABBREVIATED

15     FOR GALLIUM NITRADE, "MMIC WAFERS."

16     Q    DOES IT SAY IF ANY OF THE WAFERS ARE DICED?

17     A    YES.  IT SAYS THREE WAFERS ARE DICED AND ONE WAFER

18     IS UNDICED.

19     Q    LOOKING AT EXHIBIT 744, WHAT'S THAT?

20     A    THIS DOCUMENT IS A CREE PROCESS SPECIFICATION SHEET

21     THAT ACCOMPANIES THE PACKING SLIP.

22     Q    WOULD YOU LOOK AT EXHIBIT 698, PLEASE.

23              WHAT IS THIS?

24     A    THIS WAS LITERATURE THAT WAS FOUND RELATED TO THE

25     CREE FOUNDRY SERVICES.
```

1  Q    AND EXHIBIT 699, WHAT IS THIS?

2  A    THIS IS LITERATURE RELATED TO TRIQUINT

3  SEMICONDUCTOR COMPANY.

4  Q    IF YOU COULD TURN TO 749 -- EXHIBIT 749.

5        IF YOU COULD LOOK AT EXHIBITS 749 AND 781.

6        WHAT ARE THESE DOCUMENTS?

7  A    749 IS A QUOTE FROM WIN SEMICONDUCTORS.  AND THE

8  CUSTOMER NAME IS LISTED AS JYS TECHNOLOGIES.  AND IT IS

9  ADDRESSED TO THE ATTENTION OF ISHIANG SHIH.

10  Q    781?

11  A    781 IS A PURCHASE ORDER FROM JYS TECHNOLOGIES TO

12  WIN SEMICONDUCTORS.

13  Q    WHERE IS THE SHIP-TO LOCATION?

14  A    THE SHIP-TO LOCATION SAYS, "JYS TECHNOLOGIES."  AND

15  THERE'S AN ADDRESS IN CANADA LISTED.

16  Q    PLEASE LOOK AT EXHIBIT 752.

17        WHAT IS THIS?

18  A    THIS IS AN INVOICE WITH THE SHIPPER NAME "RML

19  TECHNOLOGY COMPANY," WITH AN ADDRESS LISTED IN CHENGDU

20  CHINA.  AND THE CONSIGNEE IS MICROEX ENGINEERING, WHICH

21  HAS A LOS ANGELES CALIFORNIA ADDRESS LISTED.

22  Q    AND IS -- IF YOU GO TO TWO PAGES AFTER THAT, DO YOU

23  SEE A PACKING LIST?

24  A    YES.

25  Q    AND DO YOU SEE -- NEXT TO "PACKING PERSON," DO YOU

```
1    SEE A DATE?

2    A    YES.  IT APPEARS TO BE DECEMBER 17TH OF 2012.

3    Q    PLEASE TURN TO EXHIBIT 719.

4         LOOKING AT THE EXHIBIT, WHAT IS THIS?

5    A    THIS IS A BUSINESS CARD THAT HAS ONE SIDE IN

6    MANDARIN AND THE OTHER SIDE IS IN ENGLISH.

7    Q    TURNING TO THE ENGLISH SIDE.

8    A    THIS BUSINESS CARD HAS THE NAME "YEH FEI," TITLE AS

9    "INTERNATIONAL COOPERATE DEPARTMENT MANAGER FOR

10   DINGTIAN."  AND THE ADDRESS IS LISTED IN CHENGDU CHINA.

11   Q    AND DOES THIS CARD INCLUDE AN E-MAIL ADDRESS AND A

12   MOBILE PHONE NUMBER?

13   A    YES, IT DOES.

14   Q    PLEASE TURN TO EXHIBITS 757 THROUGH '59.

15        WE'LL START WITH -- JUST LOOK AT 757, NOT

16   THROUGH '59.

17   A    OKAY.

18   Q    DO YOU HAVE EXHIBIT 757?

19   A    YES.

20        THIS IS A BUSINESS CARD FOR AN INDIVIDUAL

21   NAMED "ISHIANG SHIH."  LISTED UNDER HIS NAME IS

22   "TECHNICAL DIRECTOR."  IT'S FOR A COMPANY, CHENGDU

23   GASTONE TECHNOLOGY COMPANY.  AND THE ADDRESS IS LISTED

24   IN CHENGDU, CHINA.

25   Q    AND DOES IT HAVE AN E-MAIL ADDRESS ON IT AS WELL?
```

25

| | |
|---|---|
| 1 | A    YES, IT DOES. |
| 2 | Q    PLEASE TURN TO EXHIBIT 787. |
| 3 |      WAS THIS DOCUMENT FOUND IN DEFENDANT'S |
| 4 | BEDROOM? |
| 5 | A    YES. |
| 6 | Q    THIS IS A CHINESE LANGUAGE CHARACTER DOCUMENT. |
| 7 |      WAS THIS DOCUMENT TRANSLATED? |
| 8 | A    YES, IT WAS. |
| 9 | Q    PLEASE LOOK AT 722 -- EXHIBIT 722. |
| 10 | A    OKAY. |
| 11 | Q    WHAT DOES THIS APPEAR TO BE? |
| 12 | A    THIS APPEARS TO BE A REGISTRATION RECEIPT FOR A |
| 13 | 2012 ASIA PACIFIC MICROWAVE CONFERENCE.  THE NAME |
| 14 | LISTED IS "YI-CHI SHIH."  AND THE AFFILIATION IS RML. |
| 15 | Q    TURNING TO 759, AND THEN ALSO LOOK AT 780. |
| 16 | A    OKAY. |
| 17 | Q    DO THESE ALSO APPEAR TO BE REGISTRATION RECEIPTS OR |
| 18 | DOCUMENTS RELATED TO YI-CHI SHIH AND SYMPOSIUMS? |
| 19 | A    YES. |
| 20 | Q    LOOKING AT 780. |
| 21 | A    OKAY. |
| 22 | Q    WHAT IS REPRESENTED HERE? |
| 23 | A    SO THESE ARE TWO BADGES FOR THE INTERNATIONAL |
| 24 | MICROWAVE SYMPOSIUM BY THE IEEE.  THE NAME LISTED IS |
| 25 | "YI-CHI SHIH."  AND THE COMPANY IS GASTONE TECHNOLOGY. |

1    Q    WHAT'S THE DATE ON THE MIDDLE ONE?

2    A    THE DATE ON THE MIDDLE ONE IS JUNE 2ND THROUGH 7TH

3    OF 2013.

4    Q    AND LOOKING AT THE BOTTOM, WHAT DOES THAT SAY?

5    A    THIS IS, AGAIN, AN INTERNATIONAL MICROWAVE

6    SYMPOSIUM BADGE FOR THE IEEE, DATED JUNE 1ST THROUGH

7    THE 6TH OF 2014.  AND THE NAME "YI-CHI SHIH" AND

8    "GASTONE TECHNOLOGY" ALSO APPEAR ON THIS ONE.

9    Q    PLEASE TURN TO EXHIBIT 782.

10    A    OKAY.

11    Q    WHAT IS THIS DOCUMENT?

12    A    SO THIS APPEARS TO BE AN E-MAIL.  IT'S -- THE

13    SUBJECT LINE SAYS, "YOUR HOTEL RESERVATION."  THE

14    "FROM" LINE SAYS, "IEEE INTERNATIONAL MICROWAVE

15    SYMPOSIUM 2012."  THE E-MAIL ADDRESS LISTED IS

16    "YICHISHIH@YAHOO.COM."  IT IS DATED MAY 27TH, 2012.

17             AND THEN IF YOU SCROLL DOWN TO THE MIDDLE OF

18    THIS DOCUMENT, THE GUEST INFORMATION SAYS, "YE YUAN AT

19    3040 BECKMAN ROAD, LOS ANGELES, CALIFORNIA."

20    Q    IS THERE AN E-MAIL ADDRESS THERE?

21    A    YES.  IT SAYS "YICHISHIH@YAHOO.COM."

22    Q    AND THE HOTEL, WHERE IS THIS HOTEL LOCATED?

23    A    THIS IS IN MONTREAL.

24    Q    TURNING TO 783.

25             WHAT IS THIS DOCUMENT?

```
1    A    THIS IS ANOTHER E-MAIL WITH A SUBJECT, "YOUR HOTEL

2    RESERVATION."  IT IS FROM THE IEEE INTERNATIONAL

3    MICROWAVE SYMPOSIUM 2012.  IT IS TO

4    YICHISHIH@YAHOO.COM.  IT IS DATED MAY 27TH, 2012.

5              AND THEN UNDER "GUEST INFORMATION," IT SAYS,

6    "JIERU DENG."  AND THEN THE ADDRESS IS 3040 BECKMAN

7    ROAD, LOS ANGELES, CALIFORNIA.  AND THE E-MAIL ADDRESS

8    IS "YICHISHIH@YAHOO.COM."  AND THE HOTEL INFORMATION IS

9    THE SAME AS THE PREVIOUS DOCUMENT IN MONTREAL.

10   Q    AND TURNING TO EXHIBIT 784, THIS IS A SIMILAR HOTEL

11   RESERVATION CONFIRMATION?

12   A    YES.

13   Q    WHO IS THE GUEST THIS TIME?

14   A    THE GUEST IS YAPING CHEN.

15   Q    ALSO AT BECKMAN ROAD?

16   A    YES.  CORRECT.

17   Q    AND THE SAME E-MAIL ADDRESS?

18   A    YES.

19   Q    OKAY.  SO TURNING TO EXHIBIT 785, IS THIS ANOTHER

20   RESERVATION ACKNOWLEDGMENT HOTEL CONFIRMATION WITH THE

21   SAME INFORMATION, BUT A DIFFERENT GUEST?

22   A    YES.

23   Q    AND WHO IS THE GUEST HERE?

24   A    THE GUEST LISTED IS "YU JING GUAN."

25   Q    SPECIAL AGENT MILLER, WE JUST DISCUSSED A NUMBER OF
```

28

```
 1   DOCUMENTS THAT WERE IN THE SORT OF MAIN OFFICE/LOFT

 2   AREA OF DEFENDANT'S BEDROOM.

 3              DID THAT AREA ALSO HAVE A CLOSET?

 4   A   YES.  IT HAD TWO CLOSETS.

 5   Q   AND WERE ITEMS SEIZED DURING THE SEARCH FROM THE

 6   CLOSET?

 7   A   YES.

 8   Q   IF YOU LOOK AT GOVERNMENT'S EXHIBITS 690 AND 691.

 9   A   OKAY.

10   Q   DO YOU HAVE THOSE IN FRONT OF YOU?

11   A   YES, I DO.

12   Q   WERE THESE DOCUMENTS SEIZED FROM THE CLOSET OFF THE

13   LOFT AREA IN THE BEDROOM?

14   A   YES.

15              MS. SARTORIS:  YOUR HONOR, THE GOVERNMENT

16   WOULD SEEK TO INTRODUCE AND ADMIT EXHIBITS 690 AND 691.

17              THE COURT:  ANY OBJECTION?

18              MR. SPERTUS:  NO OBJECTION, YOUR HONOR.

19              THE COURT:  THANK YOU.

20              EXHIBITS 690 AND 691 ARE ADMITTED.

21              (EXHIBITS 690 AND 691 WERE

22         RECEIVED IN EVIDENCE)

23   BY MS. SARTORIS:

24   Q   IF YOU COULD TURN TO EXHIBIT 690.

25   A   OKAY.
```

1    Q    WHAT IS THIS?

2    A    THIS IS AN MMCOMM DOCUMENT DATED FEBRUARY 21ST,

3    2007.  THE SUBJECT LINE SAYS, "NOTIFICATION OF

4    OWNERSHIP CHANGES."  AND THEN IT READS, "IN ACCORDANCE

5    WITH REQUIREMENTS OF THE SUBJECT CONTRACT CLAUSE,

6    MMCOMM HEREWITH PROVIDES NOTIFICATION OF ITS INTENTION

7    TO ALLOW HONEYWELL INTERNATIONAL INC. TO PURCHASE THE

8    ENTIRE STOCK OF MMCOMM ON OR AROUND 26 FEBRUARY 2007.

9    THIS WILL RESULT IN AN OWNERSHIP CHANGE AND WILL AFFECT

10   THE FOLLOWING CONTRACTS."  AND THEN IT LISTS VARIOUS

11   AGENCIES.

12   Q    WHAT ARE THE AGENCIES THAT ARE LISTED?

13   A    THE NAVAL RESEARCH LABORATORY, THE OFFICE OF NAVAL

14   RESEARCH AND THE AIR FORCE RESEARCH LABORATORY, SLASH,

15   WRIGHT-PATTERSON AIR FORCE BASE.

16   Q    AND WHO SIGNED THIS DOCUMENT?

17   A    IT WAS SIGNED BY YI-CHI SHIH.

18   Q    AS PRESIDENT OF MMCOMM?

19   A    CORRECT.

20   Q    AND PLEASE TURN TO EXHIBIT 691.

21        THIS IS ANOTHER DOCUMENT THAT WAS FOUND IN THE

22   CLOSET OF DEFENDANT'S BEDROOM LOFT AREA?

23   A    YES, THAT IS CORRECT.

24   Q    NOW, WHAT IS THIS DOCUMENT?

25   A    THIS DOCUMENT IS TITLED "THE HONEYWELL ACQUISITION

```
 1    DUE DILIGENCE U.S. EXPORT CONTROLS AND TRADE SANCTIONS
 2    RISK ASSESSMENT CHECKLIST."
 3    Q    AND DOES -- THE DOCUMENT ON THE LEFT-HAND SIDE,
 4    YOU'LL SEE THAT IT HAS A NUMBER OF -- THE TITLE IS
 5    "INDICATORS."  THE NEXT COLUMN IS "YES."  THE NEXT
 6    COLUMN IS "NO."  THE NEXT ONE "N.A.," AND THEN
 7    "COMMENTS."
 8           LOOKING AT THE FIRST UNDER THE "INDICATOR"
 9    COLUMN, THE NUMBER ONE, WHAT DOES -- WHAT DO THE FIRST
10    TWO BULLETS SAY?
11    A    SO IT SAYS, "EXPORT ACTIVITY.  DOES THE COMPANY
12    EXPORT GOODS OR TECHNOLOGY?"
13    Q    AND WHAT BOX IS CHECKED?
14    A    THE "YES" BOX IS CHECKED.
15    Q    LOOKING AT 2.
16    A    "DOES THE COMPANY EMPLOY FOREIGN NATIONALS?"
17    Q    SORRY, SECTION 2.
18    A    SORRY.
19           IT SAYS, "DOES THE COMPANY HAVE PRODUCTS OR
20    TECHNOLOGY CONTROLLED UNDER THE" -- AND THEN IT LISTS
21    THE "EXPORT ADMINISTRATION REGULATIONS OR" --
22    Q    IS THAT -- WHAT'S THAT CHECKED?
23    A    "YES."
24    Q    OKAY.  AND LOOKING AT 3, JUST READ THE QUESTION.
25    A    "DOES THE COMPANY SELL TO ANY U.S. GOVERNMENT
```

```
 1   AGENCY OR FOREIGN GOVERNMENT?"

 2   Q    AND WHAT BOX IS CHECKED "YES" -- WHICH ITEM IS

 3   CHECKED "YES"?

 4   A    "THE DEPARTMENT OF DEFENSE."

 5   Q    NOW, LOOKING AT NUMBER 4, WHAT DOES THAT ASK AND

 6   WHAT DOES THE FIRST BULLET POINT SAY?

 7   A    THE FIRST BULLET POINT SAYS, "DOES THE COMPANY HAVE

 8   A WRITTEN PROGRAM TO ENSURE COMPLIANCE WITH U.S. EXPORT

 9   CONTROLS AND TRADE SANCTIONS LAWS?"

10   Q    AND WHAT IS CHECKED THERE?

11   A    THE BOX "YES" IS CHECKED.

12   Q    AND IF YOU LOOK AT 5?

13   A    5 SAYS, "EXPORT COMPLIANCE PERSONNEL."

14        THE FIRST BULLET SAYS, "HAS THE COMPANY

15   DESIGNATED AN EXPORT COMPLIANCE PERSONNEL?"

16   Q    AND WHAT IS CHECKED?

17   A    THE BOX "YES" IS CHECKED.

18   Q    AND IF YOU GO OVER TO THE COMMENT SECTION, WHAT

19   DOES IT SAY?

20   A    IT LISTS TWO NAMES, "JESSE LU" AND "YI-CHI SHIH."

21   Q    NOW, IF YOU GO TO THE NEXT PAGE, IT SAYS, "859658"

22   AT THE BOTTOM.

23   A    OKAY.

24   Q    IF YOU LOOK AT NUMBER 11, WHAT DOES THAT SAY?

25   A    IT SAYS, "RECORDKEEPING."
```

```
 1              THE FIRST BULLET POINT SAYS, "IS THERE A

 2   CENTRAL FILE CONTAINING ALL EXPORT DOCUMENTS?"

 3   Q     "FOR EXAMPLE"?

 4   A     "FOR EXAMPLE S.E.D.'S, INVOICES AND LICENSES."

 5   Q     AND WHAT IS CHECKED?

 6   A     THE BOX "YES" IS CHECKED.

 7   Q     IF WE TURN TO THE NEXT PAGE, 859659, DO YOU SEE

 8   NUMBER 13?

 9   A     YES.

10   Q     AND WHAT DOES THAT SAY?

11   A     IT SAYS, "TRAINING."

12              AND THE FIRST BULLET POINT SAYS, "HAVE

13   EMPLOYEES WHO HAVE DIRECT OR SUPERVISORY RESPONSIBILITY

14   FOR INTERNATIONAL TRANSACTIONS BEEN TRAINED IN THE

15   REQUIREMENTS OF U.S. EXPORT CONTROL AND TRADE SANCTION

16   LAWS?"

17   Q     AND WHAT IS CHECKED, THE ANSWER TO THAT QUESTION?

18   A     THE BOX "YES" IS CHECKED.

19   Q     AND WHAT DOES IT SAY IN THE COMMENT SECTION?

20   A     IT SAYS, "JESSE LU" AND "YI-CHI SHIH YEARLY."

21   Q     AND GOING TO NUMBER 14.

22   A     14 SAYS, "INTERNAL REVIEWS AND AUDITS."

23              THE FIRST BULLET POINT SAYS, "DOES THE COMPANY

24   HAVE INTERNAL AUDIT, SLASH, REVIEW PROCEDURES IN PLACE

25   TO DETERMINE WHETHER EXPORT COMPLIANCE PROCEDURES ARE
```

1    BEING IMPLEMENTED?"

2    Q    WHAT'S THE ANSWER TO THAT QUESTION?

3    A    THE BOX "YES" IS CHECKED.

4    Q    AND WHAT DOES IT SAY IN THE COMMENT SECTION?

5    A    "YI-CHI SHIH."  AND IT SAYS, "REINFORCE TRAINING OF

6    PROCEDURES."

7    Q    SPECIAL AGENT MILLER, I BELIEVE YOU MENTIONED AT

8    THE BEGINNING OF YOUR TESTIMONY THAT THE AGENTS AND LAW

9    ENFORCEMENT PERSONNEL WHO EXECUTED THE SEARCH ARRIVED

10   AT THE RESIDENCE OR KNOCKED ON THE DOOR AROUND 6:00 IN

11   THE MORNING; IS THAT CORRECT?

12   A    YES, THAT'S CORRECT.

13   Q    HOW LONG -- WHAT WAS THE APPROXIMATE DURATION OF

14   THE SEARCH?

15        WHAT TIME DID YOU LEAVE?

16   A    WE LEFT A FEW MINUTES AFTER 4:45 P.M.

17   Q    OKAY.  AND THE ITEMS WE'VE GONE THROUGH IN COURT

18   OVER YESTERDAY AND TODAY, IS THAT ALL OF THE ITEMS THAT

19   WERE SEIZED BY LAW ENFORCEMENT?

20   A    NO, IT DOES NOT INCLUDE ALL THE ITEMS.

21   Q    SO CAN YOU DESCRIBE THE VOLUME OF INFORMATION THAT

22   WAS SEIZED?

23   A    WE SEIZED THOUSANDS AND THOUSANDS OF DOCUMENTS.  WE

24   SEIZED OVER, I BELIEVE, 120 ITEMS, WHICH INCLUDES THE

25   THOUSANDS OF DOCUMENTS AND THEN MANY DIGITAL DEVICES AS

34

```
1    WELL.
2    Q    WAS THE SEARCH EXECUTED DILIGENTLY AND THOROUGHLY?
3    A    YES, IT WAS.
4    Q    DID YOU SEIZE OR FIND ANY CREE WAFERS?
5    A    WE DID NOT.
6    Q    DID YOU SEIZE OR FIND ANY GAN WAFERS?
7    A    WE FOUND SOME WIN SEMICONDUCTOR WAFERS.
8    Q    WERE THOSE GALLIUM ARSENIDE WAFERS?
9    A    YES.
10   Q    SO DID YOU FIND OR SEIZE ANY GALLIUM NITRADE
11   WAFERS?
12   A    NO.
13   Q    NOW, WERE THOSE ITEMS THAT LAW ENFORCEMENT WAS
14   SPECIFICALLY LOOKING FOR?
15   A    AMONG OTHER THINGS, YES, WE WERE LOOKING FOR THOSE.
16   Q    NOW, GINGER, THE DOG THAT ASSISTED WITH THE LAW
17   ENFORCEMENT SEARCH, DID GINGER PARTICIPATE IN THE
18   SEARCH AS WELL?
19   A    YES.
20        SO HER ROLE WAS, AFTER THE PERSONNEL HAD
21   SEARCHED THE ROOMS, WE HAD REMOVED ITEMS THAT THEY HAD
22   FOUND.  AND THEN GINGER WENT INTO THE ROOMS AND DID HER
23   OWN SEARCH.
24   Q    DID SHE LOCATE ANY CREE WAFERS?
25   A    SHE DID NOT.
```

```
 1              AND WE HAD CONDUCTED A TEST PRIOR TO DOING THE
 2    SEARCH WITH HER AT OUR OFFICES WITH THE CREE WAFER.
 3    AND SHE WAS ABLE TO FIND THE CREE WAFER HIDDEN IN OUR
 4    OFFICE PRIOR TO THE SEARCH.
 5    Q    SO WHEN LAW ENFORCEMENT WAS AT DEFENDANT'S HOUSE,
 6    WERE THERE ANY CREE WAFERS AT DEFENDANT'S RESIDENCE,
 7    INCLUDING THE OFFICES WITHIN THE RESIDENCE?
 8    A    THERE WERE NOT.
 9              MS. SARTORIS:  THANK YOU.
10              YOUR HONOR, I HAVE NO MORE QUESTIONS.
11              THE COURT:  THANK YOU.
12              CROSS-EXAMINATION, MR. SPERTUS?
13              MR. SPERTUS:  THANK YOU, YOUR HONOR.
14                        CROSS-EXAMINATION
15    BY MR. SPERTUS:
16    Q    IT'S YOUR TESTIMONY ON DIRECT EXAMINATION THAT
17    THERE WERE NO CREE WAFERS IN DR. SHIH'S OFFICE?
18    A    THAT IS CORRECT.
19    Q    HOW MANY AGENTS WERE PARTICIPATING IN THE SEARCH?
20    A    WE HAD OVER 40 INDIVIDUALS PARTICIPATING IN THE
21    SEARCH WITH US, ALONG WITH GINGER.
22    Q    DID YOU ALSO HAVE A TEAM OF AGENTS INTERVIEWING
23    DR. SHIH DURING THE SEARCH?
24    A    YES.
25    Q    WAS THERE ANY COMMUNICATIONS BETWEEN THE
```

1  INTERVIEWING AGENTS AND THE SEARCH TEAM AGENTS DURING

2  THE SEARCH?

3  A    YES.

4  Q    SO WERE YOU AWARE, DURING THE SEARCH, THAT DR. SHIH

5  TOLD YOU EXACTLY WHERE THE WAFERS WERE?

6  A    WE HAD BECAME AWARE THAT THERE MAY BE CREE WAFERS

7  IN THE RESIDENCE WHILE WE WERE DOING THE SEARCH.

8  Q    BECAUSE HE TOLD YOU; CORRECT?

9  A    YES.

10  Q    DID YOU GO AND LOOK IN THE PLACE WHERE HE TOLD YOU

11  THE WAFERS WOULD BE?

12  A    YES.  WE CONDUCTED A VERY THOROUGH SEARCH OF ALL OF

13  THE ROOMS OF THE RESIDENCE.

14  Q    BUT HE TOLD YOU THE WAFERS WERE IN THE LOFT AREA

15  THAT HE USES AS AN OFFICE ABOVE HIS MASTER BEDROOM;

16  CORRECT?

17  A    YES.  I BELIEVE HE SAID THAT THEY WERE IN THE

18  OFFICE SPACE.

19  Q    AND YOU DIDN'T LOOK THERE?

20  A    WE DID LOOK THERE.  THAT IS, THE LOFT AREA OF THE

21  SECOND LEVEL OF THE MASTER BEDROOM, WE HAD MANY AGENTS

22  UP THERE SEARCHING, AS WELL AS GINGER WENT THROUGH AND

23  DID THE SEARCH ONCE THE AGENTS HAD CONCLUDED.

24  Q    HOW MANY AGENTS WERE UP THERE SEARCHING?

25  A    I DON'T HAVE A SPECIFIC NUMBER TO GIVE YOU, BUT WE

37

```
1    HAD -- AS I HAVE SAID BEFORE, WE HAD OVER 40
2    INDIVIDUALS AT THE RESIDENCE CONDUCTING A SEARCH.
3    Q    IN FACT, IT WAS OVER 50 INDIVIDUALS; CORRECT?
4    A    THAT NUMBER COULD BE -- YES, IT COULD BE AS HIGH AS
5    50.
6    Q    AND AUSA JUDY HEINZ WAS PRESENT; CORRECT?
7    A    SHE WAS NOT PRESENT, BUT SHE WAS AVAILABLE VIA
8    PHONE CALL.
9    Q    DID SHE ATTEND THE BRIEFING?
10   A    I DON'T RECALL IF SHE WAS AT THE BRIEFING.
11   Q    WOULD IT HELP YOUR RECOLLECTION IF YOU VIEWED A
12   JANUARY 29TH, 2018 E-MAIL BETWEEN YOU AND AGENT ALSTIN
13   (PHONETIC) REGARDING ATTENDEES OF THE SEARCH AND THE
14   BRIEFING?
15   A    SURE.  I CAN TAKE A LOOK AT THAT.
16   Q    I'M GOING TO TURN TO THE ATTENDEES IN A SECOND.
17        BUT FOR EFFICIENCY, THERE'S NO DOUBT YOU HAD
18   JUDY HEINZ AVAILABLE FOR CONSULTATION DURING THE
19   SEARCH; RIGHT?
20   A    YES, THAT IS CORRECT.
21   Q    AND WAS -- TO YOUR KNOWLEDGE, DID GUYS COLLECTIVELY
22   DISCUSS DR. SHIH'S DESCRIPTION OF WHERE THE
23   LOCATIONS -- THE WAFERS WERE IN HIS RESIDENCE?
24   A    I DON'T RECALL IF I HAD A SPECIFIC CONVERSATION
25   WITH AUSA HEINZ REGARDING THAT MATTER.  I HAD OTHER
```

```
1    CONVERSATIONS WITH HER THROUGHOUT THE DAY THOUGH.

2    Q    DO YOU RECALL SHOWING THE JURY THE LOCATION OF THE

3    WAFERS YESTERDAY WHEN YOU TESTIFIED ON DIRECT AND

4    ADMITTED A SERIES OF PHOTOS?

5              MS. SARTORIS:  OBJECTION, YOUR HONOR.

6    MISSTATES THE TESTIMONY.

7              MR. SPERTUS:  I WOULD JUST LIKE TO PUBLISH, IF

8    I MAY, EXHIBIT 793, PAGE 16.  IT'S IN EVIDENCE.

9              THE COURT:  YOU MAY PUBLISH THAT.

10   BY MR. SPERTUS:

11   Q    LOOK, PLEASE, AT EXHIBIT 793, PAGE 16.  IT'S ON THE

12   SCREEN IN FRONT OF YOU.

13             DO YOU RECALL THIS PHOTO THAT YOU TESTIFIED

14   ABOUT YESTERDAY?

15   A    YES, I RECOGNIZE THIS PHOTO.

16   Q    OKAY.  NOW, THIS WAS A PHOTO OF THE UPSTAIRS

17   LOCATION ABOVE THE MASTER BEDROOM WHERE DR. SHIH TOLD

18   YOU THE WAFERS WERE; CORRECT?

19   A    THIS IS A PHOTO OF THE LOFT AREA ON THE SECOND

20   LEVEL OF THE MASTER BEDROOM, YES.

21   Q    THAT HE USED AS AN OFFICE; RIGHT?

22   A    YES.

23   Q    IF YOU CAN LOOK, PLEASE, WHERE I'M SIGNALING ON THE

24   DRAWING.  I'M CIRCLING THE TWO BOXES ON THE

25   LOWER-RIGHT-HAND CORNER.
```

```
1              THESE ARE THE CREE WAFERS; RIGHT?
2    A    THOSE ARE BOXES THAT HAVE CREE -- WHAT APPEARS TO
3    BE CREE PACKAGING TAPE ON THEM.
4    Q    WELL, FIRST OF ALL, THE BOX BEARS A GIANT ADDRESS
5    FOR KIET MAI; RIGHT?
6    A    I DON'T RECALL THE SPECIFIC ADDRESS ON THOSE BOXES.
7    Q    YOUR ENTIRE CASE REGARDING THE EXPORT VIOLATION AND
8    THEN THE SECOND BUCKET REGARDING THE CREE FRAUD IS
9    BASED ON THE THEORY THAT CREE SENT WAFERS TO DR. SHIH;
10   RIGHT?
11             MS. SARTORIS:  OBJECTION, YOUR HONOR.  IT'S
12   ARGUMENTATIVE.
13             THE COURT:  SUSTAINED AS FRAMED.
14   BY MR. SPERTUS:
15   Q    YOU WERE THE AGENT IN CHARGE OF SEIZING EVIDENCE AT
16   THE BECKMAN ROAD LOCATION; RIGHT?
17   A    YES, THAT IS CORRECT.
18   Q    ALL OF THE AGENTS WHO PARTICIPATED IN THIS SEARCH,
19   40, 50 AGENTS, WERE ALL REPORTING TO YOU ON THE DAY OF
20   THE SEARCH; RIGHT?
21   A    YES, THAT IS CORRECT.
22   Q    AND YOUR KNOWLEDGE OF THE THEORIES OF WRONGDOING IN
23   THIS CASE WOULD BE VERY IMPORTANT TO YOU TO DECIDE WHAT
24   TO SEIZE AND WHAT NOT TO SEIZE; CORRECT?
25   A    WE WERE GOING BASED OFF OF THE ITEMS TO BE SEIZED
```

```
1    THAT WERE LISTED IN THE SEARCH WARRANT.

2    Q    RIGHT.

3             WHICH YOU READ; CORRECT?

4    A    YES.

5    Q    AND THOSE ITEMS INCLUDED EVIDENCE RELATED TO CREE;

6    RIGHT?

7    A    YES.  CORRECT.

8    Q    AND EVIDENCE RELATED TO KIET MAI; CORRECT?

9    A    YES.

10   Q    AND YOUR GOAL WAS TO SEIZE EVIDENCE RELATED TO KIET

11   MAI OR TO CREE; RIGHT?

12   A    YES.

13   Q    AND DEPICTED ON THE MONITOR IN FRONT OF YOU, AS

14   GOVERNMENT'S EXHIBIT 793, ARE TWO ITEMS THAT YOU SAY

15   ARE CREE BOXES; RIGHT?

16   A    YES.

17   Q    DID YOU SEIZE THEM?

18   A    WE -- FROM THIS PHOTO -- BASED ON THIS PHOTO, I

19   WOULD HAVE TO SAY THAT WE DID NOT JUST BECAUSE THAT

20   THEY -- JUST BECAUSE THEY'RE BOXES THAT HAVE WHAT

21   APPEAR TO BE CREE PACKAGING TAPE ON IT DOESN'T

22   NECESSARILY MEAN THAT THE CONTENTS OF THE BOXES WOULD

23   BE SOMETHING WE WOULD SEIZE.

24   Q    UNLESS THEY'RE THE WAFERS; RIGHT?

25   A    IF THEY HAD WAFERS IN THEM, WE WOULD HAVE SEIZED
```

1    THEM.

2    Q    DID YOU LOOK IN THE BOXES?

3    A    YES.

4    Q    I'M GOING TO HAND YOU -- OR ASK YOU TO TAKE THE

5    EXHIBIT BINDERS BEHIND YOU.  PLEASE TAKE EXHIBIT 4230.

6            MS. SARTORIS:  ARE THESE --

7            MR. SPERTUS:  I'VE JUST HANDED THEM TO

8    GOVERNMENT COUNSEL.

9            MS. SARTORIS:  I HAVEN'T SEEN THESE BEFORE.

10   SO I WOULD LIKE A MOMENT TO LOOK AT THEM.

11           THE WITNESS:  IT'S 4230 OUT OF YOUR BINDERS;

12   CORRECT?

13           MR. SPERTUS:  THERE ARE NO "OUR" BINDERS,

14   "YOUR" BINDERS.  THE ONLY BINDER THAT HAS "4230" IN IT.

15           MS. SARTORIS:  YOUR HONOR, OBJECTION.

16           THE COURT:  SUSTAINED.

17            THERE ARE VARIOUS BINDERS AND EXHIBITS.

18   I DON'T THINK THIS IS AN AREA OF DISPUTE.

19           THE WITNESS:  OKAY.  YOU SAID "4230"; CORRECT?

20   BY MR. SPERTUS:

21   Q    CORRECT.

22   A    OKAY.

23   Q    WHAT IS EXHIBIT 4230?

24   A    THIS APPEARS TO BE A VERY SIMILAR PHOTOGRAPH TO THE

25   ONE THAT WE WERE JUST VIEWING.

1    Q    IT'S THE BEFORE-SEARCH PHOTOGRAPH; RIGHT?

2    A    NO, IT IS NOT.  AND THAT IS BASED ON THE FACT THAT

3    THERE ARE PLACARDS AT VARIOUS POINTS IN -- OR VARIOUS

4    POINTS ON THE TABLE.  THE PLACARDS WOULD NOT HAVE BEEN

5    PLACED UNTIL AFTER THE SEARCH.

6    Q    SO EXHIBIT 4230 IS A TRUE AND CORRECT COPY OF A

7    PHOTO TAKEN BY FEDERAL AGENTS DURING THE SEARCH OF

8    BECKMAN ROAD; CORRECT?

9    A    YES.

10            MR. SPERTUS:  YOUR HONOR, I MOVE EXHIBIT 4230

11   INTO EVIDENCE.

12            MS. SARTORIS:  NO OBJECTION.

13            THE COURT:  EXHIBIT 4230 IS ADMITTED.

14            **(EXHIBIT 4230 RECEIVED IN EVIDENCE)**

15   BY MR. SPERTUS:

16   Q    NOW I'M PUBLISHING EXHIBIT 4230.

17            WHAT YOU DESCRIBED AS THE "PLACARDS" ARE THE

18   LITTLE SIGNS THAT YOU HAVE OBSERVED BEING PLACED ON THE

19   TABLE; RIGHT?

20   A    YES.

21   Q    LIKE I'VE DIRECTED YOUR ATTENTION TO; RIGHT?

22   A    YES.  THAT IS CORRECT.

23   Q    I'M GOING TO PLACE THIS EXHIBIT SIDE BY SIDE WITH

24   EXHIBIT 9316 (SIC).

25            DO YOU SEE THEM BOTH ON THE MONITOR IN FRONT

```
 1    OF YOU?

 2    A    YES.

 3    Q    OKAY.  NOW, THE ONE THAT THE GOVERNMENT INTRODUCED

 4    YESTERDAY, I'M INDICATING HERE, HAS THE CONTENTS OF THE

 5    FILE CABINET REMOVED; RIGHT?

 6    A    YES.

 7    Q    SO THAT'S CLEARLY AFTER THE SEARCH, WHEN THE

 8    GOVERNMENT REMOVED THE CONTENT OF THE FILE CABINET AND

 9    PLACED THEM THAT WAY SO THAT THIS CAN BE PHOTOGRAPHED;

10    RIGHT?

11              THE COURT:  EXCUSE ME.  YOU SAID EXHIBIT

12    "9316."  DID YOU MEAN EXHIBIT "793"?

13              MR. SPERTUS:  YES.  793, PAGE 16.

14              THE COURT:  THANK YOU.

15    BY MR. SPERTUS:

16    Q    SO JUST -- AGENT MILLER, I JUST WANT TO INDICATE

17    THAT, ON THE RIGHT SIDE, THE CONTENTS OF THE FILE

18    CABINET ARE REMOVED WHILE, ON THE LEFT SIDE, THE

19    CONTENTS OF THE FILE CABINET ARE NOT REMOVED; RIGHT?

20    A    IT'S HARD TO SAY FROM THIS PHOTOGRAPH.  IT APPEARS

21    THAT WITH THE PHOTOGRAPH ON THE LEFT-HAND SIDE, THERE

22    DO NOT APPEAR TO BE ANY FILES IN FILE CABINET.  AND SO

23    THAT WOULD HAVE BEEN AFTER WE HAD REMOVED THEM.

24              AND THEN THE PICTURE ON RIGHT-HAND SIDE,

25    EXHIBIT 793, I BELIEVE, WOULD HAVE BEEN A PICTURE TAKEN
```

1    DURING THE SEARCH.  WHEN THE AGENTS FOUND THE FILES,

2    THEY PLACED THEM ON TOP OF THE FILE CABINET IN ORDER TO

3    TAKE THE PICTURE OF THE ITEMS THAT WE WERE SEIZING.

4    Q    AND, CLEARLY, THE AGENTS WERE IN THE AREA, RIGHT,

5    BECAUSE THE -- AS I'M INDICATING HERE, THE ENVELOPE ON

6    THE PICTURE ON THE RIGHT IS NOT APPARENT ON THE CREE

7    BOXES ON THE PICTURE OF THE LEFT; RIGHT?

8    A    YES, THAT IS CORRECT.

9    Q    AND DURING THE SEARCH, NOBODY BUT FBI AGENTS WERE

10   ALLOWED IN THE SEARCH AREA; RIGHT?

11   A    THERE WERE OTHER AGENCIES INVOLVED IN THIS SEARCH.

12   SO THERE MAY HAVE BEEN A COMBINATION OF FBI, IRS AND

13   DEPARTMENT OF COMMERCE.  I CAN'T SAY SPECIFICALLY WHO

14   WAS IN THE LOFT AREA.

15   Q    SO YOU JUST TESTIFIED THIS MORNING ON DIRECT ABOUT

16   CREE SHIPPING PAPER THAT YOU, JUST THIS MORNING,

17   DESCRIBED ON DIRECT TESTIMONY.

18        DO YOU RECALL THAT SHIPPING DOCUMENT?

19   A    YES.

20   Q    WHY DID YOU SEIZE THAT?

21   A    BECAUSE IT WAS -- IT WAS A DOCUMENT THAT HAD LISTED

22   THE WAFERS THAT WERE ORDERED FROM CREE.  AND IT HAD THE

23   SHIPPING ADDRESS OF KIET MAI ON IT AND THE COMPANY

24   "MICROEX ENGINEERING," WHICH WERE ALL PART OF THE

25   SEARCH WARRANT.

```
 1    Q    AND IF THOSE EXACT SAME THINGS APPEAR ON THESE CREE

 2    BOXES, WHY DIDN'T YOU SEIZE THE CREE BOXES?

 3    A    IF THE CONTENTS OF THE CREE BOXES DID NOT HAVE ANY

 4    ITEMS THAT WE WERE GOING TO SEIZE, THEN WE WOULDN'T

 5    HAVE JUST TAKEN JUST THE BOXES.

 6    Q    IF THEY'RE FROM CREE ADDRESSED TO KIET MAI, YOU

 7    WOULD CHOOSE, IN YOUR PROFESSIONAL JUDGMENT, TO LEAVE

 8    THAT EVIDENCE BEHIND; CORRECT?

 9    A    I CANNOT SAY IF THEY HAD THE ADDRESS OF KIET MAI ON

10    THEM.  SO I -- I CANNOT SAY WHETHER OR NOT THEY HAD

11    THAT ADDRESS.

12            SO WE -- IF IT HAD THE ADDRESS, WE WOULD HAVE

13    PROBABLY TAKEN THE BOXES.  BUT I CAN'T SAY FOR 100

14    PERCENT CERTAINTY THAT THAT WAS THE ADDRESS ON THOSE

15    BOXES.

16    Q    WHY NOT?

17    A    I DON'T RECALL THE EXACT SHIPPING LABEL OR IF THERE

18    WAS EVEN AN ADDRESS ON THOSE BOXES.

19    Q    YOU WOULD HAVE THAT ANSWER IF YOU SEIZED THE BOX;

20    CORRECT?

21    A    IN THEORY, YES.  IF WE HAD THE BOX, WE COULD TAKE A

22    LOOK AND SEE IF THERE WAS A SHIPPING LABEL ON IT.

23    Q    AND IF THE BOXES CONTAINED A SHIPPING LABEL, THAT

24    WOULD BE HIGHLY RELEVANT TO YOUR CASE; RIGHT?

25    A    YES.
```

```
1    Q    YOU SEARCHED THE RESIDENCE FOR 10 HOURS,

2    APPROXIMATELY?

3    A    THAT SOUNDS ABOUT RIGHT, YES.

4    Q    AND IS IT BASED ON THE THOROUGHNESS AND DILIGENCE

5    THAT YOU JUST TESTIFIED ON DIRECT THAT CAUSES YOU TO

6    CONCLUDE FROM MEMORY THAT THERE WAS NO ADDRESS LABEL TO

7    KIET MAI ON THE CREE BOXES?

8              MS. SARTORIS:  OBJECTION, YOUR HONOR.

9    MISSTATES THE TESTIMONY.

10             THE COURT:  THIS HAS BEEN ASKED AND ANSWERED.

11             SO RESTATE THE QUESTION, IF YOU HAVE A

12   NEW AREA TO COVER, PLEASE.

13   BY MR. SPERTUS:

14   Q    YOU SEEM TO BE TESTIFYING THAT YOU DON'T REMEMBER

15   SEEING ANY ADDRESS LABEL ON THE CREE BOXES ADDRESSED TO

16   KIET MAI; RIGHT?

17   A    YES, THAT IS CORRECT.

18   Q    AND YOU TESTIFIED ON DIRECT THAT YOU THOUGHT YOUR

19   SEARCH WAS THOROUGH AND DILIGENT.  YOU USED THOSE

20   WORDS; RIGHT?

21   A    I DON'T RECALL IF I USED THOSE SPECIFIC WORDS, BUT

22   IT WAS VERY -- I MEAN, IT WAS VERY THOROUGH.

23   Q    BUT, YET, YOU LEFT THE CREE BOXES BEHIND?

24   A    YES, THE CREE BOXES REMAINED.

25   Q    AND, OBVIOUSLY, EVERYTHING YOU LEAVE BEHIND, YOU'RE
```

47

```
1    LEAVING TO DR. SHIH; RIGHT?
2    A    YES.
3              MR. SPERTUS:  YOUR HONOR, I'M GOING TO MARK
4    FOR IDENTIFICATION TWO EXHIBITS LABELED "4270" AND
5    "3996."
6              THE COURT:  WHAT ARE THEY, PLEASE?
7              MR. SPERTUS:  THESE ARE TWO CREE BOXES
8    DEPICTED IN GOVERNMENT EXHIBIT 793.
9              THE COURT:  THEY'RE MARKED FOR IDENTIFICATION.
10             (EXHIBITS 4270 AND 3996 WERE
11        MARKED FOR IDENTIFICATION)
12             MR. SPERTUS:  OKAY.  MAY I APPROACH THE
13   WITNESS AND SHOW THESE TO HER, OR MAY I --
14   BY MR. SPERTUS:
15   Q    AGENT MILLER, ARE THESE THE TWO CREE BOXES DEPICTED
16   IN GOVERNMENT EXHIBIT 793 ON PAGE 16?
17   A    THEY APPEAR TO BE VERY SIMILAR BOXES DEPICTED IN
18   THE PICTURE, YES.
19             MR. SPERTUS:  YOUR HONOR, I MOVE THESE TWO
20   EXHIBITS INTO EVIDENCE.
21             MS. SARTORIS:  OBJECTION, YOUR HONOR.
22   FOUNDATION.
23             MR. SPERTUS:  MAY I APPROACH THE WITNESS AND
24   SHOW THEM TO HER?
25             THE COURT:  YOU MAY.
```

1  BY MR. SPERTUS:

2  Q    ARE THOSE THE CREE BOXES?

3  A    THEY APPEAR TO BE VERY SIMILAR BOXES AS TO THE ONES

4  IN THE PICTURE.

5  Q    AND YOU LOOKED AT THEM ON THE DAY OF THE SEARCH;

6  RIGHT?

7  A    YES.

8            MR. SPERTUS:  YOUR HONOR, I MOVE EXHIBIT 4270

9  AND THE OTHER EXHIBIT NUMBER INTO EVIDENCE.

10            MS. SARTORIS:  OBJECTION, YOUR HONOR.  I DON'T

11  BELIEVE THE WITNESS HAS IDENTIFIED THAT SHE RECOGNIZES

12  THOSE BOXES.

13            THE COURT:  WE'LL DEFER THE DISCUSSION OF THE

14  ADMISSIBILITY.

15            MR. SPERTUS:  I'LL LAY FOUNDATION.

16  BY MR. SPERTUS:

17  Q    YOU JUST TESTIFIED THAT YOU LOOKED AT THOSE TWO

18  BOXES THE DAY OF THE SEARCH; RIGHT?

19  A    I WOULD HAVE LOOKED AT THEM.  I WOULD NOT HAVE

20  NECESSARILY LOOKED INSIDE OF THEM.  I WOULD HAVE LOOKED

21  AT THEM IN PASSING AS I WAS MAKING MY WAY THROUGH THE

22  RESIDENCE.

23  Q    OKAY.  SO NOW YOUR TESTIMONY IS THAT YOU DIDN'T

24  NECESSARILY LOOK INSIDE THEM; RIGHT?

25  A    I DIDN'T PERSONALLY LOOK INSIDE OF THEM.  BUT WE

```
1    HAD OTHER AGENTS CONDUCTING THE SEARCH OF THAT

2    LOFT/OFFICE SPACE AREA, AND THEY WOULD HAVE LOOKED

3    INSIDE OF THEM.

4    Q    SO I UNDERSTOOD YOUR PRIOR TESTIMONY BEFORE I

5    SHOWED YOU THE BOXES TO BE THAT, YOU PERSONALLY LOOKED

6    IN THOSE BOXES.

7             IS YOUR TESTIMONY NOW THAT YOU DID NOT

8    PERSONALLY LOOK INTO THOSE BOXES?

9    A    I DON'T BELIEVE I SAID "I PERSONALLY LOOKED IN THE

10   BOXES."  I WOULD HAVE LOOKED -- I WOULD HAVE SEEN THE

11   BOXES OR I WOULD HAVE LOOKED AT THE BOXES AT SOME POINT

12   DURING THE SEARCH.

13   Q    OKAY.  BUT, FOR CLARITY, AS YOU SIT HERE TODAY, YOU

14   DID NOT LOOK IN THE CREE BOXES PERSONALLY?

15   A    I PERSONALLY DID NOT LOOK INSIDE THE CREE BOXES.

16   BUT THAT DOESN'T MEAN THAT ANOTHER AGENT THAT WAS

17   CONDUCTING THE SEARCH OF THIS SPACE, THEY WOULD HAVE

18   LOOKED IN THE BOXES.

19   Q    WHO FROM THE FBI OR ANY PARTICIPATING AGENCY LOOKED

20   IN THE CREE BOXES?

21   A    IT WOULD HAVE BEEN THE TEAM OF INDIVIDUALS THAT WAS

22   ASSIGNED TO SEARCH THIS LOFT, SLASH, OFFICE SPACE,

23   WHICH WOULD HAVE INCLUDED FBI AGENTS.

24   Q    AND DID THOSE FBI AGENTS EVER SPEAK THE WORDS TO

25   YOU, "I LOOKED IN THE CREE BOXES"?
```

```
1    A    I DON'T RECALL THOSE SPECIFIC WORDS BEING SPOKEN TO
2    ME.
3    Q    DO YOU RECALL, DURING YOUR SEARCH, ANY AGENT FROM
4    ANY AGENCY TELLING YOU THEY LOOKED INSIDE THE CREE
5    BOXES?
6    A    I WOULD HAVE TO SAY, NO, I DON'T RECALL A SPECIFIC
7    AGENT SAYING THOSE WORDS TO ME.
8    Q    SO YOU'RE ASSUMING THAT OTHERS DID THEIR JOB WHEN
9    YOU SAY THAT THE AGENTS LOOKED INSIDE THE CREE BOXES;
10   RIGHT?
11   A    THEY WOULD HAVE CONDUCTED A VERY THOROUGH SEARCH OF
12   THE LOFT AND OFFICE SPACE, WHICH MOST LIKELY WOULD HAVE
13   INCLUDED LOOKING INSIDE THESE BOXES.
14   Q    SO IS YOUR TESTIMONY CHANGING TO "MOST LIKELY" FROM
15   THE PRIOR TESTIMONY THAT AGENTS DID SEARCH INSIDE THOSE
16   CREE BOXES?
17   A    SO WHEN AGENTS ARE TRAINED TO DO SEARCHES, WE ARE
18   TRAINED TO LOOK IN EVERY DRAWER, EVERY FILE CABINET,
19   EVERY BOX THAT MAY BE IN A SPACE.  AND SO BASED ON MY
20   TRAINING THAT I RECEIVED AND THE TRAINING THAT OTHER
21   AGENTS ALSO RECEIVED, THAT I WOULD SAY THAT IT WAS MOST
22   LIKELY THAT THEY LOOKED IN THE BOXES BASED ON THE
23   TRAINING THAT WE HAVE RECEIVED.
24   Q    SO YOU HAVE NO KNOWLEDGE ONE WAY OR THE OTHER
25   WHETHER ANY AGENT LOOKED INSIDE THE CREE BOXES?
```

1    A    I WOULD HAVE TO SAY, YES, I GUESS I DON'T -- I

2    CAN'T SAY FOR A HUNDRED PERCENT CERTAINTY THAT AN AGENT

3    LOOKED IN THESE BOXES.  BUT, AGAIN, OUR TRAINING IS

4    THAT WE LOOK IN EVERY FILE CABINET, EVERY SPACE THAT

5    COULD CONTAIN ITEMS, INCLUDING BOXES.

6    Q    SO NOW YOU'RE TESTIFYING THAT, BASED ON YOUR

7    TRAINING AND EXPERIENCE, YOU'RE ASSUMING THAT ANY AGENT

8    ASSIGNED TO SEARCH THE AREA MARKED "AREA U" MUST HAVE

9    LOOKED IN THE CREE BOXES BECAUSE THAT'S WHAT AGENTS ARE

10   SUPPOSED TO DO.  THAT'S BASICALLY YOUR TESTIMONY;

11   RIGHT?

12   A    YES.

13   Q    BUT SINCE DR. SHIH IS TELLING THE AGENTS THAT THE

14   WAFERS ARE IN THOSE BOXES, SHOULDN'T YOU ELEVATE THE

15   IMPORTANCE OF THAT COMPONENT OF YOUR SEARCH AS THE

16   AGENT IN CHARGE OF THE SEARCH?

17           MS. SARTORIS:  OBJECTION, YOUR HONOR.

18   ARGUMENTATIVE.

19           THE COURT:  SUSTAINED.

20   BY MR. SPERTUS:

21   Q    IF YOU KNOW THAT DR. SHIH IS TELLING YOU THAT THE

22   WAFERS ARE IN THOSE BOXES, AS THE PERSON WITH ULTIMATE

23   RESPONSIBILITY TO MAKE SURE SOMEONE LOOKS IN THE BOXES

24   THAT DR. SHIH DESCRIBES TO THE AGENTS, SHOULDN'T YOU BE

25   ABLE TO SAY WITH CERTAINTY, A HUNDRED PERCENT

```
 1   CERTAINTY, THAT AN AGENT LOOKED IN THOSE BOXES?

 2            MS. SARTORIS:  OBJECTION, YOUR HONOR.

 3   ARGUMENTATIVE.

 4            THE COURT:  DO YOU UNDERSTAND THE QUESTION?

 5            THE WITNESS:  CAN YOU REPEAT IT AGAIN?

 6            (RECORD READ)

 7            THE WITNESS:  SO I WOULD SAY THAT --

 8            THE COURT:  DO YOU UNDERSTAND THE QUESTION?

 9            THE WITNESS:  YES, I BELIEVE I DO.

10            THE COURT:  THAT'S FINE.

11            YOU MAY ANSWER.

12            THE WITNESS:  I DON'T BELIEVE THAT WE WERE

13   TOLD THAT THE WAFERS WERE IN BOXES BY DR. SHIH.

14            I BELIEVE THAT -- WHAT I REMEMBER BEING

15   TOLD WAS THAT, THERE COULD BE CREE WAFERS IN AN OFFICE

16   SPACE IN THE MASTER BEDROOM AREA.

17            I DON'T RECALL THE SPECIFIC MENTION OF

18   "CREE BOXES" FROM THE INTERVIEW THAT WAS CONDUCTED.

19            AND SO, AGAIN, I WOULD SAY THAT, BASED ON

20   HOW AGENTS ARE TRAINED TO CONDUCT SEARCHES IN A

21   RESIDENCE, THAT THESE BOXES WOULD HAVE BEEN LOOKED AT.

22   BY MR. SPERTUS:

23   Q    BUT YOU PERSONALLY HAVE A DOUBT; RIGHT?

24   A    I HAVE -- WELL, I MEAN, THE BOXES ARE HERE.  SO

25   THERE IS -- THERE IS SOME QUESTION IN MY MIND AS TO
```

```
1    WHAT HAPPENED WITH THESE BOXES.

2    Q    AND ONE OF THEM BEARS THE LABEL "KIET MAI" FROM

3    CREE; RIGHT?

4    A    YES, THIS BOX DOES APPEAR TO HAVE THAT LABEL.

5    Q    AND WHAT'S DEPICTED ON THE MONITOR IN FRONT OF YOU

6    AS GOVERNMENT'S 793, PAGE 16, IS THE UPSTAIRS OFFICE

7    AREA; RIGHT?

8    A    YES.

9    Q    AND, YET, YOU HAVE A DOUBT ABOUT WHETHER ANYONE

10   LOOKED IN THE BOXES?

11   A    AGAIN, BASED ON OUR TRAINING AND EXPERIENCE, WE

12   WOULD HAVE LOOKED IN THE BOXES.  YOU KNOW, BASED ON OUR

13   TRAINING AND EXPERIENCE, YOU KNOW, IF -- IF -- WE ALSO

14   HAD GINGER COME THROUGH THE RESIDENCE AND COME THROUGH

15   THIS AREA AS WELL, AND SHE DID NOT ALERT TO ANYTHING

16   THAT WAS INSIDE OF THESE BOXES.

17   Q    AND HOW DO YOU KNOW THAT?

18   A    BECAUSE THE HANDLER WOULD HAVE TOLD US IF SHE HAD.

19   Q    BASED ON HIS TRAINING AND EXPERIENCE, HE WOULD HAVE

20   TOLD YOU IF GINGER HAD ALERTED ON THE CREE BOXES

21   CONTAINING WAFERS?

22   A    WELL, WITH GINGER, SHE -- SO SHE CANNOT BE A

23   SEIZING OR A -- IN OUR EVIDENCE LOGS, WE LIST WHO

24   COLLECTS AN ITEM OR WHO THE FINDER OF AN ITEM IS.  AND

25   SINCE GINGER IS A K-9, SHE CANNOT BE LISTED.  AND SO
```

```
 1    ONCE SHE GOES THROUGH A ROOM, THE HANDLER FINDS AN
 2    AGENT AND TAKES THAT AGENT INTO THE ROOM AND POINTS OUT
 3    WHAT SHE MAY HAVE FOUND IN THE RESIDENCE.  AND THEN
 4    THAT AGENT OBSERVES WHATEVER SHE FOUND IN PLACE AND
 5    BECOMES THE FINDING AGENT OR THE COLLECTED -- ON OUR
 6    EVIDENCE LOGS, THEY BECOME THE COLLECTED AGENT, THE
 7    AGENT THAT COLLECTED THE ITEM.
 8    Q    NOW, AS YOU SIT HERE TODAY ON THE STAND WITH THE
 9    CREE BOX IN FRONT OF YOU, DO YOU AGREE THAT THE CREE
10    BOX BEARING THE LABEL "KIET MAI" IS EVIDENCE IN THIS
11    CASE?
12    A    YES.
13    Q    DO YOU PERSONALLY, AS THE PERSON IN CHARGE OF
14    SEIZING ITEMS FROM THE BECKMAN RESIDENCE, WISH AN AGENT
15    HAD TOLD YOU ABOUT THE CREE BOXES?
16              MS. SARTORIS:  OBJECTION, YOUR HONOR.
17              THE COURT:  SUSTAINED.
18    BY MR. SPERTUS:
19    Q    YOU'RE THE FILTER BETWEEN WHAT'S SEIZED AND NOT
20    SEIZED DURING THE SEARCH, RIGHT, YOU PERSONALLY?
21    A    I WAS ONE OF THE FILTERS, YES.
22    Q    SO WITH THAT FOUNDATION, DO YOU WISH AN AGENT HAD
23    TOLD YOU THAT THE BOX NOW IN FRONT OF YOU BEARING THE
24    LABEL "KIET MAI" WAS IN THE OFFICE SO THAT YOU CAN
25    SEIZE IT?
```

```
 1              MS. SARTORIS:  SAME OBJECTION, YOUR HONOR.

 2              THE COURT:  SUSTAINED.

 3                  THIS IS -- LET'S MOVE ON, PLEASE.

 4              MR. SPERTUS:  YOUR HONOR, ARE THE TWO BOXES

 5    THAT I'VE PREVIOUSLY MOVED INTO EVIDENCE NOW ACCEPTED

 6    INTO EVIDENCE?

 7              MS. SARTORIS:  YOUR HONOR, THE GOVERNMENT

 8    STILL CONTINUES TO OBJECT ON THE SAME GROUNDS.

 9              THE COURT:  WE'LL HAVE TO DISCUSS THAT LATER.

10    BY MR. SPERTUS:

11    Q    HOW LONG HAVE YOU BEEN CONNECTED WITH THIS

12    INVESTIGATION?

13    A    I BELIEVE I STARTED IN MAY OF 2017.

14    Q    SO YEARS?

15    A    YES.

16    Q    CAN YOU OPEN THE BOX -- THE LARGE BOX ON THE

17    COUNTER NEXT TO YOU AND TELL ME WHETHER, BASED ON YOUR

18    INVESTIGATION, THE CONTENTS OF THOSE -- OF THAT BOX

19    MATCH GOVERNMENT EXHIBIT 1, THE WAFER, THE LARGE BOX?

20              THE COURT:  WHAT EXHIBIT NUMBER IS THAT --

21              MR. SPERTUS:  YOUR HONOR --

22              THE COURT:  -- FOR IDENTIFICATION?

23              MR. SPERTUS:  I FORGET.  IT'S ON THE LABEL.  I

24    BELIEVE IT'S --

25              THE CLERK:  THE SMALLER BOX IS EXHIBIT 3996,
```

56

```
1    WHICH MAKES THE LARGER --
2              MR. SPERTUS:  3996, YOUR HONOR.
3              THE COURT:  JUST A MINUTE.
4              THE CLERK:  THE LARGER BOX IS 3996.
5                 AND THE SMALLER BOX IS EXHIBIT 4270.
6              THE COURT:  THANK YOU.
7    BY MR. SPERTUS:
8    Q    YOU HAVE SEEN GOVERNMENT EXHIBIT 1; CORRECT?
9    A    YES, I HAVE.
10   Q    SO YOU KNOW WHAT A CREE WAFER LOOKS LIKE; RIGHT?
11   A    YES.
12   Q    IF YOU CAN JUST OPEN EXHIBIT 3996 AND REMOVE ITS
13   CONTENTS.
14             DO YOU SEE ANY -- DO YOU SEE THE CONTENTS OF
15   EXHIBIT 3996 NOW IN FRONT OF YOU?
16   A    YES.
17   Q    AND WHAT IS THE CONTENTS OF EXHIBIT 3996?
18   A    THEY APPEAR TO BE WAFERS OF SIMILAR COLOR TO
19   EXHIBIT 1.
20   Q    CAN YOU OPEN THE CONTAINER MARKED AS "EXHIBIT
21   3996"?
22   A    (COMPLYING.)
23   Q    CAN YOU HOLD ONE UP PLEASE, ONE OF THOSE THREE
24   ITEMS.
25   A    (COMPLYING.)
```

57

```
1    Q    AND UPON INSPECTION, DOES THAT APPEAR TO BE A CREE

2    WAFER?

3    A    YES, IT DOES.

4    Q    NOW, YOUR ENTIRE THEORY OF CREE FRAUD AND EXPORT

5    VIOLATIONS IS BASED ON THE WAFERS BEING SENT TO CHINA;

6    CORRECT?

7              MS. SARTORIS:  OBJECTION, YOUR HONOR.  CALLS

8    FOR A LEGAL CONCLUSION.

9              THE COURT:  SUSTAINED.

10              YOU'RE ASKING -- THIS IS A PERCIPIENT

11    WITNESS, PLEASE.

12              MR. SPERTUS:  YOUR HONOR, I USED THE WORD

13    "YOUR."

14    BY MR. SPERTUS:

15    Q    YOUR SUBJECTIVE BELIEF --

16              THE COURT:  NO.  THE ISSUE -- JUST ASK --

17    DON'T ASK QUESTIONS OF THIS WITNESS, OTHER THAN HER

18    PERCIPIENT KNOWLEDGE, BECAUSE THE WAY YOU FRAMED THAT

19    WAS ARGUMENTATIVE WITH RESPECT TO WHO IS MAKING

20    DECISIONS IN CONNECTION WITH THIS CASE.

21              MR. SPERTUS:  YOUR HONOR, I WANT TO EXPLORE

22    HER STATE OF MIND AS THE SEIZING AGENT MAKING THE

23    DECISIONS.

24              THE COURT:  ASK QUESTIONS ABOUT HER PERCIPIENT

25    KNOWLEDGE, PLEASE.
```

58

BY MR. SPERTUS:

Q   YOUR PERCIPIENT KNOWLEDGE, WHAT WAS IN YOUR MIND ON

JANUARY 19TH, 2018 WHEN YOU CONSTRUCTED A PROCEDURE FOR

IDENTIFYING EVIDENCE OF CRIMES?

AS YOU TESTIFIED ON GOVERNMENT DIRECT, THE

CRIMES THAT YOU HAD IN MIND WHEN YOU WERE DECIDING WHAT

IS EVIDENCE AND WHAT IS NOT WERE BASED ON YOUR BELIEF

THAT THE CREE WAFERS HAD GONE TO CHINA; CORRECT?

A   YES.

Q   AND SO IF THE CREE WAFERS DID NOT GO TO CHINA, THEN

YOUR BELIEF ABOUT WHAT IS EVIDENCE OR NOT EVIDENCE

WOULD BE DIFFERENT; RIGHT?

MS. SARTORIS:  OBJECTION, YOUR HONOR.  VAGUE

AS TO WHICH CREE WAFERS WE'RE TALKING ABOUT.

THE COURT:  SUSTAINED.

BY MR. SPERTUS:

Q   THE CREE WAFERS IN FRONT OF YOU, THE ONES -- THE

THREE WAFERS THAT YOU ARE NOW PRESENTLY LOOKING AT.

MS. SARTORIS:  WE HAVE NO INFORMATION THAT

THOSE ARE THE SAME CREE WAFERS.

THE COURT:  LET ME TALK TO YOU FOR A MINUTE,

PLEASE.

**(SIDEBAR)**

THE COURT:  MR. SPERTUS, THE ISSUE IS, CHAIN

OF CUSTODY.

```
1              WHAT'S THE BASIS TO ESTABLISH, THROUGH

2    THIS WITNESS, THAT THIS IS -- THIS BOX WAS THE SAME AS

3    IT WAS THE DAY OF THE SEARCH?

4              MR. SPERTUS:  SO WE WILL CLOSE ALL LOOPS.  BUT

5    IT'S A UNIQUE ITEM.  CHAIN OF CUSTODY FOR UNIQUE ITEMS

6    BEARING SERIAL NUMBERS, BEARING BOXES, ADDRESS TO KIET

7    MAI ARE DIFFERENT THAN A KILO OF COCAINE, FOR EXAMPLE,

8    THAT WOULDN'T HAVE --

9              THE COURT:  IT MAY BE, EXCEPT THAT THE BOX HAS

10   TO BE IN THE SAME CONDITION IT WAS IN -- THE BOX MUST

11   BE UNALTERED FROM THE DAY OF THE SEARCH TO NOW.

12             MR. SPERTUS:  BUT SHE'S LAID THE FOUNDATION

13   FOR ADMISSIBILITY FOR THOSE TWO BOXES BY SAYING --

14             THE COURT:  YOU'RE NOT LISTENING.

15             MR. SPERTUS:  I'M SORRY.

16             THE COURT:  THE EVIDENCE THAT YOU'RE SEEKING

17   TO INTRODUCE HAS A CHAIN OF CUSTODY ISSUE BECAUSE THE

18   EVIDENCE, ASSUMING -- I THINK YOUR ASSUMPTION IS, THAT

19   THIS BOX IN THIS CONDITION WAS IN THE MASTER BEDROOM

20   LOFT THE SAY DAY OF THE SEARCH, AND IT'S UNCHANGED

21   SINCE THEN, INCLUDING ITS CONTENTS; RIGHT?

22             MR. SPERTUS:  I AM -- THAT IS NOT MY

23   ASSUMPTION, NO.

24             YOUR HONOR, OKAY, SO LET'S DISTINGUISH,

25   FIRST, THE BOX -- THE TWO BOXES THE AGENT OBSERVED AND
```

```
1    THEY'RE DEPICTED IN GOVERNMENT EXHIBIT 716.  THERE IS

2    NO REASONABLE AUTHENTICITY ISSUE BASED ON THE FACT THAT

3    SHE WAS PERSONALLY PRESENT AND OBSERVED THEM.

4              THE COURT:  THE ISSUE IS WHETHER THE BOXES

5    THAT ARE IN THE COURTROOM TODAY ARE THE SAME AS THE

6    BOXES THAT ARE IN THE PHOTOGRAPHS AND HAVE NOT BEEN

7    ALTERED IN ANY FASHION.

8              MR. SPERTUS:  I UNDERSTAND.

9              THE COURT:  INCLUDING THEIR CONTENTS.

10             MR. SPERTUS:  AND I SUBMIT THAT THE AGENT'S

11   TESTIMONY HAS LAID FOUNDATION FOR ADMISSIBILITY AND

12   AUTHENTICITY.

13             THE COURT:  I DON'T AGREE WITH YOU.  I DON'T

14   THINK -- IN TERMS OF ASKING ABOUT THESE WAFERS, THERE

15   NEEDS TO BE SOME BASIS TO ESTABLISH THAT THESE WAFERS

16   WERE IN THE BOXES THE DAY OF THE SEARCH, AND THERE'S

17   BEEN NO CHANGE BETWEEN THEN AND NOW.

18             MR. SPERTUS:  RIGHT.

19              SO WE WILL CLOSE THAT LOOP WITH OUR OWN

20   WITNESS, I GUESS, IF -- IF THERE'S REALLY GOING TO BE

21   AN OBJECTION FROM THE GOVERNMENT ON THAT ISSUE, I HAVE

22   WITNESSES WITH CAMERAS IN HAND TO ESTABLISH THAT.

23             THE COURT:  THAT'S FINE.

24             MR. SPERTUS:  SO RIGHT NOW, I'M ASKING HER --

25             THE COURT:  BUT YOU'RE ASKING HER WHETHER
```

```
 1   THESE WAFERS WERE THE WAFERS -- WHETHER THESE WERE SENT

 2   TO CHINA.  AND THE ISSUE WOULD BE, WHERE DID THESE

 3   WAFERS ORIGINATE AND WHERE WERE THEY AT CERTAIN TIMES.

 4           MR. SPERTUS:  SO EACH WAFER HAS ITS OWN

 5   INDIVIDUAL EXHIBIT NUMBER.  SO WE CAN MARK THEM FOR

 6   IDENTIFICATION.  AND THOSE WILL BE MOVED INTO EVIDENCE

 7   IF THE COURT WANTS US TO CALL OUR WITNESSES THAT

 8   RECOVERED THEM.

 9               BUT SEPARATE FROM THAT ARE THE BOXES,

10   WHICH ARE DIFFERENT EXHIBIT TABS AND NUMBERS.  THOSE --

11   THIS AGENT CHOSE NOT TO SEIZE THE BOXES OR LOOK IN

12   THEM.

13           THE COURT:  I UNDERSTAND.  BUT YOU'RE ASKING

14   THIS AGENT NOW ABOUT THE CREE WAFERS AND THEIR EXPORT.

15   THAT'S WHAT BROUGHT ME TO THE SIDE, NOT THE BOXES.

16           MR. SPERTUS:  I UNDERSTAND.

17             SO ON THE WAFER DISCUSSION I HAVE WITH

18   THE AGENT -- AND I WON'T SEEK TO MOVE IN THOSE THREE

19   EXHIBITS, ONLY THE BOXES -- I WILL LIMIT MY DISCUSSION

20   TO HER KNOWLEDGE OF THE CASE AND HER -- WHICH

21   INCLUDES -- SHE'S A CASE AGENT ALSO.  SO SHE'S HELD AND

22   TAKEN CUSTODY OF EXHIBIT 1.  AND SHE CAN -- AND ALREADY

23   HAS TESTIFIED THAT THEY APPEAR TO BE THE SAME.  WE WILL

24   THEN HAVE OUR OWN SEIZING WITNESS TESTIFY THAT THEY

25   WERE IN THE BOXES AFTER THE SEARCH.
```

```
 1              MS. SARTORIS:  YOUR HONOR, A COUPLE OF THINGS.
 2    ONE, WITH RESPECT TO THE BOXES, THE AGENT TESTIFIED
 3    THEY LOOK SIMILAR TO THE PICTURE.  THAT IS NOT HER
 4    TESTIFYING THE SAME THAT THEY'RE ACTUALLY THE BOXES IN
 5    THE PICTURE.  SHE HAS NOT SAID THAT THEY'RE THE SAME.
 6    THAT'S DEFENSE COUNSEL'S REPRESENTATION.  IF HE WANTS
 7    TO CALL A WITNESS TO ESTABLISH THAT, HE CAN DO THAT.
 8    BUT SHE SPECIFICALLY CAN LOOK AT THE PICTURE LIKE
 9    ANYONE ELSE CAN AND SEE THAT THEY LOOK LIKE SIMILAR
10    BOXES.  BUT WE HAVE NOT SEEN THEM BEFORE.  DEFENSE
11    COUNSEL PULLED THEM OUT OF HIS OWN BOX TODAY.  THIS IS
12    THE FIRST TIME WE'VE SEEN THEM, IS JIM SPERTUS HAS
13    THEM -- PULLING THEM OUT OF THE BOX.
14              THE COURT:  "MR. SPERTUS."
15                   I UNDERSTAND.
16                   I DON'T THINK THE -- WHETHER THEY'RE -- I
17    THINK IT WOULD PROBABLY MAKE SENSE, IN TERMS OF
18    ADMISSION, TO DO THIS ALL AT ONE TIME BECAUSE THIS
19    SIMILAR POINT APPLIES TO THE BOXES.
20                   YOU MADE YOUR POINTS ALREADY.  SO YOU
21    CAN -- YOU CAN CONTINUE.  BUT IN TERMS OF THE
22    ADMISSIBILITY OF THE BOXES AND ADMISSIBILITY OF WHAT'S
23    IN THEM, I THINK WE NEED THE CHAIN OF CUSTODY
24    ESTABLISHED.
25              MR. SPERTUS:  I'LL DO THAT.
```

```
 1              ONE OTHER POINT FOR MECHANICS.  CAN I,
 2   FOR THE RECORD THEN, SO I CAN SHOW THESE WAFERS TO CREE
 3   WITNESSES WHO WILL TESTIFY AND SAY, "YEP, THESE ARE OUR
 4   WAFERS THAT WE MADE" BASED ON THE INFORMATION THAT THEY
 5   KNOW, I'D LIKE TO MARK EACH DISC FOR IDENTIFICATION
 6   ONLY.  I CAN JUST HAVE THE AGENT READ THE NUMBER SO
 7   THAT I CAN THEN CONNECT THE DOTS AND HAVE THAT LINK
 8   ESTABLISHED LATER.
 9              MS. SARTORIS:  I OBJECT TO THAT.  THIS
10   WITNESSES HAS MADE IT CLEAR THAT SHE HAS NOT SEEN THESE
11   WAFERS BEFORE.
12              THE COURT:  YOU DON'T NEED TO DO THAT.
13              SHE DOESN'T NEED TO DO THAT.  YOU CAN DO
14   THAT.  YOU CAN MARK THESE EXHIBITS.
15              MR. SPERTUS:  I'LL DO THAT.  OKAY.
16              THE COURT:  THAT'S FINE.
17              MR. SPERTUS:  CAN I APPROACH AND JUST RECOVER
18   THEM?
19              THE COURT:  OF COURSE.
20              MR. SPERTUS:  THANK YOU.
21              (THE FOLLOWING PROCEEDINGS WERE HELD IN
22         OPEN COURT IN THE PRESENCE OF THE JURY:)
23              MR. SPERTUS:  MAY I APPROACH AND --
24              THE COURT:  MS. KEIFER WILL GIVE THEM TO YOU.
25              PLEASE PROCEED, MR. SPERTUS.
```

```
 1            MR. SPERTUS:  YOUR HONOR, THE SMALLER OF THE

 2    TWO CREE BOXES HAS BEEN MARKED FOR IDENTIFICATION AS

 3    EXHIBIT 4270.

 4            THE COURT:  CORRECT.

 5               THE LARGER IS EXHIBIT 3996.

 6            MR. SPERTUS:  OKAY.  AND INSIDE 3996 IS ALSO

 7    BUBBLE WRAP THAT BEARS THE CREE NAME ALSO MARKED FOR

 8    IDENTIFICATION WITH THE SAME EXHIBIT NUMBER 3996.

 9            THE COURT:  WHY DON'T YOU MAKE THAT 3996-A, IF

10    YOU'RE GOING TO REFER TO IT.

11        (EXHIBIT 3996-A WAS MARKED FOR IDENTIFICATION)

12            MR. SPERTUS:  YOUR HONOR, AND THEN FOR THE

13    RECORD --

14            THE COURT:  IS THE BUBBLE WRAP PART OF 3996?

15            MR. SPERTUS:  YES, YOUR HONOR.

16            THE COURT:  BECAUSE YOU JUST PUT IT IN 3997.

17            MR. SPERTUS:  NO, THE LARGER BOX IS --

18            THE COURT:  I'M SORRY, THE BUBBLE WRAP IS

19    ASSOCIATED WITH THE LARGER BOX; IS THAT RIGHT?

20            MR. SPERTUS:  YES, YOUR HONOR.

21            THE COURT:  THANK YOU.

22            MR. SPERTUS:  YOUR HONOR, I'M GOING TO MARK AS

23    EXHIBIT 3996-B --

24            THE COURT:  YOU MEAN "4270" OR "3996"?

25            MR. SPERTUS:  3996-B WILL BE A PLASTIC SHELL
```

```
1    THAT IS ALSO WAFER PACKAGING.

2              THE COURT:  OKAY.

3         (EXHIBIT 3996-B WAS MARKED FOR IDENTIFICATION)

4              MR. SPERTUS:  NOW, YOUR HONOR, INSIDE 3996-B

5    ARE THREE WAFERS, EACH MARKED WITH A SEPARATE EXHIBIT

6    NUMBER, RESPECTIVELY 3638 --

7              THE COURT:  WOULDN'T THEY BE 3996-C, -D, -E?

8              MR. SPERTUS:  NO, YOUR HONOR.

9              THE COURT:  THAT'S WHAT THEY SHOULD BE.

10             MR. SPERTUS:  WE INTEND TO SHOW THESE

11   SEPARATELY TO WITNESSES.  THAT'S THE EXHIBIT NUMBER

12   I'VE GIVEN IT.  THESE WILL, AT PERIODS IN THIS TRIAL,

13   SEPARATE FROM THE BOX.

14             THE COURT:  THEY CAN STILL BE SEPARATELY

15   SHOWN, BUT I THINK THEY SHOULD ALL BE ASSOCIATED SO

16   IT'S NOT CONFUSING ABOUT SOURCE.

17             IS THERE A PROBLEM WITH CALLING THEM

18   3996-C, -D, -E?

19             MR. SPERTUS:  NO, IT IS NOT.

20             THE COURT:  JUST A MINUTE.

21             ALL RIGHT.  MR. SPERTUS, MS. KEIFER SAYS

22   IT WILL BE JUST AS EASY TO USE UNIQUE NUMBERS FOR WHAT

23   I JUST CALLED "3996-C, -D, -E."  LET'S GIVE THOSE

24   UNIQUE NUMBERS, PLEASE.

25             MR. SPERTUS:  THANK YOU, YOUR HONOR.
```

```
 1              THE EXHIBITS -- THREE EXHIBITS WILL BEAR

 2    THE NUMBERS 3638.

 3              THE SECOND WAFER WILL BEAR THE NUMBER

 4    3639.

 5              AND THE THIRD WAFER WILL BEAR THE NUMBER

 6    3640.

 7         THE COURT:  THANK YOU.

 8         (EXHIBITS 3638, 3639 AND 3640 WERE

 9      MARKED FOR IDENTIFICATION)

10         MR. SPERTUS:  YOUR HONOR, I'D LIKE TO PUBLISH

11    THE ADDRESS LABEL ON EXHIBIT 4270, PLEASE.

12         THE COURT:  ANY OBJECTION TO THAT BEING

13    PUBLISHED?

14         MS. SARTORIS:  YES, YOUR HONOR.  THESE

15    EXHIBITS HAVE NOT BEEN NOTICED INTO EVIDENCE.

16         MR. SPERTUS:  YOUR HONOR, FOR IDENTIFICATION,

17    WE'VE BEEN DISCUSSING IT WITH THE WITNESS ON THE STAND.

18         THE COURT:  I UNDERSTAND.

19              YOU CAN PUBLISH THAT.

20              LADIES AND GENTLEMEN, AS I HAVE

21    EXPLAINED, EVIDENCE IS EXHIBITS THAT ARE ADMITTED.  AND

22    UNTIL AN EXHIBIT IS ADMITTED, IT'S NOT EVIDENCE.

23    BY MR. SPERTUS:

24    Q   AGENT MILLER, IS THAT THE ADDRESS LABEL THAT YOU

25    JUST OBSERVED ON EXHIBIT 4270?
```

67

1    A    YES, IT IS.

2    Q    IS THE ADDRESS FOR MICROEX ENGINEERING 991

3    FRANCISCO STREET, AS FAR AS YOU KNOW?

4    A    IT HADN'T -- WE HAD SEEN MULTIPLE ADDRESSES FOR IT.

5    THAT SOUNDS RIGHT, BUT I CANNOT 100 PERCENT SAY FOR

6    SURE THAT THAT IS THE ADDRESS FOR MICROEX.

7    Q    SO YOU HAVE A DOUBT, AS THE SEIZING AGENT, ON

8    WHETHER THAT'S THE ADDRESS YOU -- THAT MICROEX

9    ENGINEERING HAD; CORRECT?

10          MS. SARTORIS:  OBJECTION, YOUR HONOR.

11    ARGUMENTATIVE.

12          THE COURT:  SUSTAINED.

13                LET'S MOVE ON.

14                THE PURPOSE OF PUBLISHING THIS WAS TO

15    SHOW THE ADDRESS.

16    BY MR. SPERTUS:

17    Q    AND KIET MAI -- DO YOU SEE THE NAME "KIET MAI" ON

18    THE ADDRESS LABEL?

19    A    YES.

20    Q    AND DO YOU SEE THAT THE ORIGIN WHERE I'M POINTING

21    RIGHT THERE (INDICATING) IS "CREE INC."?

22          MS. SARTORIS:  OBJECTION, YOUR HONOR.  THIS IS

23    NOT MOVED INTO EVIDENCE.

24          THE COURT:  LET'S MOVE ON.

25                YOU CAN PUBLISH THIS BRIEFLY.

1              LET'S MOVE ON.

2              UNTIL IT'S -- THIS IS UNNECESSARY UNTIL

3    IT'S ADMITTED.

4              THANK YOU.

5    BY MR. SPERTUS:

6    Q    WELL, DURING THE SEARCH, IF AN AGENT HAD APPROACHED

7    YOU WITH THE CREE BOXES AND SAID, "LOOK WHAT WE FOUND,"

8    WOULD YOU HAVE DECIDED TO SEIZE THEM?

9    A    YES.

10   Q    SO DO YOU BELIEVE THAT AGENTS UNDER YOUR

11   SUPERVISION MADE MISTAKES?

12             MS. SARTORIS:  OBJECTION.  FOUNDATION.

13             WE HAVEN'T LAID FOUNDATION THESE ARE THE

14   ACTUAL BOXES IN THE LOCATION.

15             THE COURT:  SUSTAINED.

16             MR. SPERTUS:  YOUR HONOR, I SAID "IF."

17   BY MR. SPERTUS:

18   Q    HYPOTHETICALLY -- I UNDERSTAND THAT THESE BOXES

19   HAVE NOT YET BEEN ADMITTED INTO EVIDENCE.

20             BUT, HYPOTHETICALLY, IF AN AGENT HAD

21   APPROACHED YOU DURING THE SEARCH AND GIVEN YOU THE TWO

22   BOXES THAT YOU HAVE JUST NOW HELD AND HANDLED, WOULD

23   YOU HAVE SEIZED THEM?

24             MS. SARTORIS:  OBJECTION, YOUR HONOR.

25   SPECULATION.

69

```
 1              THE COURT:  THAT WAS JUST ANSWERED.
 2                  LET'S MOVE ON BECAUSE THE NEXT QUESTION
 3     TURNS ON THE ISSUE WE'VE JUST DISCUSSED AT THE SIDE.
 4     BY MR. SPERTUS:
 5     Q   IF YOU WERE TOLD ABOUT THESE CREE BOXES, AND SINCE
 6     YOU HAVE ALREADY TESTIFIED YOU WOULD HAVE SEIZED THEM,
 7     DO YOU BELIEVE THAT AGENTS UNDER YOUR SUPERVISION MADE
 8     A MISTAKE BY NOT TELLING YOU ABOUT THEM?
 9              MS. SARTORIS:  OBJECTION.  SPECULATION.
10              THE COURT:  SUSTAINED.
11                  UNTIL THE ISSUE WE'VE ADDRESSED AT THE
12     SIDE IS RESOLVED, IT'S AN IMPROPER HYPOTHETICAL.  SO
13     LET'S MOVE ON, PLEASE.
14                  MR. SPERTUS:  YOUR HONOR, CAN I ASK THIS
15     WITNESS ANY HYPOTHETICAL QUESTIONS?
16              THE COURT:  YOU CAN ASK HYPOTHETICAL
17     QUESTIONS, BUT NOT ONES THAT TURN ON THAT ISSUE BECAUSE
18     WE CAN ADDRESS THAT LATER.  AND YOU CAN MAKE ARGUMENTS
19     LATER.
20                  LET'S MOVE ON, PLEASE.  THANK YOU.
21     BY MR. SPERTUS:
22     Q   AS YOU SIT HERE TODAY, KNOWING THAT THE CREE BOXES
23     DEPICTED IN GOVERNMENT EXHIBIT 793 WERE NOT SEIZED, DO
24     YOU BELIEVE THAT SEIZING AGENTS UNDER YOUR SUPERVISION
25     MADE ERRORS?
```

```
 1              MS. SARTORIS:  ARGUMENTATIVE.

 2              THE COURT:  IT'S THE SAME QUESTION.

 3                  LET'S MOVE ON, PLEASE.

 4              MR. SPERTUS:  YOUR HONOR, MAY I HAVE A SIDEBAR

 5    ON THIS?

 6              THE COURT:  NO.  LET'S MOVE ON, PLEASE.

 7                  UNTIL THE FOUNDATIONAL ISSUE IS

 8    ADDRESSED, LET'S MOVE ON, PLEASE.

 9              MR. SPERTUS:  EXHIBIT 793 IS IN EVIDENCE.

10              THE COURT:  EXHIBIT 793?

11              MR. SPERTUS:  I'M DIRECTING THE WITNESS, YOUR

12    HONOR, TO EXHIBIT 793.  I'M GOING TO PUBLISH EXHIBIT --

13    IT'S IN EVIDENCE.  I'LL PUBLISH IT.

14              THE COURT:  THANK YOU.

15                  WHAT PAGE?

16              MR. SPERTUS:  16, YOUR HONOR.

17              THE COURT:  THANK YOU.

18                  RESTATE THE QUESTION, PLEASE.

19    BY MR. SPERTUS:

20    Q    OBSERVING PAGE 16 OF GOVERNMENT EXHIBIT 793,

21    DIRECTING YOUR ATTENTION TO THE BOXES DEPICTED IN THAT

22    PHOTOGRAPH, AS THE SUPERVISING SPECIAL AGENT IN CHARGE

23    OF SEIZING ITEMS FROM THE BECKMAN ROAD RESIDENCE, DO

24    YOU BELIEVE THAT AGENTS UNDER YOUR SUPERVISION MADE A

25    MISTAKE BY NOT SEIZING THOSE BOXES?
```

```
 1              MS. SARTORIS:  SAME OBJECTION, YOUR HONOR.

 2              THE COURT:  YOU MAY ANSWER.

 3              THE WITNESS:  SO WITH REGARDS TO THE SEARCH,

 4    THE TITLE THAT YOU LISTED IN YOUR QUESTION, THE

 5    "SUPERVISORY SPECIAL AGENT," TYPICALLY WE RESERVE THAT

 6    FOR AGENTS THAT HAVE -- THAT ARE SUPERVISORS OF A

 7    SQUAD.  SO THAT'S SORT OF A MISCHARACTERIZATION OF MY

 8    TITLE.

 9                   I AM A SPECIAL AGENT AND WAS A TEAM --

10    WAS THE TEAM LEADER FOR THE SEARCH THAT WE CONDUCTED

11    THAT DAY.

12                   AND WE -- HAD AN AGENT BROUGHT THESE

13    BOXES SPECIFICALLY TO MY ATTENTION, WE HAD -- WOULD

14    HAVE BEEN A LITTLE MORE THOROUGH IN REVIEWING THE

15    CONTENTS.

16    Q    AND FOR THAT REASON, DO YOU CONCLUDE THAT AGENTS

17    UNDER YOUR SUPERVISION MADE ERRORS?

18              MS. SARTORIS:  OBJECTION.  FOUNDATION.

19              THE COURT:  YOU MAY ANSWER.

20                   WHAT ARE YOU PUBLISHING?

21                   ARE YOU -- IS THIS 794?

22              MR. SPERTUS:  793, PAGE 16.  WHAT'S NOW

23    DEPICTED ON THE MONITOR IS 793, PAGE 16.  AND I'M

24    CALLING THE AGENT'S ATTENTION TO A PORTION OF THAT.

25              THE COURT:  THANK YOU.
```

72

1          MR. SPERTUS:  IT'S A CALL-OUT FROM ONE

2     EXHIBIT.

3          THE COURT:  THANK YOU.

4     BY MR. SPERTUS:

5     Q    SO, AGENT MILLER, AS THE SUPERVISOR THAT DAY, YOU

6     HAD SET UP THAT AGENTS ARE TO REPORT TO YOU ABOUT ANY

7     SIGNIFICANT FINDINGS TO BE CONSIDERED EVIDENCE IN THIS

8     CASE; RIGHT?

9     A    YES.

10    Q    YOU PERSONALLY DID THE BRIEFING OF THE 40 TO 50

11    AGENTS WHO PARTICIPATED; RIGHT?

12    A    YES.

13    Q    AS PART OF YOUR BRIEFING OF THOSE AGENTS, YOU

14    DESCRIBED THE CREE FRAUD THEORIES THAT WERE IN YOUR

15    MIND SO THAT AGENTS WOULD KNOW WHAT TO SEIZE; RIGHT?

16    A    YES.

17    Q    AND YOU DESCRIBED THE EXPORT VIOLATIONS THAT WERE

18    IN YOUR MIND, AS YOU'RE TEACHING AGENTS ABOUT THE CASE,

19    SO THAT AGENTS WOULD KNOW WHAT TO SEIZE; RIGHT?

20    A    WE WOULD HAVE ARTICULATED THE -- SOME FACTS OF THE

21    CASE.  AND WE WOULD HAVE REVIEWED THE LIST OF ITEMS TO

22    BE SEIZED.

23    Q    AND THE TARGETS?

24    A    WE WOULD HAVE IDENTIFIED CERTAIN NAMES AND

25    COMPANIES AND BUSINESSES.

1    Q    AND, CERTAINLY, YOU IDENTIFIED DR. SHIH, KIET MAI

2    AND MICROEX ENGINEERING; CORRECT?

3    A    WE -- YES, WE WOULD HAVE IDENTIFIED THE -- FOR SURE

4    THE TWO NAMES THAT YOU LISTED.

5         I DON'T SPECIFICALLY REMEMBER IF I

6    SPECIFICALLY BRIEFED THE NAME "MICROEX ENGINEERING."

7    BUT IT WAS -- IF MEMORY SERVES ME CORRECTLY, IT WAS

8    LISTED IN -- AMONG THE ITEMS TO BE SEIZED.

9    Q    YOU HAD AN OPERATIONS PLAN; RIGHT?

10   A    YES.

11   Q    DID YOU DRAFT THAT?

12   A    YES.

13   Q    AND DID YOUR OPERATIONS PLAN REQUIRE AGENTS TO

14   BRING TO YOUR ATTENTION ANY ITEMS RELATED TO CREE,

15   DR. SHIH OR KIET MAI?

16   A    THEY DIDN'T REQUIRE IT, BUT WE -- WE ADVISED THEM

17   THAT, IF THEY LOCATED AN ITEM THAT THEY FELT WAS

18   PARTICULARLY SIGNIFICANT, THEN, YES, THEY SHOULD BRING

19   IT TO OUR ATTENTION.

20   Q    AND AS YOU SIT HERE TODAY HAVING OBSERVED THE TWO

21   BOXES THAT I'VE PLACED IN FRONT OF YOU, IF THEY ARE THE

22   BOXES DEPICTED IN GOVERNMENT EXHIBIT 793, THAT'S A

23   PARTICULARLY SIGNIFICANT ITEM; CORRECT?

24        MS. SARTORIS:  OBJECTION, YOUR HONOR.

25        THE COURT:  SUSTAINED.

```
 1    BY MR. SPERTUS:

 2    Q    IF 793, WHICH IS YOUR GOVERNMENT AGENT PHOTO, THOSE

 3    BOXES, IF THEY BEAR THE LABEL -- ADDRESS LABEL TO KIET

 4    MAI AND COME FROM CREE, YOU WOULD DEFINE THAT AS A

 5    PARTICULARLY SIGNIFICANT ITEM; CORRECT?

 6            MS. SARTORIS:  OBJECTION, YOUR HONOR.

 7    SPECULATION.

 8            THE COURT:  YOU MAY ANSWER.

 9              DO YOU UNDERSTAND THE QUESTION?

10            THE WITNESS:  I THINK SO.

11              CAN YOU REPEAT IT AGAIN FOR ME, PLEASE?

12            THE COURT:  READ THE QUESTION, PLEASE.

13              (RECORD READ)

14            THE COURT:  DO YOU UNDERSTAND THE QUESTION?

15            THE WITNESS:  YES.

16            THE COURT:  YOU MAY ANSWER.

17            THE WITNESS:  SO IN THIS PHOTOGRAPH, THE

18    LABELS OF THESE BOXES ARE NOT DEPICTED.  SO IF THESE

19    BOXES WERE AT THE RESIDENCE AND HAD THE LABEL OF "KIET

20    MAI" -- WITH THE NAME "KIET MAI" ON IT, YES, THEY WOULD

21    HAVE BEEN A SIGNIFICANT ITEM.

22    BY MR. SPERTUS:

23    Q    AND THEN YOU WOULD CONSIDER IT AGENT ERROR IF THAT

24    AGENT HADN'T TOLD YOU ABOUT IT; RIGHT?

25            MS. SARTORIS:  OBJECTION, YOUR HONOR.
```

```
 1            THE COURT:  SUSTAINED.

 2                 LET'S MOVE ON, PLEASE.

 3      BY MR. SPERTUS:

 4      Q    I'M GOING TO PUBLISH, AGENT MILLER, EXHIBIT 743,

 5      WHICH IS IN EVIDENCE.  YOU JUST TESTIFIED ABOUT IT THIS

 6      MORNING ON DIRECT.

 7                 LOOKING AT THE MONITOR IN FRONT OF YOU, THAT'S

 8      EXHIBIT 743.  I'D LIKE TO DIRECT YOUR ATTENTION TO THE

 9      SHIPPING LABEL THAT YOU JUST DESCRIBED ACCOMPANIED THE

10      WAFERS THAT YOU WERE INVESTIGATING.

11                 DO YOU SEE THAT SHIPPING LABEL?

12                 MS. SARTORIS:  OBJECTION, YOUR HONOR.  VAGUE

13      AS TO WHICH WAFERS.

14                 THE COURT:  WHY DON'T YOU JUST FOCUS THE

15      QUESTION ON THE LABEL, PLEASE?

16                 CAN YOU RESTATE THE QUESTION JUST

17      FOCUSING ON -- WITHOUT FOCUSING ON THE EXHIBIT, PLEASE.

18                 AND THEN WE'RE GOING TO NEED TO TAKE A

19      BREAK.

20                 GO AHEAD, PLEASE.

21      BY MR. SPERTUS:

22      Q    WELL, YOU JUST TESTIFIED ON DIRECT EXAMINATION,

23      WHEN MS. SARTORIS ASKED YOU ABOUT EXHIBIT 743, THAT YOU

24      SEIZED EXHIBIT 743; CORRECT?

25      A    YES, WE DID.
```

```
1    Q    YOU SEIZED IT DURING THE SEARCH OF THE BECKMAN ROAD

2    ADDRESS ON JANUARY 19TH, 2018; RIGHT?

3    A    YES.

4    Q    SO YOU THOUGHT THE PACKING SLIP WAS SIGNIFICANT FOR

5    WHAT REASON?

6    A    IT WAS SIGNIFICANT BECAUSE IT LISTED THE SELLER

7    NAME, THE CONSIGNEE NAME AND THE SPECIFICATION OR THE

8    DESCRIPTION OF ITEMS THAT WERE LISTED ON THIS PACKING

9    SLIP.

10   Q    OKAY.  AND THE SELLER NAME AND CONSIGNEE ITEMS ARE

11   THE ONES THAT ARE PRESENTLY CALLED OUT ON THE MONITOR;

12   CORRECT?

13   A    YES.

14   Q    AND THE LIST OF ITEMS THAT YOU JUST DESCRIBED WERE

15   THESE; RIGHT?

16   A    YES.

17   Q    AND SO CERTAINLY IF A SHIPPING LABEL -- A SHIPPING

18   PAPER FOR THE WAFERS WAS SIGNIFICANT TO YOU, THE WAFERS

19   THEMSELVES WOULD ALSO BE SIGNIFICANT; RIGHT?

20   A    YES.

21   Q    SO AS YOU SIT HERE TODAY, AS THE SUPERVISOR

22   EVALUATING THE AGENTS WHO REPORTED TO YOU DURING THE

23   SEARCH ONLY, DO YOU BELIEVE THAT AGENTS UNDER YOUR

24   SUPERVISION MADE ERRORS BY NOT BRINGING THESE CREE

25   BOXES TO YOUR ATTENTION?
```

```
1           MS. SARTORIS:  OBJECTION, YOUR HONOR.

2           THE COURT:  SUSTAINED.

3               WE'RE GOING TO TAKE A BREAK HERE AT THE

4    REQUEST OF THE JURORS WHO NEED TO TAKE A BREAK.

5               SO, LADIES AND GENTLEMEN, WE'LL TAKE OUR

6    FIRST BREAK FOR ABOUT 20 MINUTES.

7               PLEASE DON'T DISCUSS THE CASE DURING THE

8    BREAK.  THANK YOU.

9           THE CLERK:  ALL RISE.

10          (THE FOLLOWING PROCEEDINGS WERE HELD IN

11          OPEN COURT OUTSIDE THE PRESENCE OF THE JURY:)

12          THE COURT:  PLEASE BE SEATED.

13              AND, MS. MILLER, YOU MAY STEP DOWN.

14          MR. SPERTUS:  WE'RE ON CROSS.  CAN YOU REMIND

15   MS. MILLER NOT TO TALK TO ANY GOVERNMENT AGENTS?

16          THE COURT:  PLEASE DON'T CONFER WITH ANYONE

17   ABOUT THE CASE DURING THE BREAK.

18              MR. SPERTUS, I THINK YOU HAVE ASKED THE

19   QUESTION REPEATEDLY.  AND I'VE CONTINUED TO SUSTAIN THE

20   OBJECTIONS IN TERMS OF WHAT IS AGENT ERROR.  I THINK

21   THAT COULD OPEN THE DOOR TO AN EXAMINATION OF VARIOUS

22   FACTORS.

23              I THINK YOU'VE ALREADY COVERED IN THE

24   QUESTIONS THAT THE -- WHAT WAS THIS -- WOULD THIS HAVE

25   BEEN MATERIAL, IF IDENTIFIED?  SO I DON'T THINK THE
```

```
 1    NEXT QUESTION IS NECESSARY.  WE DON'T NEED TO GET INTO

 2    THAT.

 3              MR. SPERTUS:  CAN I RESPOND, PLEASE?

 4              THE COURT:  BRIEFLY.

 5              MR. SPERTUS:  IN CONCLUDING THE DIRECT

 6    TESTIMONY THIS MORNING, THE PROSECUTOR, AFTER WALKING

 7    THROUGH ALL THIS EVIDENCE, THEN TURNED BACK TO THE

 8    DILIGENCE AND THOROUGHNESS OF THE SEARCH.  SHE ASKED

 9    QUESTIONS ABOUT THE DILIGENCE AND THOROUGHNESS OF THE

10    SEARCH THAT I'M NOW IMPEACHING WITH THE FACT THAT THE

11    CREE BOXES WERE NOT SEIZED.

12              THE COURT:  AND I PERMITTED YOU TO DO THAT.

13              MR. SPERTUS:  BUT I DON'T FEEL I HAVE DONE

14    THAT.

15              THE COURT:  I THINK YOU HAVE ASKED THAT

16    QUESTION REPEATEDLY.  I THINK THIS IS ACTUALLY QUITE

17    CUMULATIVE.

18                  I DON'T THINK WE NEED TO GET INTO THE

19    DEFINITIONAL TERM OF "AGENT ERROR."

20              MR. SPERTUS:  YOUR HONOR, CAN I MAKE ONE LAST

21    PITCH TO YOU BECAUSE I TRULY DON'T UNDERSTAND THIS TO

22    BE ARGUMENTATIVE?

23                  IF THIS AGENT ANSWERS, "YES," THAT SHE

24    THINKS -- SHE TRAINED THESE AGENTS ON THAT DAY.  SHE

25    GAVE THE BRIEFING.  SHE INSTRUCTED THEM WHAT TO DO.
```

1    AND AGENTS -- IF SHE CONCLUDES THAT THEY DIDN'T COMPLY

2    WITH HER INSTRUCTIONS, SHE WILL SAY THEY MADE A

3    MISTAKE.  THE FACT THAT THE SUPERVISING AGENT SAYS,

4    "AGENTS I TRAINED AND SUPERVISED MADE AN ERROR" IS

5    CRITICALLY-IMPORTANT EVIDENCE.

6              THE COURT:  IT'S AN ARGUMENT YOU CAN MAKE

7    BASED ON THE ANSWERS THAT HAVE BEEN GIVEN TO SEVERAL

8    QUESTIONS THAT I'VE PERMITTED.  SO I DON'T THINK WE

9    NEED TO GET INTO MORE THAN THAT.

10             THANK YOU.

11        MS. SARTORIS:  THANK YOU, YOUR HONOR.

12        **(RECESS)**

13

14

15

16

17

18

19

20

21

22

23

24

25

**CERTIFICATE OF OFFICIAL REPORTER**


COUNTY OF LOS ANGELES          )
                                                  )
STATE OF CALIFORNIA            )

            I, ALEXANDER T. JOKO, FEDERAL OFFICIAL

COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT

COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY

CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED

STATES CODE, THAT THE FOREGOING IS A TRUE AND CORRECT

TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS

HELD IN THE ABOVE-ENTITLED MATTER, AND THAT THE

TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE

REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED

STATES.

DATE:  MAY 23, 2019



                        /S/ ALEXANDER T. JOKO
                        _____
                        ALEXANDER T. JOKO, CSR NO. 12272
                        FEDERAL OFFICIAL COURT REPORTER

< DATES >
"APRIL 17:12
26 FEBRUARY
2007 29:8
APRIL 27TH
7:11, 8:3
DECEMBER 17TH
24:2
DECEMBER 26,
2013 22:8
FEBRUARY 21ST,
2007 29:2
JANUARY 19TH,
2018 58:3, 76:2
JANUARY 29TH,
2018 37:12
JULY 1ST, 2011
21:7
JUNE 17 2:5
JUNE 1ST 26:6
JUNE 28 2:8
JUNE 2ND 26:2
JUNE 4 2:10,
2:17, 5:13
JUNE 5 2:13
MAY 22, 2019
1:32, 1:1
MAY 23, 2019
1:28
MAY 27TH, 2012
26:16, 27:4
"3996" 64:24
"3996. 47:5
"4230" 41:14,
41:19
"4270" 47:4,
64:24
"793" 43:12
"855228" 10:14
"855229" 11:5
"855234" 11:20
"855242" 14:24
"855848" 18:24
"855863" 17:11
"855876" 18:8
"859658" 31:21
"9316. 43:12
'59. 24:14,
24:16
'62. 15:18

(949 9:19
-D 65:7, 65:18,
65:23
-E 65:7, 65:18
-E. 65:23
/S/ 1:33


< 1 >
1 1:28, 8:17,
8:21, 10:14,
55:19, 56:8
1. 20:22,
56:19, 61:22
10 7:7, 8:21,
18:19, 46:1
100 45:13, 67:5
10:00. 5:16
10TH 20:4
11 17:18, 31:24
11. 9:3
120 33:24
1200 2:40
12272 1:39,
1:35
12:00 2:14
12:30. 5:18
12TH 2:7
13 13:21, 32:8
1301. 22:9
14 32:22
14. 14:12,
32:21
15 5:10, 5:12,
14:24
1500 2:24
15TH 2:15
16 47:16, 53:6,
70:16, 70:20
16. 38:8,
38:11, 43:13,
71:22, 71:23
17TH 18:7
1990 3:8, 3:15,
3:22


< 2 >
2 7:14, 11:4,
11:6, 16:18

2. 30:15, 30:17
20 77:6
2011 7:11, 8:3
2012 25:13
2012. 20:4,
24:2, 26:15,
27:3
2013. 26:3
2014. 26:7
2017. 55:13
202 9:18
21 2:5
260,000 20:2
28 4:20, 4:22,
1:14


< 3 >
3 19:9, 30:24
300 2:31
3040 26:19,
27:6
312 2:6, 2:14,
2:23, 2:39
350 1:41
3638 4:34,
65:6, 66:8
3638. 66:2
3639 4:34, 66:8
3639. 66:4
3640 4:35,
66:6, 66:8
3996 4:28,
47:10, 55:25,
56:2, 56:12,
56:15, 56:17,
64:5, 64:6,
64:14
3996" 56:21
3996-A 4:30,
64:9, 64:11
3996-B 4:32,
64:23, 64:25,
65:3, 65:4
3996-C 65:7,
65:18, 65:23
3996. 56:4,
64:8
3997 64:16

< 4 >
4 17:10, 22:14,
31:5
40 35:20, 37:1,
39:19, 72:10
42 4:25
4230 4:25,
41:11, 41:23,
42:6, 42:10,
42:13, 42:14
4230. 41:5,
42:16
4270 4:27,
47:10, 48:8,
66:11, 66:25
4270. 56:5,
64:3
4311 1:41
47 4:27
482-4811 9:18
4:45 33:16


< 5 >
5 1:28, 11:15,
31:12, 31:13
50 37:3, 39:19,
72:10
50. 37:5
500,000 19:15


< 6 >
6 4:17, 7:3,
11:6
64 4:30
65 4:32
655 8:8, 8:21,
10:11
655. 9:6
656 10:10,
10:11, 10:14,
11:18
656. 10:10
657 15:10
658 15:10
659 15:14
66 4:34
660-0144. 9:19

660. 15:22
661 15:18
664. 18:22
665. 17:4
690 4:20, 28:8,
28:16, 28:20,
28:21
690. 28:24
691 4:22,
28:20, 28:21
691. 28:8,
28:16, 29:20
697. 20:12
698 22:22
699 23:1
6:00 33:10
6TH 26:7

< 7 >
7 11:18
705 3:9, 3:16,
3:23
716. 7:17, 60:1
717. 8:4
719. 24:3
7211 2:32
722 25:9
722. 25:9
743 21:16,
21:20, 21:21,
75:4, 75:23,
75:24
743. 75:8
744 22:19
744. 21:17
749 23:4, 23:5,
23:7
749. 23:4
752. 23:16
753 1:14
754 4:17, 6:20,
6:21
754. 6:17, 6:24
757 24:14,
24:15, 24:18
758 20:5
759 25:15
780. 25:15,
25:20

781 23:10,
23:11
781. 23:5
782. 26:9
783. 26:24
784 27:10
785 27:19
787. 25:2
793 38:8,
38:11, 40:14,
43:13, 43:25,
47:16, 53:6,
69:23, 70:9,
70:10, 70:20,
71:22, 71:23,
73:22, 74:2
793. 47:8,
70:12
794 71:21
7TH 26:2

< 8 >
8 8:8, 12:5
855227 9:5
855232 11:15
855235 12:5
855236 13:7
855240 13:22
855311. 16:20
855850 19:10
855870 17:18
859659 32:7
872139 7:15
872143. 7:4
8:30 1:32, 1:4

< 9 >
9 6:24, 13:7,
17:4
90 18:20
90012 1:42,
2:8, 2:25,
2:33, 2:41
90012-4700 2:16
90025 3:10,
3:17, 3:24
9316 42:24
93B2GM1 22:14

991 67:2
9:00 2:13

< A >
A. 1:3, 2:11
ABBREVIATED
22:14
ABLE 5:21,
11:3, 35:3,
51:25
ABOVE 9:20,
36:15, 38:17
ABOVE-ENTITLED
1:20
ACCEPTED 55:5
ACCOMMODATE
5:21
ACCOMPANIED
75:9
ACCOMPANIES
22:21
ACCORDANCE 29:4
ACCORDING 16:6
ACCOUNT 7:20,
7:24
ACCOUNTS 20:8
ACKNOWLEDGMENT
27:20
ACQUISITION
4:22, 29:25
ACTIVITY 30:11
ACTUAL 19:7,
68:14
ACTUALLY 4:18,
4:20, 62:4,
78:16
ADDITIONAL
11:9, 15:19
ADDRESS 23:15,
23:19, 23:21,
24:10, 24:11,
24:23, 24:25,
26:15, 26:20,
27:6, 27:7,
27:17, 39:4,
39:6, 44:23,
45:9, 45:11,
45:12, 45:14,
45:18, 46:6,

46:15, 59:6,
66:11, 66:24,
67:2, 67:6,
67:8, 67:15,
67:18, 69:18,
74:3, 76:2
ADDRESSED 23:9,
45:6, 46:15,
69:11, 70:8
ADDRESSES 67:4
ADMINISTRATION
13:13, 15:20,
30:21
ADMINISTRATIVE
15:11
ADMISSIBILITY
48:14, 59:13,
60:11, 62:22
ADMISSION 62:18
ADMIT 28:16
ADMITTED 4:20,
6:20, 28:20,
38:4, 42:13,
66:21, 66:22,
68:3, 68:19
ADVISED 73:16
AFFECT 29:9
AFFILIATED 22:5
AFFILIATION
25:14
AGENCIES 29:11,
29:12, 44:11
AGENCY 31:1,
49:19, 50:4
AGREE 16:15,
54:9, 60:13
AGREEMENT 4:6,
14:21
AHEAD 15:18,
75:20
AIR 29:14,
29:15
AJ_CSR@YAHOO.CO
M 1:43
AL 1:13
ALERT 2:15,
53:15
ALERTED 53:20
ALEX 1:17
ALEXANDER 1:39,

1:8, 1:33, 1:35
ALLOW 29:7
ALLOWED 44:10
ALREADY 61:22,
62:20, 69:6,
77:23
ALSTIN 37:12
ALTERED 60:7
ALTHOUGH 20:18
AMONG 34:15,
73:8
AMOUNT 19:14,
19:15, 19:24,
20:1, 20:2
AMPLIFIERS
11:16
AND/OR 2:23
ANGELES 1:30,
1:42, 2:8,
2:16, 2:25,
2:31, 2:33,
2:41, 3:10,
3:17, 3:24,
1:1, 23:21,
26:19, 27:7,
1:3
ANN 2:3
ANSWER 3:10,
32:17, 33:2,
45:19, 52:11,
71:2, 71:19,
74:8, 74:16
ANSWERED 46:10,
69:1
ANSWERS 78:23,
79:7
APPARENT 44:6
APPEAR 18:25,
20:6, 25:11,
25:17, 26:8,
40:21, 43:22,
45:1, 47:17,
48:3, 53:4,
56:18, 57:1,
61:23
APPEARANCES
2:1, 3:1, 1:13
APPEARS 16:2,
19:1, 20:16,
24:2, 25:12,

26:12, 39:2,
41:24, 43:20
APPLICATION
7:19
APPLIES 14:8,
62:19
APPLY 10:1
APPROACH 47:12,
47:23, 63:17,
63:23
APPROACHED
68:6, 68:21
APPROPRIATE
10:24, 15:7
APPROXIMATE
33:13
APPROXIMATELY
46:2
APRIL 17:25,
18:13, 18:19
AREA 6:12,
10:12, 28:2,
28:3, 28:13,
29:22, 36:14,
36:20, 38:19,
41:18, 44:4,
44:10, 44:14,
46:12, 49:2,
51:8, 52:16,
53:7, 53:15
ARGUMENT 79:6
ARGUMENTATIVE
39:12, 51:18,
52:3, 57:19,
67:11, 70:1,
78:22
ARGUMENTS 69:18
AROUND 5:20,
29:8, 33:10
ARRANGEMENT
15:16, 21:8
ARRIVED 33:9
ARSENIDE 34:8
ARTICULATED
72:20
ASIA 25:13
ASSESSMENT 30:2
ASSIGNED 49:22,
51:8
ASSISTED 34:16

ASSOCIATED
64:19, 65:15
ASSUMING 50:8,
51:7, 59:18
ASSUMPTION
59:18, 59:23
ATTEND 2:10,
37:9
ATTENDEES
37:13, 37:16
ATTENTION 7:14,
10:20, 12:7,
21:16, 23:9,
42:21, 70:21,
71:13, 71:24,
73:14, 73:19,
75:8, 76:25
ATTORNEY 2:4,
2:12, 2:20,
2:29, 2:37
AUDIT 32:24
AUDITS. 32:22
AUSA 2:4, 2:12,
2:20, 2:29,
2:37, 37:6,
37:25
AUTHENTICITY
60:2, 60:12
AUTHORIZATION
8:7
AVAILABLE 37:7,
37:18
AWARE 36:4,
36:6

< B >
BACK 4:8,
15:22, 78:7
BADGE 26:6
BADGES 25:23
BANK 4:18, 7:2,
7:13, 7:16,
7:22, 19:7,
19:18, 19:19,
20:8
BASE 29:15
BASED 39:9,
39:25, 40:18,
42:2, 46:4,

50:19, 50:22,
51:6, 52:19,
53:11, 53:12,
53:19, 55:17,
57:5, 58:7,
60:2, 63:4,
79:7
BASICALLY 51:10
BASIS 16:10,
59:1, 60:15
BEACH 9:19
BEAR 66:1,
66:3, 66:5,
74:3
BEARING 54:10,
54:23, 59:6
BEARS 39:4,
53:2, 64:7
BECAME 36:6
BECKMAN 26:19,
27:6, 27:15,
39:16, 42:8,
54:14, 70:23,
76:1
BECOME 54:6
BECOMES 54:5
BEDROOM 6:12,
10:12, 25:4,
28:2, 28:13,
29:22, 36:15,
36:21, 38:17,
38:20, 52:16,
59:19
BEFORE-SEARCH
42:1
BEGINNING 33:8
BEGINS 10:17
BEHALF 1:15,
1:19, 1:21,
1:23, 1:25,
1:27
BEHIND 41:5,
45:8, 46:23,
46:25
BELIEF 57:15,
58:7, 58:11
BELIEVE 3:9,
19:9, 33:7,
33:24, 36:17,
43:25, 48:11,

49:9, 52:9,
52:12, 52:14,
55:13, 55:24,
68:10, 69:7,
69:24, 70:24,
76:23
BELOW 12:21,
14:6
BENEFICIARY
19:12
BEST 5:19
BEYOND 3:12
BINDER 4:9,
41:14
BINDERS 41:5,
41:11, 41:13,
41:14, 41:17
BIS 8:22, 9:17,
10:2, 13:3,
13:16
BODY 21:2
BOTTOM 9:5,
10:14, 11:5,
11:20, 11:24,
14:25, 17:11,
17:19, 18:8,
18:24, 26:4,
31:22
BOX 4:19,
30:13, 30:14,
31:2, 31:11,
31:17, 32:6,
32:18, 33:3,
39:4, 45:19,
45:21, 50:19,
53:4, 54:9,
54:10, 54:23,
55:16, 55:18,
55:19, 55:25,
56:4, 56:5,
59:2, 59:9,
59:10, 59:19,
59:25, 62:11,
62:13, 64:17,
64:19, 65:13
BOXES. 49:10
BREAK 75:19,
77:3, 77:4,
77:6, 77:8,
77:17

BRIEF 11:22
BRIEFED 73:6
BRIEFING 37:9,
37:10, 37:14,
72:10, 72:13,
78:25
BRIEFLY 8:4,
9:10, 67:25,
78:4
BRING 10:20,
73:14, 73:18
BRINGING 76:24
BROKE 6:10
BROOKE 21:14
BROUGHT 4:18,
61:15, 71:12
BUBBLE 4:30,
64:7, 64:14,
64:18
BUCKET 39:8
BUI 21:14
BULLET 10:20,
15:5, 31:6,
31:7, 31:14,
32:1, 32:12,
32:23
BULLETS 30:10
BUNDY 3:8,
3:15, 3:22
BUREAU 8:13,
8:16, 9:7,
9:21, 11:7,
14:17
BUSINESS 17:8,
18:2, 24:5,
24:8, 24:20
BUSINESSES
72:25


< C >
C-R-E-E 22:9
C. 2:28
CA 1:42, 2:8,
2:16, 2:25,
2:33, 2:41,
3:10, 3:17,
3:24
CABINET 43:5,
43:8, 43:18,

43:19, 43:22,
44:2, 50:18,
51:4
CALIFORNIA 1:2,
1:30, 1:1,
23:21, 27:7,
1:5, 1:12
CALIFORNIA.
26:19
CALL 37:8,
61:7, 62:7
CALL-OUT 72:1
CALLED 65:23,
76:11
CALLING 65:17,
71:24
CALLS 57:7
CAM 21:15
CAMERAS 60:22
CANADA 19:19,
19:21, 23:15
CANADIAN 15:25
CARD 24:5,
24:8, 24:11,
24:20
CAROLINA 21:23
CASE 2:5, 39:7,
39:23, 45:24,
54:11, 57:20,
61:20, 61:21,
72:8, 72:18,
72:21, 77:7,
77:17
CASES 8:14,
8:22, 11:7,
11:9
CASH 18:14
CAUSES 46:5
CENTER 10:5
CENTRAL 1:2,
32:2, 1:12
CERTAIN 61:3,
72:24
CERTAINLY 73:1,
76:17
CERTAINTY
45:14, 51:2,
51:25, 52:1
CERTIFICATE 1:1
CERTIFY 1:14

CHAIN 58:24,
59:5, 59:17,
62:23
CHANGE 29:9,
60:17
CHANGES. 29:4
CHANGING 50:14
CHARACTER 25:6
CHARACTERISTICS
13:5
CHARGE 39:15,
51:16, 54:13,
70:22
CHARTERED 4:18,
7:2, 7:13,
7:16, 7:19,
7:21
CHECK 13:14
CHECKED 30:13,
30:14, 30:22,
31:2, 31:3,
31:10, 31:11,
31:16, 31:17,
32:5, 32:6,
32:17, 32:18,
33:3
CHECKLIST. 30:2
CHEN 27:14
CHENGDU 23:19,
24:10, 24:22,
24:24
CHINA 8:23,
11:13, 11:16,
19:7, 20:7,
23:20, 24:10,
24:24, 57:5,
58:8, 58:10,
61:2
CHINESE 25:6
CHIPS 8:25
CHOOSE 45:7
CHOSE 61:11
CHRISTA 3:20,
1:27
CIRCLING 38:24
CLARITY 49:13
CLASSIFICATION
13:11, 13:15
CLASSIFY 13:14
CLASSIFYING

13:8
CLAUSE 29:5
CLEAR 63:10
CLEARLY 43:7,
44:4
CLERK 5:7,
55:25, 56:4,
77:9
CLOSE 59:4,
60:19
CLOSER 2:6,
4:14
CLOSET 28:3,
28:6, 28:12,
29:22
CLOSETS 28:4
CO-WORKERS
21:13
COCAINE 59:7
CODE 1:16
COLLECTED 54:5,
54:6, 54:7
COLLECTIVELY
37:21
COLLECTS 53:24
COLOR 56:18
COLUMN 18:12,
30:5, 30:6,
30:9
COM 27:4
COMBINATION
44:12
COMMENT 31:18,
32:19, 33:4
COMMENTS. 30:7
COMMERCE 8:18,
9:22, 10:18,
11:21, 12:22,
14:17, 44:13
COMMERCIAL
21:24
COMMODITIES
22:10
COMMUNICATION
18:4
COMMUNICATIONS
35:25
COMPANIES 16:1,
72:25
COMPANY 17:16,

18:19, 22:5,
23:3, 23:19,
24:22, 24:23,
25:25, 30:11,
30:16, 30:19,
30:25, 31:7,
31:14, 32:23,
44:23
COMPLIANCE
31:8, 31:13,
31:15, 32:25
COMPLY 79:1
COMPLYING.
56:22, 56:25
COMPONENT 51:15
COMPRISED 15:11
COMPUTER 8:25
CONCLUDE 46:6,
71:16
CONCLUDED 36:23
CONCLUDES 79:1
CONCLUDING 78:5
CONCLUSION 57:8
CONDITION
59:10, 59:19
CONDUCT 52:20
CONDUCTED 35:1,
36:12, 50:11,
52:18, 71:10
CONDUCTING
37:2, 49:1,
49:17
CONFER 2:7,
77:16
CONFERENCE
25:13, 1:24
CONFERRED 4:5
CONFIRMATION
27:11, 27:20
CONFLICT 2:8
CONFORMANCE
1:22
CONFUSING 65:16
CONNECT 63:7
CONNECTED 55:11
CONNECTION
57:20
CONSIDER 74:23
CONSIDERATIONS
15:25

CONSIDERED
12:15, 12:16,
72:7
CONSIGNEE 22:3,
23:20, 76:7,
76:10
CONSISTENT 19:4
CONSTRUCTED
58:3
CONSULTATION
18:3, 37:18
CONTACT 9:17,
9:20, 10:5
CONTAIN 51:5
CONTAINED 45:23
CONTAINER 56:20
CONTAINING
32:2, 53:21
CONTENT 43:8
CONTENTS 40:22,
43:4, 43:17,
43:19, 45:3,
55:18, 56:13,
56:14, 56:17,
59:21, 60:9,
71:15
CONTINUATION
11:7
CONTINUE 62:21
CONTINUED 3:1,
6:6, 77:19
CONTINUES 55:8
CONTRACT 29:5
CONTRACTS.
29:10
CONTRIBUTION
18:14
CONTROL 12:16,
14:18, 14:19,
32:15
CONTROLLED
30:20
CONTROLS 10:19,
11:22, 15:17,
15:25, 30:1,
31:9
CONVERSATION
37:24
CONVERSATIONS
38:1

COOPERATE 24:9
COPIES 4:7, 4:9
COPY 4:11,
15:24, 42:6
CORNER 38:25
CORRECTLY 73:7
COUNSEL 2:1,
1:16, 4:5,
41:8, 62:6,
62:11
COUNTER 55:17
COUNTRY. 12:20
COUNTY 1:3
COUPLE 62:1
COURSE 63:19
COURTHOUSE 2:5,
2:13
COURTROOM 2:15,
60:5
COVER 10:3,
46:12
COVERED 77:23
CR18-00050 1:11
CR18-00050-JAK
1:11
CRIMES 2:22,
2:38, 58:4,
58:6
CRIMINAL 2:13
CRITICALLY-IMPO
RTANT 79:5
CROSS 77:14
CROSS-EXAMINATI
ON 4:11, 3:2,
35:12, 35:14
CSR 1:39, 1:35
CULVER 3:20
CUMULATIVE
78:17
CURRENT 21:3
CUSTODY 58:25,
59:5, 59:17,
61:22, 62:23
CUSTOMER 23:8
CYBER 2:21


< D >
DARREN 21:15
DASH 22:9

DATE 7:10,
7:11, 10:25,
15:8, 20:3,
20:4, 22:7,
22:8, 24:1,
26:1, 26:2,
1:28
DATED 8:2,
26:6, 26:16,
27:4, 29:2
DAUGHTER 2:10
DAY 1:28, 21:7,
38:1, 39:19,
48:5, 48:18,
59:3, 59:11,
59:20, 60:16,
71:11, 72:5,
78:24
DC 9:18
DECIDE 39:23
DECIDED 68:8
DECIDING 58:6
DECISION 21:3
DECISIONS
57:20, 57:23
DECLARATION.
11:1, 15:9
DEFENDANT 3:4,
6:11, 6:12,
7:2, 10:12,
25:3, 28:2,
29:22, 35:5,
35:6
DEFENDANTS 1:14
DEFENSE 2:25,
3:17, 4:5,
62:6, 62:10
DEFENSE. 31:4
DEFER 48:13
DEFINE 11:24,
74:4
DEFINITIONAL
78:19
DENG. 27:6
DEPARTMENT 8:6,
8:18, 9:21,
10:18, 11:22,
14:17, 24:9,
31:4, 44:13
DEPENDENT 13:4

DEPICTED 40:13,
47:8, 47:15,
47:17, 53:5,
60:1, 69:23,
70:21, 71:23,
73:22, 74:18
DESCRIBE 8:21,
18:10, 33:21
DESCRIBED
42:17, 44:17,
72:14, 72:17,
75:9, 76:14
DESCRIBES 51:24
DESCRIPTION
4:15, 18:2,
18:14, 37:22,
76:8
DESIGNATE 14:9
DESIGNATED
31:15
DESIGNATION
14:9, 21:1
DESTINATION
12:4, 13:5
DETAILS 2:11
DETERMINE
12:22, 13:16,
32:25
DETERMINING
13:12
DEVICES 33:25
DICED 22:16,
22:17
DIFFERENT
19:24, 20:18,
27:21, 58:12,
59:7, 61:10
DIGITAL 33:25
DILIGENCE 30:1,
46:4, 78:8,
78:9
DILIGENT 46:19
DILIGENTLY 34:2
DINGTIAN. 24:10
DIRECT 4:9,
6:6, 7:14, 8:8,
12:6, 32:13,
35:16, 38:3,
44:15, 44:17,
46:5, 46:18,

58:5, 75:6,
75:8, 75:22,
78:5
DIRECTED 42:21
DIRECTING
70:11, 70:21
DIRECTOR. 24:22
DISC 63:5
DISCUSS 4:3,
37:22, 55:9,
77:7
DISCUSSED
27:25, 69:3
DISCUSSING
66:17
DISCUSSION
48:13, 61:17,
61:19
DISPUTE 41:18
DISTINGUISH
59:24
DISTRICT 1:1,
1:2, 1:4, 2:5,
1:10, 1:12
DIVISION 1:2,
2:13, 2:30
DOCUMENT 4:20,
4:23, 7:5,
7:25, 8:5, 8:6,
8:14, 8:15,
8:17, 8:20,
8:21, 9:4,
10:15, 10:16,
13:17, 14:2,
14:16, 15:23,
16:13, 16:14,
16:18, 17:15,
17:19, 22:20,
25:3, 25:6,
25:7, 26:11,
26:18, 26:25,
27:9, 29:2,
29:16, 29:21,
29:24, 29:25,
30:3, 44:18,
44:21
DOCUMENTATION
11:1, 15:9
DOCUMENTS 2:23,
7:10, 7:13,

10:11, 11:3,
14:10, 15:10,
16:9, 19:3,
23:6, 25:18,
28:1, 28:12,
32:2, 33:23,
33:25
DOG 34:16
DOING 3:5,
35:1, 36:7
DOLLARS 18:17,
19:15, 20:2
DONE 78:13
DOOR 33:10,
77:21
DOTS 63:7
DOUBT 37:17,
52:23, 53:9,
67:7
DOWN 26:17,
77:13
DRAFT 73:11
DRAWER 50:18
DRAWING 38:24
DRIVE 3:8,
3:15, 3:22
DUE 21:4, 30:1
DURATION 33:13
DURHAM 21:23
DURING 3:1,
3:2, 28:5,
35:23, 36:1,
36:4, 37:18,
42:7, 44:1,
44:9, 49:12,
50:3, 54:20,
68:6, 68:21,
76:1, 76:22,
77:7, 77:17
DUTIES 21:9


< E >
E-MAIL 20:16,
20:17, 21:2,
24:11, 24:25,
26:12, 26:15,
26:20, 27:1,
27:7, 27:17,
37:12

EASY 65:22
ECCN 10:23,
13:16, 15:6
EFFICIENCY
37:17
EG 10:24, 11:1,
15:7, 15:9
ELECTRONICALLY
8:7
ELEVATE 51:14
EMPLOY 30:16
EMPLOYEES 32:13
END 5:17
END-USE. 13:6
END-USER 13:6
ENFORCEMENT
8:14, 33:9,
33:19, 34:13,
34:17, 35:5
ENGINEERING
22:6, 23:20,
44:24, 67:2,
67:9, 73:2
ENGINEERING.
73:6
ENGLISH 8:1,
24:6, 24:7
ENSURE 31:8
ENTERTAINMENT
18:4
ENTIRE 29:8,
39:7, 57:4
ENVELOPE 44:5
ERROR 74:23,
77:20, 79:4
ERROR. 78:19
ERRORS 69:25,
71:17, 76:24
ESSENTIAL 13:12
ESTABLISH 59:1,
60:15, 60:22,
62:7
ESTABLISHED
62:24, 63:8
ET 1:13
EVALUATING
76:22
EVENT 2:14,
5:13, 5:15
EVERYTHING

46:25
EVIDENCE 6:16,
6:21, 28:22,
38:8, 39:15,
40:5, 40:8,
40:10, 42:11,
42:14, 45:8,
47:20, 48:9,
53:23, 54:6,
54:10, 55:5,
55:6, 58:4,
58:7, 58:11,
59:16, 59:18,
61:6, 66:15,
66:21, 66:22,
67:23, 68:19,
70:9, 70:13,
72:7, 75:5,
78:7, 79:5
EXACT 45:1,
45:17
EXACTLY 36:5
EXAMINATION
4:9, 6:6,
35:16, 75:22,
77:21
EXAMPLE 32:3,
32:4, 59:7
EXCEPT 4:9,
59:9
EXCEPTION
10:24, 14:8,
14:10
EXCEPTIONS.
14:6
EXCUSE 43:11
EXECUTED 33:9,
34:2
EXEMPTION 15:7
EXHIBITS 4:8,
4:15, 23:5,
24:14, 28:8,
28:16, 28:20,
28:21, 41:17,
47:4, 47:10,
47:20, 61:19,
63:14, 66:1,
66:8, 66:15,
66:21
EXPERIENCE

51:7, 53:11,
53:13, 53:19
EXPIRATION
10:25, 15:8
EXPLAINED 66:21
EXPLORE 57:21
EXPORT. 12:4
EXPORTING 9:8
EXPORTS 11:13,
13:3

< F >
FACT 37:3,
42:2, 60:2,
78:10, 79:3
FACTORS 77:22
FACTS 72:20
FAIR 18:16
FAMILY 5:13
FAR 67:3
FASHION 60:7
FAX 20:6
FBAR 8:7
FBI 1:17, 44:9,
44:12, 49:19,
49:23, 49:24
FEDERAL 1:40,
42:7, 1:8, 1:36
FEEL 78:13
FEI 24:8
FELT 73:17
FEW 4:16, 33:16
FIGURE 9:13
FILE 8:7, 32:2,
43:5, 43:8,
43:17, 43:19,
43:22, 44:2,
50:18, 51:4
FILES 43:22,
44:1
FILTER 54:19
FILTERS 54:21
FINANCIAL 4:17,
7:1
FIND 34:4,
34:6, 34:10,
35:3
FINDER 53:24
FINDING 54:5

FINDINGS 72:7
FINDS 54:1
FINE 3:15,
4:13, 4:22,
52:10, 60:23,
63:16
FIRST 1:41,
2:22, 7:15,
8:17, 9:11,
9:12, 9:13,
9:24, 10:1,
10:3, 12:6,
12:25, 18:23,
30:8, 30:9,
31:6, 31:7,
31:14, 32:1,
32:12, 32:23,
39:4, 59:25,
62:12, 77:6
FLOOR 2:7, 2:15
FOCUS 75:14
FOCUSING 20:15,
75:17
FOLLOWING 1:9,
5:5, 12:9,
16:21, 16:23,
29:10, 63:21,
77:10
FORCE 29:14,
29:15
FOREGOING 1:16
FOREIGN 12:4,
12:20, 30:16,
31:1
FORGET 55:23
FORM 7:19
FORMAT 1:22
FOUND 22:24,
25:3, 29:21,
34:7, 34:22,
44:1, 54:3,
54:4, 68:7
FOUNDATION
16:8, 47:22,
48:15, 54:22,
59:12, 60:11,
68:12, 68:13,
71:18
FOUNDATIONAL
16:10, 70:7

FOUNDRY 21:21, 21:24, 22:25
FOUR 10:7
FRAMED 39:13, 57:18
FRANCISCO 67:3
FRAUD 39:8, 57:4, 72:14
FRIDAY 21:7
FRONT 8:10, 17:5, 21:18, 28:10, 38:12, 40:13, 42:25, 53:5, 54:9, 54:23, 56:15, 58:17, 73:21, 75:7

< G >
GALLIUM 22:15, 34:8, 34:10
GAN 22:14, 34:6
GASTONE 24:23, 25:25, 26:8
GAVE 3:13, 78:25
GENERAL 2:38
GENTLEMEN 5:9, 66:20, 77:5
GETS 4:20
GIANT 39:4
GINGER 34:16, 34:17, 34:22, 35:21, 36:22, 53:14, 53:20, 53:22, 53:25
GIVE 36:25, 63:24, 65:23
GIVEN 65:12, 68:21, 79:7
GIVES 11:22
GOAL 40:10
GOODS 30:12
GOSHI 21:15
GOVERNMENT 2:21, 4:6, 6:16, 10:6, 28:8, 28:15, 30:25, 31:1,

40:14, 41:8, 43:3, 43:8, 47:8, 47:16, 53:6, 55:7, 55:19, 56:8, 58:5, 60:1, 60:21, 69:23, 70:20, 73:22, 74:2, 77:15
GRADUATION 2:10, 2:12, 2:19
GROUNDS 55:8
GUAN. 27:24
GUESS 51:1, 60:20
GUEST 26:18, 27:5, 27:13, 27:14, 27:21, 27:23, 27:24
GUYS 37:21

< H >
HAND 41:4, 60:22
HANDED 41:7
HANDLED 68:22
HANDLER 53:18, 54:1
HANSON 2:3
HANUSZ 3:13, 1:27, 3:22
HAPPENED 53:1
HARD 43:20
HEARD 5:12
HEINZ 2:11, 1:14, 1:15, 37:6, 37:18, 37:25
HELD 1:9, 5:5, 61:21, 63:21, 68:22, 77:10, 1:20
HELP 10:2, 37:11
HEREBY 1:12
HEREWITH 29:6
HIDDEN 35:3
HIGH 37:4

HIGHLY 45:24
HOLD 56:23
HONEYWELL 4:22, 21:4, 21:13, 29:7, 29:25
HONG 7:16, 7:23, 21:15
HONORABLE 1:3
HOTEL 26:13, 26:22, 27:1, 27:8, 27:10, 27:20
HOURS 46:1
HOUSE 35:5
HUGHES 2:28, 1:22, 1:23
HUNDRED 51:2, 51:25
HYPOTHETICAL 69:12, 69:15, 69:16
HYPOTHETICALLY 68:18, 68:20

< I >
IDENTIFICATION 47:4, 47:9, 47:11, 55:22, 61:6, 63:5, 64:2, 64:8, 64:11, 65:3, 66:9, 66:16
IDENTIFIED 48:11, 72:24, 73:1, 73:3, 77:25
IDENTIFYING 58:4
IEEE 25:24, 26:6, 26:14, 27:2
IF. 68:16
IMPEACHING 78:10
IMPLEMENTED 33:1
IMPORTANCE 51:15
IMPORTANT

15:25, 39:23
IMPROPER 69:12
INC. 29:7, 67:21
INCLUDE 11:9, 24:11, 33:20
INCLUDED 40:5, 49:23, 50:13
INCLUDES 33:24, 61:21
INCLUDING 8:22, 8:25, 11:13, 11:15, 35:7, 51:5, 59:21, 60:9
INDICATE 43:16
INDICATING 43:4, 44:5, 67:21
INDICATOR 30:8
INDICATORS. 30:5
INDIVIDUAL 24:20, 61:5
INDIVIDUALS 20:24, 35:20, 37:2, 37:3, 49:21
INDUSTRIES. 18:4
INDUSTRY 8:13, 8:16, 9:7, 9:21, 11:8, 14:17
INFORM 21:2
INFORMATION 10:5, 13:18, 17:20, 26:18, 27:5, 27:8, 27:21, 33:21, 58:19, 63:4
INSIDE 48:20, 48:24, 48:25, 49:3, 49:15, 50:4, 50:9, 50:13, 50:15, 50:25, 53:16, 64:6, 65:4
INSPECTION 57:1
INSTEAD 4:11

INSTRUCTED
78:25
INSTRUCTION
20:6
INSTRUCTIONS
9:7, 79:2
INTELLECTUAL
2:21
INTEND 65:10
INTENTION 29:6
INTEREST 18:11,
18:18
INTERNAL 32:22,
32:24
INTERNATIONAL
24:9, 25:23,
26:5, 26:14,
27:2, 29:7,
32:14
INTERPRETATION
16:9
INTERVIEW 52:18
INTERVIEWING
35:22, 36:1
INTRODUCE 6:16,
28:16, 59:17
INTRODUCED 43:3
INTRODUCTION
10:18, 11:21
INVESTIGATING
75:10
INVESTIGATION
55:12, 55:18
INVESTMENT
7:20, 7:24
INVOICE 22:7,
22:8, 23:18
INVOICES 32:4
INVOLVED 44:11
INVOLVING 8:22
IRS 44:12
ISHIANG 23:9,
24:21
ISSUE 3:23,
4:2, 57:16,
58:24, 59:17,
60:2, 60:4,
60:21, 61:2,
69:3, 69:11,
69:17, 70:7

ITEM 9:9,
10:23, 12:3,
12:16, 13:4,
13:8, 13:11,
13:14, 15:6,
31:2, 53:24,
54:7, 59:5,
73:17, 73:23,
74:5, 74:21
ITEMS 6:11,
28:5, 33:17,
33:18, 33:20,
33:24, 34:13,
34:21, 39:25,
40:5, 40:14,
44:3, 45:4,
51:5, 54:14,
56:24, 59:5,
70:23, 72:21,
73:8, 73:14,
76:8, 76:10,
76:14
ITSELF 16:14


< J >
JACK 16:3, 16:6
JAMES 2:28,
3:6, 1:22, 1:26
JEFF 20:23,
21:14
JESSE 31:20,
32:20
JIERU 27:6
JIM 62:12
JING 27:24
JOB 50:8
JOHN 1:3, 3:13,
1:27
JOKO 1:39, 1:8,
1:33, 1:35
JUDGE 1:4
JUDGMENT 45:7
JUDICIAL 1:24
JUDITH 2:11,
1:14
JUDY 37:6,
37:18
JUMP 15:18
JUROR 2:8, 2:9,

2:18, 5:12
JURORS 2:4,
5:10, 77:4
JURY 1:10, 3:3,
4:8, 5:6,
16:19, 38:2,
63:22, 77:11
JYS 19:2,
19:13, 23:8,
23:11, 23:14


< K >
K-9 53:25
KEIFER 63:24,
65:21
KHAL 1:20
KHALDOUN 2:19
KIET 21:15,
22:4, 22:5,
39:5, 40:8,
40:10, 44:23,
45:6, 45:9,
46:7, 46:16,
53:2, 54:10,
54:24, 59:6,
67:17, 73:1,
73:15, 74:3,
74:19, 74:20
KILO 59:7
KNOCKED 33:10
KNOWING 69:22
KNOWLEDGE
16:11, 37:21,
39:22, 50:24,
57:18, 57:25,
58:2, 61:20
KONG 7:16, 7:23
KRONSTADT 1:3


< L >
L. 3:20
LABEL 45:17,
45:22, 45:23,
46:6, 46:15,
53:2, 53:4,
54:10, 54:24,
55:23, 66:11,
66:24, 67:18,

74:3, 74:19,
75:9, 75:11,
75:15, 76:17
LABELED 47:4
LABELS 74:18
LABORATORY
29:13, 29:14
LADIES 5:8,
66:20, 77:5
LAID 59:12,
60:11, 68:13
LANDES 3:7,
3:14, 3:21
LANDSCAPE 16:5
LANE 17:8,
17:23, 19:2,
19:11, 20:7,
20:8
LANGUAGE 25:6
LARGE 55:16,
55:19
LARGER 56:1,
56:4, 64:5,
64:17, 64:19
LAST 9:5, 9:15,
9:17, 10:20,
14:23, 15:5,
17:2, 19:6,
19:23, 21:7,
78:20
LATER 55:9,
63:8, 69:18,
69:19
LAW 33:8,
33:19, 34:13,
34:16, 35:5
LAWS 11:11,
13:18, 31:9,
32:16
LAY 48:15
LEADER 71:10
LEAST 16:2
LEAVE 2:12,
2:18, 5:14,
33:15, 45:7,
46:25
LEAVING 12:17,
12:18, 47:1
LEFT 33:16,
43:18, 44:7,

46:23
LEFT-HAND 30:3,
43:21
LEGAL 16:5,
57:8
LEVEL 36:21,
38:20
LEVY 16:3, 16:6
LIABILITY 18:19
LICENSE 10:2,
10:24, 10:25,
12:23, 13:3,
13:4, 13:19,
13:24, 14:3,
14:6, 15:7,
15:8
LICENSE. 9:14
LICENSES. 32:4
LICENSING 13:12
LIKELY 50:12,
50:14, 50:22
LIMIT 61:19
LIMITED 18:18
LINE 7:15,
8:17, 26:13,
26:14, 29:3
LINK 63:7
LIST 2:23,
23:23, 53:23,
72:21, 76:14
LISTED 15:2,
18:12, 18:16,
18:19, 18:20,
21:14, 23:8,
23:15, 23:19,
23:21, 24:10,
24:21, 24:23,
25:14, 25:24,
26:15, 27:24,
29:12, 40:1,
44:21, 53:25,
71:4, 73:4,
73:8, 76:6,
76:8
LISTENING 59:14
LISTS 8:14,
14:19, 20:23,
29:10, 30:20,
31:20
LITERATURE

22:24, 23:2
LITTLE 42:18,
71:14
LLC 18:11
LLP 3:7, 3:14,
3:21
LOCATE 34:24
LOCATED 21:22,
21:23, 26:22,
73:17
LOCATION 7:12,
7:21, 9:19,
23:13, 23:14,
38:2, 38:17,
39:16, 68:14
LOCATIONS 37:23
LOFT 6:12,
10:12, 28:13,
29:22, 36:14,
36:20, 38:19,
44:14, 49:22,
50:12, 59:20
LOFT/OFFICE
49:2
LOGS 53:23,
54:6
LONG 21:14,
33:13, 55:11
LOOKED 48:5,
48:17, 48:19,
48:20, 49:2,
49:5, 49:9,
49:10, 49:11,
49:18, 49:19,
49:25, 50:4,
50:9, 50:22,
50:25, 51:3,
51:9, 52:1,
52:21, 53:10,
53:12
LOOKING 9:15,
10:10, 13:17,
20:21, 22:19,
24:4, 25:20,
26:4, 30:8,
30:15, 30:24,
31:5, 34:14,
34:15, 50:13,
58:18, 75:7
LOOKS 51:23,

56:10
LOOP 60:19
LOOPS 59:4
LOS 1:30, 1:42,
2:8, 2:16,
2:25, 2:31,
2:33, 2:41,
3:10, 3:17,
3:24, 1:1,
23:21, 26:19,
27:7, 1:3
LOWER-RIGHT-HAN
D 38:25
LU 31:20, 32:20


< M >
MAI 21:15,
22:4, 22:5,
39:5, 40:8,
40:11, 44:23,
45:6, 45:9,
46:7, 46:16,
53:2, 54:10,
54:24, 59:7,
67:17, 73:1,
73:15, 74:4,
74:20
MAIN 28:1
MAJOR 8:14
MANAGER 17:24,
21:4, 24:9
MANAGERS 17:25
MANDARIN 24:6
MANUFACTURER
13:15
MARK 14:3,
47:3, 61:5,
63:5, 63:14,
64:22
MARKED 4:15,
47:9, 47:11,
51:8, 56:20,
64:2, 64:7,
64:11, 65:3,
65:5, 66:9
MARKET 18:16
MASTER 36:15,
36:21, 38:17,
38:20, 52:16,

59:19
MATCH 55:19
MATERIAL 77:25
MATTER 2:3,
37:25, 1:20
MATTIS 2:21
MAUREEN 4:7,
5:24
MCILVAIN 21:14
MEAN 40:22,
43:12, 46:22,
49:16, 52:24,
64:24
MECHANICS 63:1
MELANIE 2:3,
1:25
MEMBER 18:12,
18:14
MEMBERS 17:16,
18:10, 18:12
MEMORY 46:6,
73:7
MENTION 52:17
MENTIONED 33:7
METHOD 12:14
MICROEX 22:6,
23:20, 44:24,
67:2, 67:6,
67:8, 73:2,
73:6
MICROWAVE
11:15, 25:13,
25:24, 26:5,
26:14, 27:3
MIDDLE 12:6,
12:13, 17:12,
26:1, 26:2,
26:17
MILLER 4:7,
5:1, 5:3, 5:22,
5:24, 6:8,
6:23, 17:3,
27:25, 33:7,
43:16, 47:15,
66:24, 72:5,
75:4, 77:13,
77:15
MIND 52:25,
57:22, 58:2,
58:6, 72:15,

72:18
MINUTE 56:3,
58:21, 65:20
MINUTES 33:16,
77:6
MISCHARACTERIZA
TION 71:7
MISSTATES 38:6,
46:9
MISTAKE 69:8,
70:25, 79:3
MISTAKES 68:11
MMCOMM 4:20,
29:2, 29:6,
29:8, 29:18
MMIC 22:15
MOBILE 24:12
MOMENT 41:10
MONEY 20:7
MONITOR 40:13,
42:25, 53:5,
71:23, 75:7,
76:11
MONTREAL 19:21,
26:23, 27:9
MORNING 1:14,
1:18, 1:20,
1:22, 1:24,
1:26, 2:1,
2:13, 5:3, 5:4,
5:8, 5:16, 6:8,
6:9, 33:11,
44:15, 44:16,
75:6, 78:6
MOVE 42:10,
47:19, 48:8,
55:3, 61:18,
67:13, 67:24,
68:1, 69:2,
69:13, 69:20,
70:3, 70:6,
70:8, 75:2
MOVED 55:5,
61:6, 67:23
MULTIPLE 67:4


< N >
NAME 5:23, 8:1,
16:3, 18:12,

19:11, 23:8,
23:18, 24:8,
24:21, 25:13,
25:24, 26:7,
64:7, 67:17,
73:6, 74:20,
76:7, 76:10
NAMED 24:21
NAMES 31:20,
72:24, 73:4
NATIONALS 30:16
NAVAL 29:13
NECESSARILY
40:22, 48:20,
48:24
NECESSARY 78:1
NEED 4:10,
4:15, 4:19,
4:23, 9:14,
12:22, 62:23,
63:12, 63:13,
75:18, 77:4,
78:1, 78:18,
79:9
NEEDED 10:8
NEEDS 2:18,
60:15
NEW 46:12
NEWPORT 9:19
NEXT 9:25,
12:5, 13:7,
14:14, 16:20,
16:22, 16:24,
16:25, 17:1,
23:25, 30:5,
30:6, 31:21,
32:7, 55:17,
69:2, 78:1
NITRADE 22:15,
34:10
NLR 10:24,
13:24, 14:4,
15:7
NO. 1:39, 30:6,
34:12, 57:16,
59:23, 70:6,
1:35
NOBODY 44:9
NORTH 2:6,
2:14, 2:23,

2:31, 2:39,
21:23
NOTES 3:3,
3:10, 3:11
NOTICE. 21:1
NOTICED 66:15
NOTIFICATION
29:3, 29:6
NUMBER 10:25,
15:8, 20:24,
21:13, 22:7,
22:9, 24:12,
27:25, 30:4,
30:9, 31:5,
31:24, 32:8,
32:21, 36:25,
37:4, 48:9,
55:20, 61:5,
63:6, 64:8,
65:6, 65:11,
66:3, 66:5
NUMBERS 59:6,
61:10, 65:22,
65:24, 66:2


< O >
OATH 6:1
OBJECT 3:4,
55:8, 63:9
OBJECTION 4:12,
6:18, 16:8,
16:16, 28:17,
28:18, 38:5,
39:11, 41:15,
42:12, 46:8,
47:21, 48:10,
51:17, 52:2,
54:16, 55:1,
57:7, 58:13,
60:21, 66:12,
67:10, 67:22,
68:12, 68:24,
69:9, 71:1,
71:18, 73:24,
74:6, 74:25,
75:12, 77:1
OBJECTIONS
77:20
OBSERVED 42:18,

59:25, 60:3,
66:25, 73:20
OBSERVES 54:4
OBSERVING 70:20
OBTAIN 13:19
OBVIOUSLY 46:25
OFFICE 2:4,
2:12, 2:20,
2:29, 2:37,
29:13, 35:4,
35:17, 36:15,
36:18, 38:21,
49:22, 50:12,
52:15, 53:6,
54:24
OFFICE/LOFT
28:1
OFFICES 9:18,
35:2, 35:7
OFFICIAL 1:40,
1:1, 1:8, 1:36
OKAY 5:19,
12:8, 12:14,
13:23, 18:9,
24:17, 25:10,
25:16, 25:21,
26:10, 27:19,
28:9, 28:25,
30:24, 31:23,
33:17, 38:16,
41:19, 41:22,
43:3, 47:12,
48:23, 49:13,
59:24, 63:15,
64:6, 65:2,
76:10
ONCE 36:23,
54:1
ONE 2:4, 2:9,
9:11, 9:12,
9:15, 12:9,
14:21, 22:17,
24:5, 26:1,
26:2, 26:8,
30:6, 30:9,
41:25, 43:3,
50:24, 53:2,
54:21, 56:23,
62:2, 62:18,
63:1, 72:1,

78:20
ONES 48:3,
58:17, 69:17,
76:11
OPEN 1:10, 5:6,
55:16, 56:12,
56:20, 63:22,
77:11, 77:21
OPERATIONS
73:9, 73:13
OPINIONS 2:24
OPPOSED 4:9
ORDER 22:9,
23:11, 44:2
ORDERED 44:22
ORIGIN 67:20
ORIGINAL 4:7,
4:11
ORIGINATE 61:3
ORIGINATOR
19:10, 19:11
OTHERS 50:8
OUTSIDE 1:10,
3:2, 77:11
OVERVIEW 11:23,
16:5
OWN 13:14,
34:23, 60:19,
61:4, 61:24,
62:11
OWNERSHIP 29:4,
29:9


< P >
P.M. 33:16
PACIFIC 25:13
PACKAGING 39:3,
40:21, 65:1
PACKING 21:21,
22:21, 23:23,
23:25, 76:4,
76:8
PAGES 8:21,
11:6, 19:6,
20:17, 23:22
PAPER 44:16,
76:18
PARAGRAPH 12:6,
13:1, 13:10,

14:7
PARKING 21:24
PART 44:24,
64:14, 72:13
PARTICIPATE
34:17
PARTICIPATED
39:18, 72:11
PARTICIPATING
35:19, 35:20,
49:19
PARTICULAR 14:9
PARTICULARLY
73:18, 73:23,
74:5
PASSING 48:21
PERCENT 18:20,
18:21, 45:14,
51:2, 51:25,
67:5
PERCENTAGE
13:2, 18:11,
18:18
PERCIPIENT
57:10, 57:18,
57:24, 58:2
PERIODS 65:12
PERMIT 4:7
PERMITTED
78:12, 79:8
PERSON 23:25,
51:22, 54:13
PERSONAL 4:17,
7:1, 21:4
PERSONALLY
48:25, 49:5,
49:8, 49:9,
49:14, 49:15,
52:23, 54:13,
54:20, 60:3,
72:10
PERSONNEL
31:15, 33:9,
34:20
PERSONNEL.
31:13
PERSONS 18:15
PHONE 24:12,
37:8
PHONETIC 37:13

PHOTO 4:25,
4:11, 38:13,
38:15, 38:16,
38:19, 40:18,
42:7, 74:2
PHOTOGRAPH
41:24, 42:1,
43:20, 43:21,
70:22, 74:17
PHOTOGRAPHED
43:9
PHOTOGRAPHS
60:6
PHOTOS 38:4
PICTURE 43:24,
43:25, 44:3,
44:6, 44:7,
47:18, 48:4,
62:3, 62:5,
62:8
PITCH 78:21
PLACARDS 42:3,
42:4, 42:17
PLACE 32:24,
36:10, 42:23,
54:4
PLACED 42:5,
42:18, 43:9,
44:2, 73:21
PLACES 3:13
PLAINTIFF 1:9,
2:3
PLAN 73:9,
73:13
PLASTIC 4:32,
64:25
POINT 10:21,
15:5, 31:6,
31:7, 32:1,
32:12, 32:23,
49:11, 62:19,
63:1
POINTING 67:20
POINTS 42:3,
42:4, 54:2,
62:20
PORTFOLIO 17:8
PORTION 20:21,
71:24
PORTIONS 15:11,

15:19
POSITION 21:3
PRESENCE 1:10,
3:2, 5:6,
63:22, 77:11
PRESENT 1:28,
5:10, 37:6,
37:7, 60:3
PRESENTATION
15:24
PRESENTED 4:15
PRESENTLY
58:18, 76:11
PRESIDENT 29:18
PRESIDING 1:4
PREVIOUS 27:9
PREVIOUSLY 55:5
PRIOR 35:1,
35:4, 49:4,
50:15
PRIVILEGE 21:9
PROBABLY 3:10,
3:12, 5:18,
45:13, 62:17
PROBLEM 65:17
PROCEDURE 58:3
PROCEDURES
32:24, 32:25
PROCEDURES.
33:6
PROCEED 4:24,
6:4, 63:25
PROCEEDINGS
1:26, 1:9, 5:5,
63:21, 77:10,
1:18
PROCESS 9:8,
9:22, 10:17,
15:3, 22:20
PRODUCE 3:4
PRODUCED 3:6
PRODUCTION 18:3
PRODUCTIONS
17:9, 17:23,
19:2, 19:11
PRODUCTS 30:19
PROFESSIONAL
45:7
PROFILE 4:17,
7:1

PROGRAM 31:8
PROPER 13:11,
21:8
PROPERTY 2:22
PROSECUTOR 78:6
PROVIDE 2:23
PROVIDES 29:6
PUBLISH 16:19,
38:7, 38:9,
66:10, 66:19,
67:25, 70:12,
70:13, 75:4
PUBLISHED 66:13
PUBLISHING
42:16, 67:14,
71:20
PULL 4:15
PULLED 62:11
PULLING 62:13
PULLMAN 17:8,
17:23, 19:2,
19:11, 20:7,
20:8
PURCHASE 23:11,
29:7
PURPOSE 67:14
PURPOSES 12:16
PURSUANT 4:20,
1:14
PUT 14:9, 64:16


< Q >
QUESTION 4:1,
30:24, 32:17,
33:2, 46:11,
52:4, 52:8,
52:25, 69:2,
70:2, 70:18,
71:4, 74:9,
74:12, 74:14,
75:15, 75:16,
77:19, 78:1,
78:16
QUESTION. 10:6
QUESTIONS 2:21,
35:10, 57:17,
57:24, 69:15,
69:17, 77:24,
78:9, 79:8

QUITE 4:16,
78:16
QUOTE 23:7


< R >
R. 5:12
RADAR 9:1
RADKE 20:23,
21:14
REACHING 2:24
READ 12:9,
12:25, 13:10,
30:24, 40:3,
52:6, 63:6,
74:12, 74:13
READS 29:4
REALLY 60:20
REASON 2:22,
71:16, 76:5
REASONABLE 60:2
REASONS. 21:5
RECALL 37:10,
37:24, 38:2,
38:13, 39:6,
44:18, 45:17,
46:21, 50:1,
50:3, 50:6,
52:17
RECEIPT 25:12
RECEIPTS 25:17
RECEIVED 4:15,
2:4, 6:21,
28:22, 42:14,
50:20, 50:21,
50:23
RECEIVING
19:18, 19:19
RECESS 79:12
RECOGNIZE
20:13, 38:15
RECOGNIZES
48:11
RECOLLECTION
37:11
RECONCILED 4:19
RECORD 8:6,
52:6, 63:2,
64:13, 74:13
RECORDKEEPING.

31:25
RECOVER 63:17
RECOVERED 61:8
REDACTION 4:10
REEXPORTS 13:3
REFER 64:10
REFLECT 3:12
REFLECTED 7:12,
16:12
REGARDING
14:18, 37:13,
37:25, 39:7,
39:8
REGARDLESS
12:12, 12:14
REGARDLESS.
12:7
REGARDS 71:3
REGIMES 14:19
REGISTRATION
25:12, 25:17
REGULAR 21:1
REGULATIONS
13:13, 15:12,
15:20, 30:21,
1:24
REINFORCE 33:5
RELATED 22:24,
23:2, 25:18,
40:5, 40:8,
40:10, 73:14
RELATIVELY 13:2
RELEVANT 45:24
RELIED 2:24
REMAIN 6:1
REMAINED 46:24
REMAINING 19:3
REMEMBER 6:13,
46:14, 52:14,
73:5
REMIND 77:14
REMOVE 56:12
REMOVED 34:21,
43:5, 43:8,
43:18, 43:19,
43:23
REPEAT 52:5,
74:11
REPEATEDLY
77:19, 78:16

REPORT 72:6
REPORTED 76:22,
1:18
REPORTER 1:40,
1:1, 1:10, 1:36
REPORTER'S 1:26
REPORTING 39:19
REPRESENTATION
62:6
REPRESENTED
25:22
REQUEST 3:8,
3:16, 13:15,
19:1, 19:24,
77:4
REQUESTING 2:10
REQUESTS 19:4,
19:7
REQUIRE 13:3,
14:3, 73:13,
73:16
REQUIRED 13:25
REQUIREMENTS
13:4, 13:12,
13:19, 29:5,
32:15
RESEARCH 3:11,
29:13, 29:14
RESEARCH. 22:2
RESEARCHED 3:14
RESERVATION
27:11, 27:20
RESERVATION.
26:13, 27:2
RESERVE 71:5
RESIDENCE 6:11,
33:10, 35:6,
35:7, 36:7,
36:13, 37:2,
37:23, 46:1,
48:22, 52:21,
53:14, 54:3,
54:14, 70:23,
74:19
RESIGN 21:3
RESOLVED 69:12
RESPECT 2:20,
57:19, 62:2
RESPECTIVELY
65:6

RESPOND 78:3
RESPONSIBILITY
32:13, 51:23
REST 13:17
RESTATE 5:22,
46:11, 70:18,
75:16
RESULT 29:9
REVIEW 32:24
REVIEWED 72:21
REVIEWING 71:14
REVIEWS 32:22
RIGHT-HAND
43:24
RISE 5:7, 77:9
RISK 30:2
RML 23:18,
25:14
ROAD 26:19,
27:7, 27:15,
39:16, 42:8,
70:23, 76:1
ROLE 34:20
ROLLINS 2:36,
1:18, 1:19
ROOM 1:41,
2:32, 54:1,
54:2
ROOMS 34:21,
34:22, 36:13
RULINGS 4:21

< S >
S.E.D. 32:4
SALE 12:19
SANCTION 32:15
SANCTIONS 30:1,
31:9
SARTORIS6 4:9
SATELLITE 8:25
SAYING 50:7,
59:13
SCHEMATICS
12:11
SCREEN 12:6,
19:10, 38:12
SCROLL 26:17
SEARCHED 34:21,
46:1

SEARCHES 50:17,
52:20
SEARCHING
36:22, 36:24
SEATED 77:12
SECOND 2:20,
3:1, 36:21,
37:16, 38:19,
39:8, 66:3
SECRETARY 17:21
SECTION 2:22,
2:38, 13:24,
30:17, 31:18,
32:19, 33:4,
1:14
SECURITY 8:13,
8:16, 9:8,
9:21, 11:8,
14:17
SEEING 46:15
SEEK 6:16,
28:16, 61:18
SEEKING 59:16
SEEM 46:14
SEEN 41:9,
49:10, 56:8,
62:10, 62:12,
63:10, 67:4
SEIZE 34:4,
34:6, 34:10,
39:24, 40:10,
40:17, 40:23,
44:20, 45:2,
45:4, 54:25,
61:11, 68:8,
72:15, 72:19
SEIZED 4:8,
6:11, 10:12,
16:9, 28:5,
28:12, 33:19,
33:22, 33:23,
33:24, 39:25,
40:25, 45:19,
54:19, 54:20,
68:23, 69:6,
69:23, 72:22,
73:8, 75:24,
76:1, 78:11
SEIZING 39:15,
44:3, 53:23,

54:14, 57:22,
61:24, 67:7,
69:24, 70:23,
70:25
SELL 30:25
SELLER 22:1,
22:2, 76:6,
76:10
SEMICONDUCTOR
23:3, 34:7
SEMICONDUCTORS
23:7, 23:12
SEND 21:12
SENIOR 21:3
SENSE 62:17
SENT 12:3,
12:11, 21:13,
39:9, 57:5,
61:1
SENTENCE 9:12,
9:13, 9:15,
9:17, 9:24,
10:1, 10:4,
12:7, 12:9,
12:12
SENTENCES 12:25
SEPARATE 61:9,
65:5, 65:13
SEPARATELY
65:11, 65:14
SERIAL 59:6
SERIES 38:4
SERVES 73:7
SERVICES 7:20,
7:24, 10:8,
18:3, 22:25
SESSION 2:6,
2:7
SET 12:11, 72:6
SEVERAL 8:22,
79:7
SHALL 21:7
SHEET 22:20
SHELL 4:32,
64:25
SHIH 1:13, 3:4,
1:12, 1:28,
7:2, 8:1,
17:12, 17:13,
17:25, 18:6,

18:13, 18:19,
18:20, 19:17,
20:11, 20:17,
20:21, 20:23,
23:9, 25:18,
26:7, 29:17,
32:20, 35:17,
35:23, 36:4,
37:22, 38:17,
39:9, 47:1,
51:13, 51:21,
51:24, 52:13,
73:1, 73:15
SHIH. 21:11,
24:21, 25:14,
25:25, 31:20,
33:5
SHIP-TO 23:13,
23:14
SHIPPER 11:1,
15:9, 23:18
SHIPPING 44:16,
44:18, 44:23,
45:17, 45:22,
45:23, 75:9,
75:11, 76:17
SHOBAKI 2:19,
1:20, 1:21,
3:7, 3:16, 3:19
SHOULDN'T
51:14, 51:24
SHOW 47:13,
47:24, 63:2,
65:10, 67:15
SHOWED 49:5
SHOWING 38:2
SHOWN 65:15
SIC 42:24
SIDE 24:5,
24:6, 24:7,
30:3, 42:23,
43:17, 43:18,
43:21, 43:24,
61:15, 69:3,
69:12
SIDEBAR 58:23,
70:4
SIGNALING 38:23
SIGNED 7:5,
7:7, 18:5,

18:6, 19:16,
20:10, 29:16,
29:17
SIGNIFICANT
2:9, 72:7,
73:18, 73:23,
74:5, 74:21,
76:4, 76:6,
76:18, 76:19
SIGNS 42:18
SIMILAR 19:23,
27:10, 41:24,
47:17, 48:3,
56:18, 62:3,
62:9, 62:19
SIT 49:13,
54:8, 69:22,
73:20, 76:21
SITUATIONS 4:9
SLASH 29:14,
32:24, 49:22
SLIP 21:21,
21:24, 22:21,
76:4, 76:9
SMALL 13:2
SMALLER 55:25,
56:5, 64:1
SOLE 17:15
SOMEONE 51:23
SORRY 14:15,
30:17, 30:18,
59:15, 64:18
SORT 17:11,
20:16, 28:1,
71:7
SOUNDS 46:3,
67:5
SOURCE 65:16
SOUTH 3:8,
3:15, 3:22
SPACE 36:18,
49:2, 49:17,
49:22, 50:12,
50:19, 51:4,
52:16
SPEAKING 6:10
SPEAKS 16:14
SPECIAL 1:16,
6:8, 6:23,
17:3, 27:25,

33:7, 70:22,
71:5, 71:9
SPECIALIST.
10:2
SPECIFIC 36:25,
37:24, 39:6,
46:21, 50:1,
50:6, 52:17
SPECIFICALLY
34:14, 44:13,
62:8, 71:13,
73:5, 73:6
SPECIFICATION
22:20, 76:7
SPECIFICATIONS
22:10
SPECULATION
68:25, 69:9,
74:7
SPERTUS. 62:14
SPERTUS35 4:11
SPOKEN 50:1
SPRING 2:6,
2:14, 2:23,
2:39
SQUAD 71:7
STAND 54:8,
66:17
STANDARD 4:18,
7:2, 7:13,
7:16, 7:19,
7:21
START 9:8,
24:15
STARTED 55:13
STARTING 12:12
STARTS 10:16
STATE 1:13,
14:7, 17:21,
57:22, 1:5
STATEMENT 17:20
STATES 1:1,
1:4, 2:5, 1:15,
1:19, 1:21,
1:23, 1:25,
9:9, 12:4,
12:17, 12:18,
1:10, 1:16,
1:26
STENOGRAPHICALL

Y 1:18
STEP 9:11,
9:12, 9:15,
9:24, 9:25,
10:3, 10:4,
10:7, 77:13
STEPS 10:16,
10:21, 15:3
STOCK 29:8
STORINO 1:17
STREET 1:41,
2:6, 2:14,
2:23, 2:31,
2:39, 67:3
SUBJECT 21:1,
26:13, 27:1,
29:3, 29:5
SUBJECTIVE
57:15
SUBMIT 13:15,
60:10
SUBSIDIARY
12:20
SUGGEST 10:7
SUITE 2:24,
2:40, 3:9,
3:16, 3:23
SUMMARIZED
11:10
SUMMARY 10:16,
10:21, 15:3
SUPERVISED 79:4
SUPERVISING
70:22, 79:3
SUPERVISION
68:11, 69:7,
69:24, 70:24,
71:17, 76:24
SUPERVISOR
72:5, 76:21
SUPERVISORS
71:6
SUPERVISORY
32:13, 71:5
SUPPOSED 9:12,
51:10
SUSTAIN 16:16,
77:19
SUSTAINED
39:13, 41:16,

51:19, 54:17,
55:2, 57:9,
58:15, 67:12,
68:15, 69:10,
73:25, 75:1,
77:2
SYMBOL 10:24,
15:7
SYMPOSIUM
25:24, 26:6,
26:15, 27:3
SYMPOSIUMS
25:18

< T >
T. 1:39, 21:15,
1:8, 1:33, 1:35
TABLE 1:16,
42:4, 42:19
TABS 61:10
TAPE 39:3,
40:21
TARGETS 72:23
TAX 2:30
TD 19:19
TDOMCATTOR
19:19
TEACHING 72:18
TEAM 35:22,
36:1, 49:21,
71:9, 71:10
TECHNICAL 13:5,
24:22
TECHNOLOGIES
19:2, 19:13,
23:8, 23:11
TECHNOLOGIES.
23:14
TECHNOLOGY 9:1,
21:4, 23:19,
24:23, 25:25,
26:8, 30:12,
30:20
TEMPORARILY
12:18
TERM 78:19
TERMS 2:11,
2:16, 3:10,
60:14, 62:17,

62:21, 77:20
TEST 35:1
TESTIFIED 38:3,
38:13, 44:15,
46:5, 46:18,
48:17, 58:5,
61:23, 62:2,
69:6, 75:5,
75:22
TESTIFY 61:24,
63:3
TESTIFYING
46:14, 51:6,
62:4
TESTIMONY 2:20,
3:12, 33:8,
35:16, 38:6,
44:17, 46:9,
48:23, 49:4,
49:7, 50:14,
50:15, 51:10,
60:11, 78:6
THANKS. 21:10
THEMSELVES
76:19
THEORIES 39:22,
72:14
THEORY 39:9,
45:21, 57:4
THINKS 78:24
THIRD 66:5
THOROUGH 36:12,
46:19, 46:22,
50:11, 71:14
THOROUGHLY 34:2
THOROUGHNESS
46:4, 78:8,
78:9
THOUGH 11:4,
38:1
THOUSAND 18:16
THOUSANDS
33:23, 33:25
THREE 10:3,
22:17, 56:23,
58:18, 61:18,
65:5, 66:1
THREE. 10:4
THROUGHOUT 38:1
TIMING 2:16

TITLE 24:8,
30:4, 71:4,
71:8, 1:14
TITLED 29:25
TODAY 4:19,
33:18, 49:13,
54:8, 60:5,
62:11, 69:22,
73:20, 76:21
TOGETHER 4:16
TOOK 3:10
TOP 14:21,
21:25, 44:2
TOTAL 13:2
TRADE 10:5,
15:24, 30:1,
31:9, 32:15
TRAINED 32:14,
50:17, 50:18,
52:20, 78:24,
79:4
TRAINING 33:5,
50:20, 50:23,
51:3, 51:7,
53:11, 53:13,
53:19
TRAINING. 32:11
TRANSACTION
12:15
TRANSACTIONS
32:14
TRANSCRIPT
1:26, 1:18,
1:22
TRANSFER 12:15,
19:1, 19:4,
19:7, 19:24,
20:7, 21:8
TRANSLATED 25:7
TREASURY 8:6
TRIAL 1:26,
65:12
TRIQUINT 23:2
TRUE 42:6, 1:16
TRULY 78:21
TRUST 19:7,
19:20, 20:7
TURN 7:3, 7:17,
9:3, 11:4,
13:21, 15:10,

15:14, 16:18,
17:4, 17:10,
17:18, 18:7,
18:22, 18:23,
20:12, 21:16,
23:4, 24:3,
24:14, 25:2,
26:9, 28:24,
29:20, 32:7,
37:16, 69:17
TURNED 78:7
TURNING 24:7,
25:15, 26:24,
27:10, 27:19
TURNS 69:3
TWO 2:2, 2:21,
3:9, 9:24,
12:25, 18:12,
19:6, 23:22,
25:23, 28:4,
30:10, 31:20,
38:24, 40:14,
47:4, 47:7,
47:15, 47:19,
48:17, 55:4,
59:13, 59:25,
64:2, 68:21,
73:4, 73:20
TWO-PAGE 20:15
TYPE 18:2
TYPICALLY 71:5


< U >
ULTIMATE 51:22
UMHOFER 3:7,
3:14, 3:21
UNALTERED 59:11
UNAVAILABLE 2:5
UNCHANGED 59:20
UNDERSTAND
5:25, 52:4,
52:8, 60:8,
61:13, 61:16,
62:15, 66:18,
68:18, 74:9,
74:14, 78:21
UNDERSTOOD 49:4
UNDICED 22:18
UNIQUE 59:5,

65:22, 65:24
UNITED 1:1,
1:4, 2:5, 1:15,
1:19, 1:21,
1:23, 1:25,
9:9, 12:4,
12:17, 12:18,
1:10, 1:14,
1:24
UNLESS 40:24
UNNECESSARY
68:2
UNTIL 42:5,
66:22, 68:2,
69:11, 70:7
UPSTAIRS 38:16,
53:6
USA 1:7, 1:11
USES 36:15
USING 10:23,
15:6


< V >
VAGUE 58:13,
75:12
VALUE 18:16
VARIOUS 29:10,
41:17, 42:3,
77:21
VERSUS 1:11
VIA 37:7
VIEWED 37:11
VIEWING 41:25
VIOLATION 39:7
VIOLATIONS
11:10, 57:5,
72:17
VOLUME 1:28,
6:24, 8:8,
17:4, 33:21
VS 1:11


< W >
W. 3:6
WAFER 22:17,
35:2, 35:3,
55:19, 56:10,
57:2, 61:4,

61:17, 65:1,
66:3, 66:5
WAFERS. 22:15
WALK 9:22
WALKING 78:6
WANTED 2:15,
3:21, 4:2, 10:8
WANTS 61:7,
62:6
WARRANT 40:1,
44:25
WASHINGTON 9:18
WASSENAAR
14:21, 15:16
WASSERMAN 1:27
WAYS 13:24
WEBSITES 2:23
WEDNESDAY 1:32,
1:1
WEEK 3:18
WEST 1:41
WESTERN 1:2
WHATEVER 54:4
WHENEVER 10:6
WHETHER 2:6,
3:4, 9:13,
32:25, 45:10,
50:25, 53:9,
55:17, 60:4,
60:25, 61:1,
62:16, 67:8
WHOLLY-OWNED
12:19
WILL 1:18, 2:7,
4:15, 9:22,
29:9, 59:4,
60:19, 61:6,
61:19, 61:23,
63:3, 63:24,
64:25, 65:12,
65:22, 66:1,
66:3, 66:5,
79:2
WILLIAM 2:36
WIN 23:7,
23:12, 34:7
WIRE 19:1,
19:4, 19:7,
19:23
WISH 54:14,

54:22
WITHIN 3:18,
35:7
WITHOUT 75:17
WITNESS 2:24,
5:4, 5:16,
5:18, 5:24,
6:2, 16:11,
41:11, 41:19,
47:13, 47:23,
48:11, 52:5,
52:7, 52:9,
52:12, 57:11,
57:17, 59:2,
60:20, 61:24,
62:7, 66:17,
69:15, 70:11,
71:3, 74:10,
74:15, 74:17
WITNESSES 2:16,
60:22, 61:7,
63:3, 63:10,
65:11
WORD 57:12
WORDS 17:12,
21:10, 46:20,
46:21, 49:24,
50:1, 50:7
WORK 5:20,
21:7, 21:9
WRAP 4:30,
64:7, 64:14,
64:18
WRIGHT-PATTERSO
N 29:15
WRITTEN 16:2,
31:8
WRONGDOING
39:22


< Y >
YAOZHONG 21:15
YAPING 27:14
YE 26:18
YEARLY. 32:20
YEARS 55:14
YEH 24:8
YEP 63:3
YES. 30:5,

30:23
YESTERDAY 3:1,
3:13, 6:10,
33:18, 38:3,
38:14, 43:4
YI-CHI 1:11,
7:2, 8:1,
17:13, 17:25,
18:6, 18:13,
18:20, 19:17,
20:11, 20:17,
20:21, 20:23,
21:10, 25:14,
25:18, 25:25,
26:7, 29:17,
31:20, 32:20,
33:5
YICHISHIH@YAHOO
27:4
YICHISHIH@YAHOO
.COM. 26:16,
26:21, 27:8
YOU. 13:16
YOUR. 57:13
YU 27:24
YUAN 26:18